**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRACKTIME, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br>AMAZON.COM LLC,<br>AMZN MOBILE LLC,<br>AMAZON WEB SERVICES, INC.,<br>AMAZON DIGITAL SERVICES LLC, and<br>AUDIBLE, INC.,<br><br>      Defendants. | CIVIL ACTION NO.<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff TrackTime, LLC ("TrackTime" or "Plaintiff") files this Complaint against Amazon.Com, Inc., Amazon.com LLC, Amzn Mobile LLC, Amazon Web Services, Inc., and Amazon Digital Services LLC (collectively, "Amazon") and Audible, Inc. ("Audible") for infringement of U.S. Patent No. 8,856,638 ("the '638 patent") and U.S. Patent No. 8,862,978 ("the '978 patent") (the "patents-in-suit" or the "asserted patents"). Amazon and Audible are together referred to herein as Defendants. Plaintiff alleges Defendants willfully infringe the asserted patents. Plaintiff has been, and continues to be, injured by Defendants' conduct.

## <u>THE PARTIES</u>

1.  Plaintiff TrackTime is a Delaware limited liability company with its principal place of business in Springfield, VA. TrackTime's registered office in Delaware is 16192 Coastal Highway, Lewes, Delaware, 19958, County of Sussex.

2.  Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington. Amazon.com, Inc.'s registered agent for service in Delaware is Corporation Service Company, 251 Little Falls Drive, Wilmington,

Delaware 19808.  Amazon.com, Inc. does business across the United States, including in the State of Delaware and in the District of Delaware.

3.      Defendant Amazon.com LLC is a limited liability corporation organized under the laws of Delaware and a wholly-owned subsidiary of Amazon.com, Inc. with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.  Amazon.com LLC's registered agent for service of process in Delaware is Corporate Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Amazon.com LLC does business across the United States, including in the State of Delaware and in the District of Delaware.

4.      Defendant AMZN Mobile LLC is a limited liability corporation organized under the laws of Delaware and a wholly-owned subsidiary of Amazon.com, Inc. with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.  AMZN Mobile LLC's registered agent for service of process in Delaware is Corporate Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  AMZN Mobile, LLC does business across the United States, including in the State of Delaware and in the District of Delaware.

5.      Defendant Amazon Digital Services LLC, is a Delaware limited liability company, an Amazon.com, Inc. subsidiary and controlled affiliate, and a so-called Amazon Group Company with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.  Amazon Digital Services LLC's registered agent for service of process in Delaware is Corporate Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Amazon Digital Services LLC does business across the United States, including in the State of Delaware and in the District of Delaware.

6.      Defendant Amazon Web Services, Inc. is a Delaware corporation, an Amazon.com, Inc. subsidiary and controlled affiliate, and a so-called Amazon Group Company

with its principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington. Amazon Web Services, Inc.'s registered agent for service in Delaware is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Amazon Web Services, Inc. does business across the United States, including in the State of Delaware and in the District of Delaware.

7.      Defendant Audible, Inc. is a Delaware corporation, an Amazon.com, Inc. subsidiary and controlled affiliate, and a so-called Amazon Group Company with its principal place of business at One Washington Park, 16th Floor, Newark, New Jersey 07102.  Audible, Inc.'s registered agent for service of process in Delaware is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Audible Inc. does business across the United States, including in the State of Delaware and in the District of Delaware.

## JURISDICTION AND VENUE

8.      Plaintiff brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.      The United States Congress enacted the patent laws pursuant to Article 1, Section 8 of the United States Constitution, which says, "The Congress shall have power . . . To promote the Progress of Science and useful Arts. . . by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries."

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as well as §§ 1338(a)-(b) and 1367 (jurisdiction over patent actions).

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  On information and belief, each Defendant is deemed to reside in this judicial district, has committed acts of infringement in this judicial district, has purposely transacted business in

this judicial district, and/or has regular and established places of business in this judicial district. Specifically, each Defendant is incorporated in the State of Delaware.

12.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction, due at least to their substantial and pervasive business in this State and judicial district, including: (a) at least part of their infringing activities alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Delaware residents.

13.     More specifically, Defendants' substantial contacts with the forum include, but are not limited to: (i) the manufacture, marketing, offer for sale, sale, distribution, and use of Amazon mobile computing devices, including those sold under the AMAZON, KINDLE, FIRE, and ECHO trademarks; (ii) the marketing, sale, and provision of Amazon's subscription services, including Amazon Prime, Amazon Music, Amazon Music Unlimited, Audible Audiobooks, Kindle eBooks, Amazon Kindle Unlimited, and various a la carte e-book and audiobook sales; (iii) the marketing and distribution of software for mobile computing devices such as the software and/or features known as Amazon Music, X-Ray Lyrics, X-Ray for Music, the Kindle app, the Audible app, Whispersync for Voice, Kindle Books with Audible Narration, Immersion Reading, and other similar applications and/or software features installed on such devices; and/or (iv) the provision of technical and customer support for the Amazon services and subscriptions described in (ii) above and the software described in (iii) above.

## PATENTS-IN-SUIT

14.     The asserted patents relate generally to novel methods for "seeking" to portions of electronic media using mobile computing devices, and related social networking. Notably, the claims of the asserted patents cover the use of mobile computing devices to navigate music using

synchronized lyrics and to navigate audiobooks using an associated electronic book, among numerous other applications.  The inventor is an engineer and patent attorney with over twenty-two years of experience in litigation and litigation support.  He derived and developed his inventions when solving technical problems plaguing the legal industry.  His solutions include enabling the synchronization and use of mobile computing devices with, for instance, deposition videos and transcripts.

15.     The '638 patent lawfully issued on October 7, 2014 and stems from Application No. 14/099,292, filed on December 6, 2013.  The '638 patent is entitled "Methods and System for Remote Control for Multimedia Seeking."  The named inventor is Curt Evans of Springfield, Virginia.  A copy of the '638 patent is attached hereto as Exhibit 1.

16.     The '638 patent is a continuation of Application No. 13/851,813, filed on March 27, 2013, which is a continuation-in-part of Application No. 13/342,865, filed on January 3, 2012, which claims the benefit of U.S. Provisional Patent Application No. 61/429,399, filed on January 3, 2011.

17.     The claims of the '638 patent encompass novel and non-obvious technology including, but not limited to, the ordered combination of claimed elements comprising a synchronization index comprising an electronic transcript indicating text corresponding to audio from multimedia, and further indicating respective times within multimedia corresponding to when a word or range of words is audible in the multimedia.  The '638 patent further teaches and claims embodiments utilizing such a synchronization index for selecting portions of multimedia for display, including various ways in which the synchronization index is used for purposes of "seeking" to a portion of multimedia and delivering it, accordingly.  This includes, but is not limited to, the performance of timecode lookups, the provision of information for displaying text

5

from the synchronization index to a mobile computing device having a viewing screen and a

touch-sensitive input interface, and the receipt of a user's selected mobile computing device

touch-sensitive input interface gesture performed on a portion of a viewing screen corresponding

to a displayed word from the synchronization index.

18.     The '978 patent lawfully issued on October 14, 2014 and stems from Application

No. 14/099,231, filed on December 6, 2013.  The '638 patent is entitled "Methods and Systems

for Facilitating an Online Social Network."  The named inventor is Curt Evans of Springfield,

Virginia.  A copy of the '978 patent is attached hereto as Exhibit 2.

19.     The '978 patent is a continuation of Application No. 13/851,813, filed on March

27, 2013, which is a continuation-in-part of Application No. 13/342,865, filed on January 3,

2012, which claims the benefit of U.S. Provisional Patent Application No. 61/429,399, filed on

January 3, 2011.

20.     Like the claims of the '638 patent, the '978 patent claims encompass novel and

non-obvious technology including, but not limited to, the ordered combination of claimed

elements comprising a synchronization index that, in some claims, is an electronic transcript that

indicates text corresponding to audio from multimedia, and wherein the synchronization index

indicates respective times within the multimedia corresponding to when a word or range of

words is audible in the multimedia.  In other claims, the synchronization index comprises an

electronic transcript of text corresponding to at least a portion of audio from multimedia and

indicates respective times within the multimedia corresponding to a word or range of words,

wherein the synchronization index (i) provides association between at least one portion of the

electronic transcript and at least one portion of the multimedia, and (ii) is otherwise provided to

and/or shared with a plurality of users via a network.  Further still, the claimed technology

facilitates the sharing of annotations across multiple devices utilizing the synchronization index via a set of specific steps.

21.     The '978 patent specification further describes embodiments for, and features and advantages of, utilizing a mobile computing device and a synchronization index with an improved user interface.  This includes the facilitation of annotation responsive to user input received by the mobile computing device, the provision of information for displaying text from the synchronization index to a mobile computing device having a viewing screen and a touch-sensitive input interface, instances where performing a user's selected gesture on a portion of a viewing screen corresponding to a portion of text is recognized by a touch-sensitive input interface; and the transmission or communication of annotations to a second computing device via a network for subsequent retrieval.

22.     The technologies claimed in the '638 and '978 patents consist of ordered combinations of features and functions that were not, alone or in combination, considered well-understood by, and routine, generic, and conventional to, skilled artisans in the industry at the time of invention.  Defendants made contemporaneous, factual public statements to this effect, and Defendant Audible made such statements to the United States Patent and Trademark Office in prosecuting its own patent applications.

23.     Each asserted claim in the '638 and '978 patents is presumed valid.

24.     Each asserted claim in the '638 and '978 patents is directed to patent eligible subject matter under 35 U.S.C. § 101.

25.     The '638 and '978 patent specifications disclose shortcomings in the prior art and then explain, in detail, the technical ways that the patents resolve or overcome those shortcomings.  By way of example, each patent's disclosure:

a. Explains that there was no well-understood, routine, and conventional utility on a mobile computing device "for display of smoothly scrolling, synchronized text and multimedia for use on a mobile computing device, where the user may perform a gesture on the text to cause the multimedia to jump to a desired location and begin playback" (col. 1, lines 59-62; col. 3, line 54 – col. 5, line 30)[1];

b. Identifies shortcomings of prior art utilities (col. 6, lines 23-33; col. 9, lines 25-43);

c. Describes problems with prior art media (col. 8, lines 27-34);

d. Sets forth at least thirteen problems with closed captioning, subtitling, and historic uses of text, including a lack of interactivity, such shortcomings being "emblematic of the art before the techniques described throughout this disclosure" (col. 10, line 32 - col. 11, line 24);

e. Describes and teaches solutions to the technical problems (col. 11, line 25 – col. 12, line 13), stating for instance: "By contrast, the synchronization index and software suited for use on a mobile computing device of the present disclosure is characterized by interactivity, meaning that the user is able to use the synchronous text display to accomplish another action, namely convenient navigation within the multimedia by using the text, or convenient navigation of the text by using the multimedia" (col. 11, lines 25-31); "There is also a need for systems, products, software and methods to facilitate use of mobile computing devices with synchronization indexes and corresponding multimedia for any type of

_____

[1] The '638 and '978 patents share a common specification.  Column and line references come from the '638 patent.

multimedia that can be associated, and manipulated, by corresponding text, such as music and lyrics, video/audio books, movies and screenplays, and other multimedia recordings." (col. 11, lines 61-67);

f.  Describes and teaches numerous novel embodiments (*see*, *generally*, col. 12 – col. 39);

g.  Teaches a technical solution for providing music and interactive, synchronized lyrics on a mobile computing device (col. 39, line 15 – col. 41, line 35; Fig. 35);

h.  Teaches a technical solution for providing an audio book and interactive corresponding text for use on a mobile computing device (col. 47, line 8 – col. 47, line 63; Fig. 36);

i.  Teaches a technical solution for providing social networking functionality in conjunction with text and synchronized media on a mobile computing device (col. 49, line 19 – col. 50, line 25; Fig. 24);

j.  Describes other uses for a synchronization index and associated multimedia operating on a mobile computing device, including music and audio books (col. 50, lines 25-43);

k.  Includes an improved user interface for use of music and interactive, synchronized lyrics on a mobile computing device (Fig. 35, col. 56, lines 47-62; Figs. 1, 3);

l.  Includes an improved user interface for use of book text and a corresponding audio book on a mobile computing device (Fig. 36, col. 56, lines 63 – col 57, line 12; Figs. 1, 3); and

m.  Sets forth numerous benefits of the claimed inventions that are described throughout the specification and also depicted in the figures.

**AMAZON AND AUDIBLE**

*Devices*

26.  Amazon has historically sold and/or sells lines of mobile computing devices, including computer tablets and mobile phones.  It sells these devices under the AMAZON, KINDLE, FIRE, and ECHO trademarks (and variants thereof) (collectively, "Kindle Devices"). The Kindle Devices are not "gadgets;" rather they are an integral and "*absolutely essential*" part of Amazon's service offerings (refer to ¶ 27, below).  Amazon makes substantial money, for instance, when consumers use the Kindle Devices to buy goods and services from Amazon's "ecosystem"—a marketplace for products, applications, and subscription services, including Amazon Prime, Amazon Music, Amazon Music Unlimited, Amazon Prime Reading, Kindle eBooks, and Audible Audiobooks, among others.

27.  When certain Kindle Devices were introduced to the market in September 2012, Amazon's CEO Jeff Bezos remarked: "Kindle Fire is a service;" "Our hardware device is a service. That's what people want."  Indeed, he said, "Hardware is a critical part of the service. *Absolutely essential*."  These statements were true then, and are true now.

28.  Amazon also sells through its e-commerce portal (Amazon.com) third-party mobile computing devices, such as tablet computers and mobile phones, intending that purchasers install and use Amazon applications to buy goods and services from the Amazon "ecosystem."  These mobile computing devices include computing products running the Android operating system and computing products running Apple's operating system, called "iOS."

*"Amazon Prime"*

29.     Amazon offers a suite of subscriptions and services that it markets and sells as "Amazon Prime."  Amazon Prime includes access to e-books and audiobooks, as well as music. Amazon Prime also offers other benefits, such as free or discounted priority shipping on items purchased through, or from, Amazon or Amazon.com.

30.     In a letter to investors dated April 19, 2018, Amazon CEO Jeff Bezos stated that there are now over 100 million Amazon Prime subscribers, and more new Amazon Prime subscribers joined in 2017 than any other year.  *See* https://blog.aboutamazon.com/2017-letter-to-shareholders/

31.     Amazon Prime allows a subscriber to access "Amazon Prime Music," a streaming music service that offers over 2 million songs.  Certain of these songs have associated lyrics.

32.     Amazon offers, via additional subscription, "Amazon Music Unlimited," which is a music service that expands the music library to over 23 million songs.  Certain of these songs have associated lyrics.

33.     Amazon also offers songs for purchase from the Amazon Digital Music Store, and allows Amazon Prime subscribers to import songs purchased elsewhere to their "My Music" library.  Imported songs will be matched to music in the Amazon Digital Music Store catalog. Certain of the songs in the Amazon Digital Music Store have associated lyrics.

34.     One way consumers can access either "Amazon Prime Music" or "Amazon Music Unlimited" is by using a mobile computing device to download and use a software application, or "app," called "Amazon Music."  Amazon offers the Amazon Music app for, at least, the iOS and Android operating systems.  The Amazon Music app is used to access music, including music with associated synchronized lyrics.

35.     Another way consumers can access either "Amazon Prime Music" or "Amazon Music Unlimited" is by using a Kindle Device with the their pre-installed Music app, or similarly functioning software.

36.     The Amazon Music app, and similar software installed on Kindle Devices, includes a feature called "X-Ray Lyrics" or "X-Ray for Music."  This feature allows mobile computing devices to display song lyrics as a song plays, with the lyrics being synchronously displayed with the audio.  X-Ray Lyrics also allows users to scroll through lyrics, for example by "swiping" up or down (a user-selected gesture that users make on their mobile device touch screens).  Further, X-Ray Lyrics allows users to "jump" to another portion of a song by performing a gesture on a part of the touch-screen that corresponds to a line of lyrics, for example by "tapping" a line of lyrics to "jump" the song to that location.

37.     X-Ray Lyrics is promoted by Amazon as a reason to buy Kindle Devices. Amazon further advertises as distinct benefits of X-Ray Lyrics the fact that that lyrics display and scroll automatically line-by-line as a song plays and that users enjoy the ability to jump to different sections of songs by tapping any line in the lyrics.

38.     X-Ray Lyrics in the Amazon Music app (or similar software pre-installed on Kindle Devices) functions because song lyrics are indexed for synchronization to the lyrics, and the index is used to "jump" to different portions of a song via a user touch screen gesture, for example a "tap" on a line of lyrics.

39.     X-Ray Lyrics is also offered by Amazon to entice consumers to participate in the Amazon "ecosystem" and, thus, to consume Amazon products and services (e.g., buy Kindle Devices, download and use the Amazon Music app, become Amazon Prime subscribers (and use Amazon Music), become Amazon Music Unlimited subscribers, purchase music from the

Amazon Digital Music Store, upload songs to be matched to music in the Amazon Digital Music Store catalog, etc.).

40.     X-Ray Lyrics (and its functionality) is prominently advertised as a primary reason to download the Amazon Music app for both iOS and Android devices.  For example, the Amazon Music app is available for download for iOS devices through the Apple App Store.  In the Apple App Store, Amazon displays a number of screenshots of the Amazon Music app. These screenshots are intended to entice users to download and use the software.  One of the first three screenshots shows the X-Ray Lyrics feature and is titled, "Never miss a verse with X-Ray lyrics."

41.     On information and belief, the Amazon Music app for iOS has been downloaded over a million times.

42.     Amazon sells iOS devices, including various iterations of the Apple iPhone and iPad, which are capable of running the Amazon Music app with X-Ray Lyrics.

43.     The Amazon Music app is listed by Google as having been downloaded to Android devices between 100 million and 500 million times.

44.     Amazon sells Android devices capable of running the Amazon Music app with X-Ray Lyrics.

45.     In total, the Amazon Music app has been downloaded many millions of times and is a tremendously successful app and service offering that contributes substantial revenue to Amazon's bottom line.

46.     X-Ray Lyrics is a reason that consumers elect Amazon Prime or Amazon's music services over competing streaming music services such as Spotify, Pandora, Apple Music, Google Play Music, or Tidal.  X-Ray Lyrics is also a reason consumers elect Amazon Prime or

Amazon's music services over music purchases altogether (e.g., foregoing albums, CDs, or digital music purchases from competitors like Apple iTunes or Google Play Store).

47.     The Amazon Music app, and Kindle Devices, have been used to deliver *billions* of songs to Amazon customers.

48.     The '638 patent discloses and claims methods for "seeking" multimedia, and these claimed methods are infringed by Defendants.

49.     The user interface on the Amazon Kindle Fire with X-Ray Lyrics (shown below) is similar to Fig. 35 of the '638 patent, which is an embodiment relating to synchronized lyrics corresponding to a song.  Song lyrics are displayed and the user is provided functionality to "jump" to a particular portion of a song by performing a gesture on the touch screen that corresponds to a particular word or range of words from the lyrics.



**Amazon Kindle Fire running "X-Ray Lyrics"**

50.     On information and belief, tens of millions of paid customers are now using Amazon Music.  As of April 2018, Amazon Music Unlimited subscriptions grew more than 100% over the last six months.  *See e.g.,* http://phx.corporate-

ir.net/phoenix.zhtml?c=97664&p=irol-newsArticle&ID=2345075.

51.     Amazon Prime subscriptions may be purchased monthly or annually.  The inclusion of "digital entertainment services," like Amazon Music, within Amazon Prime increases its benefit to subscribers/members.  Based in part on these "digital benefits," Amazon announced on April 26, 2018, that it is increasing the price of the U.S. annual plan for new members 20%, from $99/year to $119/year.  *See e.g.,* https://seekingalpha.com/article/4166644-amazon-com-amzn-q1-2018-results-earnings-call-transcript?part=single#question-answer-session.

52.     Streaming music services are important to the music market in general. Streaming music services are reported as having achieved "meteoric popularity," overtaking digital downloads as the music industry's main business model in just a few years.  *See* https://www.cnet.com/news/streaming-subscriptions-led-music-sales-to-highest-growth-since-1919/.

***E-books and Audiobooks***

53.     Amazon began its business by selling physical books.  The company would accept online orders through its e-commerce portal, then deliver physical books to the customer. This became a popular and profitable endeavor, taking substantial business from brick-and-mortar retail book stores.  This "success" often drove competitors out of business.

54.     Over time, Amazon began to sell "e-books," electronic copies of books that are downloaded and read on mobile computing devices, among others.  This, too, became a popular offering.  Electronic distribution of books is quicker and less costly than publishing and delivering physical books, and profit margin is higher as a result.

55.     Amazon offers and sells hardware and stand-alone software used to purchase and read e-books.  Amazon released the "Kindle" brand e-reader in 2007, enabling users to browse, buy, download, and read e-books, newspapers, magazines and other digital media content via wireless networking to the Kindle Store.

56.     Amazon prices its hardware devices at "a very thin margin" (*i.e*., lower than it otherwise would as compared to competitors like Apple), because Amazon intends to profit when customers use the devices to purchase other goods and services from the Amazon ecosystem, like music, e-books, and audiobooks.

57.     Amazon offers a software "app" for non-Amazon mobile computing devices, called the "Kindle app."  The Kindle app allows other mobile computing devices and their users to browse, buy, download, and read e-books, newspapers, magazines and other digital media via wireless networking to the Kindle Store.  The Kindle app opens the Amazon ecosystem to third party mobile computing devices, including Apple iOS-based and Android-based products.

58.     Amazon also offers and sells audiobooks.

59.     Defendant Audible operates the website Audible.com and is the world's largest producer and retailer of electronic audiobooks.  Audiobooks are digital multimedia files comprising audio that can be delivered to mobile computing devices, including mobile phones and tablets.  Audible calls itself a "leading destination for digital entertainment and a powerhouse of creative, original spoken-word content." *See* https://www.audiblecareers.com/who-we-are.

60.     Amazon purchased Audible in 2008 for approximately $300 Million.  Audible gained access to, and became an integral part of, the Amazon "ecosystem," making its products and services easily and readily available via Amazon.com.

61.     Audible advertises, "We are an Amazon subsidiary with a startup vibe and small company feel, enjoying a breathtaking growth rate.  [We] creat[e] category-leading products that enrich the lives of millions of people around the world every day."  Audible also says it is a "disruptive, technology-driven company," that it "reinvented a media category," and that it "disrupt[s] the status quo and [] works on projects that shatter preconceptions." *See* https://about.audible.com/; *see also* https://www.audiblecareers.com/who-we-are.

62.     On information and belief, Amazon sells approximately fifty-five percent of all books in the U.S., approximately eighty-two percent of all e-books, and, with Audible.com, approximately ninety-nine percent of all audiobooks.  *See* New York Post, "Tech giants are the robber barons of our time" (Feb. 3, 2018), *available at* https://nypost.com/2018/02/03/big-techs-monopolistic-rule-is-hiding-in-plain-sight/.

63.     Audible offers the Audible app, a mobile computing device software app for buying, downloading, receiving, and playing audiobooks.  This app is available for download for at least the iOS and Android operating systems.  This app, or a similarly functioning software application, also functions on Kindle Devices.

64.     Audible considers the Audible app "one of the best products out there, stating that "[m]illions of customers spend couple hours daily, listening to Audible content (150 minutes, average, daily) besides several million others visiting and browsing our content daily."  Audible represents that its app for iOS has been consistently rated "4+," that "Audible app for Android has 30+ million installed base," and that its "systems currently process 2000+ TPS" (transactions per second).  *See* Exhibit 3, Audible Job Listing, formerly at https://www.amazon.jobs/en/jobs/585896/sdet-manager.

65.     Historically, Amazon sold e-books separately from audiobooks because there was no link between the two.  Now, there is a link between an e-book and an audiobook.  The link between an e-book and an audiobook is beneficial to sales, as opposed to selling standard non-linked copies.

66.     The Audible app and Kindle app are intended to, and do, function in concert with one another.  Amazon and Audible advertise this feature as "Whispersync for Voice" or "Kindle Books with Audible Narration," sometimes including "Immersion Reading."

67.     Whispersync for Voice allows a consumer to navigate to a portion of an audiobook by using the text of an e-book to "jump" to a specific portion of the audio that corresponds to a page of the e-book.

68.     Whispersync for Voice allows customers to move seamlessly between Audible audiobooks and Kindle ebooks, so they can take the story with them wherever they are.  It allows customers to read a little, then listen a little, effectively expanding the time a user spends reading or listening.  This technology and feature is a "*key strategic differentiator*" for Audible.  *See*, *e.g.*, https://www.linkedin.com/jobs/view/software-development-engineer-at-audible-inc-721852292 (emphasis added).

69.     The '638 patent discloses and claims this feature, which is visually depicted in the patent's Fig. 36—showing a mobile computing device app interface for an e-book and a corresponding audiobook (showing audio controls).  Fig. 36 is an interface enabling readers to switch seamlessly between reading and listening without losing their place.  Similarly, the screenshot below depicts the Whispersync for Voice interface (a co-functioning Kindle app and Audible app) on an iPad, with e-book text, top, and audio controls, bottom.  The interface allows

users to quickly and easily navigate to the portion of the audiobook corresponding to a range of words displayed.



**Kindle app on iPad, showing Whispersync for Voice**

70.     Audible has advertised, "Whispersync for Voice is *an Audible innovation* utilizing Amazon's eBook to audiobook synchronization platform, enabling readers to switch seamlessly between reading and listening without losing their place.  iOS participates in this ecosystem by exchanging book position information at certain key points, ensuring our users always have a great experience."  *See* http://stn.audible.com/ios-meetup/.

71.     When Audible advertises technology to be an "innovation," that means it is not well-understood, routine, and conventional within the industry.  Indeed, Amazon and Audible have advertised that Whispersync for Voice is an "innovative feature you won't find anywhere

else" (https://www.slideshare.net/jjwu6266/introducing-amazon-kindle-fire-hd-7-inch-14351150?from_action=save, slide 15).

72.    Audible considers Whispersync for Voice to be one of its four major milestones, right along with the founding of the company in 1995, the release of a portable "mobileplayer" apparatus in 1997, and Amazon's acquisition of Audible in 2008 for $300 Million.  *See* https://about.audible.com/; *see also* https://www.reuters.com/article/us-audible-amazon/amazon-to-buy-audible-for-300-million-idUSN3129158120080131.

73.    Amazon's CEO, Jeff Bezos, gave a Keynote speech in 2012 (https://youtu.be/NRsKS-kSqNI) to launch certain Amazon services.  Mr. Bezos used that speech to advertise Kindle Devices as "*absolutely essential*" to Amazon's service offerings, and to advertise Whispersync for Voice and Amazon Music.  Mr. Bezos remarked, "We *love* to invent. We love to pioneer. We even like going down alleys that turn out to be blind alleys.  Of course every once in a while one of those blind alleys opens up into a broad avenue.  And that's *really* fun."  Mr. Bezos reminded the world that, "Once again, invention doesn't stop with the hardware," and he went on to describe the Whispersync for Voice feature and why Amazon believed it was innovative.

74.    Audible.com edited Mr. Bezos' approximately seventy-three minute-long speech into a single video segment (https://youtu.be/aBmTtj-uzLQ), which it uses as a promotional video to advertise the Whispersync for Voice software feature as a pioneering software invention, a way to "fuse together" the Audible book and the Kindle book as its "*key strategic differentiator*" in the e-book and audiobook market.  Audible advertises this feature as one that "revolutionize[s] reading."

75.     Mr. Bezos further remarked, "People love audiobooks because they can listen to them in situations where they could never read a book: jogging, driving to work, cleaning, cooking.  It effectively expands their reading time.  So *we* thought, 'I wonder if there is a way to expand reading time even more?'  There is.  It's called Whispersync for Voice."

76.     Audible's audiobooks can be accessed via a subscription to Audible, or as a la carte purchases, for example via Amazon.com or Audible.com.  Amazon sells Whipsersync for Voice-enabled e-books, which are often more expensive than a standard e-book.  Whipsersync for Voice-enabled e-books are intended to elicit a purchase of the corresponding audiobook, and vice versa.  Indeed, Amazon sells e-books and audiobooks "bundled" or paired together, so the consumer may take advantage of the Whispersync for Voice feature.

77.     Whipsersync for Voice-enabled e-books comprise additional information as compared to the similarly titled standard e-book, because the Whispersync for Voice-enabled version is indexed for synchronization to the corresponding audiobook, whereas the standard e-book is not.  Amazon and Audible's software is configured to use this version indexed for synchronization.

78.     Whispersync for Voice cannot be disabled and otherwise adds value to a customer's reading experience, and raises awareness for an author's titles, by linking the Audible edition to the Kindle edition.

79.     Amazon Prime subscriptions include "Amazon Prime Reading."  Certain e-books available through "Amazon Prime Reading" are Whispersync for Voice-enabled.

80.     Amazon also offers "Amazon Kindle Unlimited," or a service offering of unlimited access to a collection of over 1 million e-books available for an additional subscription

price.  Thousands upon thousands of e-books available through Amazon Kindle Unlimited are Whispersync for Voice-enabled.

81.  Audible offers a la carte audiobook purchases, as well as subscriptions.

82.  To appreciate the scale of Audible's audiobook distribution, Audible subscribers downloaded about 1.6 billion hours of audio in 2015 and almost 2 billion hours of content in 2016.  *See* https://about.audible.com/.  Over 100,000 titles are Whispersync for Voice-enabled, and Amazon and Audible work every day to expand the number of titles available.

83.  The Amazon press release for Whispersync for Voice, dated September 6, 2012, states, "Audible.com, the world's leading provider of digital spoken-word entertainment and a subsidiary of Amazon.com, today announced *two momentous steps forward* for reading: 'Immersion Reading' and 'Whispersync for Voice.'"  It further states, "At Amazon we are missionaries when it comes to inventing on behalf of authors and readers. We're excited today to unveil our latest innovations that will help people read more and retain more of what they read. Reading and listening together has been shown to increase the motivation to read, and it can have meaningful impact on reading retention—Immersion Reading on the new Kindle Fire family sets a new standard for deep reading by engaging the eye and the ear simultaneously with beautifully narrated audiobooks."  *See* https://www.engadget.com/2012/09/06/amazon-audio-whispersync/ (emphasis added).  On information and belief, Amazon believed these statements when it made them in September 2012.  Such statements constitute an unequivocal admission that Amazon deemed Whispersync for Voice a significant advancement in the applicable art.

84.  Amazon's Kindle app also has a social networking feature.  Users of the Kindle app, and of certain Kindle Devices, can access text of an e-book and annotate it by adding bookmarks, notes, and highlights.  This annotation feature functions for, among others, e-books

that are Whispersync for voice-enabled, or that would be considered "Kindle Books with Audible Narration." These annotations are backed up to the Kindle Library in the cloud for subsequent retrieval and viewing on Kindle Devices and via Kindle reading apps. Annotations Backup is automatically enabled on Amazon Fire tablets and cannot be disabled. Certain of these annotations are designed to be shared, and are actually shared with others, for example via social networking outlets like Goodreads, Twitter, and Facebook.

85.     The Amazon service offerings described above infringe at least one claim of each of the two asserted patents. This is a violation of the "exclusive Right" Congress enshrined in patent law. Such a violation has damaged, and continues to damage, Plaintiff.

**_The Amazon / Audible Relationship_**

86.     Audible is a wholly owned subsidiary of Amazon.

87.     Audible identifies itself as "an Amazon company."

88.     Audible has stated that in 2008 it joined the "Amazon Family."

89.     Amazon's website refers users to Audible. For example, users seeking information on Whispersync are linked from Amazon to Audible's website.

90.     Audible's website refers users to Amazon. For example, Audible's job opportunities page links a user to Amazon's job board.

91.     Both Amazon and Audible provide detailed help pages and instructions regarding Whispersync.

92.     The Audible Service Conditions of Use, which apply to the "digital spoken word entertainment service operated by Audible (the "Service")," states that "the Service is an Amazon Service for purposes of the Amazon.com Conditions of Use," and that the Service is governed by "the Amazon.com Conditions of Use, the Amazon.com Privacy Notice, and the

Amazon.com Internet-Based advertising Policy."  *See* https://www.audible.com/legal/conditions-of-use.

93.     The Audible Service Conditions of Use also states that "Any dispute or claim arising from or relating to these Terms or your use of the Service is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability and all other terms in the Amazon.com Conditions of Use."  *Id.*

94.     Amazon identifies Audible as one of its "controlled US affiliates."  *See* https://www.amazon.com/gp/help/customer/display.html/ref=hp_left_v4_sib?ie=UTF8&nodeId=202135380 (linking to list of such affiliates by name at https://www.amazon.com/gp/help/customer/display.html?nodeId=202137190).  Other "controlled US affiliates" listed include Amazon Web Services, Inc. and Amazon Digital Services LLC.

95.     On March 23, 2011, Audible filed U.S. Patent Application No. 13/070,422 ("the '422 Application"), titled "Managing Playback of Synchronized Content," which issued to Audible as U.S. Patent No. 8,855,797.

96.     During prosecution of the '422 Application, Audible submitted an invention disclosure document in an effort to swear behind certain prior art references.  The invention disclosure document was identified as "Audible/Amazon Proprietary Confidential."  On information and belief, the invention disclosure document relates to Amazon and Audible's Whispersync functionality.

97.     On information and belief, Audible utilized at least Amazon paralegals to assist in patent prosecution and other legal matters.  For example, on December 19, 2011, Audible filed

U.S. Patent Application No. 13/330,404 ("the '404 Application"), titled "Presenting Content Related to Primary Audio Content," which issued to Audible as U.S. Patent No. 9,213,705.

98.    During prosecution of the '404 Application, the named inventors on the '404 Application, Guy Story, Jr. and Ajay Arora, filed a declaration to swear behind certain prior art. In that declaration, the named inventors attested that Amazon paralegals coordinated an inventor review call.  This was done at the request of counsel at Knobbe Martens, who was counsel for both Amazon and Audible.

99.    On October 8, 2012, Audible filed U.S. Patent Application No. 13/647,295 ("the '295 Application"), titled "Managing Content Versions," which ultimately issued as U.S. Patent No. 9,244,678.

100.    During prosecution of the '295 Application, the USPTO issued an Office Action on October 12, 2014, rejecting the claims in the '295 Application pursuant to 35 U.S.C. § 102 based on U.S. Patent No. 8,478,662 to Snodgrass (the "Snodgrass Patent").

101.    The Snodgrass Patent was assigned to Amazon.

102.    In response to the October 12, 2014 Office Action, Audible submitted a Statement Concerning Common Ownership, in which Audible argued that the '295 Application and the Snodgrass Patent were subject to common ownership, both being owned by Amazon, because Audible and Amazon Technologies, Inc. are both wholly owned subsidiaries of Amazon.com, Inc.

103.    On March 22, 2012, Audible filed PCT Application No. PCT/US2012/030186, titled "Synchronizing Digital Content," on which Audible and Amazon are listed as co-applicants.

104.    On August 8, 2012, Audible filed U.S. Patent Application No. 13/570,179 ("the '179 Application"), titled "Synchronizing Recorded Audio Content and Companion Content," which issued as U.S. Patent No. 9,697,871.

105.    During prosecution of the '179 Application, on May 14, 2014, the PTO issued a Final Rejection.  Audible appealed the May 14, 2014 Final Rejection.  On December 29, 2016, the Patent Trial and Appeal Board ruled on the appeal and, in response to submissions by Audible, found that due to their relationship both Audible and Amazon Technologies, Inc. were the real parties in interest in the appeal.

106.    This same finding was made by the PTAB during prosecution of several of Audible's patent applications including U.S. Application No. 13/535,240, which issued as U.S. Patent No. 9,703,781, U.S. Application No. 13/535,264, which issued as U.S. Patent No. 9,734,153, and U.S. Patent Application No. 13/553,548, which issued as U.S. Patent No. 9,760,920.

### *Willfulness*

107.    On information and belief, Defendants have willfully infringed, and continue to willfully infringe, the asserted patents.

108.    Graphically, the prosecution history for Plaintiff's patents is depicted as follow:



109.    The specifications of the Evans '009 Publication and the Evans '991 Publication are substantially similar to one another and overlap the specification of each asserted patent.

110. On information and belief, Amazon and/or Audible, including certain senior executives, knew or should have known about inventor Evans's technology since at least October 2014, when each of the asserted patents issued. It is believed that examination of Defendants' documents and things in discovery will lead to further facts to support this contention.

111. Indeed, Amazon.com, Inc.'s subsidiary, Audible, knew about the publication of, and patent applications relating to, the applications leading to issuance of the asserted patents. This includes the Evans '009 Publication and the Evans '991 Publication (together, the "Evans publications"). Audible's own patent prosecution is replete with examples of the USPTO citing the Evans publications as prior art to Audible's applications. Audible has also cited the Evans publications to the USPTO in numerous Information Disclosure Statements to comply with a duty of candor under 37 C.F.R. 1.56, both before and after the asserted patents issued, putting the USPTO and the public on notice that the Evans publications are prior art to Audible's patent applications.

112. The publication of Mr. Evans's work was material to the patentability of Audible's own patent applications, and Audible and its attorneys knew it.

113. In connection with at least twenty-nine of Audible's own patent applications, an Information Disclosure Statement was submitted listing at least one of the Evans publications as prior art, or there was an Office Action citing an Evans publication to reject Audible's claims, or an Evans publication was discussed with the patent examiner and an interview summary was made of record.

114. Audible has filed its own patent applications related to the technology of the asserted patents. In those patent applications, Audible has represented as a matter of fact that these technical advances to the way mobile computing devices function are not well-understood,

routine, and conventional in the industry and, thus, are patent eligible advancements.  Audible patents have subsequently issued.

115.   On information and belief, Amazon and Audible believe each of the following of Audible's U.S. patents is valid and enforceable, with each and every claim being directed to patent eligible subject matter: 9,799,336; 9,792,027; 9,632,647; 9,489,360; 9,472,113; 9,367,196; 9,317,486; 9,280,906; 9,244,678; 9,223,830; 9,158,765; 9,760,920; 9,734,153; 9,706,247; 9,703,781; 9,697,871; 9,679,608; 9,536,439; 9,317,500; 9,213,705; 9,141,257; 9,099,089; 9,075,760; 9,037,956; 8,972,265; 8,948,892; 8,862,255; 8,855,797, and; 8,849,676. No defendant has taken any steps to inform the USPTO or the public that any claim of these patents is invalid or directed to patent ineligible subject matter.

116.   Of the twenty-nine Audible patent applications citing to or referencing at least one of the Evans publications, Audible listed the following inventors:

- Guy Story (Audible's Founding CTO and Chief Scientist);

- Will Lopes (Chief Revenue Officer, Executive VP);

- Beth Anderson (EVP and Publisher);

- Ajay Arora (VP Global Project Management);

- Mugur F. Tolea (Former VP of Engineering);

- Kevin Lester (Senior Software Development Manager);

- Douglas H. Wang (Senior Product Manager);

- Doug S. Goldstein (Global Head of Mobile Web Products);

- Nathan Brothers (Senior Product Manager, Mobile Applications);

- Steven Hatch (Senior Director, Software Development);

- Ed Walloga (VP Customer Experience);

- Steven C. Dzik (Former software development engineer);

- Bruce Israel;

- Alexander Galkin;

- Kevin Scott Lester (Former Senior software development manager);

- Douglas S. Goldstein;

- Douglas Cho Hwang (Former Senior Product Manager);

- Shirley C. Yang; and

- Gregory I. Voynow.

117.     Amazon and Audible knew of the Evans '009 Publication by at least March 28, 2013, or shortly thereafter, and therefore also knew of the subject matter of the asserted patents. The Evans '009 Publication was cited by the USPTO (in an Office Action dated March 28, 2013) to reject an Audible patent application listing Audible's CTO, Guy Story, as an inventor. Audible received this Office Action.

118.     On information and belief, Audible's CTO, Guy Story reviewed and studied the Evans publication and discussed it with Audible's legal counsel.

119.     On information and belief, in at least one Audible patent application (No. 13/070422), Audible's CTO, Guy Story, and colleague Bruce Israel, engaged in detailed and specific discussions, including with legal counsel, of parent applications to the asserted patents (including the Evans '009 Publication, the Evans '921 Application, and the Evans Provisional Patent Application, filed January 3, 2011), which Story and Israel understood served as the basis upon which the patent examiner rejected certain of Audible's claims under 35 U.S.C. § 103.

120.     Mr. Story and Mr. Israel then signed a declaration for submission to the USPTO that each had studied the content of the application sufficiently to determine he could swear

behind a filing date of January 3, 2011, based on a written disclosure made to Audible's legal department on December 22, 2010.  Nevertheless, Audible continued to cite the Evans publications as prior art in other of its patent applications through 2016.  This makes it plausible that Audible had actual knowledge of the asserted patents, and was citing the Evans publications to the USPTO to comply with a duty of candor, as the Evans publications represented the earliest date that could be relied on by a patent examiner to reject Audible patent claims based on a printed publication.

121.    Only a few weeks earlier than March 28, 2013 (the date the Evans '009 Publication was cited by the USPTO in an Office Action sent to Audible), Mr. Story, spoke at a "Lean Startup Machine Newark" event on or about March 1, 2013.  He explained how he thoroughly documented the development of what became Whispersync for Voice.  Internally, the project was codenamed "Hushpuppy."  For example, before the product could be approved for release, he had to write press releases and make the case for the product feature and why it mattered.  On information and belief, the business teams evaluated who was reading and who was listening, whether people would buy the feature separately, and how much it would cost, among other things.

122.    Mr. Story told attendees about Audible's approach to "innovation" within the Amazon structure.  He stated, "We are in the middle of tremendous change, and we feel very strongly that unless we innovate we are not going to survive, or grow. … Everyone there feels a sense of urgency that we have to figure out the next big thing, because we don't want to be vulnerable." *See e.g.,* http://njtechweekly.com/art/1852-at-lean-newark-audibles-guy-story-talks-product-launches-the-amazon-way/.

123.    On information and belief, Amazon made the business decision as to whether Audible was permitted to develop and release Whispersync for Voice, a utility to "fuse together" an audiobook (as an Audible offering) and an e-book (as an Amazon offering).  Amazon also made the business decision that this product feature could be sold and made available via its e-commerce portal at Amazon.com.

124.    On information and belief, Amazon, including via its subsidiaries, has followed the Evans Provisional Patent Application and related patent applications and resulting patents. For example, in the prosecution of U.S. Patent 9,916,382, assigned to Amazon Technologies, Inc., Amazon and its legal counsel knew about and cited the following, which all stem from the Evans Provisional Patent Application: Evans U.S. Patent 8,904,271; Evans U.S. Patent 9,098,841; the Evans '009 Publication; and the Evans '991 Publication.  It is plausible and probable that Amazon also knew about the asserted patents.  The specifications of the Evans '009 Publication, the Evans '991 Publication, and the patents-in-suit are substantially similar to one another and overlap the specification of Evans U.S. Patent 8,904,271 and Evans U.S. Patent 9,098,841.

125.    Despite knowing of the Evans publications and the asserted patents, Defendants have knowingly included the patented features in their service offerings.  Defendants have never contacted the inventor or Plaintiff seeking a license.

126.    Nevertheless, while Defendants knew certain Evans patent applications were pending, Audible founder and CEO Donald Katz said, "Whispersync for Voice customers continue to marvel at how this innovation has changed their lives. Some customers love the feature so much that they are now only buying books that are Whispersync for Voice-enabled. Whether commuting to work, driving to a soccer game, taking a road trip, exercising or making

dinner, Whispersync for Voice allows people to continue enjoying books even when their eyes are busy, so a great story can continue throughout an active day.  It truly is the future of reading." Beyond that, Amazon has stated, "Whispersync for Voice was *invented by Amazon and Audible* as a way to insert the myriad intellectual and emotional benefits of books into all available moments of a busy life." *See* https://www.webpronews.com/amazon-upgrades-whispersync-for-voice-for-kindle-books-expands-available-titles/ (emphasis added).

127.    Long after Amazon and Audible knew that the Evans publications were prior art to Audible patent applications, and long after Audible was citing the Evans publications to the USPTO (and the USPTO had rejected certain Audible patent applications in light of the Evans publications), Audible's Mr. Katz was still informing the public as of June, 2014, "We're really proud of new inventions like Whispersync for Voice," which he said "basically . . . is creating these power readers who are just racing through books and at a pace and the pleasure factor is unbelievable."  *See e.g.,* https://youtu.be/h4XexOMv9ws and https://www.forbes.com/sites/techonomy/2014/06/26/got-audiobook-audible-ceo-katz-on-the-rewards-of-listening-to-literature/#7fa4f69c70c5.

128.    The asserted patents issued in October 2014.

129.    Audible's own patent prosecution cited or referenced either the Evans '009 Publication or the Evans '991 Publication in each of the years 2013, 2014, 2015, and 2016, since the publication, as opposed to the corresponding issued patent, would be the earliest dated printed-publication-type reference from Mr. Evans that Audible would need to overcome as material prior art.  That is, on information and belief, it is plausible and probable that Audible had actual knowledge of the patents-in-suit, yet continued to cite either the Evans '009

Publication or the Evans '991 Publication to comply with the duty of candor—as those publications were dated earlier than the issue date of the patents-in-suit.

130.    The risk of infringement was either known or was so obvious that it should have been known, since the issued patents stem from the Evans Provisional Patent Application and related continuations (from which the Evans publications also originated).  This application continuity data is publicly-available on Public PAIR, accessible at www.uspto.gov, and, on information and belief, was either accessed, or should have been accessed, by Defendants and/or their legal counsel.

131.    By October, 2014, a reasonable and prudent business, having cited an inventor's work to the USPTO over twenty-five times as material prior art, would have considered it unreasonably risky to continue use of an infringing Whispersync for Voice product feature, among others (such as X-Ray Lyrics), particularly when the Whispersync for Voice feature was considered by Audible to be one of its four major corporate milestones and important to its core business.

132.    On information and belief, since Audible was jointly offering a symbiotic, co-functioning e-book/audiobook product, including through Amazon.com, and since Amazon exercised substantial control over Audible and the product features Audible intended to and did launch, Audible apprised, or should have apprised, Amazon of the Evans publications and patents; thus, each Defendant knew, or should have known, of the risk of patent infringement.

133.    On information and belief, Amazon and/or Audible had so completely relied upon the "Whispersync for Voice" feature as a "*key strategic differentiator*" to help create its overwhelming market share that it made the unreasonably risky business decision to keep the

feature, even though they knew, or should have known, about inventor Evans's technology since at least October 2014.

134. At Amazon, however, "Once a decision is determined, they commit wholly." *See* Amazon Leadership Principles, at https://www.amazon.jobs/principles.  According to Mr. Bezos, "At Amazon, we like things to work in five to seven years.  We're willing to plant seeds, let them grow – and we're very stubborn." *See e.g.,* https://www.wired.com/2011/11/ff_bezos/. Therefore, Amazon had no intent to discontinue at least the Whispersync for Voice feature for five to seven years after it launched the product feature in 2012, meaning it would continue selling co-functioning audiobooks and e-books long after the asserted patents issued in October 2014.

135. On information and belief, Amazon believes it is guided by four principles: customer obsession rather than competitor focus, passion for invention, commitment to operational excellence, and long-term thinking.

136. On information and belief, Amazon believes its customers demand new features "every day, every week, and every year."  To satiate Amazon's perceived customer demand, and to earn profit for itself with a "key strategic differentiator," Amazon has incorporated the patented features into its products and services with reckless disregard to the exclusive rights held by Plaintiff.  This tactic matches Amazon's stated core principle of obsessing on what the customer wants rather than focusing on any competitor.

137. Amazon has "Leadership Principles" it expects its executives to follow. Amazon's published "Leadership Principles" states that they expect their leaders to "*look for new ideas from everywhere, and are not limited by 'not invented here.'*  As we do new things, we

accept that we may be misunderstood for long periods of time." *See* Amazon Leadership

Principles, at https://www.amazon.jobs/principles (emphasis added).

138.    Even when those ideas are contained in patents of others, however, Defendants

knowingly continue their actions unabated.  This is willful, purposeful activity, enshrined in the

culture of Amazon and the decision-making processes it expects from its leaders.

139.    Being "not limited by 'not invented here'" ought to mean that Amazon carefully

screens and employs the best ideas and, if patented by others, it takes a license or acquires the

patents.  Instead, on information and belief, Defendants employ no specific policy for seeking

and obtaining license rights from patent holders and otherwise employ a corporate policy of

ignoring the risk of patent infringement.

140.    Defendants did not contact Mr. Evans in an attempt to license his technology.

Rather, Defendants instead made a conscious decision, with knowledge of the patents-in-suit, to

use the technology anyway, advertising that it is a "*key strategic differentiator*" exclusive to

Amazon as an *Amazon* invention.  This constitutes egregious conduct and willful patent

infringement.

141.    In sum, on information and belief, Defendants employ a corporate strategy of

ignoring the risk of patent infringement and willful infringement.  In the totality of

circumstances, Defendants' conduct is both egregious and willful, constituting willful patent

infringement.

142.    The alleged facts, in addition to those likely to be obtained through discovery,

show that Defendants: (1) knew of the patents-in-suit; (2) after acquiring that knowledge,

continued to infringe the patents-in-suit; and (3) in doing so, knew, or should have known, that

their conduct amounted to infringement.

143.    The asserted patents do not expire until January 2031.

## COUNT I
## (DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,856,638)
### Amazon

144.    Plaintiff incorporates paragraphs 1 through 143 herein by reference.

145.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

146.    Plaintiff is the owner of the '638 patent with all substantial rights to the '638 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

147.    The '638 patent is valid, enforceable and was duly issued in fully compliance with Title 35 of the United States Code.

148.    Amazon has, and continues to, directly infringe one or more claims of the '638 patent in this judicial district and elsewhere in Delaware and the United States.

149.    In particular, Amazon has, and continues to, infringe at least claims 1 through 20 of the '638 patent ("the '638 Asserted Claims") by practicing the claimed methods via its actions in conjunction with its software and applications supporting X-Ray Lyrics and/or X-Ray Music functionality, including but not limited to its "Amazon Music" software application ("the Amazon Music Accused Practices") and its Amazon Kindle software and applications supporting features referred to by Amazon as "Whispersync for Voice," "Kindle Books with Audible Narration," and/or "Immersion Reading" ("the Amazon Kindle Accused Practices").

150.    Amazon is liable for these infringements of the '638 patent pursuant to 35 U.S.C. § 271.

**'638 Patent, Claim 1**

151.    Claim 1 of the '638 patent claims:

1. A method for a multimedia seek sequence using a synchronization index and a mobile computing device comprising the steps:

providing, to a mobile computing device, information for displaying on the mobile computing device text from a synchronization index, wherein said synchronization index comprises an electronic transcript that indicates text corresponding to audio from the multimedia and respective times within multimedia corresponding to when a word or range of words is audible in the multimedia;

wherein said mobile computing device comprises a viewing screen and a touch-sensitive input interface;

displaying, after said providing step, at least a portion of said text from a synchronization index on said viewing screen, wherein said text is displayed other than as a web page;

receiving, from the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a displayed word, or a range of words, from said synchronization index, wherein said gesture is recognized by said touch-sensitive input interface on the mobile computing device;

performing a timecode lookup, using the synchronization index, and in response to the gesture performed to select a word or range of words, said timecode lookup functioning to associate a time, t1, within multimedia to the selected word or range of words; and

delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device to play said multimedia, wherein said multimedia corresponds to the word or range of words selected by the gesture.

152.    The preamble of claim 1 is not limiting.  However, to the extent the preamble of claim 1 is found to be limiting, as described below, Amazon has, and continues to, practice a method for a multimedia seek sequence using a synchronization index and a mobile computing device.

153.    Amazon provides, to a mobile computing device, information for displaying on the mobile computing device text from a synchronization index, wherein the synchronization index comprises an electronic transcript that indicates text corresponding to audio from the

multimedia and respective times within multimedia corresponding to when a word or range of words is audible in the multimedia.

154.    The mobile computing device includes a viewing screen and touch sensitive input interface.

155.    Amazon displays, after the providing step, at least a portion of the text from a synchronization index on the viewing screen, wherein the text is displayed other than as a web page.

156.    Amazon receives, from the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a displayed word, or a range of words, from the synchronization index, wherein the gesture is recognized by the touch-sensitive input interface on the mobile computing device.

157.    Amazon delivers multimedia beginning at time t1, or provides instructions for the delivery of multimedia beginning at time t1, to a receiving device to play the multimedia, wherein the multimedia corresponds to the word or range of words selected by the gesture.

158.    Amazon performs a timecode lookup, using the synchronization index, and in response to the gesture performed to select a word or range of words, the timecode lookup functioning to associate a time, t1, within multimedia to the selected word or range of words.

**'638 Patent, Claim 2**

159.    Claim 2 of the '638 patent claims:

2. The method of claim 1, further comprising seeking on said mobile computing device a multimedia file corresponding to said synchronization index, and if found, accessing multimedia at time t1.

160.    Amazon seeks, on the mobile computing device, a multimedia file corresponding to the synchronization index, and if found, accesses the multimedia at time t1.

### '638 Patent, Claim 3

161.    Claim 3 of the '638 patent claims:

3. The method of claim 1, wherein the receiving device is said mobile computing device, wherein delivered multimedia is able to be played with at least a portion of said text from a synchronization index on said viewing screen.

162.    In Amazon's practicing of the method of claim 1, the receiving device is the mobile computing device and delivered multimedia is able to be played with at least a portion of the text from a synchronization index on the viewing screen.

### '638 Patent, Claim 4

163.    Claim 4 of the '638 patent claims:

4. The method of claim 1, wherein the receiving device is other than said mobile computing device and configured to receive multimedia input from a source selected from the group comprising satellite receiver, internet connection, WiFi, computer network, cable television system, fiber optic cable delivery network for data, cellular communication channel, bluetooth, UPnP, and local wireless connection.

164.    In Amazon's practicing of the method of claim 1, the receiving device is other than the mobile computing device and configured to receive multimedia input from a source selected from the group including satellite receiver, internet connection, WiFi, computer network, cable television system, fiber optic cable delivery network for data, cellular communication channel, Bluetooth, UPnP, and local wireless connection.

### '638 Patent, Claim 5

165.    Claim 5 of the '638 patent claims:

5. The method of claim 1, wherein the receiving device is selected from the group comprising a television, a computer monitor, an LCD display, a plasma display, an LED display, a multimedia projector, an in-vehicle entertainment system, a home entertainment system, a computer with monitor, a hardware appliance for receiving cable

television or satellite television services, a gaming device with facility for receiving multimedia data, a streaming media player, a home theater appliance with facility to receive multimedia communication, a second mobile computing device, a digital video recorder, and a personal media player.

166.    In Amazon's practicing of the method of claim 1, the receiving device is selected from the group comprising a television, a computer monitor, an LCD display, a plasma display, an LED display, a multimedia projector, an in-vehicle entertainment system, a home entertainment system, a computer with monitor, a hardware appliance for receiving cable television or satellite television services, a gaming device with facility for receiving multimedia data, a streaming media player, a home theater appliance with facility to receive multimedia communication, a second mobile computing device, a digital video recorder, and a personal media player.

### '638 Patent, Claim 6

167.    Claim 6 of the '638 patent claims:

6. The method of claim 3, further comprising caching within said mobile computing device at least a portion of the audio from said multimedia.

168.    On information and belief, Amazon caches within the mobile computing device at least a portion of the audio from the multimedia.

### '638 Patent, Claim 7

169.    Claim 7 of the '638 patent claims:

7. The method of claim 1, wherein multimedia is delivered at t1 and cached thereafter to memory accessible to said receiving device to facilitate subsequent seek operations.

170.    On information and belief, in Amazon's practicing of the method of claim 1, multimedia is delivered at t1 and cached thereafter to memory accessible to the receiving device to facilitate subsequent seek operations.

### '638 Patent, Claim 8

171.    Claim 8 of the '638 patent claims:

8. The method of claim 1, wherein the mobile computing device comprises an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

172.    In Amazon's practicing of the method of claim 1, the mobile computing device includes an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

### '638 Patent, Claim 9

173.    Claim 9 of the '638 patent claims:

9. A method for a multimedia seek sequence using a synchronization index and a mobile computing device comprising the steps:
>    displaying on a mobile computing device text from a synchronization index, wherein said synchronization index comprises respective times within multimedia corresponding to a word or range of words and wherein said text is displayed other than as a web page;
>    wherein said mobile computing device comprises a viewing screen and a touch-sensitive input interface;
>    receiving information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a word, or range of words, from said synchronization index, wherein said gesture is recognized by said touch-sensitive input interface;
>    performing a data lookup using said synchronization index, wherein said synchronization index is referenced to provide data for a time location t1 that corresponds to said word or range of words selected by the recognized gesture; and
>    seeking on said mobile computing device multimedia corresponding to said synchronization index, and if found, accessing multimedia at t1.

174.    The preamble of claim 9 is not limiting.  However, to the extent the preamble of claim 9 is found to be limiting, as described *infra*, Amazon has, and continues to, practice a method for a multimedia seek sequence using a synchronization index and a mobile computing device.

175.    Amazon displays on a mobile computing device text from a synchronization index, wherein the synchronization index includes respective times within multimedia corresponding to a word or range of words and wherein the text is displayed other than as a web page.

176.    The mobile computing device includes a viewing screen and touch-sensitive input interface.

177.    Amazon receives information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of the viewing screen corresponding to a word, or range of words, from the synchronization index, wherein the gesture is recognized by the touch-sensitive input interface.

178.    Amazon performs a data lookup using the synchronization index, wherein the synchronization index is referenced to provide data for a time location t1 that corresponds to the word or range of words selected by the recognized gesture.

179.    Amazon seeks on the mobile computing device multimedia corresponding to the synchronization index, and if found, accesses the multimedia at t1.

### '638 Patent, Claim 10

180.    Claim 10 of the '638 patent claims:

10. The method of claim 9, further comprising:
requesting from a second computing device delivery of multimedia beginning at time t1;
delivering multimedia beginning at time t1, or providing instructions for the delivery of
    multimedia beginning at time t1, to a receiving device, wherein said multimedia
    comprises at least an audio element; and
caching within said mobile computing device at least a portion of said audio element.

181.    Amazon requests from a second computing device delivery of multimedia beginning at time t1.

182.     Amazon delivers multimedia beginning at time t1, or provides instructions for the delivery of multimedia beginning at time t1, to a receiving device, wherein the multimedia includes at least an audio element.

183.     On information and belief, Amazon caches within the mobile computing device at least a portion of the audio element.

### '638 Patent, Claim 11

184.     Claim 11 of the '638 patent claims:

11. The method of claim 9, further comprising:
requesting from a second computing device delivery of multimedia beginning at time t1;
delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device; and
caching within said mobile computing device said multimedia or a portion thereof.

185.     Amazon requests from a second computing device delivery of multimedia beginning at time t1.

186.     Amazon delivers multimedia beginning at time t1, or provides instructions for the delivery of multimedia beginning at time t1, to a receiving device.

187.     On information and belief, Amazon caches within the mobile computing device the multimedia or a portion thereof.

### '638 Patent, Claim 12

188.     Claim 12 of the '638 patent claims:

12. The method of claim 9, further comprising:
requesting from a second computing device delivery of multimedia beginning at time t1;
delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device, wherein said receiving device is other than said mobile computing device; and
caching, within said receiving device, or memory accessible thereto, said multimedia or a portion thereof.

189.    Amazon requests from a second computing device delivery of multimedia beginning at time t1.

190.    Amazon delivers multimedia beginning at time t1, or provides instructions for the delivery of multimedia beginning at time t1, to a receiving device, wherein the receiving device is other than the mobile computing device.

191.    On information and belief, Amazon caches within the receiving device, or memory accessible thereto, the multimedia or a portion thereof.

**'638 Patent, Claim 13**

192.    Claim 13 of the '638 patent claims:

13. The method of claim 9, wherein the mobile computing device comprises an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

193.    In Amazon's practicing of the method of claim 14, the mobile computing device includes an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

**'638 Patent, Claim 14**

194.    Claim 14 of the '638 patent claims:

14. A method for a multimedia seek sequence using a synchronization index and a mobile computing device, said method comprising the steps:
    providing a mobile computing device comprising a viewing screen and a touch-sensitive input interface;
    providing a synchronization index that comprises an electronic transcript that indicates text corresponding to audio from the multimedia and indicates respective times within multimedia corresponding to when a word or range of words is audible in the multimedia;
    providing a receiving device;
    displaying on said mobile computing device text from the synchronization index, wherein said text is displayed other than as a web page;
    receiving, by the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a

portion of said viewing screen corresponding to a word, or range of words, from said synchronization index;

wherein said gesture is recognized by said touch-sensitive input interface;

performing a timecode lookup using the synchronization index, wherein said synchronization index is referenced to provide data for a time location t1 that corresponds to said word or range of words;

seeking on said receiving device multimedia corresponding to said synchronization index, and, if found, accessing multimedia at t1.

195.    The preamble of claim 14 is not limiting.  However, to the extent the preamble of claim 14 is found to be limiting, as described *infra*, Amazon has, and continues to, practice a method for a multimedia seek sequence using a synchronization index and a mobile computing device.

196.    Amazon provides a mobile computing device that includes a viewing screen and a touch-sensitive input interface.

197.    Amazon provides a synchronization index that includes an electronic transcript that indicates text corresponding to audio from the multimedia and indicates respective times within multimedia corresponding to when a word or range of words is audible in the multimedia.

198.    Amazon provides a receiving device.

199.    Amazon displays on the mobile computing device text from the synchronization index, wherein the text is displayed other than as a web page.

200.    Amazon receives by the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of the viewing screen corresponding to a word, or range of words, from the synchronization index.

201.    In Amazon's practicing of the method of claim 14, the gesture is recognized by the touch-sensitive input interface.

202.    Amazon performs a timecode lookup using the synchronization index, wherein the synchronization index is referenced to provide data for a time location t1 that corresponds to the word or range of words.

203.    Amazon seeks on the receiving device multimedia corresponding to the synchronization index and, if found, accesses the multimedia at t1.

**'638 Patent, Claim 15**

204.    Claim 15 of the '638 patent claims:

15. The method of claim 14, further comprising:
providing a second computing device;
requesting from a second computing device delivery of multimedia beginning at time t1;
delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device, wherein said multimedia comprises at least an audio element; and
caching within said receiving device, or memory accessible thereto, at least a portion of said audio element.

205.    Amazon provides a second computing device.

206.    Amazon requests from a second computing device delivery of multimedia beginning at time t1.

207.    Amazon delivers multimedia beginning at time t1, or provides instructions for the delivery of multimedia beginning at time t1, to a receiving device, wherein the multimedia includes at least an audio element.

208.    On information and belief, Amazon caches within the receiving device, or memory accessible thereto, at least a portion of the audio element.

**'638 Patent, Claim 16**

209.    Claim 16 of the '638 patent claims:

16. The method of claim 14, further comprising:
providing a second computing device;
requesting from a second computing device delivery of multimedia beginning at time t1;

delivering multimedia beginning at time t1, or providing instructions for the delivery of
multimedia beginning at time t1, to a receiving device; and

caching, within said receiving device, or memory accessible thereto, said multimedia or a
portion thereof.

210.    Amazon provides a second computing device.

211.    Amazon requests from a second computing device delivery of multimedia

beginning at time t1.

212.    Amazon delivers multimedia beginning at time t1, or provides instructions for the

delivery of multimedia beginning at time t1, to a receiving device.

213.    On information and belief, Amazon caches within the receiving device, or

memory accessible thereto, the multimedia or a portion thereof.

**'638 Patent, Claim 17**

214.    Claim 17 of the '638 patent claims:

17. The method of claim 14, wherein the receiving device is said mobile computing
device.

215.    In Amazon's practicing of the method of claim 14, the receiving device is the

mobile computing device.

**'638 Patent, Claim 18**

216.    Claim 18 of the '638 patent claims:

18. The method of claim 14, wherein the receiving device is other than said mobile
computing device and is configured to receive multimedia input from a source selected
from the group comprising satellite receiver, internet connection, WiFi, computer
network, cable television system, fiber optic cable delivery network for data, cellular
communication channel, bluetooth, UPnP, and local wireless connection.

217.    In Amazon's practicing of the method of claim 14, the receiving device is other

than said mobile computing device and is configured to receive multimedia input from a source

selected from the group comprising satellite receiver, internet connection, WiFi, computer

network, cable television system, fiber optic cable delivery network for data, cellular

communication channel, bluetooth, UPnP, and local wireless connection.

### '638 Patent, Claim 19

218.    Claim 19 of the '638 patent claims:

19. The method of claim 14, wherein the receiving device is selected from the group comprising a television, a computer monitor, an LCD display, an LED display, a plasma display, a multimedia projector, an in-vehicle entertainment system, a home entertainment system, a computer with monitor, a hardware appliance for receiving cable television or satellite television services, a gaming device with facility for receiving multimedia data, a streaming media player, a home theater appliance with facility to receive multimedia communication, a second mobile computing device, a digital video recorder, and a personal media player.

219.    In Amazon's practicing of the method of claim 14, the receiving device is selected

from the group comprising a television, a computer monitor, an LCD display, an LED display, a

plasma display, a multimedia projector, an in-vehicle entertainment system, a home

entertainment system, a computer with monitor, a hardware appliance for receiving cable

television or satellite television services, a gaming device with facility for receiving multimedia

data, a streaming media player, a home theater appliance with facility to receive multimedia

communication, a second mobile computing device, a digital video recorder, and a personal

media player.

### '638 Patent, Claim 20

220.    Claim 20 of the '638 patent claims:

20. The method of claim 14, wherein the mobile computing device comprises an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

221.    In Amazon's practicing of the method of claim 14, the mobile computing device

includes an operating system selected from the group comprising iOS, Android, Windows

Phone, BlackBerry OS, and Linux.

222. In addition to the specific factual allegations set forth above, attached hereto as Exhibits 4 and 5 is additional evidence pertaining to Defendants' infringements of the '638 patent, which supports the factual allegations set forth above and is incorporated herein by reference. These Exhibits comprise, generally, sample screenshots of the Amazon and Audible app interfaces, Amazon and Audible websites and marketing, and user instructions.

223. Plaintiff has been damaged as a result of Amazon's infringing conduct described in this Count. Amazon is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Amazon's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,856,638)
### Joint Infringement – Amazon and Audible

224. Plaintiff incorporates paragraphs 1 to 223 herein by reference.

225. As detailed in Count I, Amazon has, and continues to, engage in the Amazon Kindle Accused Practices, thereby infringing the '638 Asserted Claims. However, to the extent Amazon does not practice one or more steps in the '638 Asserted Claims, such steps are practiced by Audible under the direction and/or control of Amazon. In the alternative, Amazon and Audible are engaged in a joint enterprise with respect to the Amazon Kindle Accused Practices.

226. Audible is a wholly owned subsidiary of Amazon.

227. Audile identifies itself as "an Amazon company."

228. Amazon Prime members have access to Audible content by virtue of the membership.

229.     Amazon offers, via its website www.amazon.com, an entire Audible store that includes content, the ability to sign up for Audible, information about Audible, help directories and tutorials regarding the Audible applications, the ability to adjust a user's Audible settings,  as well as additional information, content, and functionality regarding Audible.

230.     Amazon offers, via its website www.amazon.com, detailed information, help, library management, account management, and other features and tools for Audible Audiobooks.

231.     Amazon offers, via its website www.amazon.com, the ability to add Audible Narration to books a person owns.

232.     On information and belief, to the extent Audible provides content to Amazon and/or Amazon users, it does so under Amazon's direction and/or control.

233.     On information and belief, to the extent Audible provides content to Amazon and/or Amazon users, it is contractually obligated to Amazon to provide such content.

234.     On information and belief, to the extent Audible performs any of the steps in the '638 Asserted Claims, it does so under the direction and/or control of Amazon.

235.     On information and belief, to the extent Audible performs any of the steps in the '638 Asserted Claims, it is contractually obligated to do so.

236.     On information and belief, to the extent Audible performs any of the steps in the '638 Asserted Claims, Amazon conditions Audible's role as an Amazon company or receipt of some other benefit on Audible's performance of such step(s) and Amazon establishes the manner or timing of that performance.

237.     On information and belief, Amazon and Audible are engaged in joint enterprise.

238.     On information and belief, there is an express or implied agreement between Amazon and Audible, at least in relation to the Amazon Kindle Accused Practices.

239.     On information and belief, Amazon and Audible share a common purpose at least with respect to the Amazon Kindle Accused Practices.  For example, Amazon and Audible share a common purpose of making the features, applications, and functionality related to the Amazon Kindle Accused Practices available, as well as ensuring that end users of such features, applications, and functionality know how to use them, enjoy using them, and continue using them.

240.     On information and belief, Amazon and Audible have a shared pecuniary interest in their common purpose.

241.     For example, on information and belief, Amazon and Audible both receive money and derive revenue from the Amazon Kindle Accused Practices.

242.     On information and belief, and in the alternative to Plaintiff's allegations of direction and/or control, Amazon and Audible have an equal right to a voice in the direction of their joint enterprise related to the Amazon Kindle Accused Practices, which gives each an equal right of control.

243.     Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (INDIRECT INFRINGEMENT OF U.S. PATENT NO. 8,856,638)
### Audible

244.     Plaintiff incorporates paragraphs 1 to 243 herein by reference.

245.     Based on the information presently available to Plaintiff, absent discovery, and in the alternative to direct infringement, Plaintiff contends that Audible has, and continues to,

indirectly infringe one or more claims of the '638 patent by inducing direct infringement by Amazon.

246.     Audible has had knowledge of the '638 patent since at least early 2013.  In the alternative, Audible has had knowledge of the '638 patent since at least as early as service of the original complaint in this matter.  On information and belief, despite having knowledge of the '638 patent, Audible has specifically intended for Amazon to continue to engage in the Amazon Kindle Accused Practices, thereby infringing the '638 Asserted Claims, and Audible knew or should have known that its actions were inducing infringement.

247.     Audible encourages Amazon to engage in the Amazon Kindle Accused Practices. For example, Audible promotes use of Whispersync for Voice, Audible Narration, and Immersion Reading (*i.e.,* the features underlying the Amazon Kindle Accused Practices).  *See* Exhibit 5; *see also* www.audible.com.

248.     Audible also offers help and customer service / support for Whispersync for Voice, Audible Narration, and Immersion Reading (*i.e.,* the features underlying the Amazon Kindle Accused Practices).

249.     In accordance with Fed. R. Civ. P. 11(b)(3), Plaintiff will likely have additional evidentiary support after a reasonable opportunity for discovery on this issue.

250.     Plaintiff has been damaged as a result of Audible's infringing conduct described in this Count.  Audible is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Audible's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV
## (DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,862,978)
### Amazon

251.     Plaintiff incorporates paragraphs 1 through 143 herein by reference.

252.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

253.     Plaintiff is the owner of the '978 patent, entitled "Methods and Systems for Facilitating an Online Social Network," with all substantial rights to the '978 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

254.     The '978 patent is valid, enforceable and was duly issued in fully compliance with Title 35 of the United States Code.

255.     Amazon has, and continues to, directly infringe one or more claims of the '978 patent in this judicial district and elsewhere in Delaware and the United States.

256.     In particular, Amazon has, and continues to, infringe at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 of the '978 patent ("the '978 Asserted Claims") by practicing the claimed methods via the Amazon Kindle Accused Practices.

257.     Defendant is liable for these infringements of the '978 patent pursuant to 35 U.S.C. § 271.

### '978 Patent, Claim 1

258.     Claim 1 of the '978 patent claims:

1. A method for social networking with a mobile computing device comprising: providing for use on a mobile computing device a synchronization index, wherein said synchronization index is associated to multimedia, wherein the synchronization index comprises an electronic transcript that indicates text corresponding to audio from the multimedia, and wherein the synchronization index indicates respective times within the multimedia corresponding to when a word or range of words is audible in the multimedia;

providing mobile computing device software, wherein said mobile computing device software comprises executable program code configured to receive the synchronization index, and wherein said text is able to be displayed other than as a web page,

wherein said mobile computing device comprises a viewing screen and a touch-sensitive input interface,

wherein said viewing screen is able to display multimedia and text from said synchronization index,

wherein performing a user's selected gesture on a portion of said viewing screen corresponding to a portion of said text is recognized by said touch-sensitive input interface to facilitate annotation of a portion of said synchronization index, and

wherein said mobile computing device software comprises executable program code configured to facilitate annotation of a portion of said synchronization index responsive to user input received by the mobile computing device; and

communicating said annotation for subsequent retrieval on a second computing device via a network.

259.    Amazon provides for use on a mobile computing device a synchronization index, wherein the synchronization index is associated to multimedia, wherein the synchronization index includes an electronic transcript that indicates text corresponding to audio from the multimedia, and wherein the synchronization index indicates respective times within the multimedia corresponding to when a word or range of words is audible in the multimedia.

260.    Amazon provides mobile computing device software, wherein the mobile computing device software includes executable program code configured to receive the synchronization index, and wherein the text is able to be displayed other than as a web page.

261.    In Amazon's practicing of the method of claim 1, the mobile computing device includes a viewing screen and a touch-sensitive input interface.

262.    In Amazon's practicing of the method of claim 1, the viewing screen is able to display multimedia and text from the synchronization index.

263.    In Amazon's practicing of the method of claim 1, performing a user's selected gesture on a portion of the viewing screen corresponding to a portion of the text is recognized by

the touch-sensitive input interface to facilitate annotation of a portion of the synchronization index.

264.     In Amazon's practicing of the method of claim 1, the mobile computing device software includes executable program code configured to facilitate annotation of a portion of the synchronization index responsive to user input received by the mobile computing device.

265.     Amazon communicates the annotation for subsequent retrieval on a second computing device via a network.

### '978 Patent, Claim 2

266.     Claim 2 of the '978 patent claims:

> 2. The method of claim 1, wherein said mobile computing device software comprises executable program code configured to synchronously play said associated multimedia with said synchronization index other than as part of a web page.

267.     In Amazon's practicing of the method of claim 1, the mobile computing device software comprises executable program code configured to synchronously play said associated multimedia with said synchronization index other than as part of a web page.

### '978 Patent, Claim 3

268.     Claim 3 of the '978 patent claims:

> 3. The method of claim 1, wherein said annotation is a link to a portion of said multimedia.

269.     In Amazon's practicing of the method of claim 1, the annotation is a link to a portion of the multimedia.

### '978 Patent, Claim 4

270.     Claim 4 of the '978 patent claims:

> 4. The method of claim 1, wherein said annotation is text, said text being associated to a portion of said multimedia.

271.     In Amazon's practicing of the method of claim 1, the annotation is text, the text being associated to a portion of the multimedia.

### '978 Patent, Claim 5

272.     Claim 5 of the '978 patent claims:

> 5. The method of claim 1, wherein said annotation is text, said text being associated to a portion of said multimedia, and
> > wherein said text is able to be displayed when playback of said portion of said multimedia occurs.

273.     In Amazon's practicing of the method of claim 1, the annotation is text that is associated to a portion of the multimedia and the text is able to be displayed when playback of the portion of the multimedia occurs.

### '978 Patent, Claim 6

274.     Claim 6 of the '978 patent claims:

> 6. The method of claim 1, wherein said annotation is associated to a portion of said multimedia, and
> > wherein said annotation is selected from the group comprising a threaded text discussion, a selected range of text from said synchronization index to which a highlighting color or font characteristic is applied, an audio file, a multimedia file, a picture, a photograph, a graphic, a drawn annotation, a brand element, an alteration to the text of said synchronization index, a hyperlink, and a hyperlink to predetermined portion of multimedia.

275.     In Amazon's practicing of the method of claim 1, the annotation is associated to a portion of the multimedia.

276.     In Amazon's practicing of the method of claim 1, the annotation is selected from the group including a threaded text discussion, a selected range of text from the synchronization index to which a highlighting color or font characteristic is applied, an audio file, a multimedia file, a picture, a photograph, a graphic, a drawn annotation, a brand element, an alteration to the

text of the synchronization index, a hyperlink, and a hyperlink to predetermined portion of multimedia.

### '978 Patent, Claim 7

277.     Claim 7 of the '978 patent claims:

> 7. The method of claim 1, wherein said annotation is associated to a portion of said multimedia;
>> wherein said annotation is selected from the group comprising a threaded text discussion, a selected range of text from said synchronization index to which a highlighting color or font characteristic is applied, an audio file, a multimedia file, a picture, a photograph, a graphic, a drawn annotation, a brand element, an alteration to the text of said synchronization index, a hyperlink, and a hyperlink to predetermined portion of multimedia; and
>> wherein said second computing device selectively receives annotations as part of a social network.

278.     In Amazon's practicing of the method of claim 1, the annotation is associated to a portion of the multimedia.

279.     In Amazon's practicing of the method of claim 1, the annotation is selected from the group including a threaded text discussion, a selected range of text from the synchronization index to which a highlighting color or font characteristic is applied, an audio file, a multimedia file, a picture, a photograph, a graphic, a drawn annotation, a brand element, an alteration to the text of the synchronization index, a hyperlink, and a hyperlink to predetermined portion of multimedia.

280.     In Amazon's practicing of the method of claim 1, the second computing device selectively receives annotations as part of a social network.

### '978 Patent, Claim 8

281.     Claim 8 of the '978 patent claims:

> 8. The method of claim 1, wherein said second computing device comprises computer hardware and software to operate a social networking service, wherein a user of said service is provided facility to share annotations.

282.     In Amazon's practicing of the method of claim 1, the second computing device includes computer hardware and software to operate a social networking service, wherein a user of the service is provided facility to share annotations.

### '978 Patent, Claim 9

283.     Claim 9 of the '978 patent claims:

> 9. The method of claim 1, wherein said second computing device comprises a second mobile computing device.

284.     In Amazon's practicing of the method of claim 1, the second computing device includes a second mobile computing device.

### '978 Patent, Claim 10

285.     Claim 10 of the '978 patent claims:

> 10. The method of claim 1, wherein said mobile computing device runs an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

286.     In Amazon's practicing of the method of claim 1, the mobile computing device runs an operating system selected from the group comprising iOS, Android, Windows Phone, BlackBerry OS, and Linux.

287.     In addition to the specific factual allegations set forth above, attached hereto as Exhibit 5 is additional evidence pertaining to Defendants' infringements of the '978 patent, which supports the factual allegations set forth above and is incorporated herein by reference

288.     Plaintiff has been damaged as a result of Amazon's infringing conduct described in this Count.  Amazon is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Amazon's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V**
**(DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,862,978)**
**Joint Infringement – Amazon and Audible**

289.    Plaintiff incorporates paragraphs 1 to 143 and 251 to 288 herein by reference.

290.    As detailed in Count IV, Amazon has, and continues to, engage in the Amazon Kindle Accused Practices, thereby infringing the '978 Asserted Claims.  However, to the extent Amazon does not practice one or more steps in the '978 Asserted Claims, such steps are practiced by Audible under the direction and/or control of Amazon.  In the alternative, Amazon and Audible are engaged in a joint enterprise with respect to the Amazon Kindle Accused Practices.

291.    Audible is a wholly owned subsidiary of Amazon.

292.    Audile identifies itself as "an Amazon company."

293.    Amazon Prime members have access to Audible content by virtue of the membership.

294.    Amazon offers, via its website www.amazon.com, an entire Audible store that includes content, the ability to sign up for Audible, information about Audible, help directories and tutorials regarding the Audible applications, the ability to adjust a user's Audible settings,  as well as additional information, content, and functionality regarding Audible.

295.    Amazon offers, via its website www.amazon.com, detailed information, help, library management, account management, and other features and tools for Audible Audiobooks.

296.    Amazon offers, via its website www.amazon.com, the ability to add Audible Narration to books a person owns.

297.    On information and belief, to the extent Audible provides content to Amazon and/or Amazon users, it does so under Amazon's direction and/or control.

298.    On information and belief, to the extent Audible provides content to Amazon and/or Amazon users, it is contractually obligated to Amazon to provide such content.

299.    On information and belief, to the extent Audible performs any of the steps in the '638 Asserted Claims, it does so under the direction and/or control of Amazon.

300.    On information and belief, to the extent Audible performs any of the steps in the '638 Asserted Claims, it is contractually obligated to do so.

301.    On information and belief, to the extent Audible performs any of the steps in the '638 Asserted Claims, Amazon conditions Audible's role as an Amazon company or receipt of some other benefit on Audible's performance of such step(s) and Amazon establishes the manner or timing of that performance.

302.    On information and belief, Amazon and Audile are engaged in joint enterprise.

303.    On information and belief, there is an express or implied agreement between Amazon and Audible, at least in relation to the Amazon Kindle Accused Practices.

304.    On information and belief, Amazon and Audible share a common purpose at least with respect to the Amazon Kindle Accused Practices.  For example, Amazon and Audible share a common purpose of making the features, applications, and functionality related to the Amazon Kindle Accused Practices available, as well as ensuring that end users of such features, applications, and functionality know how to use them, enjoy using them, and continue using them.

305.    On information and belief, Amazon and Audible have a shared pecuniary interest in their common purpose.

306.    For example, on information and belief, Amazon and Audible both receive money and derive revenue from the Amazon Kindle Accused Practices.

307.    On information and belief, and in the alternative to Plaintiff's allegations of direction and/or control, Amazon and Audible have an equal right to a voice in the direction of their joint enterprise related to the Amazon Kindle Accused Practices, which gives each an equal right of control.

308.    Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count.  Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI**
**(INDIRECT INFRINGEMENT OF U.S. PATENT NO. 8,862,978)**
**Audible**

309.    Plaintiff incorporates paragraphs 1 to 143 and 251 to 308 herein by reference.

310.    Based on the information presently available to Plaintiff, absent discovery, and in the alternative to direct infringement, Plaintiff contends that Audible has, and continues to, indirectly infringe one or more claims of the '978 patent by inducing direct infringement by Amazon.

311.    Audible has had knowledge of the '978 patent since at least early 2013.  In the alternative, Audible has had knowledge of the '978 patent since at least as early as service of the original complaint in this matter.  On information and belief, despite having knowledge of the '978 patent, Audible has specifically intended for Amazon to continue engaging in the Amazon Kindle Accused Practices, thereby infringing the '978 Asserted Claims, and Audible knew or should have known that its actions were inducing infringement.

312.    Audible encourages Amazon to engage in the Amazon Kindle Accused Practices. For example, Audible promotes use of Whispersync for Voice, Audible Narration, and

Immersion Reading (*i.e.,* the features underlying the Amazon Kindle Accused Practices). *See* Exhibit 5; *see also* www.audible.com.

313.    Audible also offers help and customer service / support for Whispersync for Voice, Audible Narration, and Immersion Reading (*i.e.,* the features underlying the Amazon Kindle Accused Practices).

314.    In accordance with Fed. R. Civ. P. 11(b)(3), Plaintiff will likely have additional evidentiary support after a reasonable opportunity for discovery on this issue.

315.    Plaintiff has been damaged as a result of Audible's infringing conduct described in this Count.  Audible is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Audible's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff requests that the Court find in its favor and against Defendants and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of the '638 and '978 patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others whose infringements have been induced by Defendants and/or by others to whose infringements Defendants have contributed;

b.      Judgment that Defendants account for and pay to Plaintiff all damages to, and costs incurred by, Plaintiff because of Defendants' infringing activities and other conduct complained of herein;

c.      Judgment that Defendants be enjoined from further infringement and/or account for and pay to Plaintiff a reasonable, ongoing, post-judgment royalty because of Defendants' infringing activities, including continuing infringing activities, and other conduct complained of herein;

d.      Judgment that Defendants' infringements relative to the '638 patent and/or the '978 patents be found willful and that the Court award treble damages pursuant to 35 U.S.C. § 284;

e.      Judgment that the case be found exceptional under 35 U.S.C. § 285, and an award to Plaintiff its attorneys' fees and costs incurred in prosecuting this action;

e.      That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

i.      That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 1, 2018                    */s/ Timothy Devlin*
                                          Timothy Devlin (# 4241)
                                          DEVLIN LAW FIRM LLC
                                          11306 N. Broom Street, 1st Floor
                                          Wilmington, DE 19806
                                          302-449-9010
                                          tdevlin@devlinlawfirm.com

                                          **COUNSEL FOR PLAINTIFF**
                                          **TRACKTIME, LLC**

OF COUNSEL:

Edward R. Nelson III (*Pro Hac Vice application forthcoming*)
Texas Bar No. 00797142
NELSON BUMGARDNER ALBRITTON PC
3131 West Seventh Street, Suite 300
Fort Worth, Texas 76107
P. 817-377-9111
ed@nbafirm.com

Timothy E. Grochocinski (*Pro Hac Vice application forthcoming*)
Illinois Bar No. 6295055
Joseph P. Oldaker (*Pro Hac Vice application forthcoming*)
Illinois Bar No. 6295319
NELSON BUMGARDNER ALBRITTON PC
15020 S. Ravinia Ave., Suite 29
Orland Park, Illinois 60462
P. 708-675-1975
tim@nbafirm.com
joseph@nbafirm.com