**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TRACKTIME LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 18-1518-MN |
| AMAZON.COM SERVICES LLC and | ) | |
| AUDIBLE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## JOINT [PROPOSED] PRETRIAL ORDER

The following matters as to trial come before the Court at the final pretrial conference to be held on September 6, 2023, at 4:30 P.M., under the Court's Minute Entry dated June 30, 2023, Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.3(c), and the Court's Preferences and Procedures for Civil Cases. Plaintiff TrackTime, LLC ("Plaintiff" or "TrackTime") and Defendants Amazon.com Services LLC and Audible, Inc. (collectively, "Defendants" or "Amazon") hereby provide their proposed Final Pretrial Order governing the jury trial beginning on September 13, 2023, at 9:30 A.M.

**TABLE OF CONTENTS**

I.    NATURE & STAGE OF THE PROCEEDINGS ................................................................. 1

    A.    Nature of the Action ............................................................................................... 1

    B.    Pleadings ................................................................................................................. 1

    C.    Claim Construction ................................................................................................ 2

    D.    Discovery ................................................................................................................ 3

    E.    Summary Judgment and Daubert Motions ............................................................ 7

    F.    Pending Motions .................................................................................................... 8

    G.    Trial ........................................................................................................................ 8

II.    JURISDICTION ................................................................................................................. 8

III.    UNCONTESTED FACTS .................................................................................................. 8

IV.    ISSUES OF FACT THAT REMAIN TO BE LITIGATED ............................................... 9

V.    ISSUES OF LAW THAT REMAIN TO BE LITIGATED ................................................ 9

VI.    EXHIBITS ........................................................................................................................... 9

    A.    Trial Exhibits ......................................................................................................... 9

        1.    Exhibit Lists ............................................................................................... 9

        2.    Use of Exhibits ........................................................................................ 11

        3.    Identification of Exhibits to Be Used ...................................................... 13

    B.    Demonstrative Exhibits ....................................................................................... 14

VII.    WITNESSES ..................................................................................................................... 16

    A.    Live Witnesses the Parties Expect to Call .......................................................... 16

        1.    Witness Lists ............................................................................................ 16

        2.    Identification of Live Witnesses .............................................................. 17

    B.    Testimony by Prior Sworn Testimony ................................................................ 18

        1.    Designations ............................................................................................ 18

        2.    Identification and Use of Designations ................................................... 18

    C.    Impeachment with Prior Inconsistent Testimony ............................................... 28

    D.    Objections to Expert Testimony .......................................................................... 28

VIII.    BRIEF STATEMENT OF PLAINTIFF'S INTENDED PROOFS .............................. 28

IX.    BRIEF STATEMENT OF DEFENDANTS' INTENDED PROOFS .............................. 29

X.    SETTLEMENT ................................................................................................................. 29

XI.    OTHER MATTERS...................................................................................................... 29

    A.    Trial Presentations............................................................................................... 29

    B.    Length of Trial .................................................................................................... 30

    C.    Jurors ................................................................................................................... 30

    D.    Motions for Judgment as a Matter of Law ......................................................... 31

    E.    Miscellaneous Stipulations.................................................................................. 31

    F.    Motions in Limine................................................................................................ 31

## <u>INDEX OF EXHIBITS</u>

**STATEMENT OF UNCONTESTED FACTS WHICH REQUIRE NO PROOF**
    Joint                                                      Exhibit 1

**STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED**
    TrackTime                                       Exhibit 2P
    Amazon                                       Exhibit 2D

**STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**
    TrackTime                                       Exhibit 3P
    Amazon                                       Exhibit 3D

**UNCONTESTED EXHIBITS**
    Joint                                                      Exhibit 4

**CONTESTED EXHIBITS**
    TrackTime                                         Exhibit 5P
    Amazon                                       Exhibit 5D

**TRIAL WITNESSES**
    TrackTime                                       Exhibit 6P
    Amazon                                       Exhibit 6D

**DEPOSITION DESIGNATIONS**
    TrackTime                                       Exhibit 7P
    Amazon                                       Exhibit 7D

**MOTIONS *IN LIMINE***
    TrackTime's MIL 1                           Exhibit 8
    TrackTime's MIL 2                           Exhibit 9
    TrackTime's MIL 3                           Exhibit 10

    Amazon's MIL 1                             Exhibit 11
    Amazon's MIL 2                             Exhibit 12
    Amazon's MIL 3                             Exhibit 13
    Amazon's MIL Exhibits                 Exhibit 14

## I.      NATURE & STAGE OF THE PROCEEDINGS

### A.      Nature of the Action

1.      TrackTime brings this civil action for patent infringement under 35 U.S.C. § 271 *et seq.* against Amazon for infringement of U.S. Patent No. 8,856,638 (the "'638 Patent"). TrackTime accuses Amazon of directly or indirectly infringing claims 1-20 of the '638 Patent (collectively, the "Asserted Claims") by practicing the methods of the Asserted Claims via its Amazon Music and Kindle apps (the "Accused Products").

2.      Amazon disputes that the Accused Products infringe any of the Asserted Claims.

3.      Amazon also contends that the Asserted Claims are invalid for failure to satisfy one or more requirements of patentability under 35 U.S.C. §§ 101, 102, 103, and 112.

### B.      Pleadings

4.      TrackTime filed its original complaint on October 1, 2018. (D.I. 1). TrackTime asserted infringement of the '638 Patent and U.S. Patent No. 8,862,978 (the "'978 Patent"). (D.I. 1). Amazon moved to dismiss the complaint for lack of patent eligibility under 35 U.S.C. § 101. (D.I. 14, 15). The Court initially granted Amazon's motion. (D.I. 28).

5.      TrackTime sought leave to file an amended complaint containing additional factual allegations in support of patent eligibility. (D.I. 29). The Court allowed TrackTime's amended complaint. (D.I. 34). The case proceeded and the '638 Patent is now the only patent-in-suit (the '978 Patent's asserted claims were ruled invalid by the Court under 35 U.S.C. § 112). (D.I. 89).

6.      The operative pleadings are TrackTime's First Amended Complaint (D.I. 35) and Amazon's Answer to TrackTime's First Amended Complaint. (D.I. 38).

7.      This action does not involve any counterclaims or crossclaims, though Amazon asserts affirmative defenses, including *inter alia*, non-infringement and invalidity of the asserted '638 Patent.

1

C.      **Claim Construction**

8.      The Court issued a Memorandum Order on claim construction on July 7, 2021. (D.I. 89).

9.      **[Relevant to the '638 Patent, the Court construed the disputed term "multimedia," which appears in claims 1–7, 9–12, 14–16, 18, and 19. The Court ruled (D.I. 89):**

> **Plaintiff proposes the construction, "*audio, video, music, songs, video books, audio books, movies, television shows, radio recordings, voicemail, podcasts, audio of an oral argument, streaming media, and other media recordings.*" In its briefing, Plaintiff clarifies that its proposed construction "cover[s] media that consists of only one type of media (e.g., audio files)." . . .**

> **I am going to adopt Plaintiff's construction, that "multimedia" includes media that consists of only one type of media.]**

[Relevant to the '638 Patent, the Court construed the disputed term "multimedia," which appears in claims 1–7, 9–12, 14–16, 18, and 19, as follows: "'multimedia' includes media that consists of only one type of media." (D.I. 89).][1]

_____

[1] **TrackTime: TrackTime proposes the full and complete definition of "multimedia" from the Court's claim construction order, with no part removed, so the jury understands "music," "songs," and "audio" are within the definition of "multimedia," as are "audio books" and "podcasts." (D.I. 89 at 6). TrackTime understands Amazon to have no non-infringement argument that the accused embodiments—music, songs, audio books, and podcasts—are not "multimedia." Amazon objects to a quote from the claim construction order itself, arguing that TrackTime seeks a "new" claim construction. TrackTime seeks no new claim construction, but only quotes from the Court's Order, which adopted Plaintiff's construction.**

Amazon: In its claim construction order, the Court was very specific in its adoption of TrackTime's proposal: "I am going to adopt Plaintiff's construction, that 'multimedia' includes media that consists of only one type of media." (D.I. 89 at 6.) The Court *did not include* the laundry list of terms TrackThings proposed: "As announced at the hearing . . . the disputed claim term . . . *is construed as follows: 1. 'multimeda' includes media that consists*

2

### D.      Discovery

The parties have completed discovery. **[TrackTime has sought financial updates from Amazon for recent periods up through trial to update its damages presentation. TrackTime requested only two documents to be updated, AMZ_TT00015328 (for Immersion Reading sales and revenue) and AMZ_TT00008692 (for Amazon Music lyric impressions). TrackTime's damages expert Mark Peterson calculated his initial damages estimate as an apportionment of Amazon's revenue over the specific time periods for which Amazon provided financial data in these spreadsheets. His initial damages estimate for Amazon Music is limited to customer revenue months and lyric impressions reported between October 2014 and December 2022, while his initial damages estimate for Immersion is limited to Revenue from purchased eBook and audiobook pairs reported between January 2014 and December 2022. Contrary to Amazon's assertions below, Mr. Peterson's damages estimate is not for a one-time lump sum payment to cover all past and future infringement. Throughout Mr. Peterson's entire opening and reply reports, he always characterized his damages estimate as a reasonable royalty covering a specific period of time. (D.I. 200, Ex. I). Further, Mr. Peterson never characterizes his damages estimate as a lump sum that covered all past and future infringement. *See*, *e.g.*, *id.* at 19, 20, 21, 63, 64. In his charts on pages 63 and 64, Mr. Peterson expressly identifies the royalty attributable per customer per month for music, and a percentage royalty for Immersion Reading. In both cases, a specific timeframe is also**

---

*of only one type of* media.'" (*Id.* at 1.)  The parties fully briefed the "multimedia" term, and the Court issued its construction of that term over two years ago.  (*See* D.I. 89 ("Claim Construction Order"), filed July 7, 2021.)  TrackTime now asks the Court to re-consider and re-construe the same term again on the eve of trial.  This is improper.  The Court should strike TrackTime's paragraph from this Pretrial Order.

identified, Oct. 2014 through Dec. 2022. He specifically describes the royalty rate in both cases. The word lump sum appears nowhere in this analysis, and there is no indication whatsoever that the calculation reflects a lump sum for past and future infringement through expiration, but rather a royalty applied to the timeframe specifically identified and reflecting data collected in discovery. The fact that Mr. Peterson calculated the total due for each period for each product class does not make this a lump sum for all past and future infringement. With respect to Amazon Music, by way of example, Amazon's own damages expert Dr. Macartney acknowledged that Mr. Peterson's estimate only covered the October 2014 to December 2022 timeframe. Dr. Macartney explained that his own damages estimate was only "for use in the Tap-To-Jump feature over the period October 2014 through December 2022 (*the same period for which Mr. Peterson calculates damages*)." (D.I. 200, Ex. A at 77) (with emphasis). Mr. Peterson further specifically reserved the right to update his opinions based on "sales updates." (D.I. 200, Ex. I at 3 ("*I reserve the right to update my opinions* if I receive relevant additional information in any form. Examples of potentially material sources of information would be other expert reports, trial briefs, additional documents produced by the parties (for example, *sales updates*), deposition transcripts, and trial testimony, etc.") (with emphasis)). Were Mr. Peterson's opinion based on a lump sum payment for past and future (which it was not) there would be no need for sales updates, or any need to reserve the right to supplement. Indeed, at his deposition Mr. Peterson criticized use of a lump sum saying, "I think that's not borne out by the evidence." March 8, 2023, Deposition Transcript of Mark Peterson at 98:23-99:4. Thus, it is reasonable and appropriate for Mr. Peterson to supplement his existing damages models with more recent Amazon financial data to account for infringement occurring between Amazon's last

disclosure of financial data and trial. *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-04405-HSG, 2021 U.S. Dist. LEXIS 117534, at *11 (N.D. Cal. June 23, 2021) (discussing how "it is common practice for a damages expert to provide an updated calculation of damages just before the time of trial, based on a previously (and properly) disclosed damages model.").] [Amazon is in the process of collecting updates to two spreadsheets identified by TrackTime. But TrackTime's damages expert, Mr. Peterson, should not be permitted to use those updated spreadsheets and revise his damages opinions on the eve of trial in light of this or any other data.

In patent cases, damages can be in a form of a lump sum or a running royalty. In his report, Mr. Peterson offers no running royalty opinion of any kind; nor does he opine that a running royalty is appropriate in this case. His damages estimate is a one-time payment of $36.7-55.1M for Tap to Jump on X-Ray Lyrics and $5.0-$5.6M for Page Turn on Immersion Reading—that he calculates based on, among other things, Amazon and Audible revenue from October 2014 and 2022. Despite his boilerplate reservation of rights, which appears in nearly every expert report, nowhere in his report did Mr. Peterson state that he will be presenting a different damages amount to the jury, or that he requires any updated financial information. Now, however, TrackTime contends that Mr. Peterson's damages estimate may increase merely because Amazon and Audible have continued to earn revenue on the accused Amazon Music and Immersion Reading features. This is the definition of a running royalty damages opinion. Yet, TrackTime refuses to acknowledge that Mr. Peterson is offering a running royalty opinion, instead arguing cryptically that "Mr. Peterson's damages estimate is not for a one-time lump sum payment to cover all past and future infringement."

The reason TrackTime refuses to say categorically that it now seeks a running royalty

is clear:  Mr. Peterson's report contains no support whatsoever for such an opinion.  Indeed, the Federal Circuit has made clear the "fundamental differences" between lump-sum and running royalty license agreements.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009).  Accordingly, in order to offer a running royalty damages opinion, an expert must "present a legally sound justification" for the claimed royalty, in particular explaining "why [the defendant] in the hypothetical negotiation, would agree to a running royalty."  *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 727 (E.D. Tex. 2011), aff'd, 692 F.3d 1351 (Fed. Cir. 2012) (setting aside jury's damage award based on running royalty where expert did not adequately support running royalty opinion); *see also, e.g.*, *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157, 2013 WL 936449, at *3 (D. Del. 2013) (precluding expert from testifying regarding lump sum because he failed to provide a basis for the jury to award a lump sum based on comparable running royalty agreements).  Mr. Peterson plainly fails to do this in his report:  indeed, the term "running royalty" appears *just once* in his 66-page report, in a section in the report describing "profitability issues."  Mr. Peterson does not explain in any portion of his report why Amazon—which has a *policy* of agreeing to lump sum patent-license agreements—would agree to a running royalty in this instance.  (*See* Macartney Reb. Rpt. ¶ 33-35 (Amazon's damages expert Dr. Macartney, summarizing record evidence of Amazon's licensing policies and preference for lump-sum agreements).)  The fact that Amazon's expert Dr. Macartney offers an affirmative damages opinion based on corrections to Mr. Peterson's model is irrelevant to the issue of whether Mr. Peterson has properly supported a running royalty opinion.  In fact, Dr. Macartney makes clear that the parties to the negotiation would agree to a lump-sum agreement and not to any running royalty.  (*Id.* ¶ 100 ("I conclude [the reasonable royalty] would have been

**paid as a lump sum, consistent with Amazon's licensing policies.").)  Amazon has prepared its case based on Mr. Peterson's damages report and filed *Daubert* motions in accordance with the opinions actually presented in the report.  TrackTime should not be allowed now, on the eve of trial, to change and present a different damages number to the jury that is unsupported by any analysis its damages expert presented in his report.**

### E.   Summary Judgment and Daubert Motions

10.   TrackTime filed a motion for partial summary judgment on patent eligibility under § 101. (D.I. 193). Amazon filed a motion for summary judgment of invalidity under § 101. (D.I. 184). The Court denied both motions. (D.I. 268).

11.   TrackTime filed a motion for partial summary judgment seeking a determination that U.S. Patent No. 8,433,431 to Master (the "Master '431 Patent") is not prior art. (D.I. 191). Using rank order, the Court did not consider and thus denied this motion. (D.I. 268).

12.   TrackTime filed a *Daubert* motion to exclude in part the testimony of Amazon's experts Dr. Macartney and Dr. Schonfeld. (D.I. 195). The Court granted this motion "to the extent that Dr. Schonfeld may not testify to the conception date" of the Master '431 Patent, but denied the motion in all other respects. (D.I. 268).

13.   Amazon filed a *Daubert* motion to preclude certain testimony of TrackTime's expert Dr. Hernandez-Mondragon. (D.I. 188). The Court granted this motion "to the extent that Dr. Hernandez may not opine on the credibility of Mr. Chamberlain" and "to the extent that claim charts, infringement contentions, and other materials included in interrogatory responses as well as the opinions in the declaration of another expert, which were not prepared by Dr. Hernandez, but purport to be incorporated in their entirety into Dr. Hernandez's expert report, are stricken." (D.I. 268). The Court clarified that "Dr. Hernandez may not use those materials cursorily incorporated by reference to support his opinions but may testify regarding the other opinions and

analyses provided." (*Id.*). The Court denied the motion in all other respects, "with the exception that the Court reserved ruling on whether and to what extent Dr. Hernandez's testimony regarding issues of judicial estoppel may be permitted." (*Id.*).

**F.    Pending Motions**

14.    The parties' motions *in limine* are being filed as part of this Pretrial Order, as set forth in Section XI.F below.

**G.    Trial**

15.    A jury trial of up to five days is scheduled to start on September 13, 2023. (D.I. 115); (Minute Entry dated June 30, 2023).

## II.    JURISDICTION

16.    This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq.* Accordingly, this Court has federal question subject matter jurisdiction.

17.    The subject matter jurisdiction of this Court is not disputed and is based on 28 U.S.C. §§ 1331, 1338(a)-(b), and 1367.

18.    The parties agree that the Court has personal jurisdiction over all parties for the purposes of this action. All parties are organized under Delaware law.

19.    The parties agree that venue is proper in this District for purposes of this action.

## III.    UNCONTESTED FACTS

20.    The facts listed in Exhibit 1 are not contested for the purposes of this trial. These uncontested facts shall require no proof at trial and will become part of the evidentiary record in this case once introduced to the jury or into the record at the bench trial. Any party may read any or all of the uncontested facts to the jury or the Court and will be charged for the time used to do so.

## IV.    ISSUES OF FACT THAT REMAIN TO BE LITIGATED

21.    TrackTime's statement of the issues of fact that remain to be litigated is attached as Exhibit 2P.

22.    Amazon's statement of the issues of fact that remain to be litigated is attached as Exhibit 2D.

## V.    ISSUES OF LAW THAT REMAIN TO BE LITIGATED

23.    TrackTime's statement of the issues of law that remain to be litigated is attached as Exhibit 3P.

24.    Amazon's statement of the issues of law that remain to be litigated is attached as Exhibit 3D.

## VI.    EXHIBITS

### A.    Trial Exhibits

#### 1.    Exhibit Lists

25.    The joint list of exhibits the parties intend to offer at trial is attached as Exhibit 4.

26.    TrackTime's list of exhibits that it intends to offer at trial, with Amazon's objections, is attached as Exhibit 5P.

27.    Amazon's list of exhibits that it intends to offer at trial, with TrackTime's objections, is attached as Exhibit 5D.

28.    This Pretrial Order contains the maximum universe of exhibits (with the exception of demonstrative exhibits) to be used by a party at trial, as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed by the parties other than demonstratives will not be admitted into evidence unless good cause is shown. **[TrackTime proposes that this**

**restriction not apply to updated financials to be provided by Amazon, as such documents were not provided in discovery, nor have they yet been provided. [Amazon objects to any use of any updated financials for the reasons set forth in detail above.  TrackTime's proposal is thus unnecessary.]**

29.     The parties agree that exhibits to be used solely for impeachment or refreshing a witness's recollection need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

30.     The exhibit lists indicate whether each trial exhibit has previously been marked as a deposition exhibit. To remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker.

31.     The parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

32.     The parties will exchange electronic copies of their respective pre-marked exhibits in searchable (OCR) PDF file format by 5:00 P.M. on September 11, 2023. TrackTime shall be responsible for serving on Defendants pre-marked, searchable (OCR), PDF copies of any joint trial exhibits.

33.     The parties will provide physical copies of documents (witness binders for direct and cross examination, copies of exhibits, demonstratives, deposition transcripts, etc.) to the witnesses prior to a direct or cross-examination. At the beginning of each trial day, the parties will provide to the Courtroom Deputy and the opposing party electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used on **[non-adverse]** direct examination

of any witnesses expected to be called that day. The parties will also provide to the Courtroom Deputy (but not the opposing party) electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used **[on adverse direct examination]**[2] and cross-examination by 7:00 a.m., including any deposition transcripts or expert reports, of any witnesses expected to be called that day.

### 2.  Use of Exhibits

34.  The parties agree to provide physical witness binders for each fact and expert witness for both direct examination and cross examination just before the examination begins.

35.  Unless pre-admitted by the Court or pursuant to this pre-trial order, no exhibit will be admitted into evidence unless offered through a witness, who must at least be shown the exhibit. Exhibits may be introduced via prior sworn testimony.  Notwithstanding the foregoing, exhibits that are not objected to or that have been ruled on by the Court may be used in opening statements. A party that has used an exhibit with the witness and wishes that exhibit to be admitted into

---

[2] **Amazon: TrackTime insists that it should not have to disclose materials it intends to use during direct examination of adverse witnesses.  This provision is highly prejudicial and unfair because it is one sided—it will only benefit TrackTime as it puts its case first.  To the extent TrackTime argues that direct examination of Amazon fact witnesses in its case-in-chief should be treated as cross-examinations—for which the parties have agreed not to disclose exhibits—TrackTime is wrong because direct examinations and cross-examinations are not the same.  Cross-examination is reactionary by nature.  And while not a rigid construct, it is generally limited to the scope of the direct examination, thus justifying the lack of prior disclosure of cross-examination materials because the scope of examination is clear to both parties. *See* Fed. R. Evid. 611(b). No such limit exists during a direct examination, let alone in a plaintiff's case.  If TrackTime wants to avoid disclosure of exhibits it intends to use with an adverse witness, it can cross-examine that witness; all witnesses in TrackTime's case in chief, however, should be treated the same and any exhibits and demonstratives intended to be used during direct examination must be disclosed pursuant to the disclosure requirements herein.  TrackTime should not be allowed to try this case by surprise. *See* Fed. R. Evid. 611.**

evidence may formally move the exhibit into evidence, by exhibit number, at any time.

36.     Except as provided below with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after the Court allows such publication or display.  Any exhibits already admitted may be published to the jury without requesting to do so.

37.     Exhibits that are documents that were produced by any party from its own files shall be presumed authentic within the meaning of Federal Rules of Evidence 901 unless the party can make a good faith objection to the exhibit's authenticity.

38.     Legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

39.     Any exhibit listed by a party on its exhibit list may be offered as an exhibit by another party, subject to any evidentiary objections by the opposing party.

40.     Any exhibit, once admitted at trial, may be used equally be any party, subject to the Federal Rules of Evidence.

41.     The listing of a document on a party's exhibit list or the joint exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document. Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

42.     The parties agree that if any party removes or otherwise withdraws an exhibit from its Exhibit List, another party may amend its Exhibit List to include that same exhibit. The parties also agree that the parties may make objections to such exhibit, other than an objection based on

12

untimely listing.

### 3.    Identification of Exhibits to Be Used

43.    A party will provide an identification of all exhibits to be used during direct examination of each witness (both live and by deposition) by 7:00 P.M. the day before the intended use of such exhibits. The opposing party will provide any objections or identified issues of privilege and confidentiality by no later than 9:00 P.M. that same day. The parties will meet and confer to attempt to resolve any objections by 10:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention by 7:00 A.M. the day of the intended use of such exhibits. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of objection to the exhibit.

44.    Exhibits to be used in **[direct or]** cross examination **[of an adverse party witness]**[3] need not be **[previously]**[4] disclosed. Objections to such exhibits may be made at trial when the exhibit is offered into evidence or requested to be published to the jury.

45.    If a party intends to show a trial exhibit (or any portion thereof) during its opening statement to which the other party has objected, the party shall disclose the exhibit(s) by 10:00 A.M. the day before opening statements are to be made. If the opposing party continues to object to any such exhibit(s), it will provide any objections to such exhibit(s) by 1:00 P.M. that same day. The parties will meet and confer by 4:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to the exhibit(s) shall bring its objections to the Court's attention

---

[3] Amazon's position in footnote 2 applies equally here.
[4] The exhibits must be disclosed at trial, however, and therefore Amazon proposes to clarify that they do not need to be only previously disclosed.

by 7:00 A.M. the day opening statements are to be made.

46.　　The parties will exchange final digital copies of their exhibits, with exhibit numbers, seven days before the first day of trial. The parties shall make available for inspection, two days before trial starts at a mutually convenient time, any physical exhibits to be used at trial, labeled with an exhibit number. The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic document. The exhibit prefixes shall be: "JTX" for exhibits on the joint exhibit list; "PTX" for exhibits on TrackTime's exhibit list, and "DTX" for exhibits on Amazon's exhibit list. The page numbering shall begin at 1 for the first page of each exhibit and the numbering on each page should include the trial exhibit number and the physical page number separated by a decimal. For example, page 62 of Joint Exhibit 5 would be endorsed or paginated as "JTX005.0062."

47.　　On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

## B.　Demonstrative Exhibits

48.　　TrackTime's demonstratives will be identified with PDX numbers.

49.　　Amazon's demonstratives will be identified with DDX numbers.

50.　　The parties will exchange all demonstratives intended for use in opening statements (for opening and any rebuttal statements) by 10:00 A.M. the day before opening statements are to be made. The parties will provide any objections to such demonstratives by 1:00 P.M. that same day. The parties will meet and confer to attempt to resolve any objections by 4:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to a demonstrative shall bring its objections to the Court's attention by 7:00 A.M. the day opening statements are to be made.

51.　　The parties will exchange all demonstratives intended for use in closing arguments

14

(for opening and any rebuttal arguments) by 8:00 P.M. the day before closing arguments are to be made. The parties will provide any objections to such demonstratives by 9:00 P.M. that same day. The parties will meet and confer to attempt to resolve any objections by 10:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to a demonstrative shall bring its objections to the Court's attention by 7:00 A.M. on the day closing arguments are to be made.

52.     Each party will provide all demonstrative exhibits to be used in connection with direct examination of a witness **[other than an adverse witness]**[5] by 7:00 P.M. the day before the intended use of such demonstratives. The opposing party will provide any objections to such demonstratives by 9:00 P.M. that same day. The parties will meet and confer to attempt to resolve any objections by 10:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to a demonstrative shall bring its objections to the Court's attention by 7:00 A.M. the day of the intended use of such demonstratives.

53.     Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of objection to the demonstrative.

54.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the opposing party in PDF format. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side electronically via a video or similar file. For irregularly-sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a 8.5" x 11" copy of the demonstrative in PDF file format, and provide the opposing party an opportunity to inspect the physical exhibit.

---

[5] **Amazon's position in footnote 2 applies equally here.**

55.     The substance, including a mock-up, of any demonstratives a party intends to create live during opening statements or witness examinations must be disclosed pursuant to the procedures outlined above.

56.     The provisions in this section do not apply to demonstratives to be used during cross-examination, **[or demonstratives to be used in connection with the direct examination of an adverse witness]**[6], none of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the opposing party in advance of their use.

## VII.   WITNESSES

### A.     Live Witnesses the Parties Expect to Call

#### 1.     Witness Lists

57.     The fact and expert witnesses that TrackTime intends to call to testify at trial is attached as Exhibit 6P.[7]

---

[6] Amazon's position in footnote 2 applies equally here.

[7] **Amazon:** Based on TrackTime's opposition to Amazon's motion *in limine* No. 1, it appears that TrackTime will attempt to present an entirely new damages theory through its corporate representative Mr. Evans.  (*See* Pre-Trial Order (PTO) Ex. 11 (TrackTime's Opp. to Amazon's MIL No. 1).)  This is improper, as Mr. Evans is a fact witness who is not qualified to opine on the expert topic of what the parties would have considered at the hypothetical negotiation.  *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 82–84 (3d Cir. 2009) (vacating district court judgment where damages testimony from lay witness "went beyond those easily verifiable facts with[in] their personal knowledge and instead required forward-looking speculation for which she lacked necessary training"); *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146-47 (D. Del. 2013) ("a lay witness may not offer testimony as to events that 'would have occurred,'" information outside his personal knowledge).  And TrackTime failed to disclose his lay person opinions as required by the Federal Rules. Specifically, TrackTime intends for Mr. Evans to testify how he would have used Amazon's financial information and other information at the hypothetical negotiation.  But he never

58.     The fact and expert witnesses that Amazon intends to call to testify at trial is attached as Exhibit 6D.

59.     Any witness not listed in Exhibits 6P or 6D will be precluded from testifying, absent good cause shown.

### 2.     Identification of Live Witnesses

60.     The parties agree that fact witnesses, other than a single corporate representative per party sitting at counsel tables, will be sequestered. The parties agree that expert witnesses need not be sequestered. The parties shall exchange the names of their single corporate representatives on September 11, 2023, at 5:00 P.M.

61.     The parties will identify by email to the opposing party the witnesses they intend

---

considered, and in some cases had, that information at the time the hypothetical negotiation would have occurred; instead, he can only offer self-serving opinions about what he would have done at the hypothetical negotiation.  That is expert testimony, and TrackTime cannot offer Mr. Evan's opinions to the jury when it failed to disclose those opinions in accordance with the Federal Rules.  TrackTime knows that this, and thus, carefully selects its words when it argues below that Mr. Evans would only offer testimony about "his position as a party at the time of the hypothetical negotiation."  Mr. Evans can disclose facts about the state of his company, but he cannot talk about what he would and would not have agreed to at the time of the hypothetical negotiation, which is solely within the purview of disclosed expert opinions.  And Amazon's position is not an additional motion in limine, but an objection to fact witness testifying as to his opinions not properly disclosed in this case and wrong as a matter of law.  Indeed, Amazon had no notice that TrackTime intends to use Mr. Evans in such a way until TrackTime filed an opposition to one of Amazon's motions *in limine*.

TrackTime: Respectfully, TrackTime disagrees. TrackTime agrees that Mr. Evans will not be presenting expert opinion or expert testimony. Mr. Evans will be providing factual testimony as to his own personal knowledge and as to his position as a party at the time of the hypothetical negotiation. He will certainly not provide an opinion as to what Amazon may or may not have considered. Mr. Peterson (TrackTime's actual damages expert) used this as an input into his *Georgia-Pacific* analysis. This Amazon footnote appears to be an improper attempt at an extra motion *in limine*.

to call live and the order in which they intend to call them in each trial by 7:00 P.M. two days before the day on which such witness will be called to testify. The other parties shall identify any objection to such witness(es) by 9:00 P.M. the day before the trial day on which the witness(es) will be called to testify. The parties will meet and confer to resolve any objections by 10:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention by 7:00 A.M. the day on which the witness will be called to testify.

### B. Testimony by Prior Sworn Testimony

#### 1. Designations

62.     TrackTime's designations of prior sworn testimony that it may offer into evidence, with Defendants' objections and counter-designations, are identified in attached Exhibit 7P.

63.     Defendants' designations of prior sworn testimony that it may offer into evidence, with TrackTime's objections and counter-designations, are identified in attached Exhibit 7D.

64.     This pretrial order contains the universe of prior sworn testimony designations, counter-designations, counter-counter designations, and objections to admissions of prior sworn testimony currently contemplated by the parties. None of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown, by disclosing such supplemental testimony in accordance with the schedule below.

#### 2. Identification and Use of Designations

Use of deposition testimony shall be governed by Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence. **[TrackTime proposes that use of other former testimony, such as declarations and affidavits, shall be governed by the Federal Rules of Evidence, including Federal Rule of Evidence 804. Amazon's objections to TrackTime's use of the Chamberlain affidavits is tantamount to an extra, and improper, motion *in limine*. This Court afforded**

each party three motions *in limine*. Amazon has filed three, and TrackTime assented to one additional. Now, Amazon's attempt to bar Chamberlain's sworn testimony amounts to yet another motion *in limine*. Should the Court be inclined to entertain Amazon's additional motion *in limine*, it should be denied, as explained below. Mr. Chamberlain's affidavit testimony is proffered solely to corroborate inventor Evans' date of conception. Mr. Chamberlain is deceased, having died in March 2022. However, his identity has long been known to Amazon. For starters, TrackTime's Rule 26(a) Initial Disclosures (served February 28, 2020) identified Mr. Chamberlain as an individual potentially having knowledge of Mr. Evans' inventive efforts predating the filing date of the '638 Patent. Mr. Chamberlain's first affidavit (dated November 4, 2019) was filed in connection with U.S. Patent Application No. 14/816,400 (an application in the same family as the '638 Patent) and therein swears under oath to the conception date of the invention disclosed by the '638 Patent. That publicly-available document is part of the file history for the family of the patent-in-suit. The first affidavit also was produced before the close of discovery. Mr. Chamberlain's second affidavit (also dated November 4, 2019) likewise swears under oath to the conception date of the invention disclosed by the '638 Patent. Although the second affidavit was produced after the close of fact discovery, it is substantively similar to the first affidavit, and was produced by TrackTime's attorneys in accordance with the duty to supplement. Despite being on notice of Mr. Chamberlain, and his relevance, Amazon never requested his deposition (through subpoena or otherwise) and cannot now be heard to complain that he was not subjected to adverse examination. Federal Rule of Evidence 807 precisely addresses the admissibility of the affidavits at issue here. *See, e.g., Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 577-579 (6th Cir. 2016) (hearsay statement of decedent

properly admitted under Rule 807); *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1329-1330 (11th Cir. 2013) (same); *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 111-113 (3d Cir. 2001) (same). Rule 807 permits hearsay where: (1) "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement"; (2) the statement "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"; and (3) "the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it." All three conditions are met. First, the affidavits were sworn under penalty of perjury and will be corroborated both by Mr. Evans and Steve Maynard (both of whom will appear live at trial). Second, the Chamberlain affidavits are highly probative of the issue of conception, as they cross-corroborate inventor Evans' position on conception and provide more detail than Mr. Maynard is expected to provide. Third, there can be no serious dispute that Amazon has long been on notice of Mr. Chamberlain's affidavits, their plain relevance to this case, and TrackTime's intent to use those affidavits for purposes of corroborating inventor Evans' pre-filing inventive activities (including conception and diligence). Rule 807 allows such hearsay. Additionally, TrackTime has no objection to admission of the Chamberlain affidavits subject to a limiting instruction (in accordance with Federal Rule of Evidence 105), such that the evidence would be admitted solely for purposes of corroborating live witness testimony (Evans and Maynard) and other evidence related to pre-filing conception and diligence, and an instruction to the jury that Amazon did not cross-examine Mr. Chamberlain. In view of Rule 807's hearsay exception and the additional protections

afforded by Rule 105, the Chamberlain affidavits should be admitted. Finally, there is no basis for excluding the second affidavit under Federal Rule of Civil Procedure 37(c)(1). That Rule exempts from exclusion untimely disclosures that are "substantially justified or … harmless." As noted, TrackTime's attorneys disclosed the second affidavit promptly after becoming aware of its nondisclosure, and nine months before trial. Moreover, any tardiness was harmless. The second and first affidavit (which was timely disclosed) are nearly identical, and Amazon, tellingly, points to no resulting harm from any untimely disclosure of the second. Rule 37(c)(1) does not require the harsh sanction of exclusion under these circumstances.] [Amazon objects to TrackTime reading any affidavits or declarations into the record at trial, including reading affidavits or declarations from Christopher Chamberlain or Tom Rzonca (TrackTime has not designated Mr. Rzonca's affidavits, but the same arguments apply to him), who were not made available for a deposition in this case. This objection is not a motion in limine, but an objection to witnesses listed on TrackTime's witness list.  Specifically, according to its witness list, TrackTime intends to read at least a Prosecution Affidavit (not appearing in the file wrapper of the asserted patent and purportedly appearing in a file wrapper of a related patent, which TrackTime did not produce in this case) and/or an identical declaration from Mr. Chamberlain (prepared for this litigation and referred hereafter as Captioned Affidavit) to the jury, and has even designated portions of the same as part of its pretrial disclosures. *See* Pre-Trial Order (PTO) Ex. 7P (TrackTime's Deposition Designations) & PTX406 (Captioned Affidavit) & PTX407 (Prosecution Affidavit).  Doing so would be highly and unduly prejudicial, particularly when TrackTime withheld the documents from production until after Mr. Chamberlain died and was thus unable to sit for cross-examination.  (And while Mr. Chamberlain was included on

TrackTime's initial disclosures, he was one of 15 third parties on those disclosures and his importance to the case was not apparent until TrackTime produced his declarations.) TrackTime filed this action in Oct. 2018.  Mr. Chamberlain executed both declarations on the same day on November 4, 2019.  Thus, TrackTime knew, when it created the Captioned Declaration specifically for this case, that it would want to rely on Mr. Chamberlain's declarations in this case, yet it withheld the declarations for years.  Mr. Chamberlain passed away in March 2022.  TrackTime produced the Prosecution Affidavit only in October 2022— one month before the close of fact discovery, and it produced the Captioned Affidavit in Dec. 2022—one month *after* the close of fact discovery.  The affidavits purport to corroborate the date of conception for the claimed invention in the '638 patent in-suit and its reduction to practice, which were (and still are) highly contested issues between the parties throughout this case and issues on which TrackTime bears the burden of proof.

First, TrackTime should not be permitted to rely upon the affidavits because Mr. Chamberlain was not deposed and Amazon objects to the use of the affidavits at trial.  *Fed. Trade Comm'n v. CCC Holdings Inc.*, No. CV 08-2043 (RMC), 2009 WL 10631282, at *2 (D.D.C. Jan. 30, 2009) (holding as inadmissible declarations by those who did not testify and were not deposed by defendants); *Jupiter Print Pack India Ltd. v. Anand Printing Mach., Inc.*, No. 12 CIV. 322 KBF, 2015 WL 996391, at *3 (S.D.N.Y. Mar. 5, 2015) (holding that plaintiff cannot affirmatively present statements of witnesses who did not testify and who were not deposed, stating that witnesses not deposed may not testify at trial "or offer testimony by declaration/affidavit" unless the parties consent by that deadline).  *Second*, TrackTime may not rely upon the affidavits because they are both hearsay and not subject to any hearsay exceptions making them inadmissible.  Fed. R. Evid. 801-804; *Rose v. Frazer*, Interference

No. 104,733 Paper 73 at 4 (B.P.A.I. Mar. 29, 2002) (excluding deceased declarant's declaration as hearsay under FRE 804(b)(1) because that declarant was not deposed and "[a]n opponent [] has a right to cross-examine the affidavit testimony of any witness relied upon by a party [] in an interference"). *Third*, TrackTime should not be permitted to rely on the affidavits because TrackTime possessed these clearly relevant materials that it knew, or should have known, it would rely on at trial and chose not to produce them until after Mr. Chamberlain passed away, making no attempts to preserve his testimony or avert prejudice to Amazon. Indeed, TrackTime delayed production *by a full year*, depriving Amazon of an opportunity to depose him on the affidavits and related issues including at least Mr. Chamberlain's expertise, background, connection to Mr. Evans (as, at least from his obituary, Mr. Chamberlain was Mr. Evan's sibling), connection to TrackTime or its predecessors, and familiarity with the asserted patents or the claimed invention and purported technology. *See Edwards v. Nat'l Vision, Inc.*, 946 F. Supp.2d 1153, 1162 (N.D. Ala. 2013), *aff'd*, 568 F. App'x 854 (11th Cir. 2014) (stating that 804(a) precludes the dead witness's statements where the proponent deliberately stalled the litigation while waiting for the declarant's death). TrackTime now intends take advantage of its own delay and Mr. Chamberlain's unfortunate passing by reading affidavits from a declarant who has not been, and cannot be, subject to cross-examination. Affidavits that contain what is likely attorney-crafted content that Amazon has not had the opportunity to explore, and which TrackTime now seeks to use to prove-up highly contested factual issues in this case. The *Luitpold* case is instructive. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11 CIV. 681 (KBF), 2015 WL 13860904 (S.D.N.Y. July 24, 2015). There, the defendant hoped to rely on a declaration executed in 2012, but only produced in 2015 after the declarant

had passed away.  *Id.* at *1.  The court struck the declaration, stating that (1) it did not fall under any of the 804(b) hearsay exceptions (i.e., it was not a statement against a declarant's interest nor former testimony offered against a party who got to cross-examine him), (2) it contained conclusory assertions helpful to defendant's position in the litigation about conversations that occurred years earlier, and (3) defendants took no step necessary to preserve the declarant's testimony between obtaining the document and finally producing it.  *Id.* at *1.  *Finally*, TrackTime *also* should not be permitted to rely upon the Captioned Affidavit because it was produced after the close of fact discovery and this belated production was not "substantially justified" or "harmless."  *See* Fed. R. Civ. P. 37(c)(1); *mophie, Inc. v. Shah*, No. SACV1301321DMGJEMX, 2014 WL 12603075, at *3 (C.D. Cal. Dec. 2, 2014) (holding non-expert documents produced after the discovery period to be inadmissible at trial, as they were available for production during the discovery period and therefore the failure to produce them is not harmless); *Finesse Wireless, LLC v. AT&T Mobility, LLC,* No. 221CV00316JRGRSP, 2022 WL 17875791, at *3 (E.D. Tex. Dec. 21, 2022) (granting motion to strike a late-produced datasheet, stating that it could and should have been produced during fact discovery).

TrackTime attempts to rely on Rule 807—the residual exception.  TrackTime cannot meet the residual exception because it cannot meet any of the three elements necessary to meet the standard.  On the first element—the affidavits' "trustworthiness"—Amazon has raised serious concerns on the trustworthiness of the affidavit given it was likely attorney-crafted, not subject to cross-examination and signed by a sibling of TrackTime's principal and inventor of the asserted patent.  As to the second element—the statement "is more probative on the point for which it is offered than any other evidence that the proponent can

24

obtain through reasonable efforts"—TrackTime is expected to offer Mr. Evans' and Mr. Maynard's testimony at trial to corroborate reduction to practice (as well as offer document evidence); it does not need the affidavits.  Moreover, TrackTime has unclean hands in not producing the affidavits until after Mr. Chamberlain passed away and this situation is of its own creation, and it now should not be heard to resort to this extraordinary relief for self-help.  And as to the third element—notice of its intended use—TrackTime cannot meet this element either, because reasonable notice would have been *timely* notice of its intended use during discovery and before Mr. Chamberlain passed away, which would have allowed Amazon to depose Mr. Chamberlain.  TrackTime producing the affidavits well into discovery and one of the affidavits *after* the close of discovery, and giving Amazon notice on the eve of trial of its intent to read the affidavits into the record, without the ability to examine their contents, in a trial-by-ambush is not sufficient notice.  Moreover, TrackTime's authority does not support its position.  In *Brumley*, the court upheld the admissibility of the evidence because it satisfied the high trustworthiness requirement based on a particularized factual showing—facts which are not present here and TrackTime makes no effort to try to meet.  In *Cynergy*, the opposing party *only* contested the second element of the residual exception—that the affidavit "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"—but as stated above, Amazon contests all three elements of the residual exception.  And in *Bohler-Uddeholm*, like in *Brumley*, the court admitted the affidavit because there was sufficient indices of its trustworthiness, which again cannot be met here as explained above, and the court reasoned that this was "a rather unique combination of circumstances where a material fact can be proved only through one method, or, in this case, rebutted by only one

25

method," which is not the case here either as TrackTime will have Mr. Evans, Mr. Maynard, and document evidence to try to corroborate the reduction to practice.

For these reasons, the Court should not permit TrackTime to rely on the Captioned Affidavit or Prosecution Affidavit at trial and TrackTime's proposed paragraph should be omitted from the Court's Pretrial Order.]

65.     Either party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

66.     For any witness whose prior sworn testimony the parties intend to present at trial, the parties shall identify a list of prior sworn testimony designations to be played or read to the jury and the proposed exhibits used in the designations by 7:00 P.M. four days before the designations are to be played to the jury or the Court. The party shall also disclose how it intends to present the testimony (e.g., by reading or by video) at this time. The party receiving the designations shall inform the opposing party of any objections, and any counter-designations, by 9:00 P.M. three days prior to the testimony being offered into the record. The parties will meet and confer by 10:00 P.M. that same day. If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than 7:00 P.M. two days before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire prior sworn testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter designations, and pending objections; (ii) any exhibits to be introduced with the prior sworn testimony if there remains a pending objection to that exhibit, and (iii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in

waiver of the use of the prior sworn testimony or waiver of objection to the use of the prior sworn testimony.

67.     Colloquy between counsel, requests to have the court reporter read back a question, objections, and any Court rulings on objections will be eliminated when the prior sworn testimony is played at trial.

68.     When the witness is called to testify by prior sworn testimony at trial, the party calling the witness shall provide the Court and the opposing party with copies of the transcript of the designations, counter-designations, and counter-counter designations that will be played pursuant to the Court's procedure.

69.     The designations, counter-designations, and counter-counter-designations will be read or played by video in chronological order at the same time. The parties will be charged for time according to the following proportions: each side shall be charged only with the time needed to play its own designations, counter-designations, or counter-counter-designations, and will not be charged with the time necessary to play the other side's designations, counter designations, or counter-counter-designations.

70.     If offering prior sworn testimony by video, the party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness, including the other party's counter-designations. The offering party shall provide a copy of the video clips to the opposing party no later than 7:00 P.M. the day before the testimony is expected to be played.

71.     For those witnesses whose prior sworn testimony will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name; position or title; the company with which he or she is associated; whether the testimony was given in a

corporate representative capacity.  No other information or argument is allowed and counsel shall not be permitted to argue or comment on the evidence during transition statements. The parties will provide the time to be charged to each party according to the Court's preferences.

72.     If a party intends to use deposition testimony during its opening statement, the party shall disclose the testimony by 10:00 A.M. one day before opening statements. The parties will provide any objections to such testimony by 1:00 P.M. that same day. The parties will meet and confer to attempt to resolve any objections by 4:00 P.M. that same day. If good faith efforts to resolve the objections fail, the party objecting to the use of the testimony shall bring its objections to the Court's attention by 7:00 A.M. the day the opening statements are to be made.

### C.     Impeachment with Prior Inconsistent Testimony

73.     The above procedures regarding designations of prior sworn testimony do not apply to portions of transcripts and/or video used for impeachment of a witness. Any prior sworn testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of designations. Nothing herein prevents a party from objecting to the use of deposition or other prior sworn testimony as impeachment material.

### D.     Objections to Expert Testimony

74.     The parties agree that the Court should rule at trial on any objections to expert testimony as beyond the scope of prior expert disclosures, and that a failure to object to expert testimony as beyond the scope of prior expert disclosures waives the objection as to that testimony. The time taken to argue and decide such objections will be charged to the losing party.

## VIII.   BRIEF STATEMENT OF PLAINTIFF'S INTENDED PROOFS

75.     TrackTime intends to prove that Amazon and Audible, through operation of their products, the Amazon Music and the Kindle applications, including specifically the X-Ray Lyrics

and Immersion Reading features, infringe all of the asserted claims of the '638 Patent. TrackTime intends to prove Amazon's infringement was, and continues to be, willful. TrackTime further intends to prove that it is entitled to damages in the amount of no less than a reasonable royalty for the infringement. TrackTime also intends to prove that it is entitled to costs and expenses. Lastly, TrackTime intends to prove that this is an exceptional case warranting an award to TrackTime of attorneys' fees and expenses, as well as enhanced damages pursuant to 35 U.S.C. § 285 or the Court's equitable power, and enhanced damages pursuant to 35 U.S.C. § 284.

## IX.   BRIEF STATEMENT OF DEFENDANTS' INTENDED PROOFS

76.    Amazon intends to prove that the Amazon and Audible products Amazon Music and the Kindle application including specifically the X-Ray Lyrics and Immersion Reading features do not infringe any of the asserted claims of the '638 Patent.  Amazon also intends to prove that the '638 Patent is invalid under 35 U.S.C. §§ 101. 102, 103 and 112.  Amazon also intends to prove that this is an exceptional case warranting an award of Amazon's attorneys' fees and expenses under 35 U.S.C. § 285 or the Court's equitable power.

## X.   SETTLEMENT

77.    The parties hereby certify that they have engaged in good faith effort to explore resolution of the controversy by settlement. The parties filed a joint status report on mediation on July 14, 2022. (D.I. 270). Amazon also made a settlement offer to TrackTime in August 2023, to which TrackTime has provided a counteroffer. The parties continue to negotiate in good faith.

## XI.   OTHER MATTERS

### A.   Trial Presentations

78.    The presentation at the jury trial will occur in the following order:

| Phase I | TrackTime's case-in-chief on infringement and damages relating to the '638 Patent |
|---|---|

| Phase II | Amazon's responsive case on the '638 Patent |
|---|---|
| Phase III | TrackTime's response on invalidity of the '638 Patent |

79.     Notwithstanding the foregoing, the parties have agreed that fact witnesses may testify once on all issues.

80.     Each side will use best efforts to give the other party at least twenty-four (24) hours' notice before concluding each of the Phases listed above.

**B.    Length of Trial**

81.     The trial will be timed. The parties request thirteen (13) hours per side. Unless otherwise noted, time will be charged to a party for its opening statement, direct and redirect examination of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' arguments on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

82.     The Courtroom Deputy will keep a running total of trial time used by counsel. If a party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

**C.    Jurors**

83.     There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually or at sidebar and then addressing any challenge for cause, and concluding with preemptory strikes. The parties will prepare juror books to give out to the jurors at the beginning of trial.  The juror books shall include the patents, a glossary of common terms and witness sheets for note taking that will include only a photo of a witness and that witness' title.  TrackTime is responsible for putting these juror notebooks

30

together.  TrackTime is to disclose the contents of the notebook to defendants no later than 72 hours before trial begins.  Any objections to the notebooks are to be resolved by the parties in good faith effort and any disputes are to be raised with the court by 7 am on September 13.

### D.    Motions for Judgment as a Matter of Law

84.    The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

### E.    Miscellaneous Stipulations

85.    Neither party will introduce at trial evidence, testimony, or argument that the other party did not produce or rely on opinions of counsel.

86.    Neither party will reference at trial a person's race, religion, national origin, sexual orientation, or sexual activities.

87.    Neither party will reference at trial the role or presence in the courtroom of jury consultants or shadow jurors.

### F.    Motions in Limine

88.    TrackTime's contested motions *in limine*, Amazon's responses, and TrackTime's replies are attached as Exhibits 8-10, including:

- TrackTime's motion *in limine* no. 1 precluding Amazon from eliciting testimony or making argument seeking to disprove actual reduction to practice;

- TrackTime's second motion *in limine* no. 2 precluding Dr. Schonfeld from testifying regarding matters not contained in his opening report, specifically (a) limiting his opinion on whether the ordered combination of claim elements of the asserted claims of the '638 Patent was well-understood, routine, or conventional to ¶ 464 of his opening report, and (b) limiting his opinion on dispositive aspects of Mr. Evans' draft specification to ¶ 90 of his opening report; and

- TrackTime's third motion *in limine* no. 3 precluding Dr. Schonfeld from testifying regarding the diligence of Mr. Evans between December 2, 2010, and January 3, 2011.

93. Amazon's contested motions *in limine*, TrackTime's responses, and Amazon's replies and Exhibits are attached as Exhibits 11-14, including:

- Amazon's motion *in limine* no. 1 to exclude argument, evidence, or testimony regarding Amazon's overall finances, the purchase price of audible, and Amazon's ability to pay any judgment;

- Amazon's motion *in limine* no. 2 to exclude argument, evidence, or testimony disparaging Amazon; and

- Amazon's motion *in limine* no. 3 to exclude argument, evidence, or testimony regarding Amazon patents.

- Exhibits A-I cited in Amazon's MIL briefing.

94. TrackTime has agreed not to present argument, evidence, or testimony regarding Amazon's (including Audible's) tax payments, stock price, policies on labor unions, or the working conditions or pay of Amazon/Audible's workers; Amazon's ability to pay a judgment; or Amazon's general retail sales on Amazon.com. This is an agreed-upon motion *in limine*.


**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DUNLAP BENNETT & LUDWIG

/s/ *Tracy L. Pearson*

Tracy L. Pearson (#5652)
Rolando Diaz (#5845)
1509 Gilpin Avenue, Suite 2
Wilmington, DE 19806
(302) 468-7340
tpearson@dbllawyers.com
rdiaz@dbllawyers.com

*Attorneys for Plaintiff*

ASHBY & GEDDES

/s/ Steven J. Balick

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*


SO ORDERED, this 6th day of September, 2023.


The Honorable Maryellen Noreika
United States District Judge

33