IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | |
|---|---|
| TRACKTIME, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 18-1518(MN) |
| v. | ) |
| | ) |
| AMAZON.COM, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |


Wednesday, September 6, 2023
3:00 p.m.
Pretrial Conference

844 King Street
Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:


DUNLAP BENNETT & LUDWIG PLLC
BY:  TRACY L. PEARSON, ESQ.
BY:  ROBERT P. GREENSPOON, ESQ.
BY:  WILLIAM W. FLACHSBART, ESQ.


                    Counsel for the Plaintiff

```
 1    APPEARANCES CONTINUED:

 2
              ASHBY & GEDDES
 3            BY:  STEVEN J. BALICK, ESQ.

 4            -and-

 5            FENWICK & WEST LLP
              BY:  J. DAVID HADDEN, ESQ.
 6            BY:  SAINA S. SHAMILOV, ESQ.
              BY:  RAVI  R. RANGANATH, ESQ.
 7            BY:  MELANIE MAYER, ESQ.
              BY:  MIN WU, ESQ.
 8            BY:  CHRISTOPHER LAVIN, ESQ.

 9                      Counsel for the Defendants

10

11

12            _ _ _ _ _ _ _ _ _ _

13
```

14:44:45 14

15:01:20 15        THE COURT:   Please be seated.  All right.  Who

15:01:20 16    do we have?

15:01:24 17        MS. PEARSON:  Good afternoon, Your Honor.  Tracy

15:01:26 18    Pearson on behalf of TrackTime.  And I have a couple of my

15:01:33 19    colleagues with me this afternoon, William Flachsbart and

15:01:37 20    Robert Greenspoon.  And our client, Mr. Curt Evans, the

15:01:42 21    inventor and principal of TrackTime.  Thank you.

15:01:46 22        THE COURT:  Okay.

15:01:47 23        MR. BALICK:  Good afternoon, Your Honor.  Steven

15:01:51 24    Balick from Ashby & Geddes here on behalf of the defendant

15:01:55 25    along with co-counsel from Fenwick & West, starting from

15:01:56 1    Your Honor's left, David Hadden.

15:01:58 2              MR. HADDEN:  Good afternoon, Your Honor.

15:02:00 3              MR. BALICK:  Saina Shamilov, Ravi Ranganath,

15:02:04 4    Melanie Mayer, and behind our table is Min Wu, and in the

15:02:08 5    front row, Christopher Lavin.

15:02:11 6              THE COURT:  All right.  Welcome.  Good

15:02:14 7    afternoon.

15:02:14 8              Okay.  Motions in limine.  Let's start with

15:02:21 9    those.  The parties have an agreed upon motion in limine in

15:02:26 10   paragraph 94.  Do you guys expect me to do anything with

15:02:29 11   that or are you just putting it in there to memorialize it?

15:02:33 12             MR. FLACHSBART:  I believe that's just to

15:02:34 13   memorialize it, Your Honor.

15:02:35 14             MS. SHAMILOV:  That's correct, Your Honor.

15:02:36 15             THE COURT:  Okay.  Plaintiff's Motion in Limine

15:02:39 16   No. 1 to preclude Amazon from eliciting testimony and making

15:02:43 17   argument seeking to disprove actual reduction to practice.

15:02:47 18   Specifically plaintiff asked me to preclude two lines of

15:02:51 19   questioning, first of Mr. Evans, TrackTime's inventor was

15:02:55 20   unable to develop a product.  And second, the nature of

15:02:58 21   plaintiff's business and how to be characterized in front of

15:03:02 22   the jury.

15:03:02 23             Let's take the second one first.  Amazon, you

15:03:08 24   all agree that you're not going to refer to TrackTime as a

15:03:12 25   troll, but you want to present neutral facts describing

15:03:16 1   their business model.  Why?  What is it that you really --

15:03:24 2   you want to put in there they're not -- what do you want to

15:03:28 3   say about their business model?

15:03:30 4                MR. RANGANATH:  Good afternoon, Your Honor.

15:03:39 5   Ravi Ranganath of Fenwick & West for Amazon.  All we would

15:03:44 6   like to say, Your Honor, is that TrackTime is in the

15:03:47 7   business of licensing patents, has no other ongoing

15:03:51 8   business.  That's relevant to the hypothetical negotiation

15:03:54 9   and the relationship between the parties as of that time.

15:03:58 10               THE COURT:  Are you going to say that their

15:03:59 11  business is suing people?

15:04:00 12               MR. RANGANATH:  No.

15:04:01 13               THE COURT:  So all you're going to do is say --

15:04:04 14  and this is going to come in only with respect to the

15:04:07 15  hypothetical negotiation?

15:04:09 16               MR. RANGANATH:  That's at least one area.

15:04:12 17               THE COURT:  No, tell me where else.

15:04:14 18               MR. RANGANATH:  Yes, the hypothetical

15:04:17 19  negotiation would be the context.  Other than the related

15:04:21 20  issue of the fact that TrackTime has no practicing product

15:04:25 21  and was unable to develop one.

15:04:28 22               THE COURT:  All right.  So you guys okay with

15:04:30 23  that?  I mean, there is a question in the hypothetical

15:04:35 24  negotiation about whether these parties are competing with

15:04:40 25  each other, so why can't they say, you know, what the

15:04:44 1    business is as long as they're not saying it's a patent

15:04:47 2    troll or using pejorative language or something like that.

15:04:52 3            MR. GREENSPOON:  Right, I understand, Your

15:04:53 4    Honor.  Robert Greenspoon for TrackTime.  From what I heard

15:04:56 5    from Mr. Ranganath, I think he's misinformed.  The

15:04:59 6    hypothetical negotiation takes place in 2014, so both

15:05:02 7    damages experts agree that it is Mr. Evans personally at

15:05:05 8    that moment in time who owned the rights.  So TrackTime as

15:05:09 9    an entity is not really taken into account at all in the

15:05:13 10   hypothetical negotiation, that was an entity that came into

15:05:16 11   existence years later.  Our concern is very, very simple,

15:05:20 12   it's so tempting for defendant in these situations to slip

15:05:25 13   into a tone of voice when they say nonpracticing entity or

15:05:30 14   patent assertion entity or doesn't make anything.  We are

15:05:33 15   proposing the neutral terminology in our motion, it's a

15:05:37 16   licensing business.  I think I heard --

15:05:38 17           THE COURT:  You're worried about their tone of

15:05:40 18   voice.  How do you know their tone of voice is going to be a

15:05:43 19   licensing business.  You know, if you're worried about tone

15:05:46 20   of voice, it doesn't seem like the words, as long as the

15:05:49 21   words are neutral, matter.

15:05:51 22           MR. GREENSPOON:  That's a fair point, Your

15:05:53 23   Honor, but the words nonpracticing entity and et cetera,

15:05:56 24   they're not actually descriptive because they do practice

15:05:59 25   something, they practice a licensing business, so it's

15:06:02 1    simply miss descriptive and we said so in our papers.

15:06:07 2              THE COURT:  Well, he did not say nonpracticing

15:06:13 3    entity, he said they want to say that TrackTime is in the

15:06:16 4    business of licensing patents and has no other ongoing

15:06:20 5    business.  What's wrong with that?

15:06:22 6              MR. GREENSPOON:  I think that would be fine.

15:06:24 7    But that is not -- that's the first time I'm hearing that.

15:06:28 8    I think the words that Mr. Ranganath said in that sentence,

15:06:31 9    I think that would be a great resolution.

15:06:33 10             THE COURT:  Mr. Ranganath, that's what you

15:06:35 11   asked.  Is that what you're okay with?

15:06:37 12             MR. RANGANATH:  Yes, Your Honor, that's fine for

15:06:39 13   Amazon, we don't intend to use the words nonpracticing

15:06:43 14   entity.

15:06:43 15             THE COURT:  I think it's actually easier for the

15:06:46 16   jury to understand if you don't use those terms.

15:06:48 17             Okay.  All right.  So with respect to the first

15:06:55 18   motion in limine of plaintiffs on that issue, I don't know

15:07:04 19   if I'm granting that in part or denying it in part, but

15:07:08 20   regardless, Amazon cannot characterize TrackTime as a patent

15:07:12 21   troll and it's not going to use patent, nonpracticing

15:07:16 22   entity.  But it may use the term that we just heard earlier

15:07:20 23   such as that TrackTime is in the business of licensing

15:07:24 24   patents and has no other ongoing business.

15:07:32 25             Okay.  Now with respect to Mr. Evans was unable

15:07:40 1    to develop a product.

15:07:47 2            MR. GREENSPOON:   Robert Greenspoon again, Your

15:07:51 3    Honor.   This is really -- file this under 403 prejudice.

15:07:56 4    It's not that this is an irrelevant fact necessarily, it's

15:07:59 5    just that it's very, very minute relevance to the facts of

15:08:02 6    this case would be outweighed by the prejudice.   The

15:08:06 7    prejudice would be repeated assertions that Mr. Evans

15:08:09 8    failed.   He's a commercial failure.   His product didn't

15:08:12 9    work, et cetera, et cetera, when as we explained in our

15:08:16 10   papers, the issue of actual reduction to practice, that is

15:08:19 11   successful completion of a physical embodiment is just not

15:08:24 12   in this case.   We have never injected it in this case.

15:08:27 13   There is one place where I think Amazon suggested that we

15:08:30 14   had, but I can represent to Your Honor in all of our answers

15:08:32 15   to their relevant interrogatory which was numero uno,

15:08:37 16   answering interrogatory 1, we always said this is a

15:08:41 17   constructive reduction to practice case on that dimension.

15:08:44 18   The reason why there is -- you know, I have to concede there

15:08:46 19   is a scintilla of relevance, there is a lot of relevance to

15:08:51 20   the development effort because that proves up diligence, but

15:08:54 21   we have a snapshot in time which is January 3rd, 2011,

15:08:58 22   that's the date of the provisional application filing.   And

15:09:02 23   there is case law we cite in our is papers saying the things

15:09:05 24   that happened in that development afterwards are irrelevant,

15:09:08 25   quote irrelevant.

15:09:10 1        That's all we ask, Your Honor, that we recognize

15:09:12 2   that there is a moment in time where we just don't have to

15:09:15 3   inspect how it went, we don't have to answer the question

15:09:18 4   did they succeed.

15:09:22 5        THE COURT:  Give me an idea of what you want to

15:09:30 6   do here.

15:09:32 7        MR. RANGANATH:  Yes, Your Honor.  So TrackTime,

15:09:34 8   we heard, intends to present evidence on the "development

15:09:39 9   effort."  Well, part of that --

15:09:41 10       THE COURT:  Conception, they're trying to swear

15:09:44 11  behind something so they're going to have a conception date

15:09:47 12  and then talk about the development effort in terms of

15:09:49 13  diligence.

15:09:50 14       MR. RANGANATH:  Correct, but part of that

15:09:52 15  development effort is it failed.  I heard a date of

15:09:56 16  June 2011.  Mr. Evans had at that point failed to develop a

15:10:02 17  working software application, so I don't think there is a

15:10:05 18  date issue.  There is a separate -- you know, we explain in

15:10:09 19  the papers three different legal issues to which Mr. Evans

15:10:12 20  failure to develop a working application are relevant, but

15:10:16 21  let's start with conception, right, which is related to the

15:10:19 22  issue that counsel raised.  The test for conception is that

15:10:27 23  conception is complete only when the idea is so clearly

15:10:30 24  defined in the inventor's mind that only ordinary skill

15:10:35 25  would be necessary to reduce the invention to practice

15:10:38 1    without --

15:10:38 2                 THE COURT:  Tell me the three things that you're

15:10:40 3    saying.  I understand that one.  Go to the next one.

15:10:44 4                 MR. RANGANATH:  Understood.  The other issues

15:10:46 5    are secondary considerations and lack of commercial success,

15:10:49 6    in particular.  And the parties' bargaining positions at the

15:10:54 7    hypothetical negotiation.  If I could just address what I

15:10:57 8    assume is a likely argument on secondary considerations --

15:11:01 9                 THE COURT:  No.  Look, they're not really

15:11:03 10   disputing that there is some tangental relevance.  They're

15:11:07 11   saying it's prejudice, why don't you hit the prejudice

15:11:10 12   aspect.

15:11:11 13                MR. RANGANATH:  Yes, Your Honor.  We don't

15:11:12 14   intend to make comments that deliberately impune -- that

15:11:16 15   impune Mr. Evans' ability, that disparage him for this

15:11:22 16   failure.

15:11:22 17                THE COURT:  Are you going to call him a failure?

15:11:25 18                MR. RANGANATH:  No, we don't intend to call him

15:11:27 19   a failure.  We'll just present the facts that he was unable

15:11:31 20   to develop a working application despite having a team of

15:11:33 21   software engineers at his disposal for a year.  Those are

15:11:33 22   facts that we will present.

15:11:33 23                THE COURT:  I am going to deny this part of the

15:11:42 24   motion in limine.  There is no real dispute that this

15:11:42 25   evidence is relevant and I think it's relevant to the

15:11:49 1    conception of secondary considerations and the hypothetical

15:11:52 2    negotiation.  I don't see the prejudice right now as

15:11:56 3    outweighing the relevance.  If during trial the defendants

15:11:59 4    start doing something that is beyond what's been represented

15:12:03 5    here or that you think pushes this into the realm of overly

15:12:08 6    prejudicial, you may raise it again.

15:12:12 7             Okay.

15:12:13 8             MR. RANGANATH:  Thank you, Your Honor.

15:12:14 9             THE COURT:  Plaintiff's Motion in Limine No. 2

15:12:16 10   to preclude Dr. Schonfeld from testifying regarding matters

15:12:20 11   not contained in his opening report.  Well, from the title

15:12:23 12   of that, I would say it's granted, but there seems to be a

15:12:27 13   dispute as to whether he actually disclosed things,

15:12:30 14   particularly the ordered combination aspect of Step 2 of the

15:12:40 15   Alice inquiry in his opening report.

15:12:44 16            Now, I have to say you guys made this one a

15:12:47 17   little hard for me because you just started referring back

15:12:50 18   to all kinds of other papers, so I looked to what I could,

15:12:54 19   but I couldn't really find it.  So what I want to see from

15:12:58 20   the defendants is where Dr. Schonfeld talked about the

15:13:00 21   ordered combination in his opening report.  I think it's in

15:13:11 22   maybe paragraph 90, but you can show me.  And then I just

15:13:14 23   want to understand, are you going to have him say anything

15:13:16 24   else about the ordered combination other than what's in that

15:13:19 25   report?

15:13:20  1          MR. WU:  Good afternoon, Your Honor.  Min Wu for

15:13:25  2  the defendants.

15:13:29  3          Yes, regarding Dr. Schonfeld's opening report,

15:13:39  4  in paragraph 464 in his opening report --

15:13:43  5          THE COURT:  Can you put it up so I can see it,

15:13:46  6  because I don't have it all here because you didn't attach

15:13:48  7  any of those exhibits.  That one just says it, if that's all

15:14:08  8  he's going to do is say it, okay, but is he going to do more

15:14:12  9  than just say it?  Is he going to say well, it doesn't show

15:14:15 10  the ordered combination because and then give something

15:14:18 11  that's not in his report?

15:14:20 12          MR. WU:  Right.  The real issue here I think is

15:14:23 13  not the opening report --

15:14:25 14          THE COURT:  No, the issue is his opening report

15:14:27 15  because the question is, anything you want him to say not on

15:14:31 16  rebuttal, but in -- you know, in his opening report that on

15:14:36 17  his -- when you put him on the stand, why wasn't it in his

15:14:40 18  opening report.  So you're saying look, it is in his opening

15:14:44 19  report, so is that the only place you have in his opening

15:14:48 20  report where he just mentions those words, is that it in the

15:14:51 21  opening report?

15:14:53 22          MR. WU:  That is correct, Your Honor.

15:14:54 23          THE COURT:  Okay.  So then at trial, do you want

15:14:57 24  him to say something more than just those words?

15:15:00 25          MR. WU:  Well, Dr. Schonfeld has only one chance

15:15:04 1   to be on the stand.  He should be anticipating plaintiff's

15:15:08 2   argument, so he will be rebutting --

15:15:13 3              THE COURT:  What is he going to say?  What is so

15:15:16 4   important that he says that you didn't bring it up

15:15:21 5   originally, like, you knew that Step 2 was the only thing at

15:15:25 6   issue, and you're telling me, in his whole report, you never

15:15:29 7   brought up the ordered combination other than to recite the

15:15:32 8   test?

15:15:34 9              MR. WU:  Because at the time of his opening

15:15:36 10  report, Dr. Schonfeld did not know Dr. Hernandez's

15:15:41 11  combination of the ordered combination, and that's why --

15:15:44 12             THE COURT:  How is that possible?  Did you guys

15:15:46 13  do as I required contentions going back and forth, so

15:15:50 14  contentions on why you thought the claims were invalid or

15:15:53 15  ineligible and then they had to respond as to why they

15:15:56 16  weren't invalid or were ineligible?

15:16:00 17             MR. WU:   I believe TrackTime did serve validity

15:16:03 18  contentions, but --

15:16:06 19             THE COURT:  Okay.  So if they did, if they

15:16:08 20  served contentions, did you tell them beforehand, did they

15:16:12 21  know in response to contentions?

15:16:14 22             MR. GREENSPOON:  Yes, Your Honor, in that

15:16:15 23  document there is sort of a cover document that's about

15:16:18 24  twenty pages, a good chunk of the last part of that cover

15:16:22 25  document went into it and then there is an addendum, addenda

15:16:26 1    --

15:16:26 2                     THE COURT:  I don't know what document you're

15:16:27 3    talking about on contentions.

15:16:30 4                     MR. GREENSPOON:  I'm just saying we actually did

15:16:31 5    it twice in the documents.

15:16:33 6                     THE COURT:  You told them twice that you thought

15:16:34 7    there was something specific about the ordered combination

15:16:37 8    of elements?

15:16:37 9                     MR. GREENSPOON:  Yes, Your Honor.

15:16:38 10                    THE COURT:  And that was before expert reports

15:16:40 11   were due?

15:16:41 12                    MR. GREENSPOON:  Yes, Your Honor.

15:16:41 13                    THE COURT:  And so you told them that before

15:16:47 14   expert reports were due, is that right?

15:16:50 15                    MR. WU:  I would dispute that.  I don't have

15:16:52 16   perfect memory of that --

15:16:54 17                    THE COURT:  So can I see it so I know who to

15:16:58 18   believe.

15:16:59 19                    MR. GREENSPOON:  I would have to put it on my

15:17:01 20   computer.  This could take a little bit of time.  I

15:17:02 21   apologize, Your Honor.

15:17:02 22                    THE COURT:  I just need to know who is telling

15:17:08 23   me the story here.

15:18:50 24                    MR. GREENSPOON:  Your Honor, I'm connecting now

15:18:52 25   to WiFi.

15:18:57  1          THE COURT:  All right.  Thank you.

15:21:39  2          MR. WU:  If it may help the Court, I think I'm

15:21:43  3  looking at plaintiff's validity contentions and there is a

15:21:46  4  section called Section 101 and the phrase ordered

15:21:50  5  combination does not appear in that section.

15:21:52  6          THE COURT:  Why don't you talk to them about it.

15:21:59  7  Talk to them, you guys -- you can show him what you're

15:22:02  8  talking about, he can show you what he's talking about.

15:22:16  9          (Counsel conferring.)

15:22:41 10          MR. FLACHSBART:  Are we prosecution or defense?

15:22:45 11          COURT CLERK:  Prosecution.

15:22:46 12          MR. FLACHSBART:  Thank you.

15:22:49 13          MR. GREENSPOON:  Okay, Your Honor, this is the

15:22:51 14  paragraph from the First Amended Complaint.  If you don't

15:22:55 15  mind if I sit down while I do this, it will go smoothly.

15:22:59 16          THE COURT:  But let's talk about the complaint.

15:22:59 17  What are the contentions?

15:23:02 18          MR. GREENSPOON:  This is the attachment, the

15:23:04 19  addendum at the end of our validity contentions.

15:23:08 20          THE COURT:  Which was submitted when?

15:23:10 21          MR. GREENSPOON:  That was on the deadline date.

15:23:12 22  I can go to the signature date, October 2022.  October 21,

15:23:20 23  2022.

15:23:22 24          THE COURT:  Okay.  Tell me what you said.

15:23:22 25          MR. GREENSPOON:  Okay.  In this document we

15:23:31 1    pointed out to them that the First Amended Complaint was

15:23:36 2    deemed not futile under Your Honor's order.

15:23:39 3              THE COURT:  I don't care about that.  I want to

15:23:44 4    see where you put into issue the ordered combination.  And

15:23:47 5    you said because presumably, you're saying they did that in

15:23:50 6    the answering report of their expert, right, he said there

15:23:53 7    is something special here about the ordered combination,

15:23:58 8    right?  Right?

15:23:59 9              MR. WU:  Yes.

15:24:00 10             THE COURT:  That's what you're saying, you're

15:24:01 11   saying their expert said in his report there is something

15:24:05 12   special here about the ordered combination so your expert

15:24:07 13   had to reply.

15:24:09 14             MR. WU:  That's correct.

15:24:10 15             THE COURT:  My question is, where did you

15:24:12 16   disclose that you were going to say that in the contentions

15:24:15 17   so that they should have known it was coming?

15:24:17 18             MR. GREENSPOON:  Yes, Your Honor.  The page that

15:24:19 19   you see where the --

15:24:20 20             THE COURT:  Can you make it bigger?  I can't

15:24:23 21   read that.

15:24:24 22             MR. GREENSPOON:  I will definitely make it

15:24:27 23   bigger.

15:24:28 24             THE COURT:  Go with the plus sign up to the next

15:24:31 25   to the hundred percent.  Much better, thanks.

15:24:34 1          MR. GREENSPOON:  So TrackTime's FAC was

15:24:37 2    accompanied by the extensive factual declaration by

15:24:40 3    Dr. Agrawala, and we're still talking about the Step 2

15:24:46 4    inquiry.  But that's telling them the First Amended

15:24:50 5    Complaint is even though you didn't tell us anything in your

15:24:54 6    contentions about ordered combinations, we're going to point

15:24:57 7    you back to the document and tell you where we have our

15:24:59 8    contentions why it's good and eligible.

15:25:02 9          Now back to the First Amended Complaint, I'm

15:25:05 10   just going to search for ordered combination, nonobvious

15:25:12 11   technology, the ordered combination of claim elements

15:25:15 12   comprising, then it goes on, paragraph 17, there is a list

15:25:19 13   of things.

15:25:22 14          THE COURT:  Show me the stuff that is the same

15:25:25 15   as what your expert has now said.  They say they need to

15:25:31 16   respond to your expert, show me what is here that your

15:25:39 17   expert said.

15:25:51 18          MR. GREENSPOON:  Up in paragraph 234, navigating

15:25:55 19   Media playback using scrollable text, et cetera --

15:25:58 20          THE COURT:  I can't read it and I don't know

15:26:00 21   where in this huge paragraph you're reading from, so make it

15:26:04 22   bigger, please.

15:26:06 23          MR. GREENSPOON:  Yes, Your Honor.

15:26:25 24          THE COURT:  Okay.  What are we looking at here?

15:26:25 25          MR. GREENSPOON:  Right there.  Yes.  So even if

15:26:32 1    the abstract idea is accepted there would be numerous ways

15:26:36 2    of indexing video or using an index to synchronize text in a

15:26:39 3    video.  That would not require one to perform the ordered

15:26:41 4    combination of steps claimed.  So we're pointing back to

15:26:45 5    paragraph 25 of the prior expert's declaration.  The

15:26:48 6    principal underlying the abstract -- well, it's the --

15:26:54 7            THE COURT:  I just want to see where you

15:26:57 8    actually say what is unique or not well-known or

15:27:00 9    conventional about this ordered combination, and so far --

15:27:03 10   all I need to see, I don't need to see you telling me where,

15:27:08 11   look at the complaint, just show me where you said what is

15:27:12 12   in your expert's -- what they now have to respond to from

15:27:17 13   your expert.

15:27:19 14           MR. WU:  Your Honor, may I respond briefly?

15:27:21 15           THE COURT:  No, you may not.

15:27:30 16           MR. GREENSPOON:  The ordered combination of

15:27:31 17   claim elements comprising a synchronization.

15:27:35 18           THE COURT:  There is nothing on the screen.

15:27:37 19           MR. GREENSPOON:  Paragraph 17, I'm going to zoom

15:27:41 20   again.  "The ordered combination of claim elements

15:27:45 21   comprising a synchronization index comprising an electronic

15:27:48 22   transcript indicating text corresponding to audio from

15:27:52 23   multimedia and further indicating respective times within

15:27:56 24   the multimedia corresponding to when a word or range of

15:28:00 25   words is audible in the multimedia."

15:28:00 1          And then it goes on, Using the synchronization

15:28:04 2   index for selecting portions of multimedia or display

15:28:08 3   including various things, includes but not limited to

15:28:09 4   performance of time code lookups, we're still in

15:28:13 5   paragraph 17, provision of information from displaying text

15:28:15 6   from the synchronization index to a mobile computing device,

15:28:21 7   having a viewing screen and an input interface and the

15:28:24 8   receipt of a user selected mobile computing touch sensitive

15:28:28 9   input interface gesture performed on a portion of a viewing

15:28:32 10  screen corresponding to a displayed word from the

15:28:36 11  synchronization index.

15:28:38 12          I will tell you, Your Honor, we have simplified

15:28:40 13  our express of this to as you heard at the summary judgment

15:28:44 14  hearing, using human touch onto words or a range of words on

15:28:48 15  a mobile device touch screen to cause a lookup using a

15:28:53 16  synchronization index that resides on that mobile device to

15:28:56 17  change the playback position to where those words

15:29:01 18  correspond.

15:29:02 19          THE COURT:  All right.  Now you can respond and

15:29:04 20  tell me what is it that their expert said that you need to

15:29:08 21  respond to that's not disclosed here?

15:29:14 22          MR. WU:  I would point out this is not

15:29:17 23  plaintiff's contentions, this is their --

15:29:20 24          THE COURT:  I know, it's the declaration

15:29:21 25  attached to their First Amended Complaint.

15:29:24  1              MR. WU:  It's the complaint.

15:29:25  2              THE COURT:  I know.  So fine, it's the

15:29:27  3    complaint.  I don't care.  I want to know if they disclosed

15:29:30  4    it beforehand.  You're saying shocked, shocked I say that

15:29:34  5    their expert said something about the ordered combination.

15:29:36  6    They're saying no, we disclosed it earlier.  So now I'm

15:29:40  7    asking you, they just pointed to me as to what they're

15:29:44  8    showing.  What did their expert say that is different that

15:29:48  9    wasn't here that your expert needs to respond to?

15:29:53 10              MR. WU:  Yeah, of course.  So in Dr. Schonfeld's

15:29:57 11    reply report --

15:29:59 12              THE COURT:  That's not what I asked.  What did

15:30:03 13    their expert say in his report that's not here that your

15:30:10 14    expert had to respond to?

15:30:13 15              MR. WU:  Of course.  So in paragraph 383 of

15:30:19 16    Dr. Hernandez's report he said seamlessly navigate through a

15:30:24 17    media --

15:30:25 18              THE COURT:  Can you put -- you guys know this

15:30:38 19    technology, I don't, so if you want me to understand it, you

15:30:41 20    got to show me this stuff and not just like read it at me.

15:30:45 21    Okay?  This is Dr. Hernandez's expert report, right?

15:30:53 22              MR. WU:  That is correct.

15:30:54 23              THE COURT:  Okay.

15:30:54 24              MR. WU:  So he goes on from paragraph 383 to

15:31:08 25    387.

15:31:11  1                    THE COURT:  Okay.

15:31:16  2                    MR. WU:  And I would say this is not -- I

15:31:20  3      apologize for that.

15:31:22  4                    I would say this is not the same as plaintiff's

15:31:25  5      First Amended Complaint.

15:31:27  6                    THE COURT:  Can you give me -- I take it that

15:31:31  7      there is a lot more here, but can you just give me an

15:31:34  8      example that's simplified so I can understand where they

15:31:37  9      said something different or new?

15:32:27 10                    MR. WU:  So 383 starts with, "Thus each of the

15:32:32 11      asserted claims of the '638 patent brings together numerous

15:32:36 12      unconventional elements and steps previously unknown in the

15:32:39 13      fields of interactive multimedia transition, distribution

15:32:44 14      systems, and computing technology."

15:32:48 15                    I can go on, but --

15:32:50 16                    THE COURT:  Okay.  What I can't tell from that

15:32:55 17      sentence is are they saying is it the bringing together that

15:32:58 18      makes it the ordered combination because it almost makes it

15:33:01 19      sound like the elements themselves are not well-known,

15:33:05 20      conventional, because they were unconventional elements and

15:33:09 21      previously unknown.  So that's why I'm trying to figure out

15:33:14 22      if this really is about an ordered combination.

15:33:17 23                    MR. WU:  Yes, it is.  In fact, this whole

15:33:21 24      section is about ordered combination -- well, Step 2, but

15:33:26 25      that part is talking about ordered combination.  This

15:33:34 1    section about Step 2, and then I believe it starts 380, it

15:33:47 2    says the following elements that are in combination were

15:33:53 3    neither well-known, routine or conventional.  And then the

15:34:01 4    383 falls under the ordered combination argument.

15:34:19 5              MR. GREENSPOON:  Your Honor, may I?

15:34:20 6              THE COURT:  Yes.

15:34:21 7              MR. GREENSPOON:  What Mr. Wu -- my battery ran

15:34:29 8    out.  What Mr. Wu just put up is in the FAC, the words

15:34:34 9    verbatim that our expert also agreed with is his opinion,

15:34:39 10   the words verbatim that you just saw.  And I'm going to show

15:34:42 11   you as soon as my computer turns on again, they were

15:34:46 12   verbatim in the First Amended Complaint, that's the First

15:34:49 13   Amended Complaint that was brought into the contentions.  As

15:35:03 14   you can see, Your Honor, I didn't expect to be deploying the

15:35:06 15   laptop today.  Apologies.  And there it is.

15:35:33 16             I will make it bigger.  In Dr. Agrawala's

15:35:41 17   opinion, he was a previous expert who just happened to agree

15:35:44 18   with everything we're saying, the inventions recited in the

15:35:47 19   asserted claims of the patents-in-suit bring together

15:35:50 20   numerous unconventional elements and steps previously

15:35:52 21   unknown in the fields of interactive multimedia,

15:35:55 22   transmission distribution systems and computing technology.

15:36:02 23   We could go further and do further paragraphs and you'll see

15:36:02 24   that there is strong carry forward in the same words and

15:36:06 25   same concepts.

In terms of a contention whether they knew what our position was going to be at the time that Dr. Schonfeld signed his report, I think the record is very clear.

And Your Honor, in our papers, I would like to point out that as soon as Your Honor ruled and issued your order on abstract idea in Docket 28, that froze in time under the law what the ordered combination is that must be analyzed by the expert.

If Your Honor has no more questions, I'll sit down.

THE COURT:  All right.  I am not going to rule on this today because nobody seems prepared to show me.  So what I need from the defendants, I know you referred me to a whole bunch of other DI numbers and exhibits to DI numbers, but you know what, I'm not going to sit there and go find what you're talking about.  So what I need you to do is I need you to say this is what he said that was new in his opposition report and we need to reply to and this is how we replied.  Then you can show me -- so you can submit that to me.  You can say it's new, in his answering report their expert said for the first time this and our expert replied this.  You can then go and say it wasn't the first time, they've known this since at least when we filed our First Amended Complaint and we told them in our contentions go back and look at what we had in our First Amended Complaint.

15:37:50 1    You guys can all do that.  You can get it to me my Thursday

15:37:54 2    and you can get me your response on Friday.  In the

15:37:57 3    meantime, I'm going to withhold, reserve on this one.

15:38:01 4              Motion in Limine No. 3, to preclude

15:38:05 5    Dr. Schonfeld from testifying regarding diligence of

15:38:08 6    Mr. Evans between December 2nd, 2010 and January 3rd, 2011.

15:38:22 7    So as I read it, Amazon's expert addressed both actual and

15:38:27 8    constructive reduction to practice during the period that

15:38:30 9    included the critical period.  So why can't he testify and

15:38:35 10   you cross-examine him?

15:38:37 11             MR. GREENSPOON:  Right.  Yes, Your Honor, I was

15:38:39 12   going to get right to that.  The thirty-three day window is

15:38:43 13   very important for this case.  When you're throwing darts at

15:38:46 14   let's say a year-and-a-half window, that is not probative as

15:38:51 15   to whether there was diligence within the thirty-three day

15:38:54 16   window, he just didn't analyze that thirty-three day window,

15:38:57 17   it's that simple.

15:38:58 18             THE COURT:  Let me see, where did he analyze

15:39:00 19   that thirty-three day window?

15:39:02 20             MS. MAYER:  Good afternoon, Your Honor.  Melanie

15:39:02 21   Mayer from Fenwick & West.

15:39:10 22             I think just to set the framework, though, the

15:39:14 23   thirty-three day window was a much larger window.  Because

15:39:18 24   TrackTime is going to present evidence that it -- Master, we

15:39:22 25   were going to present evidence that Master conceived that in

15:39:25 1    September of 2009 so the critical period is actually

15:39:31 2    September 2009 to January 3rd, 2011.  So that's the period

15:39:34 3    that Dr. Schonfeld addressed in his report.  And he had no

15:39:38 4    way to know that TrackTime is now not going to present

15:39:42 5    actual reduction to practice and they're not going to rely

15:39:47 6    on certain dates.  Right?  So their argument is well,

15:39:50 7    Dr. Schonfeld, he should have just looked at the narrower

15:39:54 8    period and showing diligence in a small period is different

15:39:57 9    than a large period.  But when Dr. Schonfeld issued his

15:40:01 10   report, he didn't know that TrackTime would make these

15:40:05 11   different positions.  All right?  So he addressed the whole

15:40:08 12   period and that whole period includes the thirty-three days

15:40:11 13   that Mr. Greenspoon --

15:40:13 14          THE COURT:  When was it changed in position?

15:40:17 15          MS. MAYER:  With the MIL, so we didn't know that

15:40:20 16   TrackTime was not going to assert an actual reduction to

15:40:23 17   practice until we saw their motions in limine.

15:40:29 18          THE COURT:  Just so I get this straight, when

15:40:31 19   did they say the conception date is?

15:40:35 20          MS. MAYER:  So their conception date, I'm not

15:40:37 21   quite sure what they're going to argue --

15:40:40 22          THE COURT:  Well, we're a week from trial.  What

15:40:42 23   is the conception date?

15:40:44 24          MR. GREENSPOON:  The conception date is

15:40:46 25   July 15th, 2008.  The most provable conception date because

it's based on the draft patent application is November 23, 2010.

THE COURT:  Okay.  And then you need to show diligence from those dates to when?

MR. GREENSPOON:  It's from a date just prior to the other inventors entry into the field through constructive reduction to practice.

THE COURT:  And when was that?

MS. MAYER:  September 2009.

THE COURT:  Okay.  So you need to show diligence from either -- I guess from just before September 2009 to when?

MR. GREENSPOON:  Actually, Your Honor, that's contested because we don't believe that Master has to prove for that --

THE COURT:  Assume that that's the case.

MR. GREENSPOON:  If that's the case then it would be just before the September 2009 date through the same date, January 3rd, 2011.

THE COURT:  So if they're going to put on evidence that Masters should get the September 2009 date, why am I supposed to limit their evidence to this thirty days that you think is relevant when they don't think that's the thirty days that's relevant?

MR. GREENSPOON:  First off, Your Honor, you did

15:42:06 1   Daubert their expert, Dr. Schonfeld, cannot talk about the

15:42:11 2   September 2009 date.  So secondly --

15:42:13 3          THE COURT:  But they can have other evidence put

15:42:16 4   on, right?

15:42:17 5          MS. MAYER:  Yes, Mr. Masters will be at trial,

15:42:19 6   Your Honor.

15:42:20 7          THE COURT:  Okay.

15:42:20 8          MR. GREENSPOON:  Fair enough, they can attack

15:42:23 9   the diligence in a larger window, but as a matter of logic

15:42:26 10  that is not the same thing as an opinion attacking diligence

15:42:29 11  in the smaller thirty-three day window.

15:42:34 12         THE COURT:  I am going to deny this motion for

15:42:36 13  now.  When it comes up, if there is something that you think

15:42:39 14  they're putting in something that wasn't disclosed fairly in

15:42:42 15  the reports, you can object, but I'm going to deny it now

15:42:46 16  because I do think allowing him to talk about diligence when

15:42:49 17  there is a disputed period when that diligence is is the

15:42:54 18  correct outcome.  That's the end of plaintiff's motions in

15:42:57 19  limine.

15:42:59 20         Defendants Motion in Limine No. 1 to exclude

15:43:01 21  argument evidence or testimony regarding Amazon's overall

15:43:02 22  finances, the purchase price of Audible and Amazon's ability

15:43:02 23  to pay any judgment.  The parties seem to agree that

15:43:12 24  TrackTime will not present evidence regarding the ability to

15:43:12 25  pay a judgment, stock price or general retail sales to

15:43:22 1    Amazon.com and agree that TrackTime's expert, Mr. Peterson,

15:43:27 2    can discuss various inputs that he relied on.  So what's the

15:43:30 3    issue here?

15:43:31 4              MR. RANGANATH:  Your Honor, as often happens the

15:43:34 5    parties' dispute narrowed during briefing.  I think we're

15:43:37 6    really down to just two issues, one which has a subissue.

15:43:43 7    The first is TrackTime says it intends to talk about

15:43:47 8    Amazon's total Prime revenue and total subscribers.  I think

15:43:51 9    it's undisputed that that is not a direct input into the

15:43:55 10   damages model of its expert, Mr. Peterson.  The only

15:43:59 11   justification TrackTime provides in briefing is that it's

15:44:02 12   principal, Mr. Evans, ought to be able to talk about

15:44:06 13   Amazon's total Prime subscribers and Prime revenue and how

15:44:10 14   he would have considered it at the time of the hypothetical

15:44:12 15   negotiation.

15:44:13 16             So there are two problems with that.  Mr. Evans

15:44:16 17   has no basis to know that information.  And any information

15:44:20 18   he knows today is as a result of a side agreement for

15:44:24 19   purposes of facilitating resolution of this case.  So he has

15:44:27 20   no personal knowledge.  And what parties would have

15:44:31 21   considered at the negotiation is quintessential opinion

15:44:35 22   testimony reserved for damages experts as the cases in our

15:44:38 23   papers show.  So that's one issue.  And if Your Honor would

15:44:41 24   like to split these issues up, we can, or I can go straight

15:44:45 25   to the next one.

15:44:46  1                    THE COURT:  I just want to start moving this

15:44:48  2       along.

15:44:49  3                    MR. RANGANATH:   The next issue is the purchase

15:44:51  4       price, Amazon's purchase price for Audible in 2008.   So

15:44:55  5       Amazon paid $300 million to purchase Audible in 2008.   That

15:44:59  6       is not disputed.   The question is what relevance this has to

15:45:03  7       any issue in the case.   It is not an input to Mr. Peterson's

15:45:07  8       damages model.   Both parties reference it almost in passing.

15:45:12  9       Neither party analyzes it.   The acquisition happened in

15:45:16  10      2008.   The patent issued in 2014.   And the accused Emergent

15:45:21  11      reading feature launched in 2012.   So it's unclear how

15:45:25  12      Amazon's purchase price of Audible bears on the negotiation

15:45:28  13      at all.   And it doesn't.

15:45:32  14                   THE COURT:   Okay.   Let's take subscriber numbers

15:45:38  15      and Prime revenue, what basis does Mr. Evans have to say

15:45:42  16      that he knew of those things at that time?

15:45:45  17                   MR. FLACHSBART:   He didn't.

15:45:46  18                   THE COURT:   Okay.   So he's not going to testify

15:45:48  19      that he knew of those things at that time?

15:45:50  20                   MR. FLACHSBART:   No.

15:45:50  21                   THE COURT:   He's not going to?

15:45:52  22                   MR. FLACHSBART:   That he knew of those things at

15:45:54  23      that time.

15:45:54  24                   THE COURT:   He's not going to testify --

15:45:56  25                   MR. FLACHSBART:   Not their confidential

15:45:58 1    impression, he'll certainly testify about what he knew

15:46:01 2    publicly from Amazon.

15:46:02 3              THE COURT:  What's the relevance of that?

15:46:04 4              MR. FLACHSBART:  He's one of the parties to the

15:46:06 5    hypothetical negotiation.

15:46:06 6              THE COURT:  Yes.  But that doesn't -- they have

15:46:10 7    a whole bunch of case law that says that's opinion

15:46:13 8    testimony.  He can't get in there and say this is what I

15:46:16 9    would have done.  He's a fact witness.  He testifies on

15:46:19 10   facts, not on hypothetically.

15:46:21 11             MR. FLACHSBART:  Absolutely he can testify as to

15:46:24 12   his mental state at the time, what he would have looked for

15:46:27 13   in negotiations, those things are utterly --

15:46:30 14             THE COURT:  Yes, but if he says I looked at what

15:46:32 15   Prime's revenue was and I looked at their subscribers but I

15:46:35 16   don't know what those were, is that what you want him to

15:46:38 17   say, or do you want him to put in numbers?

15:46:40 18             MR. FLACHSBART:  No, I'm not going to have

15:46:42 19   Mr. Evans put in any numbers with respect to something that

15:46:44 20   came from Amazon.  Mr. Evans is going to be a fact witness.

15:46:48 21             THE COURT:  What is he going to say, he's going

15:46:51 22   to put in a number and say they had a billion dollars in

15:46:55 23   revenue or is he not?

15:46:56 24             MR. FLACHSBART:  He is not going to say that?

15:46:58 25             THE COURT:  Is anyone going to say anything

15:47:00 1    about Prime's revenue or the number of subscribers?

15:47:04 2              MR. FLACHSBART:  I believe Mr. Peterson will do

15:47:07 3    it as part of his -- as part of his financial analysis

15:47:11 4    pursuant --

15:47:12 5              THE COURT:  And did he put that in his report?

15:47:14 6              MR. FLACHSBART:  Yes, anything he's going to

15:47:15 7    testify to would have been in his report.

15:47:18 8              THE COURT:  So what did he put in his report?

15:47:23 9    While he's looking at that, what about the purchase price

15:47:27 10   for Audible given that that occurred in 2008, came out in

15:47:34 11   2012 and the patent issued in 2014, so the hypothetical

15:47:37 12   negotiation would have been long after those things.

15:47:39 13             MR. FLACHSBART:  The hypothetical negotiation

15:47:40 14   would have been after those things for sure, but both of the

15:47:43 15   experts considered it in looking at the value of the

15:47:45 16   technology.  I mean, they both considered the fact, I don't

15:47:48 17   think that the fact is obviously relevant to the value of

15:47:52 18   the overall technology.  Mr. Peterson considered it in his

15:47:56 19   report at least twice, I think, and then Mr. Macartney,

15:48:01 20   Dr. Macartney cites to it three times.

15:48:05 21             THE COURT:  So does your expert cite to this,

15:48:12 22   it's relevant, we're talking about the --

15:48:16 23             MR. RANGANATH:  Yes, Your Honor, our expert did

15:48:18 24   cite to it mainly in the context of just describing the

15:48:21 25   facts of the acquisition.  In fact one of the citations is a

15:48:24 1   hyperlink to a news article about the acquisition that

15:48:27 2   happens to have the purchase price in the link.

15:48:31 3   Dr. Macartney will not over affirmative testimony and open

15:48:34 4   the door into the purchase price for Audible.

15:48:37 5           THE COURT:  Why is it not relevant to the value

15:48:40 6   of something here, that's what they're saying, the value of

15:48:46 7   the technology?

15:48:47 8           MR. RANGANATH:  So the technology didn't exist

15:48:49 9   in 2008.

15:48:50 10          THE COURT:  I am going to allow in the purchase

15:48:53 11  price of Audible.  I'm not going to allow in the information

15:48:56 12  about the number of subscribers in Prime because it doesn't

15:48:59 13  seem like -- they want to put that in through Mr. Evans.

15:49:04 14  Mr. Evans, I think what they're suggesting is really expert

15:49:07 15  testimony and he didn't have the numbers at that time.  So

15:49:12 16  if he wants to say this is what I would have considered,

15:49:15 17  then it seems odd that someone else has to come in and say

15:49:19 18  this is what it was, but then he would have done this but he

15:49:22 19  didn't know about it.  And it just seems like it's confusing

15:49:25 20  and prejudicial, so I'm going to grant that in part and deny

15:49:29 21  that in part.

15:49:31 22          Defendants' Motion in Limine No. 2 to exclude

15:49:33 23  arguments, evidence or testimony disparaging Amazon.  This

15:49:37 24  one I am going to grant to the extent it's not already

15:49:41 25  agreed to.  I think what we're left with are congressional

15:49:50  1   reports and news stories.  Is there something else that you

15:49:53  2   agreed is going to stay out?

15:49:56  3            MS. MAYER:  Just the discovery, the alleged

15:49:58  4   discovery misconduct.

15:49:59  5            THE COURT:  No discovery misconduct is coming in

15:50:03  6   in front of the jury.  There is no motion for spoliation in

15:50:05  7   front of me.  If that was an issue, it could have been

15:50:08  8   brought up in a discovery conference.  We're not putting

15:50:10  9   that in front of the jury and we're not putting the

15:50:14 10   congressional reports and news stories in because I think

15:50:16 11   that it's irrelevant and to the extent it's at all relevant,

15:50:20 12   it's he overly prejudicial.

15:50:23 13            Defendants' Motion in Limine No. 3 to exclude

15:50:24 14   argument, evidence, and testimony regarding Amazon's patent.

15:50:29 15   All right.  Judicial estoppel, that's not coming in in front

15:50:35 16   of the jury, so what is it that you expect to be doing with

15:50:38 17   judicial estoppel?

15:50:40 18            MR. GREENSPOON:  Nothing, Your Honor.  We are

15:50:41 19   not going to be asserting or presenting a judicial estoppel

15:50:42 20   case to the jury.  This is a motion directed to other

15:50:42 21   evidence.

15:50:50 22            THE COURT:  So I think I have already -- you can

15:50:55 23   try and tell me.  I don't think that this is relevant.  So

15:50:58 24   you can tell me why it's relevant, and how you would put in

15:51:02 25   evidence of this.

15:51:04 1          MR. GREENSPOON:  Right.  First off, Your Honor,

15:51:08 2     for impeachment of Dr. Schonfeld based on a party admission

15:51:12 3     that certain things that are named as unconventional in the

15:51:18 4     '658 patent document are, in fact, unconventional at the

15:51:21 5     time of this invention.

15:51:22 6          We're not talking about waving a patent --

15:51:25 7          THE COURT:  Where is Amazon saying it's

15:51:28 8     unconventional?  Maybe Amazon got a patent and just slipped

15:51:32 9     one by the Patent Office or maybe, you know, I don't know,

15:51:34 10    maybe the law on 101 is kind of evolving and it's not all

15:51:39 11    that clear and they did their best and they thought that it

15:51:42 12    was patent eligible, but no one has ever tested it, so maybe

15:51:48 13    it is, maybe it isn't, where is that an admission of Amazon?

15:51:53 14          MR. GREENSPOON:  Right.  You have seen patents,

15:51:54 15    Your Honor, they have a section at the beginning which talks

15:51:57 16    about the background art and where we're going to bring an

15:52:00 17    improvement and brighten the world.  Well, Curt Evans has

15:52:04 18    that throughout his patent.  He has several sections where

15:52:07 19    he talks about what's unconventional and what he's going to

15:52:12 20    do to improve that world.  Amazon does, too, they have the

15:52:12 21    entire first column of the '658 patent that talks about how

15:52:12 22    horrible navigation is on players, how horrible the existing

15:52:24 23    state of the art is on navigation, it's not easy to use.

15:52:27 24    Same inventive concept, we're going to use words as

15:52:32 25    actuators or as basically little buttons to change the

15:52:35 1    playback to the position corresponding to the word because

15:52:38 2    that's new, that's the inventive concept we're bringing to

15:52:42 3    the world.

15:52:43 4              We have expert testimony fully disclosed, there

15:52:45 5    is no dispute about that, multiple pages of an expert report

15:52:49 6    lining up how both patents are really going after the same

15:52:52 7    subject matter.  Amazon's happened to be later.  Just in

15:52:55 8    terms of pure fact representations by a party --

15:52:59 9              THE COURT:  Give me specifics because I don't

15:53:01 10   know what you're talking about.  So if Amazon says this

15:53:08 11   thing in Mr. Evans' patent is brand spanking new, gosh,

15:53:13 12   that's cool, that's one thing.  If they say things in

15:53:17 13   general and we have to sit there and figure out, you know,

15:53:24 14   if it's really the same thing, that's a different story.

15:53:34 15             MR. GREENSPOON:  Your Honor, while my colleague

15:53:35 16   looks for the '658 patent itself, I will just repeat again

15:53:39 17   --

15:53:39 18             THE COURT:  No, I want to see what you're going

15:53:42 19   to do.  I don't want to see arguments -- you have the

15:53:46 20   patent?

15:53:47 21             MS. SHAMILOV:  I have it, Your Honor.

15:53:48 22             THE COURT:  That would be helpful.  Finally

15:53:51 23   someone giving me something actually to look at.  I

15:53:52 24   appreciate it.  Okay.

15:53:55 25             MS. SHAMILOV:  This is the paragraph --

15:53:56 1                    THE COURT:  This is an Amazon patent?

15:53:57 2                    MS. SHAMILOV:  This is Amazon patent, background

15:54:00 3     of the invention.

15:54:00 4                    THE COURT:  Can you make it a little bigger for

15:54:03 5     me?

15:54:04 6                    MS. SHAMILOV:  Yes.

15:54:05 7                    THE COURT:  Okay.

15:54:06 8                    MS. SHAMILOV:  Their expert does not cite to

15:54:09 9     this, by the way, in their report, but I'll let them talk

15:54:11 10    about this first.

15:54:12 11                   THE COURT:  So your expert didn't talk about it

15:54:14 12    in his report, so he's not going to talk about it here,

15:54:17 13    right?

15:54:17 14                   MR. GREENSPOON:  He talked a lot about it.

15:54:19 15                   THE COURT:  The background of the invention?

15:54:21 16    You better show her because she doesn't think he did.

15:54:24 17                   MR. GREENSPOON:  I shall do.

15:54:29 18                   But before we go there, may I please point out

15:54:31 19    line 16, conventional approaches typically enable the user

15:54:36 20    to scrub or navigate through the media playback by moving a

15:54:40 21    scrubbing element, slider, button, marker, pointer.

15:54:42 22    Moreover, in some cases, text associated with the media can

15:54:44 23    be presented in conjunction with media playback.  He's

15:54:48 24    talking about text in a subtitle file can be displayed while

15:54:52 25    a movie is playing.  However, conventional approaches to

navigating media content and presenting text associated with
the media content can be uninteresting and lacking in
interactivity.  This can negatively affect the overall user
experience associated with using computing devices to access
media content.

THE COURT:  What exactly are you going to do
with that to show that your patents aren't routine and
conventional?  They're saying something else is routine and
conventional.  What does that have to do with setting forth
claims?

MR. GREENSPOON:  We said the exact same problem
in column 11 of the '638, of Curt Evans' patent, the same
exact problem existed, there was karaoke, there was closed
captioning --

THE COURT:  I get, you said they have the same
problem, but why does that mean that your solution as
claimed in the words you used to claim it is patent
eligible.  Everyone knows there is a problem, and -- look,
it could be that you recognized a problem, you come up with
a solution, but because you have a terrible patent attorney,
you write it in a way that's overly broad and you don't get
claims or your claims are rendered invalid, or you didn't
describe it correctly and your claims are invalid for other
reasons.  Okay?  So what I'm trying to understand is just
because you both agree that there is a problem and that

15:56:10 1    there are conventional ways, some conventional ways, maybe

15:56:14 2    not all, but some conventional ways to do it, how does that

15:56:17 3    mean that the way you decided to claim your proposed

15:56:23 4    solution is ineligible or eligible?

15:56:27 5              MR. GREENSPOON:  They say conventional, that's

15:56:29 6    the word we would put --

15:56:30 7              THE COURT:  You're not telling me how this

15:56:33 8    relates to your claim.  What about it, you have to show me

15:56:37 9    that what you claimed is eligible.  Okay?  Or they have to

15:56:44 10   show me it's not.  Anyway, you're trying to defend against

15:56:48 11   their claims.  I have no idea how this relates to your

15:56:51 12   claim.  Your claim, not we both identified the same problem.

15:56:57 13             MR. GREENSPOON:  Tap-to-jump is the solution.

15:57:00 14   Tap-to-jump is a solution for us.

15:57:03 15             THE COURT:  Still, you're showing me your claim.

15:57:06 16   By the way, you have twenty claims.  You're not going to

15:57:09 17   assert twenty claims at the trial.  How many are you

15:57:12 18   planning to do?

15:57:13 19             MR. GREENSPOON:  We have a way to cut down, we

15:57:14 20   have a way of grouping them to present them all.

15:57:17 21             THE COURT:  You're not doing twenty.  You're not

15:57:20 22   doing twenty.  You can think about that.  If you say that

15:57:22 23   fine, you know, you really think you can do twenty, then I'm

15:57:25 24   going to give you like seven hours of trial time because I

15:57:27 25   think that's ridiculous.

15:57:30  1              But anyway, show me one of your claims, and how

15:57:35  2     this is going to be used at trial.

15:57:55  3              MS. SHAMILOV:  Can I put the claim?

15:57:57  4              THE COURT:  Come on, you're the only one who is

15:57:59  5     showing me documents so yeah, you can do it.

15:58:02  6              MS. SHAMILOV:  Without waiving my work product,

15:58:07  7     Your Honor.

15:58:08  8              THE COURT:  Pick a claim here.

15:58:10  9              MS. SHAMILOV:  Claim 1.  I'm sorry, Your Honor,

15:58:16  10    I'm not very good with these things.

15:58:18  11             THE COURT:  I know, it's hard back and forth.  I

15:58:22  12    see.  Okay.  That's fine, I can deal with it if I have to.

15:58:27  13             MS. SHAMILOV:  Is that okay?

15:58:28  14             THE COURT:  Then show me how what is in that

15:58:31  15    background is going to be used for -- who is going to do it,

15:58:39  16    your expert and he's going to point to that and say well,

15:58:42  17    this claim is not well-known, conventional, ordered,

15:58:50  18    whatever, because what?

15:58:52  19             MR. GREENSPOON:  I would point to the receiving

15:58:54  20    step, Your Honor, because it talks about receiving the

15:58:57  21    user's selected gesture, the gesture performed on a portion

15:59:01  22    of the viewing screen corresponding to a displayed word,

15:59:06  23    that's in the receiving step.  And I would show that that is

15:59:10  24    the heart of what Amazon said was inventive and what

15:59:15  25    TrackTime says is inventive because you're going to use that

word as like a button to change the playback position.
Never been done before.  This was an improvement over
karaoke and closed captioning systems as Curt Evans
described in column 11 and as Amazon identically described
in column 1 of their '658 patent.

So for Amazon to suggest that this entire
ordered combination of claim elements that can be extracted
from claim 1 or claim 9 or any other, for them to suggest
that it was routine, conventional, well understood, is going
to contradict their statements to the world in column 1 of
their patent that they're doing something better and novel
and inventive over the conventional techniques.

THE COURT:  All right.  So then let me ask you
this.  Sorry, I don't know your name.

MS. SHAMILOV:  Ms. Shamilov.

THE COURT:  So let me ask you this.  Like in
order for you to show that something is conventional,
well-known, you can show me, I mean, I don't usually accept
one piece of prior art because all that shows is it was
maybe known, but not well-known, but you can show me like a
whole bunch of references and say look, this is the way it
was done.  You can have an expert get up there and say look
at all these references, this is the way it was done.  So
aside from this being Amazon's patent and some kind of
admission, why is it that they can't say look, this is the

16:00:50 1    way -- this is what at around the time was disclosed as

16:00:58 2    conventional, and that's not what -- that's not what's in

16:01:02 3    the claims.  They're cross-examining your expert, this was

16:01:06 4    what was referred to in this patent as conventional and

16:01:09 5    that's not what's claimed.  And, in fact, in this patent,

16:01:14 6    they said, they suggested that X was not conventional.  And

16:01:18 7    so why isn't that fair game for cross-examination?

16:01:22 8            MS. SHAMILOV:  Yes, Your Honor, I understand.

16:01:23 9    The problem is that there is -- I want to kind of put it

16:01:26 10   side-by-side because I think that might be helpful.  If I

16:01:32 11   can navigate.

16:01:32 12           THE COURT:  We need those operators who can put

16:01:35 13   multiple things on the screen.  Maybe fold the margin part.

16:01:42 14           MS. SHAMILOV:  So the claim is right here, and

16:01:44 15   this is the paragraph in the patent, in Amazon's patent

16:01:50 16   right here.  There is nothing in this paragraph that says

16:01:54 17   what's in the receiving step is nonconventional.  Right?

16:01:58 18   What it talks about, the scrub bar was conventional.  Their

16:02:04 19   patent is not about scrub bars.  There is nothing in that

16:02:07 20   paragraph that is an admission that what's in their claim

16:02:11 21   was conventional.  That is the fundamental issue here.

16:02:12 22   Right?  This is not an admission of any kind.  To bring it

16:02:18 23   in is just creating -- we're now going to be trying what

16:02:23 24   Amazon's patents are disclosing.  Right?  Their expert also

16:02:26 25   did not take this paragraph and compare it to the claim.

16:02:30 1     They don't have that analysis to put forth to the jury.

16:02:34 2     There is no comparison of that.

16:02:36 3            So that is the fundamental problem with it.

16:02:40 4            Now --

16:02:43 5            THE COURT:  Okay.  Let me ask -- I don't mean to

16:02:45 6     cut you off, I will give you a chance.  Let me ask while I

16:02:49 7     am thinking of this.  To her point, the background, it's

16:02:52 8     talking about what is conventional and the problem with

16:02:55 9     what's conventional.  It's not talking about and what we're

16:03:00 10    doing is different from what's conventional.  All that stuff

16:03:05 11    that you just said about an interactive experience, that's

16:03:08 12    not in that paragraph.

16:03:11 13           MR. GREENSPOON:  Yes, Your Honor.  The answer is

16:03:14 14    we have linked them through the expert report to show that

16:03:18 15    we're both saying that the same thing is conventional.  What

16:03:22 16    Ms. Shamilov forgot to mention in what she was reading is

16:03:26 17    the closed captioning type subtitles, we're both saying

16:03:32 18    that's conventional and we're both saying in the words of

16:03:35 19    our expert, here it is, having the same -- similar if not

16:03:39 20    identical inventive concept between the patents-in-suit.

16:03:41 21    Followed by, watch what he does, he actually goes through

16:03:47 22    the claims with his own expert opinion, this has never been

16:03:52 23    challenged in this case to explain and comment and annotate

16:03:52 24    why he has an opinion that they are both going after the

16:03:55 25    same inventive concept.  Your Honor, I can't explain it any

16:04:03 1    better than both parties --

16:04:05 2              THE COURT:  I just think that this is so

16:04:10 3    tangental, I am going to grant the motion.  I have said

16:04:15 4    before that I didn't think Amazon's patents were relevant in

16:04:18 5    terms of the motions that have been before me, but I also

16:04:21 6    think that this risk serious jury confusion in terms of

16:04:26 7    wait, does Amazon have a patent on this, and all kinds of

16:04:31 8    issues that are not -- I don't want to have at the trial.

16:04:37 9    So I think it's prejudicial and I do think that it risk

16:04:41 10   significant jury confusion.

16:04:42 11             Okay.

16:04:43 12             MS. SHAMILOV:  Thank you, Your Honor.

16:04:45 13             MR. GREENSPOON:  Your Honor, may I be heard on

16:04:47 14   the second part of their motion which I don't think Your

16:04:50 15   Honor addressed?

16:04:51 16             THE COURT:  What is that?

16:04:52 17             MR. GREENSPOON:  That is the chief technology

16:04:54 18   officer of Amazon received rejections from the Patent Office

16:05:00 19   when he -- when Audible was trying to get their own patents,

16:05:02 20   and those rejections told Audible that Curt Evans'

16:05:09 21   technology was blocking prior art.  So in that sense, in

16:05:14 22   subsequent --

16:05:14 23             THE COURT:  Does that go to willfulness?

16:05:16 24             MR. GREENSPOON:  That goes to willfulness, Your

16:05:18 25   Honor.  And they have a citation against that called Call

Way where just by itself a citation by an applicant in an information disclosure statement doesn't show anything about willfulness or knowledge, however, Call Way has been quite well distinguished on that point where the rest of the cases, including this district, the District of Delaware explains that when there is something more than mere citation in an IDS, Information Disclosure Statement, that does prove or at least support proof of knowledge of the patent, it can go to willfulness.

THE COURT:  Is there a dispute on the knowledge of the patent here?

MR. GREENSPOON:  Knowledge of the patent publications back in 2013, there seems to be a dispute, Your Honor.

THE COURT:  Is there a dispute on knowledge of the patents?

MS. SHAMILOV:  Your Honor, that what was cited during the patents was patent publication, it was never a patent cited.  For willful infringement you need to know the patent and that it was infringed.  That's not a patent, it's a patent publication.  It was never the patent cited during prosecution, it doesn't --

THE COURT:  Is there any kind of willful blindness that you knew that there was a publication and you didn't look for a patent?

16:06:32 1                MS. SHAMILOV:  Not that they have ever

16:06:34 2  articulated willful blindness, Your Honor.

16:06:38 3                THE COURT:  All right.  So there is no patent,

16:06:40 4  what are you going to do about that?

16:06:43 5                MR. GREENSPOON:  The examination, it's already

16:06:45 6  in the depositions, there is absolutely no surprise for

16:06:48 7  this.  The examination we will present to the jury is a

16:06:50 8  question and answer with Mr. Story, the CTO at the time, you

16:06:54 9  know, did you reach out to Mr. Evans when you learned that

16:06:56 10  his work was going to be blocking prior art unless you took

16:07:00 11  some measures, did anyone make a phone call to Mr. Evans to

16:07:03 12  start licensing discussions --

16:07:06 13                THE COURT:  Are you going to suggest that that

16:07:08 14  was knowledge of the patent?

16:07:09 15                MR. GREENSPOON:  It was not --

16:07:11 16                THE COURT:  You need knowledge of the patent,

16:07:12 17  not knowledge that Mr. Evans existed and Mr. Evans was doing

16:07:17 18  interesting work.

16:07:17 19                MR. GREENSPOON:  I agree it's one step removed.

16:07:20 20                THE COURT:  What are you going to show for

16:07:21 21  knowledge of the patent here?

16:07:22 22                MR. GREENSPOON:  Knowledge of the patent itself

16:07:23 23  would start with the lawsuit.

16:07:24 24                THE COURT:  You think you're going to get

16:07:26 25  enhanced damages and attorney's fees if you win?

16:07:34 1            MR. GREENSPOON:  I think the jury can make the

16:07:35 2    inference --

16:07:37 3            THE COURT:  No, that's not my question.  The

16:07:39 4    jury can find willfulness, you think based on the fact that

16:07:44 5    you told them of a patent when you sued them I'm going to

16:07:47 6    award attorney fees and enhanced damages?

16:07:50 7            MR. GREENSPOON:  I understand the relation,

16:07:52 8    Judge.  The one case that's different from all cases that

16:07:55 9    you see is the patent office telling Guy Story that this is

16:07:58 10   blocking prior art.

16:07:59 11           THE COURT:  Except that it's not the patent,

16:08:01 12   it's not the patent, so I'm going to grant that motion.

16:08:04 13           MS. SHAMILOV:  Your Honor --

16:08:04 14           THE COURT:  You just won.  Do you really want to

16:08:07 15   say much more?

16:08:10 16           Okay.  I already said there is one patent and

16:08:14 17   twenty claims.  So that is far too many.  So I need to know

16:08:18 18   how many we're going to try.

16:08:23 19           MR. GREENSPOON:  Judge, we could also negotiate

16:08:27 20   this offline.  I think we can get the case down to ten

16:08:30 21   claims.

16:08:30 22           THE COURT:  I think that's ridiculous.  You guys

16:08:33 23   should talk about it.  I think that's ridiculous.  I have

16:08:35 24   people who come in here with three, five patents that try

16:08:35 25   ten claims.  Ten claims on one patent is ridiculous that you

16:08:44 1   need that many.

16:08:46 2              MR. GREENSPOON:  I know of four that I feel are

16:08:48 3   essential.

16:08:49 4              THE COURT:  How many independent claims are you

16:08:50 5   going to put in?  You have three in the patent.  Are you

16:08:53 6   really going to put three independent claims in front of the

16:08:56 7   jury?

16:08:57 8              MR. GREENSPOON:  They're so similar to one

16:08:59 9   another.  We can talk about the differences, I understand --

16:09:02 10             THE COURT:  If they are so similar to each

16:09:04 11  other, I'm sort of not understanding what the prejudice is

16:09:08 12  here of you needing to put them all in.  So you guys need to

16:09:12 13  go back and talk about how many claims you're really going

16:09:15 14  to assert because I find it hard to believe that it would be

16:09:18 15  a good use of time to have to deal with twenty.  And, in

16:09:22 16  fact, if you're going to really stick with twenty, I'm going

16:09:25 17  to have to think about how I allocate the time because you

16:09:30 18  only have to prove infringement and they have to prove a

16:09:33 19  whole bunch of different defenses, so you guys can go back

16:09:38 20  and talk about that.

16:09:39 21             MR. GREENSPOON:  I'm sure we can work that out.

16:09:42 22             THE COURT:  Regarding plaintiff's list,

16:09:42 23  plaintiff list thirteen fact witnesses and two experts.  The

16:09:42 24  defendants list eight fact witnesses and two experts.  The

16:09:42 25  defendants indicated that they expect their witnesses to be

16:09:51  1   called live but reserve the right to designate witnesses and

16:09:54  2   present their testimony by deposition.  So we're a week from

16:09:59  3   trial, where are we?

16:10:01  4                  MR. FLACHSBART:  Our list, Your Honor --

16:10:03  5                  THE COURT:  Thirteen, you're putting thirteen

16:10:05  6   fact witnesses and two experts on?

16:10:07  7                  MR. FLACHSBART:  Correct, Your Honor, but we've

16:10:09  8   gotten most of it down, I think our -- most of them are by

16:10:13  9   deposition and we have cut those to the bone, so I think

16:10:16 10   we're going to have maybe two hours, two-and-a-half hours of

16:10:20 11   total read on or video.  We're anticipating getting it in

16:10:25 12   quickly.  We're not going to waste anybody's time.

16:10:28 13                  THE COURT:  Okay.  Defendant.

16:10:32 14                  MS. SHAMILOV:  Your Honor, we're also going to

16:10:34 15   designate some depositions.  In terms of live witnesses,

16:10:37 16   we're going to call three fact witnesses and three experts,

16:10:44 17   according to the will call.

16:10:46 18                  THE COURT:  I'm sorry, I only had that you had

16:10:48 19   two experts.  You have three.  How many live witnesses are

16:10:51 20   you going to have?

16:10:52 21                  MR. FLACHSBART:  We have two of our own, not

16:10:55 22   counting the experts and then two Amazon witnesses that

16:10:58 23   we'll call.

16:10:59 24                  THE COURT:  And your witnesses that you

16:11:02 25   mentioned, are they overlap.

16:11:03   1            MS. SHAMILOV:  They overlap and that's one of

16:11:05   2   the issues that I wanted to bring up and talk about how

16:11:07   3   we're going to do that.

16:11:08   4            THE COURT:  When we get there, I think there is

16:11:10   5   a place for that.

16:11:11   6            Okay.  Reserving a right to designate witnesses,

16:11:13   7   so you already figured out who you are going to do by

16:11:17   8   deposition and who you are going to bring live?

16:11:19   9            MR. FLACHSBART:  Yes, Your Honor.

16:11:19  10            THE COURT:  Have you told them?

16:11:20  11            MR. FLACHSBART:  Yes, they know.

16:11:21  12            THE COURT:  All right.  The fact witnesses will

16:11:31  13   testify once, so you're up.  Isn't that the issue you wanted

16:11:34  14   to talk about?

16:11:37  15            MS. SHAMILOV:  Yes.  Thank you, Your Honor.  So

16:11:42  16   there are two fact witnesses who are Amazon fact witnesses

16:11:46  17   that they told us they're going to call in their

16:11:50  18   case-in-chief.  One is our corporate representative.  The

16:11:53  19   other one is a third party, so I'm not sure how they can

16:11:57  20   call the third party in their case-in-chief.

16:11:59  21            THE COURT:  If they can get the person here.

16:12:02  22            MS. SHAMILOV:  My question is we were intending

16:12:04  23   to call them in our case as well.  If they are going to go

16:12:08  24   once and in their case-of-chief, can we have our cross to

16:12:12  25   be --

16:12:12 1                THE COURT:  Outside the scope.

16:12:14 2                MS. SHAMILOV:  -- outside the scope with an

16:12:16 3     instruction to jury that these are our witnesses and we are

16:12:20 4     starting to put our case, otherwise it's confusing that

16:12:23 5     they're calling them and we're not going to call them, so if

16:12:25 6     we can let the jury know Amazon is starting to put on their

16:12:30 7     case --

16:12:30 8                THE COURT:  Talk about that and you can propose

16:12:32 9     something and see if you can get agreement.  If you can get

16:12:35 10    agreement on it, I'll consider it.  If you can't, I'll

16:12:38 11    consider it differently.

16:12:39 12               MS. SHAMILOV:  When would you like that?

16:12:41 13               THE COURT:  Whenever you can get that.

16:12:42 14               MS. SHAMILOV:  One other question on that,

16:12:44 15    because they're going to call the fact witnesses first,

16:12:47 16    they're going to put on their expert and then we start our

16:12:50 17    case, and while I do not think we would need these two fact

16:12:53 18    witnesses again, if they do something with their experts.

16:12:56 19               THE COURT:  You can ask me for relief to do

16:12:59 20    that.

16:12:59 21               MS. SHAMILOV:  Perfect.  Thank you so much, Your

16:13:01 22    Honor.

16:13:01 23               THE COURT:  Okay.  There are a number of

16:13:02 24    disputes in the pretrial order in blue and red that I am

16:13:05 25    going to address after we go through what I want to talk

16:13:11  1    about.   These in many cases appear to be improper motions in

16:13:17  2    limine, so I will address those at some point, maybe later

16:13:21  3    today depending on my mood, but you're going to be on the

16:13:25  4    clock, your trial time is ticking when I deal with those

16:13:28  5    because they seem like they are issues that you are

16:13:31  6    improperly bringing before me.   If I didn't decide them on a

16:13:35  7    motion in limine because you didn't bring them in one of

16:13:38  8    your few motions in limine, then you would have had to use

16:13:41  9    trial time, so now you get to use trial time.

16:13:44  10             Okay.   Other paragraphs.   Paragraph 20, I

16:13:47  11   appreciate that there are some uncontested facts.   The

16:13:50  12   pretrial order says that any party may read them, any or all

16:13:55  13   of them, but it also says that the uncontested facts will

16:14:01  14   become part of the evidentiary record.   So I'm just trying

16:14:07  15   to figure out, that is only true of any facts that are

16:14:11  16   actually read or provided to the jury, right?

16:14:16  17             MR. FLACHSBART:   Right.

16:14:17  18             THE COURT:   If you miss some, we are not going

16:14:19  19   to say that somehow those are in front of the jury.

16:14:22  20             MR. FLACHSBART:   There is only six, it's one

16:14:24  21   page.

16:14:24  22             THE COURT:   How are you going to put those in?

16:14:26  23             MR. FLACHSBART:   Any party who wants to can read

16:14:29  24   them into the record.   It would take thirty seconds to read

16:14:32  25   it all in.

16:14:33 1                    THE COURT:  Is someone going to do that?

16:14:35 2                    MR. FLACHSBART:  I will be happy to do that.

16:14:37 3                    THE COURT:  All right.  So you just make sure.

16:14:39 4      All I'm saying is if you don't, they are not going to be

16:14:42 5      part of the record.  That's what I just want to make clear.

16:14:45 6      And whenever you read them in, you'll be charged time.

16:14:52 7                    Okay.  Paragraphs 21 through 24, those are just

16:14:57 8      your issues of fact and issues of law that remain to be

16:15:00 9      litigated.  Those are complete and there is no

16:15:05 10     supplementation of those permitted without my sign off.

16:15:13 11                   Paragraph 28 and 31 will be adopted.  Again, I

16:15:20 12     am going to ignore the red and the blue right now.  We'll

16:15:23 13     deal with that later.  But paragraphs 28 and 31 adopted with

16:15:28 14     modification.  And that is similar to what I just said which

16:15:30 15     is that even if all parties agree that something not on an

16:15:33 16     exhibit list can be offered into evidence or something not

16:15:37 17     in the pretrial order can be offered into the evidence, you

16:15:40 18     will need leave of Court.  You have all said either you

16:15:44 19     agree or you get leave.  You need leave, and don't expect to

16:15:48 20     get it.

16:15:49 21                   Paragraph 29, I think we just need to be clear

16:15:55 22     that exhibits that are used solely for impeachment and that

16:16:02 23     are not on the trial exhibit list do not come into evidence.

16:16:05 24                   Paragraph 33.  I think this is largely okay,

16:16:12 25     though for one thing you have at the beginning of each day

16:16:16 1  and the other one you do like 7:00 a.m.  So just keep in

16:16:23 2  mind whether a witness is on direct or cross or adverse

16:16:27 3  direct or whatever, friendly cross, when the witness goes to

16:16:33 4  the stand, they should be given a binder from each side so

16:16:38 5  that -- or if there are too many binders, they should be up

16:16:42 6  here before the witness gets up here, so you don't hand up a

16:16:45 7  binder for cross when you get up, the witness should already

16:16:49 8  have everything up there.  The juries during Covid times,

16:16:53 9  they hate people walking by the jury box so we try to

16:16:57 10 minimize it.

16:16:59 11          You're not going to give copies of witness

16:17:02 12 binders to me, my court reporter or my clerk, just a copy to

16:17:06 13 the witness.  For electronic copies, I want electronic

16:17:12 14 copies of the binders before the beginning of each trial day

16:17:19 15 so that we have a chance to download them.  So basically

16:17:22 16 what I want is all of the exhibits in electronic form, and

16:17:28 17 they should be labeled JTX 1 through whatever, DTX 1 through

16:17:34 18 whatever, PTX 1 through whatever, so I have them all in one

16:17:38 19 place.

16:17:38 20          I also like to have essentially an electronic

16:17:41 21 binder that has anything that you're going to use,

16:17:44 22 demonstratives, depositions, the exhibits, so that it's easy

16:17:48 23 for me to find them.  I can go look in the other folder if

16:17:52 24 one or two things is missing throughout the trial, but I

16:17:56 25 don't want to have to do that for each witness.

16:17:59 1              MR. FLACHSBART:  May I ask a question, Your

16:18:00 2      Honor?

16:18:00 3              THE COURT:  You may.

16:18:01 4              MR. FLACHSBART:  Do you prefer those binders to

16:18:04 5      be in the order we're going to go through the exhibits or in

16:18:07 6      numerical order?

16:18:09 7              THE COURT:  I don't care, whichever is easiest

16:18:11 8      for the witness.  But my binders I will be able to search by

16:18:18 9      number because they should be called like JTX, PTX, DTX, if

16:18:25 10     I just get sort -- I'll get one through whatever for each

16:18:29 11     thing.  So you can put it in whatever order you want for the

16:18:33 12     witness.

16:18:34 13             Now, when you give us things, whether it's

16:18:36 14     adverse direct or cross, you don't have to give those to the

16:18:40 15     other side.  You have to give them to us in the morning, but

16:18:44 16     you don't have to give them to the other side until later,

16:18:47 17     and we can discuss the whole adverse direct thing when

16:18:52 18     you're on the clock in a little bit.

16:18:54 19             Paragraph 35, I'm not sure -- paragraph 35 says

16:19:00 20     unless pre-admitted.  What is pre-admitted?

16:19:15 21             MR. FLACHSBART:  I think that's legacy language,

16:19:18 22     Your Honor, from when we were considering that there might

16:19:22 23     be exhibits that will be admitted.  For example, if Your

16:19:25 24     Honor has an dispute and Your Honor has ruled they can be

16:19:28 25     admitted before we start with the witness, if it's an

16:19:31 1    admitted exhibit at that point.

16:19:33 2              THE COURT:  No evidence comes in that way.

16:19:36 3              MS. SHAMILOV:  I think it was referring to if

16:19:38 4    there was another witness for which that exhibit already

16:19:40 5    went through and is already in evidence.

16:19:42 6              MR. FLACHSBART:  Or that, too.

16:19:44 7              MS. SHAMILOV:  Then that's what -- at least

16:19:46 8    that's what we thought it was referring to, Your Honor.

16:19:48 9              THE COURT:  Okay.  So it's talking about how you

16:19:55 10   admit an exhibit into evidence.  But regardless, you have to

16:19:58 11   use -- you have to put it in through a witness.

16:20:02 12             Paragraphs 43, 50, and 52, fine, if you cannot

16:20:09 13   resolve objections over exhibits or demonstratives or

16:20:12 14   whatever, you need to raise that with my judicial

16:20:16 15   administrator by 7:00 a.m. the day the evidence will be

16:20:20 16   offered, we will either deal with it, with the objection in

16:20:24 17   the morning before the jury comes in or over lunch at a

16:20:27 18   break, whatever I decide, and you waive the objections if

16:20:30 19   you don't bring them.

16:20:31 20             Also, if there are documents that you want us to

16:20:35 21   look at, you can send a copy of those documents

16:20:35 22   electronically.  Sometimes they're ridiculously big so I'm

16:20:41 23   not going to print them out.  When you get to trial that

16:20:47 24   morning, you should also have hard copies available of them

16:20:50 25   for us.

16:20:51 1          Paragraph 66, prior sworn testimony.  Is the

16:21:03 2  only thing you're talking about there depositions or is

16:21:07 3  there something else?  I'm not understanding.

16:21:19 4          MR. FLACHSBART:  I believe, Your Honor, this is

16:21:20 5  depositions and then there is a declaration of Chris

16:21:25 6  Chamberlain that we would like to read.

16:21:27 7          THE COURT:  Is that a blue and red issue?

16:21:30 8          MS. SHAMILOV:  Yes.

16:21:31 9          MR. FLACHSBART:  Sadly that is.

16:21:33 10          THE COURT:  All right.  I will leave this for --

16:21:40 11  with respect to deposition, and I have not ruled on another

16:21:44 12  out-of-court statement coming in.  So I am only talking here

16:21:50 13  about depositions.  And with that I adopt it with

16:21:56 14  modification.  You say give depositions to me by 7:00 p.m.

16:22:01 15  two days before the designations are to be played.  No, if

16:22:05 16  there are objections that remain to be resolved, the parties

16:22:08 17  calling the witness by deposition should have no later than

16:22:13 18  48 hours before the witness is to be called submit the items

16:22:17 19  enumerated in that paragraph consistent with my procedure.

16:22:20 20          And I'll tell you again for emphasis, if you

16:22:22 21  fail to comply with my procedures, it may result in either a

16:22:27 22  waiver of using that deposition testimony or a waiver of the

16:22:30 23  objection.

16:22:31 24          As to the timing, there is something in there

16:22:35 25  that says you're only on the clock for what your own

16:22:43 1    particular stuff that you read.  That's generally true, but

16:22:47 2    I want to make clear that we split up the time that's used.

16:22:50 3    So if, for example, you start messing around with the video

16:22:54 4    or talking to people and you don't start the video playing,

16:22:57 5    if the jury is in here, the time is ticking so that also

16:23:01 6    gets included in your time.  The same with the intro

16:23:03 7    statements, if you want to make an intro statement, that's

16:23:06 8    fine, you're on the clock.

16:23:09 9          Paragraph 71 says the parties will provide the

16:23:23 10   time to be charged to each party.  I don't know what that

16:23:28 11   means.

16:23:28 12         MR. FLACHSBART:  Your Honor, with most of our

16:23:30 13   depositions, for example, we prepared a few, our trial

16:23:34 14   presentation team has done video that contains our portion

16:23:37 15   and then the cross designated portion from the other side,

16:23:41 16   and then broken down how much of the time of the video

16:23:44 17   played is allocated to each, so we can give you a report for

16:23:49 18   each deposition we're going to play, it will say

16:23:53 19   twenty minutes plaintiff, fifteen minutes defendant.

16:23:56 20         THE COURT:  Okay.  75, you talk about an

16:23:59 21   exceptional case.  That's this post-suit willfulness thing,

16:24:02 22   is that correct?

16:24:02 23         MR. FLACHSBART:  Correct.

16:24:02 24         THE COURT:  Is that the only exceptional case?

16:24:05 25         MR. FLACHSBART:  That's correct, Your Honor.

16:24:10  1               THE COURT:  All right.  Paragraph 83.  We will

16:24:13  2      start with eight jurors.  We can go lower as we're allowed

16:24:18  3      to lose any.  I will explain how we'll do jury selection in

16:24:22  4      a minute, but to the extent that it's different from what

16:24:25  5      you proposed, we're going to do what I want.  The parties

16:24:29  6      note they will provide juror books, notebooks, and say if

16:24:34  7      you can't agree, you're going to come to me.  That's not how

16:24:38  8      it works.  If you agree, it goes in the jury binder.  If you

16:24:41  9      don't agree, it doesn't go in the jury binder.  And if you

16:24:45 10      don't agree on anything, there are no jury binders.

16:24:49 11               And binders and jury notes are not going to be

16:24:52 12      collected by the court staff each day.  They stay in the

16:24:55 13      jury room and then are destroyed at the end of the trial.

16:25:02 14               The trial logistics, each side will get ten

16:25:07 15      hours of trial time, that includes opening statements,

16:25:10 16      closing arguments, witness examinations and arguments over

16:25:13 17      objections.  Generally if we are in the courtroom, someone

16:25:16 18      is being charged for time unless I am reading jury

16:25:19 19      instructions.  The parties are required to set aside at

16:25:21 20      least one hour of trial time for closing arguments which

16:25:24 21      will occur at the close of evidentiary presentation.

16:25:27 22               Now, when we get to closing arguments, if you

16:25:31 23      still have three hours left, you can use all three hours,

16:25:35 24      you're not limited to that one hour, but I ask you to save

16:25:38 25      an hour because I have had parties who use up all but two

16:25:44  1    minutes of their time and that's not a fair -- that's not

16:25:48  2    fair to the jury to have a closing argument or fair to the

16:25:51  3    other side for me to give them more.  So if you're really,

16:25:55  4    really scrambling for time and you say look, I just need ten

16:25:59  5    minutes of that hour, I'll probably allow you to do it, but

16:26:02  6    just ask before you do so.

16:26:04  7           Jury selection will take place on the 13th.

16:26:11  8    Presentation of evidence will begin after the jury is

16:26:14  9    seated.  We'll start each morning at 9:00 a.m., plan to

16:26:18 10    present evidence until 4:30, maybe 4:45, plan to do the

16:26:22 11    normal fifteen minutes break in the morning and one in the

16:26:25 12    afternoon and then a lunch break.  Are you guys bringing

16:26:27 13    lunches for the jury?  Have you discussed that at all?

16:26:32 14           MS. SHAMILOV:  We haven't, Your Honor, but we

16:26:34 15    could.

16:26:34 16           THE COURT:  Why don't you discuss that and let

16:26:36 17    us know what you want to do.  Usually that just makes things

16:26:40 18    a little faster because then the jurors, I can give a

16:26:43 19    shorter lunch and get more in during a day.

16:26:46 20           MS. SHAMILOV:  Will do.

16:26:48 21           THE COURT:  We have sent out jury Covid

16:26:52 22    questionnaires to prospective jurors asking about Covid

16:26:57 23    hardships.  You're not going to get a copy of those.  The

16:27:00 24    current plan, we used to use them to, you know, figure out

16:27:02 25    if we wanted to bring in people who weren't vaccinated or

who had a particular issue.  Now what we really use them for
is to see if there is someone who has -- it's mostly a
health consideration or something like that, where they
don't want to be -- even have to sit in here for whatever
period of time.  Sometimes we still get those and I excuse
those.  Usually it's elderly people who have multiple
issues.  But everyone else, regardless of vaccination status
or anything else, we will bring in.  Any concerns with that?

            MR. FLACHSBART:  Not from us, Your Honor.

            MS. SHAMILOV:  No, Your Honor.

            THE COURT:  All right.  Voir dire, I think some
of you are at least familiar with how we do jury selection.
Prospective jurors are randomized and assigned a number, 1
through whatever number we're calling.  They will sit in the
assigned seats, 1 through 14 over here, 16 through 28 over
here, and any additional ones we have sit in the jury box.
Each juror wears a number and each juror is going to be
provided a sheet that includes the voir dire questions and a
pencil so that each juror may keep track of yes answers on
their own as I read the questions aloud.

            After I have read the questions aloud, I will
ask the jurors over here which of you answered yes to any
question.  The jurors who answered yes stand up, and those
jurors will be brought back to the jury room where we'll
conduct the voir dire.  Anyone who did not answer yes to a

16:28:43 1   question will remain seated and they will be part of the

16:28:46 2   panel that you will exert your challenges to.  We need to

16:28:53 3   get to fourteen jurors so that you can each have your three

16:28:56 4   challenges.

16:28:57 5           So let's say I excuse someone for cause over

16:29:01 6   here, then the next thing we do is we go to juror number 15,

16:29:05 7   juror number 15, did you answer yes to any questions?  Juror

16:29:08 8   number 15 says no, I didn't.  Juror number 15 comes over

16:29:11 9   here and becomes part of the pool.  If juror number 15 did

16:29:14 10  answer yes to a question, juror number 15 will then come

16:29:17 11  back and talk with us and we'll decide whether there is any

16:29:20 12  objection or any reason to excuse that juror for cause.

16:29:24 13          Once we get to fourteen, we'll sort of rearrange

16:29:29 14  the jurors.  Again, jurors will all have their numbers on

16:29:32 15  them.  And at that point we will proceed to preemptory

16:29:38 16  strikes.

16:29:38 17          We're reviewing the voir dire and preliminary

16:29:42 18  jury instructions and will get you edits either later this

16:29:45 19  week or early next week.

16:29:47 20          Plaintiff, you're responsible for bringing

16:29:49 21  enough pens or pencils and double sided copies of the voir

16:29:51 22  dire for the prospective jurors, that's about forty and

16:29:57 23  those need to be delivered to the clerk's office by noon on

16:30:01 24  Tuesday, September 12th.

16:30:02 25          As of right now, I am not planning on requiring

16:30:06 1    masks, but we have people who come in here and just sit at

16:30:09 2    counsel table or sit in back and cough.  And jurors notice

16:30:13 3    that and jurors say stuff about it.  So if you want to do

16:30:19 4    that and a juror is going to complain, I might change my

16:30:24 5    mind and say if you're going to sit in this room and cough,

16:30:27 6    you're going to have to put on a mask.  So you can think

16:30:30 7    about that.

16:30:35 8              We're going to limit moving around the

16:30:38 9    courtroom.  I think I said that.  I ask that when you're

16:30:40 10   talking like on an opening or a closing, don't go in front

16:30:44 11   of the podium.  You can turn the podium around.  You can

16:30:48 12   walk freely back and forth if you want to point at the

16:30:50 13   screen and maybe go a little bit in front of the podium, but

16:30:54 14   don't encroach on the jury's space.  And largely that is to

16:30:58 15   your benefit, too, so the jury doesn't start to hate you

16:31:01 16   because they really don't seem to like that.

16:31:04 17              As I said you're not going to be up and down

16:31:07 18   repeatedly to the witness box.  Certainly if the witness

16:31:10 19   can't find something and your time is ticking, I'll let you

16:31:12 20   go up there, but try to have everything orchestrated so that

16:31:18 21   you can minimize the times that you have to walk in front of

16:31:21 22   the jury.

16:31:22 23              The parties on or before noon, Tuesday,

16:31:24 24   September 12th, need to provide electronic versions of all

16:31:25 25   exhibits.  I think I told you that, but I don't think I told

16:31:32  1    you what day.  So when I want all of the exhibits is by noon

16:31:37  2    on Tuesday, September 12th.  You can -- it's up to you how

16:31:43  3    you get them to us, but apparently flash drives tend to work

16:31:48  4    best for us with the file size, but why don't you talk with

16:31:51  5    Mr. Buckson about that.

16:31:53  6         The 7:00 a.m. e-mails that you send, they need

16:31:57  7    to go to my judicial administrator, Ms. Welham, as well as

16:32:01  8    Mr. Buckson.

16:32:03  9         We haven't been having too many side bars where

16:32:09  10   we just sit over here, instead we tend to just go out into

16:32:14  11   the hall where we can spread out a little bit more and talk

16:32:17  12   a little bit more without the jury hearing it.  When we have

16:32:24  13   those types of objections, I decide how I want to assess the

16:32:32  14   time.  Sometimes I do it to the loser, sometimes I think it

16:32:37  15   was a reasonable objection and, you know, even if a party

16:32:40  16   loses, I just split the time.  It depends.

16:32:45  17        As to closing the courtroom, I am generally

16:32:48  18   disinclined to do so.  I think if you read the Avandia case

16:32:51  19   in the Third Circuit, you know that closing the courtroom

16:32:52  20   requires an extraordinary showing tantamount to strict

16:33:01  21   scrutiny which I think you all know means you lose.  So if

16:33:04  22   you do need to close the courtroom at any point, it needs to

16:33:08  23   be kept to an absolute minimum.  There should be sufficient

16:33:12  24   advanced notice to the other side and to the Court and you

16:33:16  25   need to be able to make the requisite showing of harm under

16:33:20 1   the Third Circuit decision in Avandia, that doesn't mean

16:33:25 2   lawyer argument, that means sworn statements as to the

16:33:29 3   specific harm that would come.

16:33:31 4         The parties, I think you already have it in your

16:33:35 5   order, shall provide an AO Form 187 exhibit list to

16:33:39 6   Mr. Buckson on or before the first day of trial.  After

16:33:43 7   trial, I need you to review the trial transcript and submit

16:33:46 8   any necessary corrections to the court reporter no later

16:33:48 9   than two weeks after trial.  And we do that because we just

16:33:51 10  don't want a bunch of corrected briefs to account for trial

16:33:57 11  errata.

16:33:58 12        If you need access to the courtroom to set up

16:34:00 13  the trial, work with Mr. Buckson.  You can do so sometime on

16:34:04 14  Tuesday, September 12th.

16:34:09 15        The last thing that I had before we get to these

16:34:14 16  stealth motions in limine and the pretrial order, the

16:34:17 17  defendant made a settlement offer to the plaintiff in August

16:34:20 18  which I guess was just last week or before, but that was

16:34:26 19  recently, plaintiff made a counteroffer and parties continue

16:34:30 20  to negotiate in good faith.  Are there any updates?  By that

16:34:34 21  I don't mean for you to tell me the substance, but what is

16:34:40 22  the status?

16:34:41 23        MR. FLACHSBART:  We haven't heard back, but I

16:34:42 24  don't anticipate that we will, either.

16:34:45 25        THE COURT:  You don't anticipate you will?

16:34:47  1                    MR. FLACHSBART:  Correct.

16:34:48  2                    MS. SHAMILOV:  Yeah, Your Honor, we're very far

16:34:51  3       apart.

16:34:54  4                    THE COURT:  All right.  Well, I will encourage

16:34:57  5       you to continue talking because I think you both have some

16:35:02  6       issues with your case.  Okay?

16:35:05  7                    MS. SHAMILOV:  Your Honor, may I on the

16:35:06  8       preliminary jury instructions, we resolved the dispute.

16:35:10  9                    THE COURT:  Why don't you resend them to us so I

16:35:13 10       don't have to figure out.

16:35:15 11                    MS. SHAMILOV:  Okay.

16:35:16 12                    MR. FLACHSBART:  We'll send that today, Your

16:35:19 13       Honor.

16:35:19 14                    THE COURT:  All right.

16:35:30 15                    MR. BALICK:  I apologize, Your Honor.

16:35:44 16                    THE COURT:  I was.

16:35:47 17                    MR. BALICK:  I wasn't finishing reading it, I

16:35:50 18       had silenced my phone, but I had an alarm set and that goes

16:35:55 19       off even if silent.  I didn't realize.

16:35:58 20                    THE COURT:  We'll just wait for you to stop

16:36:00 21       sweating then.

16:36:01 22                    Okay.  Now let's go through, at least the ones

16:36:05 23       of the red and blue that I have tolerance for today, and

16:36:12 24       anything else you'll have to come in early on Wednesday.

16:36:16 25                    So paragraph 9, I find it hard to believe that

16:36:24 1    you can't agree on my claim construction, but go ahead.

16:36:30 2              MR. GREENSPOON:  Your Honor, no argument, we

16:36:32 3    just --

16:36:33 4              THE COURT:  No, you guys are on the clock,

16:36:35 5    you're using your trial time now.  I'm not going to sit here

16:36:38 6    and read this and figure it out, so if you have a dispute

16:36:41 7    that you want me to decide, tell me what it is.

16:36:45 8              MR. GREENSPOON:  Yes.  I actually decided to say

16:36:48 9    that before you mentioned that.  We point to Your Honor's

16:36:51 10   language, plaintiff proposes the construction, dot, dot,

16:36:54 11   dot, and then we point to Your Honor's language.  I am going

16:36:57 12   to adopt plaintiff's construction that multimedia includes

16:37:01 13   dot dot dot.  So we just thought that the proper syntax and

16:37:05 14   understanding of Your Honor's order was the larger paragraph

16:37:08 15   which has a little bit more detail, that's all.

16:37:13 16             MR. WU:  Your Honor issued the claim

16:37:18 17   construction two years ago and it is not what plaintiff is

16:37:22 18   proposing now.  So the claim construction order said

16:37:27 19   multimedia includes media that consist of only one type of

16:37:31 20   media, period.  And to the extent TrackTime thinks any

16:37:37 21   clarification is needed, which we don't agree, they didn't

16:37:42 22   raise it for almost -- over two years, so on the eve of

16:37:48 23   trial, we don't believe we need to revise this perfectly

16:37:52 24   clear --

16:37:52 25             THE COURT:  I can't find my order.

16:37:58  1          MR. WU:  I can show it to you.

16:38:01  2          THE COURT:  No, hold on.  I have an order.

16:38:04  3  Multimedia includes media that consist of only one type of

16:38:09  4  media.  That's what it says in the order and that's what

16:38:12  5  we're going to go forward with.

16:38:14  6          Okay.  Next, we have a whole bunch of stuff.

16:38:29  7  Oh, the financial updates from Amazon for recent periods up

16:38:33  8  through trial to update its damages presentation.  Now, is

16:38:38  9  it true that plaintiff's damages is a lump sum?

16:38:44 10          MR. FLACHSBART:  Absolutely not, Your Honor,

16:38:46 11  it's a running royalty.

16:38:47 12          THE COURT:  It's a running royalty?

16:38:49 13          MR. FLACHSBART:  Correct.

16:38:52 14          MR. RANGANATH:  Your Honor, Ravi Ranganath for

16:38:57 15  defendants.  The word running royalty appears once in the

16:39:00 16  report and not in the context of Mr. Peterson's opinion as

16:39:04 17  to the nature of the hypothetical agreement under --

16:39:08 18          THE COURT:  Tell me, what's the number?  How

16:39:10 19  does he present the number?  Is it something times

16:39:12 20  something, is it a percentage, or is it they would pay, you

16:39:12 21  know, a million dollars for rights forever?

16:39:22 22          MR. RANGANATH:  He presents the number as

16:39:24 23  something times something and says this is the range of

16:39:27 24  damages --

16:39:28 25          THE COURT:  All right.  If it's presenting it as

16:39:30 1   something times something, why can't we update one of the

16:39:34 2   somethings?

16:39:34 3             MR. RANGANATH:  Just to be clear, the discovery

16:39:36 4   is moot.  We have provided the discovery out of an abundance

16:39:40 5   of caution.  The question is now what Mr. Peterson should be

16:39:44 6   permitted to present.  We did not understand --

16:39:46 7             THE COURT:  Is all he's going to do is just

16:39:49 8   change the total number?

16:39:50 9             MR. FLACHSBART:  Yes, Your Honor.

16:39:51 10            THE COURT:  Anything else?

16:39:52 11            MR. FLACHSBART:  Can I throw this on the Elmo.

16:39:58 12   What he's going to do is update the top line

16:40:02 13   numbers and then apply the same exact royalty.  He's not

16:40:05 14   going to change his opinion.  It will be a one-page

16:40:09 15   supplement for them with a new calculation to account for

16:40:12 16   the times since he did his report.

16:40:14 17            THE COURT:  Why can't he do that?

16:40:15 18            MR. FLACHSBART:  I don't know.

16:40:16 19            THE COURT:  If you guys lose, presumably they're

16:40:18 20   entitled to damages for the time that is the new time;

16:40:22 21   right?  So if that happens, then they're going to ask me to

16:40:28 22   do it.  Why can't I just let the jury do it?

16:40:31 23            MR. RANGANATH:  Because, Your Honor,

16:40:34 24   Mr. Peterson doesn't explain why the parties would agree to

16:40:37 25   a running royalty agreement which is necessary --

16:40:39 1          THE COURT:  Yes, but he's going to say this is a

16:40:43 2   running royalty agreement whether you agree that this comes

16:40:45 3   in or not, right?

16:40:46 4          MR. FLACHSBART:  That's correct, Your Honor.

16:40:47 5          THE COURT:  Just because you don't think it's a

16:40:49 6   running royalty doesn't mean he doesn't get to put on what

16:40:52 7   he thinks is a running royalty, right?

16:40:54 8          MR. RANGANATH:  That's right, Your Honor.  So if

16:40:56 9   Mr. Peterson does offer an opinion and says to the jury this

16:41:00 10  is a running royalty and we object and say show me in the

16:41:04 11  report where you justified that opinion.

16:41:05 12         THE COURT:  All I'm saying is show me that

16:41:08 13  document again.

16:41:08 14         MR. FLACHSBART:  Yes, Your Honor.  The portion

16:41:12 15  of the calculation.

16:41:25 16         THE COURT:  Okay.  So the royalty he's saying is

16:41:29 17  $0.1586 for music royalty and then what does he --

16:41:39 18         MR. FLACHSBART:  On the next page he applies

16:41:41 19  that royalty, this is the Lyric Impression royalty, he

16:41:45 20  applies that to actual Lyric Impression, we asked for two

16:41:49 21  pieces of data, one was the revenue and one was the Lyric

16:41:51 22  Impression, he's going to update those.  He's changed this

16:41:58 23  number right here.  And then that will change the bottom

16:42:02 24  number.  And he will change -- there is one other number

16:42:05 25  that he will change.

16:42:06 1                    THE COURT:  Why are we sitting here fighting

16:42:08 2     about it?  And you are wasting -- your trial time is ticking

16:42:12 3     away here.  Why are you doing this?

16:42:15 4                    MS. SHAMILOV:  May I, Your Honor?

16:42:16 5                    THE COURT:  It's your trial time.

16:42:18 6                    MS. SHAMILOV:  Just to jump in.

16:42:19 7                    THE COURT:  It seems like a ridiculous argument

16:42:22 8     to me.

16:42:22 9                    MS. SHAMILOV:  The issue is not about updating

16:42:24 10    the numbers, we're fine with updating his numbers, the issue

16:42:28 11    is there is no running royalty opinion in the report and now

16:42:31 12    there is a dispute that the verdict form is going to say

16:42:34 13    lump sum and running royalty, but there was no running

16:42:38 14    royalty in the report.  There is just a number that we

16:42:42 15    should pay them if we're found liable.  Two issues, can they

16:42:46 16    update the numbers through trial, not a problem, we gave

16:42:49 17    them the document.  The second issue --

16:42:51 18                    THE COURT:  Let's not kid ourselves.  It was a

16:42:54 19    problem until now.  I don't see anybody saying it was fine

16:42:57 20    for them to do that.

16:42:59 21                    MS. SHAMILOV:  We gave them the documents, Your

16:43:02 22    Honor, the issue is now does he actually have the running

16:43:03 23    royalty opinion and he doesn't, he doesn't say that.

16:43:06 24                    THE COURT:  I don't know what to do with that.

16:43:08 25    That seems like almost a summary judgment motion and I'm

16:43:11 1   certainly not deciding it here, so if you want to object to

16:43:14 2   that, you want to object to it somehow, I guess you can

16:43:17 3   figure out a way to raise that and use your trial time next

16:43:21 4   week.

16:43:22 5          MS. SHAMILOV:  The problem is, Your Honor, we

16:43:24 6   had no idea that they were going to go say it was running

16:43:27 7   royalty until they were doing pretrial documents.

16:43:30 8          THE COURT:  You should talk about where they

16:43:33 9   disclosed it, how you were supposed to know that.  Okay.

16:43:44 10         Now we got the non-adverse and adverse direct.

16:43:52 11  So no, the plaintiff doesn't have to give over their

16:43:57 12  essentially cross exhibits to the defendant when they call

16:44:03 13  defendants' witnesses on adverse direct.

16:44:16 14         So what I don't understand from paragraph 33 is

16:44:30 15  why -- I guess for that, then I will adopt the red.  It's

16:44:51 16  the same issue in paragraph 44, is that right?

16:44:55 17         MR. FLACHSBART:  Correct, Your Honor.

16:45:00 18         THE COURT:  And 62.  And 66.  I think Amazon's

16:45:17 19  footnote in here is I feel like I should dock you an hour of

16:45:22 20  trial time just for making me read that which is so clearly

16:45:27 21  a motion in limine in contravention of my rules.  It's

16:45:34 22  almost like contempt, but I won't do that.

16:45:38 23         All right.  Identification and use of

16:45:44 24  designations.  So there is an affidavit or a declaration

16:45:52 25  that TrackTime wants to put in?

16:45:56 1          MS. MAYER:  Yes, Your Honor.  Melanie Mayer from

16:46:02 2 Fenwick & West.  Your Honor, the issue is we didn't know

16:46:05 3 about this until they gave us their depo designations where

16:46:10 4 they designated the two affidavits by Mr. Chris Chamberlain.

16:46:15 5          THE COURT:  I don't know what these are.  Where

16:46:17 6 did these come up?  Are you saying you didn't know they

16:46:21 7 existed until then?

16:46:23 8          MS. MAYER:  So the first affidavit was produced

16:46:25 9 in October 2022, so that's a few weeks before the close of

16:46:30 10 fact discovery.  The second was December 6, 2022, after the

16:46:35 11 close of fact discovery.

16:46:37 12          THE COURT:  What are these affidavits about?

16:46:40 13          MS. MAYER:  They purport to corroborate

16:46:43 14 Mr. Evans' conception and diligence.  And we didn't know at

16:46:47 15 the time, but we've since --

16:46:50 16          THE COURT:  What's the basis for saying that

16:46:52 17 these exhibits are coming in, that they are not hearsay?

16:46:56 18          MS. MAYER:  We think they are hearsay.  One, we

16:46:59 19 didn't get an opportunity to depose Mr. Chamberlain.  Two,

16:47:02 20 they're hearsay.  Three, they don't meet any of the

16:47:07 21 exceptions to hearsay including Federal Rule of 807 which

16:47:12 22 the plaintiff pointed to.  They're not trustworthy.

16:47:14 23 Mr. Chamberlain is actually Mr. Evans' brother-in-law.

16:47:17 24          The text of the declaration is identical to

16:47:21 25 Mr. Maynard's declaration so there was a common author.

16:47:24 1    There are lots of issues and we didn't get an opportunity to

16:47:27 2    depose Mr. Chamberlain.

16:47:30 3              THE COURT:  Okay.

16:47:32 4              MR. FLACHSBART:  I'm going to try to be speedy,

16:47:35 5    Your Honor.  With an interrogatory response that we provided

16:47:38 6    to Amazon, not us, actually predecessor counsel in December

16:47:42 7    of 2020, we specifically pointed to additional facts, so

16:47:45 8    this is our interrogatory one response, the very first

16:47:49 9    interrogatory we had.  We said including conception,

16:47:52 10   diligence and reduction to practice, we identified these

16:47:55 11   specifically in the declaration, the first declaration, so

16:48:00 12   it was identified in 2020.

16:48:03 13             THE COURT:  You got to be kidding me.  How big

16:48:06 14   is that prosecution history you sent to them?

16:48:09 15             MR. FLACHSBART:  It's not small.

16:48:10 16             THE COURT:  And how long is the declaration?

16:48:13 17             MR. FLACHSBART:  Thirty-one pages.

16:48:14 18             THE COURT:  So you guys, you missed the

16:48:18 19   thirty-one pages.  Are you using every other page in that

16:48:21 20   prosecution history?

16:48:22 21             MR. FLACHSBART:  No, Your Honor.

16:48:23 22             THE COURT:  So that's not really fair.  Let's go

16:48:27 23   to --

16:48:28 24             MR. FLACHSBART:  They were also given the actual

16:48:30 25   declaration in October of 2022 before the close of

16:48:33 1   discovery, the first version.  There are two versions.

16:48:36 2          THE COURT:  Why don't you just call him as a

16:48:38 3   witness?

16:48:38 4          MR. FLACHSBART:  He is dead.

16:48:40 5          THE COURT:  Oh.

16:48:41 6          MR. FLACHSBART:  If he were not dead, we would

16:48:43 7   call him as a witness.  He died during the pendency of this

16:48:46 8   case.  He died while this case was stayed unfortunately.

16:48:51 9          THE COURT:  If he has two declarations and he

16:48:54 10  died, why did you not produce the other declaration until

16:48:58 11  later?

16:48:58 12         MR. FLACHSBART:  We didn't realize it hadn't

16:49:01 13  been produced.  There was a change in counsel, so we

16:49:05 14  produced it as soon as we realized it had not been.  I'm

16:49:08 15  happy to rely on the first declaration, Your Honor.  They

16:49:11 16  are exactly the same.

16:49:12 17         THE COURT:  I don't understand why it's not

16:49:14 18  hearsay.

16:49:15 19         MR. FLACHSBART:  He's a dead declarant.

16:49:17 20         THE COURT:  It's not a dying declaration.  I get

16:49:19 21  it he's unavailable, you want it for truth of the matter

16:49:22 22  asserted.  Right?

16:49:23 23         MR. FLACHSBART:  No, it's corroborating.

16:49:26 24         THE COURT:  How do you corroborate it without it

16:49:28 25  being the truth?  It's not going to Mr. Evans' state of

16:49:32 1    mind, it's going to the truth of the matter.

16:49:35 2            MR. FLACHSBART:  Based on what he was told by

16:49:37 3    Mr. Evans, for sure.

16:49:40 4            THE COURT:  Sounds like double hearsay if it's

16:49:42 5    what he was told.  Okay.  So tell me why this comes in.

16:49:48 6            MR. FLACHSBART:  Under Rule 807, Your Honor, the

16:50:04 7    exception rule.  And Amazon cited no case under the

16:50:12 8    framework of 807 in their extensive back and forth.

16:50:17 9            THE COURT:  I think it's pretty common to know

16:50:19 10   that an out-of-court declaration is hearsay, so I'm not

16:50:22 11   going to fault them for not giving me those cases.

16:50:25 12           MR. FLACHSBART:  I will say this, Your Honor,

16:50:26 13   with respect to the declaration.  When we provided it, we

16:50:29 14   provided it on October the 31st.  Amazon -- there was an

16:50:32 15   e-mail correspondence back and forth between the client, I'm

16:50:36 16   sorry, not the client, between us and Amazon which we

16:50:39 17   discussed the availability of Mr. Chamberlain for his

16:50:42 18   deposition.  Obviously he was not available.  And we

16:50:45 19   indicated at that time to Amazon at that time in an e-mail

16:50:42 20   that we would be using the declaration at trial.  So the

16:50:52 21   idea that it is somehow like a latter day surprise, if they

16:50:57 22   were going to file a motion in limine on it, they should

16:50:59 23   have filed a motion in limine on it.  We told them we were

16:51:02 24   going to do it and we told them quite a while ago.

16:51:05 25           THE COURT:  Yes, you're right.  And they

16:51:06 1    completed skirted my rules and filed an inappropriate one,

16:51:12 2    but you guys aren't exactly clean on that.

16:51:16 3                MR. FLACHSBART:  I understand.

16:51:17 4                THE COURT:  But that doesn't mean that I'm

16:51:19 5    allowed to just put in something that is blatant hearsay.

16:51:23 6    So I guess we have to figure it out.

16:51:25 7                MR. FLACHSBART:  It's also under oath and it's

16:51:28 8    signed under oath.

16:51:29 9                THE COURT:  So what rule are we relying on?

16:51:31 10   Let's talk about how it --

16:51:41 11               MR. FLACHSBART:  Sadly reading from part of our

16:51:46 12   red text, Your Honor, Rule 807 permits hearsay where the

16:51:49 13   evidence is supported by sufficient guarantees of

16:51:53 14   trustworthiness after considering the totality --

16:51:54 15               THE COURT:  What's the totality of circumstances

16:51:56 16   that I have that show that it's trustworthy and what

16:52:04 17   corroboration of the statement do we have?

16:52:05 18               MR. FLACHSBART:  Okay.  So there is

16:52:08 19   co-corroborating statements from Mr. Maynard who will be

16:52:11 20   live in court.  There is also co-corroborating testimony

16:52:16 21   from Mr. Evans who will be live in court.  And this is

16:52:20 22   trustworthy because he signed it under oath in front of a

16:52:25 23   notary public and it got submitted as part of the patent

16:52:28 24   prosecution to a corollary patent.

16:52:32 25               THE COURT:  What about the fact that, you know,

16:52:34 1 he was related to Mr. Evans and, you know, trying to help

16:52:37 2 him out?

16:52:38 3     MR. FLACHSBART:  We have absolutely no objection

16:52:40 4 to a 105 instruction along with the declaration where they

16:52:44 5 can say that he was related to Mr. Evans.  I don't have a

16:52:47 6 problem with them saying it was probably prepared by a

16:52:50 7 lawyer.  I don't have a problem with them saying really any

16:52:52 8 of that.

16:52:52 9     THE COURT:  And we also have a second one here,

16:52:55 10 it is more probative on the points for which it is offered

16:52:59 11 than any other evidence that the proponent can obtain

16:53:04 12 through reasonable efforts.  Is this more probative than any

16:53:07 13 other evidence that you can use it for?

16:53:11 14     MR. FLACHSBART:  They certainly provide more

16:53:13 15 detail than we expect.

16:53:14 16     THE COURT:  Is it more probative on the points

16:53:18 17 on which it's offered than any other evidence that you can

16:53:21 18 obtain?

16:53:24 19     MR. FLACHSBART:  Yes, it is more probative than

16:53:26 20 anything Mr. Maynard can say because the explanations to

16:53:29 21 Mr. Chamberlain were more detailed and as corroboration it's

16:53:33 22 more probative than anything Mr. Evans is going to say

16:53:36 23 because it's corroboration of what he's going to say about

16:53:40 24 conception.

16:53:42 25     THE COURT:  The corroboration is circular to me,

16:53:45 1   you need to have corroboration for him and yet he's the

16:53:49 2   corroboration for the dead declarant's declaration.

16:53:53 3               MR. FLACHSBART:  The nature of corroboration --

16:53:54 4               THE COURT:  Do you have any cases where courts

16:53:58 5   have let this in?

16:53:59 6               MR. FLACHSBART:  There is nothing that on point,

16:54:02 7   Your Honor.

16:54:03 8               THE COURT:  All right.

16:54:06 9               MS. MAYER:  Just a couple of points, Your Honor.

16:54:08 10  The declarations were executed November 4th, 2019.  So

16:54:13 11  TrackTime had them for three years and sat on them.  And

16:54:16 12  then they didn't produce the first one until October 2022.

16:54:20 13  At that time I know that correspondence Mr. Flachsbart is

16:54:24 14  talking about because I wrote it, we immediately asked to

16:54:27 15  depose Mr. Chamberlain and we were told he had passed away

16:54:32 16  March 9th, 2022.  If they would have just produced those

16:54:37 17  affidavits when they were executed, we would have had the

16:54:40 18  opportunity to --

16:54:41 19              THE COURT:  Did you produce them as part of a

16:54:44 20  file history?

16:54:45 21              MS. MAYER:  No, they produced them separately,

16:54:47 22  but it was --

16:54:48 23              THE COURT:  Did they also produce it within that

16:54:51 24  file wrapper?

16:54:51 25              MS. MAYER:  No.  But at that time

16:54:53 1    Mr. Chamberlain had passed away.  I don't think they can

16:54:57 2    meet --

16:54:57 3              THE COURT:  I just didn't know since they

16:55:00 4    referred you to some kind of prosecution history.  I didn't

16:55:04 5    mean that.  But when you said they didn't produce them, I

16:55:08 6    don't know if they produced that file history that included

16:55:12 7    --

16:55:12 8              MS. MAYER:  No, they were produced in no form as

16:55:14 9    part of a larger file history until the very end of fact

16:55:19 10   discovery after Mr. Chamberlain had passed away.  They

16:55:22 11   cannot meet Federal Rule of Evidence 807.  It's not

16:55:26 12   trustworthy for all the reasons I gave.  Mr. Chamberlain is

16:55:30 13   Mr. Evans' brother-in-law.  The text of the declaration is

16:55:35 14   identical to Mr. Maynard, there is clearly a common author,

16:55:39 15   likely an attorney.  The notary only can confirm that that

16:55:42 16   was Mr. Chamberlain that signed, they can't confirm the

16:55:46 17   content was accurate.  When describing what Mr. Evans

16:55:50 18   disclosed to him in 2008, he listed the language of the

16:55:54 19   claims of the issued patents which didn't issue until 2014.

16:55:58 20   We weren't able to cross-examine him and the closest case on

16:56:04 21   point is the Lupoid case that we cite in the PTO and it

16:56:10 22   excludes the declaration, same facts, declaration, they

16:56:14 23   wanted to use it during trial, it was prepared for

16:56:17 24   litigation and not given until after.  So not trustworthy.

16:56:22 25   You pointed out that factor two of the statement is more

16:56:27 1    probative.  I know Mr. Flachsbart said it is.

16:56:31 2            THE COURT:  He said it is but your position is

16:56:33 3    how could it be more probative than Mr. Maynard's statement

16:56:37 4    when they're identical?

16:56:39 5            MS. MAYER:  Yes.  And the reasonable notice, I

16:56:41 6    mean, the reason we didn't have reasonable notice, if they

16:56:44 7    just would have given us the affidavit at the time they were

16:56:47 8    executed, November 2019, we could have deposed

16:56:51 9    Mr. Chamberlain.  So our inability to depose him falls on

16:56:54 10   TrackTime's shoulders.

16:56:57 11           THE COURT:  All right.  I am going to exclude

16:57:00 12   the declarations.  I don't think that they -- they are

16:57:05 13   hearsay and out-of-court statements that would be offered

16:57:08 14   for the truth of the matter asserted and I don't think they

16:57:11 15   meet -- there is no showing that they meet Rule 807 in that

16:57:23 16   I have not heard that there is sufficient guarantees of

16:57:27 17   trustworthiness and we have some circular corroboration

16:57:32 18   going on, and there is some concern that the statements were

16:57:36 19   made by a relative of the inventor here.  I'm not convinced

16:57:40 20   that it's more probative on the point for which it's offered

16:57:42 21   than any other evidence given the representations that the

16:57:51 22   statements in the declaration appear to be substantially

16:57:52 23   identical to the statements in a different declaration.

16:57:58 24           And I do think that there is a concern I have

16:58:01 25   with respect to notice given that the declarations were

16:58:06 1   executed in November of 2019 but not produced until 2022,

16:58:14 2   one of them at the end of discovery and one of them after

16:58:17 3   discovery had closed.  So I am not going to allow those.

16:58:24 4              Is that the end of the red and the blue?

16:58:30 5              MR. FLACHSBART:  I believe so, Your Honor.

16:58:32 6              THE COURT:  All right.  So I'll take you off the

16:58:36 7   clock now.  Anything else that you all want to talk about?

16:58:42 8              MS. SHAMILOV:  Your Honor, there was one dispute

16:58:44 9   on the voir dire questionnaire, but I'm assuming that the

16:58:47 10  Court will just do what the Court usually does with that,

16:58:51 11  and we don't need to bring that up.

16:58:52 12             THE COURT:  Yes.

16:58:53 13             MR. GREENSPOON:  And Your Honor, there may creep

16:58:55 14  up one inconsistency between the verdict form and the jury

16:58:59 15  instructions.  I know we're not going into that yet, but I

16:59:02 16  just want to flag that.  I can explain what I mean and I

16:59:06 17  have shared the concern with counsel.

16:59:08 18             THE COURT:  Okay.

16:59:10 19             MR. GREENSPOON:  Yes.

16:59:12 20             MS. SHAMILOV:  Your Honor, if I may, we haven't

16:59:14 21  conferred on that issue yet.  I think we should confer

16:59:16 22  rather than bothering the Court.

16:59:19 23             MR. GREENSPOON:  I invite that.

16:59:21 24             THE COURT:  Excellent.  Anything else?

16:59:22 25             MR. FLACHSBART:  I think the only other two

issues we had, Your Honor, were one is we had proposed a

compromise on the verdict form for damages, it would deal

with Amazon's desire to argue that there is a lump sum --

THE COURT:  I'm not dealing with that at a

pretrial conference.  We deal with that after the evidence

comes in when we get to the prayer conference.

MR. FLACHSBART:  No problem.  And we have some

concern just to the volume of objections that we received

from Amazon.  If you look at our exhibit list, they objected

to every single one other than the patent, five or six

objections each.  It's hard to decide what are real.  A lot

of these are their own documents, authenticated, and most of

the cases, there is testimony where the witnesses said that

they're accurate, that they're meant to be accurate, so

we're struggling with how many of those objections are

actually duplicates.  Our objections to their exhibit list

by comparison, there may be a couple hundred exhibits that

we have no objection to.  We understand it comes with the

case, they should come with the exhibits.

THE COURT:  Amazon needs to tell you what

they're actually objecting to, which ones that they're

maintaining objections to.  I understand that it may be

context dependent if the witness has no knowledge of

something, but you should give them that information so that

they can determine what they're going to do and you guys can

17:00:43  1    raise any objections, but know that any objections that you

17:00:46  2    do make are going to come out of your time from trial.

17:00:49  3    Anything else?

17:00:49  4                    MR. FLACHSBART:  That's all for me, Your Honor.

17:00:51  5                    MS. SHAMILOV:  Nothing, Your Honor.

17:00:52  6                    THE COURT:  All right.  We will see you next

17:00:55  7    week.

17:00:55  8                    COURT CLERK:  All rise.

17:00:56  9                    THE COURT:  Court is adjourned.

17:00:58 10                    (Court adjourned at 5:00 p.m.)

         11

         12              I hereby certify the foregoing is a true and
               accurate transcript from my stenographic notes in the proceeding.
         13

         14                                /s/ Dale C. Hawkins
                                          Official Court Reporter
         15                                U.S. District Court

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25