**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRACKTIME, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC and<br>AUDIBLE, INC.,<br><br>Defendants. | C.A. No. 1:18-cv-01518-MN<br><br>**JURY TRIAL DEMANDED** |

<u>**FINAL JURY INSTRUCTIONS**</u>

## TABLE OF CONTENTS

**Page**

I.   GENERAL ............................................................................................................. 1

    A.   Introduction ................................................................................................ 1

    B.   Consideration of Evidence ......................................................................... 2

    C.   Burdens of Proof ........................................................................................ 3

II.  PATENT JURY INSTRUCTIONS ....................................................................... 5

    A.   The Parties' Contentions ............................................................................ 5

    B.   Summary of Patent Issues .......................................................................... 6

    C.   The Claims of a Patent ............................................................................... 7

    D.   Infringement – Generally ........................................................................... 9

    E.   Direct Infringement .................................................................................. 10

    F.   Willful Infringement ................................................................................ 13

    G.   Invalidity – Generally .............................................................................. 15

    H.   Person of Ordinary Skill in the Art ......................................................... 16

    I.   Prior Art – Generally ............................................................................... 17

    J.   Date of Invention ..................................................................................... 18

    K.   Invalidity – Anticipation Generally ......................................................... 21

    L.   Invalidity – Anticipation by Written Prior Art and system prior art ................. 22

    M.   Invalidity – Anticipation by Prior Invention ........................................... 23

    N.   Invalidity – Obviousness ......................................................................... 25

    O.   Effective Filing Date for the '638 Patent ................................................ 28

    P.   Effective Filing Date for [Subject Matter Used as] Prior Art ............................. 30

    Q.   Invalidity – Written Description .............................................................. 32

    R.   Patent Eligibility ...................................................................................... 34

III. DAMAGES ........................................................................................................... 37

    A.   Damages – Generally ............................................................................... 37

    B.   Reasonable Royalty ................................................................................. 38

    C.   Reasonable Royalty – Factors Relevant to the Hypothetical Negotiation .......... 39

    D.   Reasonable Royalty – Timing.................................................................. 41

    E.   Reasonable Royalty – Lump Sum vs. Running Royalty.................................... 42

    F.   Reasonable Royalty – Apportionment ..................................................... 43

IV.    DELIBERATIONS AND VERDICT ................................................................ 45

    A.    Deliberations and Verdict – Introduction ........................................ 45

    B.    Unanimous Verdict ......................................................................... 46

    C.    Duty to Deliberate .......................................................................... 47

    D.    Social Media ................................................................................... 48

    E.    Court Has No Opinion ..................................................................... 49

I.    **GENERAL**

  A.  **INTRODUCTION**

Members of the jury, now is the time for me to instruct you about the law that you must follow in deciding this case. Please listen carefully to everything I say. You must follow all of my instructions, including the ones that I gave you at the start of the case and the ones I have given during trial, and not single out some and ignore others. They are all important.

You will have a written copy of these instructions, as well as my preliminary instructions, with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by reminding you of the respective burdens in this case, and then I will instruct you concerning the positions of the parties and the law you will apply in this case. Then we will hear the closing arguments. After that, I will explain the rules that you must follow during your deliberations in the jury room.


**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 1 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

**B.  <u>CONSIDERATION OF EVIDENCE</u>**

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 2 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); Third Circuit Pattern Jury Instructions ("3d Cir.") at No. 1.5 Preliminary Instructions—Evidence.

### C. **BURDENS OF PROOF**

As I told you on the first day of trial, in a legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I will now remind you what they mean.

This is a civil case in which TrackTime alleges that Amazon has infringed a patent TrackTime owns. TrackTime has the burden of proving infringement and the amount of money damages for any infringement by a preponderance of the evidence. That means it has to produce evidence that, when considered in light of all of the facts, leads you to believe that what TrackTime claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting TrackTime's claims of infringement and damages must make the scales tip somewhat on its side. If the scale should remain equal or tip in favor of Amazon, you must find for Amazon on the issue of infringement.

Amazon contends that TrackTime's patent is invalid. A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the asserted claims are invalid. That means it has to produce evidence that, when considered in light of all of the facts, leads you to believe that what Amazon claims is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence. If you find that Amazon has not met this burden, you must find for TrackTime on the issue of invalidity.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden is a higher burden of proof that applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case and put it out of your mind.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 3 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, Dkt. 404 ("*Complete Genomics* Final Instructions") at 2 (D. Del. May 5, 2022).

## II.   <u>PATENT JURY INSTRUCTIONS</u>

### A.   <u>THE PARTIES' CONTENTIONS</u>

This case was filed in October of 2018 by TrackTime, alleging patent infringement against Amazon. You have heard evidence regarding the Asserted Patent in this case: U.S. Patent No. 8,856,638, which has been referred to as the "'638 Patent" or the "Asserted Patent." TrackTime alleges that Amazon has infringed claims 1 and 9 of the '638 Patent. TrackTime also alleges that it is entitled to damages for Amazon's infringement. Amazon denies that it has infringed the asserted claims of the '638 Patent and that TrackTime is entitled to damages.  Amazon also contends that claims 1 and 9 of the '638 Patent are invalid.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 4 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

**B.  SUMMARY OF PATENT ISSUES**

You must decide the following issues in this case according to the instructions that I give you:

1.      Whether TrackTime has proven by a preponderance of the evidence that Amazon infringes one or more of the asserted claims of the '638 Patent;

2.      Whether TrackTime has proven by a preponderance of the evidence that Amazon willfully infringed one or more of the asserted claims of the '638 Patent;

3.      Whether Amazon has proven by clear and convincing evidence that one or more of the asserted claims of the Asserted Patents is invalid;

If you decide that Amazon infringes any asserted claim of the '638 Patent that is not invalid, then you will also need to decide what money damages should be awarded to compensate TrackTime.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 5 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 5 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.).

## C.  **THE CLAIMS OF A PATENT**

Before you can decide many of the issues in this case, you need to understand the role of patent "claims." The claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.

In this case, the asserted patent claims are what are known as "method claims," which consist of one or more "steps." Because a method constitutes a sequence of steps, the use of a method necessarily involves doing or performing each and every one of the recited steps.

Here, you will need to understand what each of the asserted claims covers in order to decide whether or not that claim is infringed and whether or not each claim is invalid.

It is my job to define the terms of the claims and instruct you about the meaning. It is your role to apply my definitions to the issues that you are asked to decide. In this case, I have determined the meaning of the following term of the asserted claims of the '638 Patent:

- "multimedia" includes media that consists of only one type of media.

You must accept my definition of this term as being correct. It is your job to take this definition and apply it to the issues that you are deciding, including the issues of infringement and invalidity.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning in the field of the patents. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

**Source:** D.I. 89 at 1**;** D.I. 283 at 66:2-5 ("The Court:  No, hold on.  I have an order. Multimedia includes media that consist of only one type of media.  That's what it says in the order and that's what we're going to go forward with."); *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 6-7 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); (D.I 89).

### D.  <u>INFRINGEMENT – GENERALLY</u>

The United States' patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented product or method in the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

In order to prove infringement, a patent owner must prove that the requirements for direct and indirect infringement are met by a preponderance of the evidence that all of the requirements of direct and indirect infringement have been proved.

Infringement is assessed on a claim-by-claim basis. Thus, a patent owner bears the burden of proving by a preponderance of the evidence that each of the asserted claims of its asserted patents is infringed. Therefore, you, the jury, must determine infringement for each patent and each claim separately.

I will now explain each type of infringement in more detail.

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 9 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.).

### E. **DIRECT INFRINGEMENT**

You must determine whether TrackTime has proven direct infringement of the asserted claims of the '638 Patent by Amazon or its customers (either separately or jointly).

As I just told you, you must determine, separately for each asserted claim, whether or not there is infringement.

TrackTime contends that uses of the Amazon Music—Tap to Jump and Amazon Immersion Reading—Page Turn products on mobile devices infringe claims 1-20 of the '638 Patent.  To determine infringement, you must compare the accused methods with each asserted claim to determine whether each and every one of the requirements of that claim is satisfied. A patent claim is infringed only if the accused method includes each and every limitation in that patent claim. If the accused method does not contain one or more elements or steps recited in a claim, there is no infringement. The presence of other elements or additional steps in the accused method beyond those claimed, however, does not avoid infringement, as long as every claimed element is present.

**[There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."**

**If a company uses within the United States a process that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that process satisfies those claim elements "under the doctrine of equivalents." Under the doctrine of equivalents, a process infringes a claim if the accused process performs steps that literally meet or are equivalent to each and every element of the claim. You may find that a step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have**

considered the differences between them to be "insubstantial" or would have found that the action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," TrackTime must prove the equivalency of the action to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the process either literally or under the doctrine of equivalents for you to find infringement.][1]

---

[1] **TrackTime:** Amazon's trial record citation shows that Dr. Hernandez gave an alternative DOE opinion for two limitations: (1) that a synchronization index can comprise two or more files (if breaking them into two or more signified literal noninfringement), and (2) that claim 1's "electronic transcript" need not have a live spoken source (if written records that lacked such a source signified literal noninfringement). Amazon did not cross-examine Dr. Hernandez on these opinions. Under Federal Circuit law applying FRE705, this means that such opinions constitute substantial evidence that would support an infringement judgment. *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1574-75 (Fed. Cir. 1991). Dr. Schonfeld conceded the point by not rebutting DOE infringement in his direct testimony.

**Amazon:** Amazon objects to any DOE instruction as prejudicial to it in light of the trial record, including with respect to the jury's determination of infringement issues generally. TrackTime did not present any DOE theory at trial. The Federal Circuit has also held that an equivalents theory requires the plaintiff to "provide particularized testimony and linking argument . . . to support a finding of infringement under the doctrine of equivalents." *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). After reciting that the law for DOE requires evidence meeting the "function-way-result" test, TrackTime adduced no particularized testimony applying it. The entirety of Dr. Hernandez's testimony was the conclusion that DOE applied to any limitations not literally infringed:

Q. Have you been exposed to some of Amazon's arguments for why they would say the claim elements are allegedly not practiced?

A. Yes. I think Amazon alleges that having multiple files as synchronization index, it has to be a single file, so they say that it cannot be displayed, so it's irrelevant, the computer will

11

You may find direct infringement based on one instance of the claimed method being performed by Amazon. Proof of direct infringement may be based on circumstantial evidence.

One may directly infringe a patent unknowingly – that is, without knowledge that what one is doing is an infringement of the patent. One can be a direct infringer of a patent even if that person believes in good faith that he is not infringing any patent or even if he does not know of the patent.

All steps of the method must be performed for there to be direct infringement of an asserted claim. If any step of an asserted claim is not performed, there is no direct infringement.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 9-10 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 10-11 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.). **[FCBA Instruction B.3 3.1c]**

---

use the files to look up, it doesn't matter if you come in 1 or 2 or 3 pieces.  And the second argument I believe that they say that electronic transcript will be only referred to like in this court, electronic transcript, it's something that comes from the transcripts, from Mr., here the reporter, and I disagree with those points.

Q. So if there were any merits to the points made by Amazon for literal infringement, would your infringement opinion change overall?

A. Well, it were to prevail on those points, it would be DOE, doctrine of equivalents.

Tr. Tx. (Sept. 13) at 176:11-177:17.

**F.  WILLFUL INFRINGEMENT[2]**

If you find that Amazon infringed a valid claim of the TrackTime patent, then you must also determine whether or not such infringement was willful.

To show that infringement was willful, TrackTime must prove by a preponderance of the evidence that Amazon knew of the '638 Patent and intentionally infringed at least one asserted claim of the patent.  To show willfulness, you must find that Amazon has engaged in conduct evidencing deliberate or reckless disregard for TrackTime's patent rights.  However, you may not find that infringement was willful merely because Amazon knew about the '638 Patent, without more.  In determining whether TrackTime has proven that Amazon's infringement was willful, you must consider all of the circumstances and assess Amazon's knowledge at the time the challenged conduct occurred, including: whether Defendants intentionally copied the patented technology in developing the accused method; whether Defendants knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Defendants had a reasonable belief that its products did not infringe the asserted patent or that the patent was invalid.

If you determine that any infringement was willful, you may not allow that decision to

---

[2]**TrackTime: The Brahmbat tweet dated November 2, 2021 (PTX144) and other evidence confirms Amazon expanding its infringement into Podcasts well after its knowledge of the dispute began, while claiming credit for tap to jump as its own innovation. Jason Hall (in charge of Podcasts technology) did not know of the existence of this lawsuit until he was asked to testify at deposition. Day 2 Trial Tr. 384:23-385:2.  A reasonable jury could find that infringement as of November 2, 2021 was willful.**

**Amazon: Amazon objects to any willfulness instruction as prejudicial to it in light of the trial record, including with respect to the jury's determination of infringement issues.**

affect the amount of any damages award you give for infringement.

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 15 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 1933 (2016).

### G.  <u>INVALIDITY – GENERALLY</u>

I will now instruct you on the rules you must follow in deciding whether or not Amazon has proven that the asserted claims of TrackTime's patent are invalid.  As I previously told you, to prove that a claim of a patent is invalid, Amazon must persuade you by clear and convincing evidence.

Like infringement, you must determine whether each asserted claim of the '638 Patent is invalid on a claim-by-claim basis.


**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 14 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 16 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.).

### H.  **PERSON OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the named inventors' invention date.  Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the time of invention.  I will instruct you regarding the date of invention later on in these instructions.

The parties agree that a person of ordinary skill in the art at the time of the alleged invention would have had a bachelor's degree in Computer Science or in Electrical and Computer Engineering and at least two years of experience in media systems, such as text, image, graphics, audio, and video systems. Additional education could have substituted for professional experience, and significant work experience could have substituted for formal education.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 15 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 19 (D. Del. May 5, 2022) (Final Jury Instructions) (Noreika, J.).

## I.  PRIOR ART – GENERALLY

In order for someone to be entitled to a patent, the claimed invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claims are invalid as anticipated (that is, not "new") or as obvious. Prior art may include items, such as products or systems, that were publicly known or that were used or offered for sale, or documents such as publications or patents, known as "prior art references," that disclosed the claimed invention or elements of the claimed invention.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 16 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

## J.  <u>DATE OF INVENTION</u>

The date of invention is either when the invention was reduced to practice or when the invention was conceived, provided the inventor exercised reasonably continuous diligence in reducing the invention to practice from a time just prior to another's contended conception date.

Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception requires a showing that the inventor possessed every feature recited in the claims, and that every limitation of the claimed invention was known to the inventor at the time of the alleged conception. **[The inventor must have a specific, settled idea—a particular solution to the problem at hand, not just a general goal or research plan that he or she hopes to pursue.]**[3]

**[The oral testimony of the inventor is not by itself enough to prove that he conceived**

---

[3] **TrackTime: The first additional language proposed by Amazon is unnecessarily repetitious and adds additional issues and concepts with which the jury must grapple. The base instructions from *Gilead* and *Complete Genomics* are more than sufficient. The second additional language is appropriate but only with TrackTime's additional instructional language about the rule of reason.**

**Amazon: Amazon's addition to the second paragraph is a necessary statement of the law drawn from Federal Circuit precedent. *See Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) ("An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.").  Amazon's proposal provides a more complete statement of the law and will help a lay jury understand what it means to possess every limitation in the claims, a phrase that standing alone will inevitably confuse jurors.  The instruction concerning corroboration should also clearly instruct the jury regarding the independence requirement both so that it may correctly weigh the evidence at issue and as a curative given the improper suggestion that Mr. Evans's unwitnessed and self-dated sketch corroborates a claimed July 2008 conception date.  *See* Trial Tr. (Sept 15) at p. 735-41.**

of the claimed invention.   An inventor's testimony concerning conception must be corroborated by independent evidence.  In other words, the inventive facts must not rest alone on testimonial evidence from the inventor himself.] [Corroboration is determined by a rule of reason, whereby all pertinent evidence is examined to determine whether the alleged prior inventor's testimony is credible.]

Diligence means working continuously, though not necessarily every day. The diligence must be reasonably continuous. Periods of inactivity within the critical period, including interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her, do not prevent a finding of reasonable diligence. That being said, the period during which diligence is required must be accounted for by either affirmative acts or acceptable excuses. The diligence inquiry is to determine whether the invention was abandoned or unreasonably delayed.

A claimed method is reduced to practice when all of its elements are successfully performed and has been shown that it will work for its intended purpose, or when it is fully described in a patent application filed with the Patent Office.

The oral testimony of the inventor is not by itself enough to prove that he was diligent in reducing the invention to practice.  An inventor's testimony concerning diligence and reduction to practice of an invention must be corroborated by independent evidence.  Evidence of diligence includes development efforts and work of non-inventors, and includes acts taken to place a patent application on file.

To prove the date of invention, a patentee must produce evidence to prove that, for each asserted claim, that the invention was conceived by that date and the named inventor exercised reasonably continuous diligence in reducing the invention to practice from a time just prior to

another's contended conception date.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 17-18 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 22 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.); *Round Rock Research, LLC v. SanDisk Corp.*, 81 F. Supp. 3d 339, 353 (D. Del. 2015) (discussing "evidence of diligence through prosecution of" a patent, including work to draft and file the patent); B*urroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)); *Brown v. Barbacid*, 276 F.3d 1327, 1336 (Fed. Cir. 2002) "[A]n inventor's testimonial assertions of inventive facts require corroboration by independent evidence." (see also "the inventor…must provide independent corroborating evidence in addition to his own statements and documents") ("This 'rule of reason' analysis does not alter the requirement of corroboration for an inventor's testimony. The inventive facts must not rest alone on testimonial evidence from the inventor himself.")

### K.  <u>INVALIDITY – ANTICIPATION GENERALLY</u>

In order for someone to be entitled to a patent, the invention must actually be "new."  If an invention is not new, it is said to be anticipated.  Amazon contends that the asserted claims of the '638 Patent are invalid because the claimed invention is anticipated.  Specifically, Amazon contends that U.S. Patent No. 8,433,431 to Master, U.S. Publication No. 2007/0027844 A1 to Toub, and the LiveNote system each individually anticipate asserted claims 1 and 9 of the '638 Patent.

Anticipation must be determined on a claim-by-claim basis.  To establish invalidity by anticipation, Amazon must prove by clear and convincing evidence that all the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.

I will now describe the different types of anticipation at issue in this case.

**Source:** *Aqua Connect, Inc. v. TeamViewer US, Inc.*, No. 1:18-cv-01572-MN, D.I. 267 (Final Jury Instructions) at 13 (D. Del. Aug. 11, 2022) (Noreika, J.); *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 19 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

**L.  INVALIDITY – ANTICIPATION BY WRITTEN PRIOR ART AND SYSTEM PRIOR ART**

There are two types of anticipation at issue in this case. The first type of invalidity by anticipation is based on written prior art and system prior art.

If a method has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior art. To prove anticipation, the alleged infringer must prove that the claimed invention is not new by clear and convincing evidence.

In this case, Amazon contends that the asserted claims of TrackTime's '638 Patent are anticipated by U.S. Patent No. 8,433,431 to Master, U.S. Publication No. 2007/0027844 A1 to Toub, and the LiveNote system.  You must determine what is the prior art that may be considered in determining whether each of these claims is new or anticipated.

To anticipate a claim, each element in the claim must be presented in a single item of prior art and arranged or combined in the same way as recited in the claim.

In determining whether every one of the elements of the claimed invention is found in the prior publications, or patents or systems identified by Amazon, you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular publications and patents.

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 24 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.).

## M. <u>INVALIDITY – ANTICIPATION BY PRIOR INVENTION</u>

The second type of invalidity by anticipation is based on prior invention by another.

If the invention defined in a patent claim was invented by someone else before it was invented by the patent owner and the prior inventor did not abandon, suppress or conceal his or her invention, then the invention is "anticipated" by the prior invention. The alleged prior invention must include each and every element of the claimed invention; if there is an element missing from the alleged prior invention, then the prior invention cannot invalidate the claimed invention by anticipation.

If you decide that the date of invention of the '638 Patent is before December 2, 2010—the filing date of Dr. Master's Provisional Patent Application—then, Amazon contends that the asserted claims of the '638 Patent are still invalid because the invention defined in these claims was invented by Dr. Aaron Master before the invention date of TrackTime's patent. Amazon must prove the date of invention by Dr. Master and separately, for each claim, that Dr. Master was the prior inventor of the claimed method.

**[In considering whether TrackTime proved an invention date before a certain time, the burden on TrackTime is to produce evidence supporting that date. It then becomes Amazon's burden of proof, by clear and convincing evidence, to prove that the inventor has an invention date prior to TrackTime's, and/or that TrackTime's evidence does not establish a suitable prior invention date.]** [4]

---

[4] **TrackTime: When there are competing prior invention dates during a patent infringement suit, the burdens are asymmetric. The patentee carries a burden of production to support a**

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 21-23 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.).

---

prior date, but not a burden of persuasion to prove it is correct. It is the accused infringer who must carry the burden of persuasion by clear and convincing evidence on all parts of its prior art case. *Marhurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-79 (Fed. Cir. 1996). TrackTime's instruction accurately reflects this law, which the jury must apply on the facts of this case. Amazon's instruction omits all reference to its prior art date burden. Although the Court's previous instructions did not include this language, cases like this that involve a patent subject to pre-AIA first-to-invent rules are increasingly rare and will soon fade away entirely.

**Amazon:  TrackTime's proposal misstates the law.  The Federal Circuit has held that: "[I]n the context of establishing conception and reduction to practice for the purposes of establishing a priority date, ... a patent challenger has the burden of producing evidence to support a conclusion of unpatentability under § 102 or § 103, but a patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference."** *In re Magnum Oil Tools Int'l, Ltd.*, **829 F.3d 1364, 1375-76 (Fed. Cir. 2016).  Moreover, the addition of a shifting burden of production and persuasion is not explained in any other proposed instruction or in any of the Court's prior instructions, nor are these burdens defined elsewhere in the instructions and are thus only confusing to the jury.  *Cf. Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n.1 (3d Cir. 1999) (instructing jury on a shifting burden of proof "is unnecessary and confusing."); Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1322 (11th Cir. 1999) ("the distinction between burden of persuasion and burden of production is not familiar to jurors, and they may easily be misled by hearing the word 'burden' (though referring to a burden of production) used with reference to a defendant in an explanation of that part of the charge that concerns a plaintiff's burden of persuasion.").  There is already a separate instruction on prior invention, and this current instruction already provides that Amazon's ultimate burden is by clear and convincing evidence.  No other clarification is needed.**

### N.      **INVALIDITY – OBVIOUSNESS**

A claimed invention is invalid as "obvious" if it would have been obvious to the person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed inventions would have been obvious to you as a layperson or to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In this case, Amazon contends that the asserted claims of the '638 Patent are invalid for obviousness.

Obviousness can only be found if you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so. In determining whether the claimed invention was obvious, consider each claim separately.

In determining whether an asserted claim is obvious, you must first consider the level of ordinary skill in the pertinent field that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the asserted claims, and, if present, objective evidence or secondary considerations. You must determine what is the level of ordinary skill according to the instruction I gave you earlier.

Second, you must determine what is the prior art that may be considered in determining whether the asserted claims are obvious. A prior art reference may be considered if it discloses information designed to solve any problems or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent. If you find that that did not establish anticipation, the prior invention may still be used to show

obviousness.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the '638 Patent. As I instructed you earlier, you must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

In considering whether a claimed invention is obvious, you should consider whether, at the relevant time, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

Finally, in determining whether the claimed invention is obvious, you should consider any of the following factors (called "secondary considerations") that you find have been shown by the evidence:

1.  Whether the claimed invention was commercially successful as a result of the merits

of the claimed invention;

2.  Whether others had tried and failed to make the claimed invention;

3.  Whether others copied the claimed invention;

4.  Whether the claimed invention satisfied a long-felt need;

5.  Whether others in the field praised the claimed invention;

6.  Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

7.  Whether the claimed invention achieved unexpected results;

8.  Whether others sought or obtained rights to the patent from the patent holder; and

9.  Whether the inventor proceeded contrary to accepted wisdom in the field.

When evidence establishes the presence of one or more of these secondary considerations, it tends to prove the inventions were not obvious. These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious. In considering this kind of evidence, you should consider whether the secondary consideration was attributable to the features of the asserted claims as opposed to features already found in the prior art.

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 25-27 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.).

**O.  EFFECTIVE FILING DATE FOR THE '638 PATENT**

The inventor of the '638 Patent filed a provisional patent application on January 3, 2011. The nonprovisional application was filed December 6, 2013. For purposes of analyzing certain questions of validity, you **[may need to determine whether the asserted claims of the '638 Patent are sufficiently supported by the provisional application. TrackTime contends that the asserted claims of the '638 Patent are entitled to]** **[should use]** the filing date of the provisional application **[as the '638 Patent's effective filing date]**.

**[TrackTime may rely on the filing date of its provisional application as the effective filing date only if the provisional application supports every element of the asserted claims of the '638 Patent. Specifically, the disclosure in the provisional application must reasonably convey to those of skill in the art that the inventor was in possession of the claims in the patent.**

**If you find that the provisional application meets these requirements, then TrackTime is entitled to an effective filing date of January 3, 2011, the filing date of the provisional application. Otherwise, it is presumed that TrackTime is entitled to an effective filing date of December 6, 2013. A date of invention for a particular patent claim may be earlier than the effective filing date.][5]**

---

[5] **TrackTime: Amazon did not provide expert (or fact) testimony suggesting any reason to question that the provisional application carries full force as the effective filing date for claims 1 and 9 of the '638 Patent. If this is an issue, Dr. Hernandez can address it on rebuttal.**

**Amazon:  TrackTime bears the burden of proof on this issue.  *Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 205 (E.D.N.Y. 2020) ("A plaintiff seeking entitlement to the priority**

Source: Adapted from *Complete Genomics, Inc. v. Illumina, Inc*., No. 19-970-MN, D.I. 404 at 18 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.); *see also* Manual of Patent Examination Procedure § 2152.01—Effective Filing Date of the Claimed Invention.

--------------------------------

**date of a provisional application bears the burden of satisfying the written description requirement.") (citing *PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1303-04 (Fed. Cir. 2008).)**

**P.  EFFECTIVE FILING DATE FOR [SUBJECT MATTER USED AS] PRIOR ART**

The inventors of U.S. Patent No. 8,433,431 filed on February 13, 2012, which you have heard referred to as the "Master Patent," filed a provisional patent application on December 2, 2010. For purposes of analyzing certain questions of validity, **[you may need to determine the effective filing date of the Master Patent.  Amazon contends that]** the effective filing date of the Master Patent is December 2, 2010.

**[Amazon may rely on the filing date of the provisional application as the effective filing date only if the provisional application supports every element of at least one claim in the issued Master Patent. Specifically, the disclosure in the provisional application must reasonably convey to those of skill in the art that the inventor was in possession of that claim in the patent. The provisional application must also disclose]** the subject matter from the Master Patent that Amazon relies upon for its invalidity defense **[that is also supported by the provisional application]**.

**[To the extent] [If]**[6] you find that **[the provisional application meets these**

---

[6] **TrackTime: Subject matter carried forward from a provisional application may be partial or complete. If partial, the effective reference date will be the earlier date for some subject matter and the later date for other subject matter.** *See In re Giacomini*, **612 F.3d 1380, 1383 (Fed. Cir. 2010) (requiring that the relied upon subject matter "was carried forward from an earlier U.S. provisional application or U.S. non-provisional application");** *Cox Communications, Inc. v. AT&T Intellectual Property I, L.P.,* **IPR2015-01227, Paper 70 at 29 (P.T.A.B. Nov. 16, 2015) ("[T]he material relied upon as teaching the subject matter of the challenged claims must be carried through from that earlier filed application to the reference patent being used against the claim.") (***citing Giacomini*, **612 F.3d at 1383);** *Ex parte Mann*, **2016 WL 7487271, at \*5 (P.T.A.B. Dec. 21, 2016) (explaining that "[t]his subject matter test is in addition to the comparison of claims required by** *Dynamic Drinkware*,**" and that "absurd results would be reached if a subject matter test were not required");** *Comcast Cable*

requirements] [subject matter of the Master Patent is supported by the provisional application], then the Master Patent is entitled to an effective filing date of December 2, 2010, the filing date of the provisional application. Otherwise [and for subject matter beyond that already disclosed in the provisional application], it is presumed that the Master Patent is entitled to an effective filing date of February 13, 2012 [and such portions are not prior art]. [A date of invention for a particular patent claim may be earlier than the effective filing date.]⁷

**Source:** Adapted from *Complete Genomics, Inc. v. Illumina, Inc*., No. 19-970-MN, D.I. 404 at 18 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.); *see also Impax Labs., Inc.*, 545 F.3d 1312, 1316 (Fed. Cir. 2008) ("when an accused infringer asserts that a prior art patent anticipates specific patent claims, the infringer enjoys a presumption that the anticipating disclosures also enable the claimed invention."); *see also* Manual of Patent Examination Procedure § 2136.

---

*Commc'ns, LLC v. Promptu Sys. Corp.,* IPR2018-00345, Paper 10 at 25-26 (P.T.A.B. July 2, 2018) (finding Petitioner's analysis insufficient to show "how the [provisional application] provides support for the subject matter relied upon [in the asserted reference]"); *see also* MPEP § 2151 (9th Ed., Rev. 10.2019, June 2020) ("[a] U.S. patent document is effective as prior art as of the filing date of the earliest application to which benefit or priority is claimed and which describes the subject matter relied upon.").

Amazon: TrackTime's proposal is needlessly complicated and will confuse the jury. Either the anticipating subject matter is disclosed or it is not.

⁷ TrackTime: Master's claims hypothetically have their own invention dates, but that question is not germane to any issue.

Amazon: TrackTime contends that the asserted claims of the '638 patent have a date of invention before the filing of the provisional application to which the Master patent claims priority. The date of Master's claims is directly in issue at trial and Amazon provided proof on this issue. The jury must be properly instructed. TrackTime's proposal is an incomplete statement of the law as it omits that the disclosure must support every element of at least one claim. *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,* 800 F.3d 1375, 1381 (Fed. Cir. 2015); MPEP § 2136.03.

## Q.      INVALIDITY – WRITTEN DESCRIPTION

A patent must contain a written description of the method claimed in the patent.  The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter.  To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.  When determining whether the specification discloses the invention, the claim must be viewed as a whole.

In this case, Amazon contends that the asserted claims of the '638 Patent are invalid for failure to satisfy the written-description requirement.  Amazon bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written-description requirement. If a patent claim lacks adequate written description, it is invalid.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written-description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; but a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.  In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.      the nature and scope of the patent claims;

2.      the complexity, predictability, and maturity of the technology at issue;

3.      the existing knowledge in the relevant field; and

4.      the scope and content of the prior art.

If you find that Amazon has proven by clear and convincing evidence that any of the asserted claims of the '638 Patent do not contain adequate written description for the inventions recited in the asserted claims, then you must find that the claim(s) are invalid.

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 30-31 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.); *Ariad Pharms. Inc. v. Eli Lilly & Co.*, 598 F.3d 1353 (Fed. Cir. 2010) ("written description requires more that a 'mere wish of plan for obtaining the claimed [] invention.'") (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 19917)).

### R.  PATENT ELIGIBILITY

[Amazon contends that the claims of the patent-in-suit are invalid because they claim subject matter that is not eligible for patent protection. You must decide if Amazon has proven by clear and convincing evidence that the elements in each of these claims other than any abstract idea to which they are directed, considered individually and as an ordered combination, involve only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional at the time of the invention.

[Amazon contends that the asserted claims of the '638 Patent claim only routine, well-known and conventional technologies and are therefore patent ineligible.  TrackTime does not dispute that each and every limitation in the claims of the '638 Patent was routine, well-known or conventional, but it disputes that the ordered combination of these claim elements was routine, well-known or conventional.  You must decide if Amazon has proven by clear and convincing evidence that an ordered combination of the claim elements in each asserted claim of the '638 Patent involves only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the effective filing date of the '638 Patent.]

Whether a particular technology was well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something was disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional. In determining whether a patent claim involves the performance of well-understood, routine, and conventional activities, you may consider statements made in the patent's specification, as well as evidence of the prior art.

[The fact that a claim is directed to a new idea is not sufficient to make that claim

34

patent-eligible based on the ordered combination of elements.   Instead, the specific combination and ordering of the claim elements must provide a particular solution to an identified problem in the prior art.] [8]

---

[8] **TrackTime: TrackTime's proposed instruction comes nearly verbatim from the Court's prior instruction in *TrustID*. Amazon's proposed changes go far beyond what the Court has accepted and is prejudicial to TrackTime. For example, Amazon's discussion of individual claim elements versus the ordered combination is unnecessary and will confuse the jury. In addition, it takes individual statements of counsel for TrackTime out of context and gives these statements the weight of the Court. Amazon's importation of their own positions and argument should not replace this Court's prior neutral instruction.**

**Amazon's statement of the law is also incorrect, because novelty is probative of eligibility under Supreme Court law. *See Ubiquitous Connectivity, LP v. Cent. Sec. Grp. – Nationwide, Inc.*, 2021 U.S. Dist. LEXIS 92864, at \*24-25 (N.D. Ok. May 17, 2021) ("Although 35 U.S.C. § 102 establishes 'novelty' as a distinct statutory requirement, the Supreme Court has acknowledged that 'the § 101 patent eligibility inquiry and . . . the § 102 novelty inquiry might sometimes overlap.'").**

**TrackTime's counsel also made no admission as to the conventionality of each individual claim element, as Amazon suggested. In answer to the Court's question during the June 30, 2023, summary judgment and *Daubert* hearing "Are you disputing [the conventionality of each element?]," TrackTime's counsel said, "Taken alone each individually, that's correct, Your Honor." June 30, 2023, Hrg. Tr. at 25:23–26:2.**

**Amazon: TrackTime's instruction is not what the Court read in *TrustID*.   For example, TrackTime has added "other than any abstract idea to which they are directed."   *See TRUSTID, Inc. v. Next Caller Inc.*, No. 18-172-MN, D.I. 295 at i, 25–31 (D. Del. Jul. 6, 2021) (Final Jury Instructions) (Noreika, J.)**

**The underlying fact question at step 2 is typically whether the asserted claim elements, alone or in ordered combination, was well-understood, routine, and conventional to a skilled artisan in the relevant field.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2017). But here, TrackTime admitted in open court that each element of the asserted claims, taken individually, was well-known, routine, and conventional (*see* D.I. 269 (June 30, 2023 Hrg. Tr. at 12:18-20, 25:23–26:2), leaving the jury to consider conventionality of the claim elements *only* as an ordered combination.   Moreover, Plaintiff did not identify conventionality of individual limitations as a fact issue for trial in the Pretrial Order.  (D.I. 278-3 at ¶ 10; *see***

**Source:** *TRUSTID, Inc. v. Next Caller Inc.*, No. 18-172-MN, D.I. 295 at 26 (D. Del. Jul. 6, 2021) (Final Jury Instructions) (Noreika, J.); *Aegis 11 S.A. v. Belkin Int'l, Inc.*, No. 19-1161-RGA, 2020 U.S. Dist. LEXIS 127548, at *18 (D. Del. Jul. 20, 2020) ("This [*Alice* step two] analysis requires consideration of 'whether the combination of elements was well-understood, routine, and conventional at the time of the invention.'"); *see also Cosmokey Sols. GMBH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) (At *Alice* step two, the declared abstractness provides a baseline for the analysis of "whether the additional elements 'transform the nature of the claim' into a patent-eligible application."); *Adaptive Streaming, Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016) ("It is not enough to point to conventional applications and say 'do it on a computer.'") (citing *Alice Corp. v. CLS Bank Int'l.*, 134 S. Ct. 2347, 2358 (2014); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017); *Affinity Labs of Tex, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016)[*; Berkheimer v. HP Inc.*, 890 F.3d 1369, 1370 (Fed. Cir. 2018) ("the additional limitations beyond the abstract idea")].

---

*also* D.I. 278-2 at  ¶ 11.  The Court adopted these statements in the proposed Pretrial Order (D.I. 293.), and thus the conventionality of individual claim limitations was never identified as an issue for trial.  *See Basista v. Weir*, 340 F.2d 74, 85 (3d Cir. 1965) (a pretrial order "limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order"); *see also UCB, Inc. v. Watson Lab'ys, Inc.*, No. 14-cv-1083, 2017 WL 11646645, at *41 (D. Del. Nov. 14, 2017).   The instruction must reflect this; otherwise the jury may conclude that it is free to assess individual elements.

Finally, Amazon's proposal correctly instructs the jury that ordering conventional elements in a novel way is insufficient to confer patent eligibility.  Rather, as the Federal Circuit has stated repeatedly, the ordering of elements must, "as an ordered combination add[] . . . to the laws of nature [something] that is not already present when the steps are considered separately."  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348–49 (Fed. Cir. 2019); *Adaptive Streaming, Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020) ("We have explained that satisfying the requirements of novelty and non-obviousness does not impute eligibility under § 101, including under the second step of the *Alice* inquiry, because what may be novel and non-obvious may still be abstract."); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016) ("It is not enough to point to conventional applications and say 'do it on a computer.'"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) ("The steps are organized in a completely conventional way . . .").

### III.   <u>DAMAGES</u>

#### A.   <u>DAMAGES – GENERALLY</u>

I will next instruct you on damages. You must not take these instructions as implying that TrackTime is entitled to recover damages. Instructions regarding the measure of damages are given for your guidance in the event you find that Amazon infringed one or more valid patent claims.

If you find that Amazon is liable for infringing one or more of the asserted claims, and that the asserted claims are not invalid, you must determine the amount of money damages to be awarded to TrackTime. On the other hand, if you find that none of the asserted claims is infringed, or that all of the asserted claims are invalid, or that each of the asserted claims that you find infringed is invalid, then you should not consider damages in your deliberations.

TrackTime has the burden of proving damages by a preponderance of the evidence. Although TrackTime is not required to prove the amount of its damages with mathematical precision, it must prove the amount of damages with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

If proven by TrackTime, the amount of damages must be adequate to compensate TrackTime for the infringement. The damages award cannot in any event be less than a reasonable royalty. You may not add anything to the amount of the damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 28 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

**B. <u>REASONABLE ROYALTY</u>**

TrackTime is seeking damages in the amount of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the alleged infringement began, which in this case, would be October 7, 2014, the date that the '638 Patent issued.

In considering this hypothetical negotiation, you should focus on what the expectations of TrackTime and Amazon would have been if they had entered into an agreement in October  2014 but no later than October 7, 2014, and if they had acted reasonably in their negotiations. In determining this, you must assume that all parties to the hypothetical negotiation believed the patent was valid and infringed and that all parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty that one party would have preferred.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 29 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.)

## C.  REASONABLE ROYALTY – FACTORS RELEVANT TO THE HYPOTHETICAL NEGOTIATION

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Any royalties received by TrackTime for the licensing of the '638 Patent, proving or tending to prove an established royalty.

2. The nature and scope of a license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

3. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

4. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

5. The duration of the '638 Patent and the term of the license.

6. The established profitability of the product used under the '638 Patent; its commercial success; and its popularity.

7. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

8. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

9. The extent to which the licensee has made use of the invention; and any evidence that shows the value of that use.

10. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

11. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the alleged infringer.

12. The opinion testimony of qualified experts.

13. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

14. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of the factors. You may also consider any other factors that in your mind would have increased or decreased the royalty Amazon would have been willing to pay, and TrackTime would have been willing to accept, acting as normally prudent businesspeople.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 30-31 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.); *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 120 (S.D.N.Y. 1970).

**D.  REASONABLE ROYALTY – TIMING**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation.  Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation on in October 2014 but no later than October 7, 2014, the issue date of the '638 Patent. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 33 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

### E. REASONABLE ROYALTY – LUMP SUM VS. RUNNING ROYALTY[9]

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards may take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

**Source: FCBA No. B.5.7—Damages—Lump Sum v. Running Royalty**.

---

[9] **The instruction is subject to Amazon's continuing objection to instructing concerning a running royalty that TrackTime's damages expert, Mr. Peterson, calculated only a lump sum damage estimate.**

F.  **REASONABLE ROYALTY – APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or the parties' size or market position.

A royalty compensating TrackTime for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

[A royalty compensating TrackTime for damages must also reflect the relative value of the new and inventive elements of TrackTime's invention in comparison to the conventional elements.  In other words, you may reward TrackTime only for its innovation: the incremental benefit bestowed by only the non-conventional or new elements of a patent claim, taken as a whole.][10]

---

[10] TrackTime: The apportionment is already accounted for in the instruction from *Complete Genomics*. Amazon's additional language is more likely to confuse the jury than assist it, and may cause the jury to apportion twice. According to Amazon's own *AstraZenica* case, *Georgia-Pacific* factors 7 and 8 already "bear directly on this issue." *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) (7 and 8 here named as factors 9 and 10 in opinion).

Amazon: Amazon's proposed language is a correct and necessary statement of the law for a jury in this case.  Patent law requires apportionment such that damages only "reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  The law is clear apportionment requires a determination "how much new value is created by the novel combination, beyond

**Source:** *Complete Genomics, Inc. v. Illumina, Inc.*, No. 19-970-MN, D.I. 404 at 36 (D. Del. May. 5, 2022) (Final Jury Instructions) (Noreika, J.); *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377-78 (Fed. Cir. 2021); *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Group, LLC,* 879 F.3d 1332, 1348 (Fed. Cir. 2018); *AstraZenica AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015).

---

the value conferred by the conventional elements alone." *AstraZenica AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); *see also Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377-78 (Fed. Cir. 2021) ("the patentee] must 'adequately and reliably apportion[ ] between the improved and conventional features of the accused [product]'") (quoting *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Group, LLC,* 879 F.3d 1332, 1348 (Fed. Cir. 2018)).

IV.     **DELIBERATIONS AND VERDICT**

   A.     **DELIBERATIONS AND VERDICT – INTRODUCTION**

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.


**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 35 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

**B.  <u>UNANIMOUS VERDICT</u>**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to every answer on the verdict form. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review that document with you in a minute.

You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 36 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

## C.  <u>**DUTY TO DELIBERATE**</u>

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 37 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

### D.  **SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, WeChat, WhatsApp, Snapchat, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 38 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

### E.  <u>COURT HAS NO OPINION</u>

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

**Source:** *United States v. Gilead Scis., Inc.*, No. 19-2103-MN, D.I. 464 at 39 (D. Del. May 8, 2023) (Final Jury Instructions) (Noreika, J.).

DUNLAP BENNETT & LUDWIG

/s/ *Tracy L. Pearson*
Tracy L. Pearson (#5652)
Rolando Diaz (#5845)
1509 Gilpin Avenue, Suite 2
Wilmington, DE 19806
(302) 468-7340
tpearson@dbllawyers.com
rdiaz@dbllawyers.com

*Attorneys for Plaintiff*

ASHBY & GEDDES

/s/ *Steven J. Balick*
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*