**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRACKTIME, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 1:18-cv-01518-MN |
| AMAZON.COM SERVICES LLC and AUDIBLE, INC., | |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FED. R. CIV. P. 50(a)**

# TABLE OF CONTENTS

Page

I.  THE ASSERTED CLAIMS ARE INVALID.........................................................1

    A.  The asserted claims fail to claim patentable subject matter under 35 U.S.C. § 101.....................................................................................................1

    B.  The asserted claims are anticipated and rendered obvious under 35 U.S.C. §§ 102 and 103...............................................................................4

        1.  Microsoft Toub (DTX0057) ...........................................................4

        2.  LiveNote (DTX0336; DTX0268; DTX0142).................................5

        3.  Master (DTX0056; DTX0071) .......................................................6

            a.  Master is prior art to the '638 patent....................................7

            b.  Master anticipates and renders obvious the asserted claims. ...............................................................................10

    C.  The asserted claims lack adequate written description under 35 U.S.C. § 112................................................................................................11

II.  PLAINTIFF FAILED TO PROVE DIRECT INFRINGEMENT. ........................12

    A.  Plaintiff failed to provide sufficient evidence that Immersion Reading or Amazon Music meet the limitation "receiving, from the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture" (claim 1)...................................................................................................12

    B.  Plaintiff failed to provide sufficient evidence that Immersion Reading or Amazon Music meet the limitation "delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device" (claim 1)...................................................................................................13

    C.  Plaintiff failed to provide sufficient evidence that Immersion Reading meets the limitations "said synchronization index comprises an electronic transcript that indicates text" and "text from a synchronization index."  (claims 1 and 9).....................................14

    D.  Plaintiff failed to provide sufficient evidence that Immersion Reading meets the limitation of a "touch-sensitive input interface gesture performed on a portion of said viewing screen

corresponding to a displayed word, or a range of words" (claims 1 and 9). ...................................................................................................15

E.    Plaintiff failed to provide sufficient evidence that Amazon Music meets the limitations a "performing a timecode lookup, using the synchronization index" (claim 1) and "performing a data lookup using said synchronization index, wherein said synchronization index is referenced" (claim 9). ..................................................................16

F.    Plaintiff failed to provide sufficient evidence that Immersion Reading or Amazon Music meet the limitation "seeking on said mobile computing device multimedia . . . and if found, accessing multimedia at t1" (claim 9). ........................................................................17

G.    Plaintiff failed to provide sufficient evidence that Immersion Reading meets the limitations "associat[ing] a time, t1, within multimedia to the selected word or range of words" (claim 1) and "provid[ing] data for a time location t1 that corresponds to said word or range of words selected" (claim 9)...............................................18

H.    Judgment as a matter of law is appropriate as to claims 2-8 and 10-20...............................................................................................................18

III.    PLAINTIFF FAILED TO PROVE WILLFUL INFRINGEMENT. .....................18

IV.    THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT. .........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014).............................................................................................................1

*Apator Miitors ApS v. Kamstrup A/S,*
887 F.3d 1293 (Fed. Cir. 2018).........................................................................................9

*Ariad Pharms, Inc. v. Eli Lilly & Co.,*
598 F.3d 1336 (Fed. Cir. 2010).......................................................................................11

*Bayer Healthcare LLC v. Baxalta Inc.,*
989 F.3d 964 (Fed. Cir. 2021).........................................................................................18

*Boston Scientific Corp. v. Nevro Corp.,*
560 F. Supp. 3d 837 (D. Del. 2021).................................................................................19

*Brown v. Barbacid,*
276 F.3d 1327 (Fed. Cir 2002).........................................................................................9

*CardioNet, LLC v. InfoBionic, Inc.,*
955 F.3d 1358 (Fed. Cir. 2020).........................................................................................1

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
935 F.3d 1341 (Fed. Cir. 2019).........................................................................................3

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019)......................................................................................1, 2

*Coleman v. Dines,*
754 F.2d 353 (Fed. Cir. 1985).........................................................................................9

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,*
800 F.3d 1375 (Fed. Cir. 2015).........................................................................................7

*Engel Indus., Inc. v. Lockformer Co.,*
96 F.3d 1398 (Fed. Cir. 1996)....................................................................................15, 17

*Ericsson, Inc. v. D-Link Sys., Inc.,*
773 F.3d 1201 (Fed. Cir. 2014).......................................................................................19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
579 U.S. 93 (2016)...........................................................................................................18

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986)............................................................................8

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993)...................................................................................1

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).........................................................................19

*In re Magnum Oil Tools Int'l, Ltd.*,
   829 F.3d 1364 (Fed. Cir. 2016)............................................................................8

*In re TLI Commc'ns Pat. Lit.*,
   823 F.3d 607 (Fed. Cir. 2016)..............................................................................3

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996)..............................................................................9

*Marten v. Hunt*,
   479 F. App'x 436 (3d Cir. 2012) ..........................................................................1

*Monsanto Co. v. Mycogen Plant Science, Inc.*,
   261 F.3d 1356 (Fed. Cir. 2001)............................................................................9

*Musacchio v. United States*,
   577 U.S. 237 (2016)..............................................................................................1

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996)............................................................................19

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008)............................................................................7

*Quake v. Lo*,
   928 F.3d 1365 (Fed. Cir. 2019)..........................................................................12

*Smith v. Garlock Equip. Co.*,
   658 F. App'x 1017 (Fed. Cir. 2016) .............................................................13, 14

*Speedfit LLC v. Woodway USA, Inc.*,
   432 F. Supp. 3d 183 (E.D.N.Y. 2020) .................................................................7

*In re Steed*,
   802 F.3d 1311 (Fed. Cir. 2015)............................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)..........................................................................19

*Univ. Secure Reg. LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) ......................................................................................3

*W. Union Co. v. MoneyGram Payment Sys.*,
   626 F.3d 1361 (Fed. Cir. 2010) ......................................................................................5

*Weyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) ......................................................................................5

**Statutes**

35 U.S.C. § 101 .................................................................................................................1

35 U.S.C. §§ 102 and 103 .......................................................................................4-7, 10

35 U.S.C. § 112 ...............................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 50(a) .........................................................................................................1

Defendants move under Fed. R. Civ. P. 50(a) for judgment as a matter of law.[1]

## I.     THE ASSERTED CLAIMS ARE INVALID.

### A.     The asserted claims fail to claim patentable subject matter under 35 U.S.C. § 101.

Defendants are entitled to judgment as a matter of law that both asserted claims are invalid for failure to claim patent-eligible subject matter, as the claim limitations—taken individually or as an ordered combination—disclose nothing more than well-understood, routine, and conventional computing components and protocols for achieving the claimed results.

"*Alice* step one presents a legal question that can be answered based on the intrinsic evidence." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). Here, the Court already held that the claims of the '638 patent are directed to an impermissibly abstract idea at *Alice* step one: "using an index to synchronize text and multimedia." (D.I. 28 at 6.); *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). This is the settled law of the case. *See Musacchio v. United States*, 577 U.S. 237, 244-245 (2016).

At *Alice* step two, no reasonable jury could conclude that the claims disclose anything more than well-understood, routine, and conventional computing components and protocols for achieving the claimed results. "Where a claim is directed to an abstract idea, the claim must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 221). "These additional features cannot simply be 'well-

---

[1] Judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *Marten v. Hunt*, 479 F. App'x 436, 439 (3d Cir. 2012). The Court should grant the motion unless there is substantial evidence in support of each essential element of Plaintiff's claims. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1184 (3d Cir. 1993).

understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (citation omitted). "Instead, the inventive concept must be 'sufficient to ensure that the patent in practice amounts to significantly more' than a patent on the abstract idea" itself. *Id.*

Here no reasonable jury could conclude that any individual claim limitation was unconventional.[2] Plaintiff did not introduce evidence that any individual claim limitation was inventive or dispute Amazon's evidence, and thus no reasonable jury could find for Plaintiff on that issue. Instead, Mr. Evans, the inventor, claimed the use of pre-existing technology such as Sanction II running on pre-existing mobile phones and tablets. (Tr. Tx. at 705:20-706:13 (Schonfeld).) Thus, Evans himself admitted at trial that the individual limitations of the claims are conventional. (*E.g.*, *id.* at 294:13-15 (Evans) (synchronization indexes), 294:16-18 (timestamping transcripts), 294:19-21 (clicking and jumping in video), 295:1-3 (mobile computing devices with touch screens), 295:14-19 (scrolling through text and making edits), 295:20-23 (receiving streamed multimedia), 295:24-296:12 (no improvement to mobile computing devices or streaming video); *see also id.* at 700:19-704:3 (Schonfeld).) TrackTime's only identified evidence of the conventionality of any individual claim limitation is deposition testimony from Mr. Story in response to a question that he did not understand. (*Id.* at 446:22-447:9, 456:18-457:3 (Story).) Moreover, as the word "actuator" appears nowhere in the patent, it does not provide any evidence of unconventionality. (*Id.* at 882:23-25 (Hernandez); *id.* at 704:4-11 (Schonfeld).)

No reasonable jury could conclude that the claims include an "ordered combination of elements" sufficient to make the abstract idea patent-eligible. (D.I. 269 (6/30/2023 Hearing Tr.)

---

[2] The Court ruled at the charge conference over Defendants' objection that the pretrial order sufficiently preserved this as a fact issue for trial. (*See* D.I. 278-3 (Plaintiff's Statement of the Issues of Fact that Remain to be Litigated) ¶ 10; *see also* D.I. 278-2 (Defendants' Statement of the Issues of Fact that Remain to be Litigated) ¶ 11; D.I. 293.)

at 26:4-16; D.I. 268 at 1.)  The Federal Circuit has made absolutely clear that claims do not recite an inventive concept where the steps "as an ordered combination add nothing to the [abstract idea] that is not already present when the steps are considered separately." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019) (cleaned up).  It is not enough to point to the entire claim and argue that its combination and order are novel.  *Id.*  Instead, the *unconventional* ordering must itself provide an inventive solution to a problem in the prior art.  *Id.*

Here, the evidence at trial showed that the ordering of steps logically flows from the abstract idea and cannot show an inventive concept.  As Dr. Schonfeld explained, the ordered combination of admittedly conventional elements in the claims is "the only logical order that [it] can be":  displaying text on a screen from an index, performing a gesture on the text, associating a time with the gesture, and delivering multimedia from a point in time based on the gesture.  (Tr. Tx. at 704:4-706:13 (Schonfeld) (testifying that the combination was "already part of Sanction II," except with computer clicks instead of screen taps).)  Claiming the use of conventional hardware and software to perform their expected functions in the logical order dictated by the abstract idea cannot supply an inventive concept.  *In re TLI Commc'ns Pat. Lit.*, 823 F.3d 607, 615 (Fed. Cir. 2016); *see also Univ. Secure Reg. LLC v. Apple Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) (claims ineligible where alleged combination of "conventional authentication techniques achieves [no] more than the expected sum of the security provided by each technique").  Rather than identify the required inventive concept, Dr. Hernandez simply parroted the entire claim:

> Q.      So what was Mr. Evans inventive concept here?
>
> A.      His inventive concept was the use of human touch on a word or range of words to -- in a touch screen mobile device, number one, to facilitate the navigation and to jump -- to jump to -- by doing it [in] a synchronization index to move the play back to the position where those range of words were located.

(Tr. Tx. at 156:8-14 (Hernandez).)  This is insufficient; Dr. Hernandez provided no evidence of an

*unconventional* ordering that provided an inventive solution to a problem in the prior art.

**B.     The asserted claims are anticipated and rendered obvious under 35 U.S.C. §§ 102 and 103.**

**1.     Microsoft Toub (DTX0057)**

The Court should grant judgment as a matter of law because no reasonable jury could conclude that Toub fails to disclose all of the limitations of the asserted claims or at least render them obvious.   Toub is a patent application published on February 1, 2007, and is titled "Navigating recorded multimedia content using keywords or phrases"  (DTX0057.)   Toub discloses a system for navigating multimedia with text and video, where a user can scroll through the text and jump to new positions within the video.  (*Id.*; Tr. Tx. at 661:14-662:22, 663:1-25 (Schonfeld).)  It was not contested at trial that Toub is prior art under 35 U.S.C. §§ 102(a) and (e).

Toub anticipates and renders obvious the asserted claims.  (Tr. Tx. at 664:1-669:15, 671:8-19 (Schonfeld).)  Toub discloses every limitation of the asserted claims.[3]  (*Id.*)  Plaintiff asserted that two limitations are absent from Toub, but no reasonable jury could so find.  First, Dr. Hernandez suggested that Toub does not disclose "displaying . . . text from a synchronization index" because, according to Dr. Hernandez, every embodiment in Toub requires a user to search using keywords, and only a partial list of text results is returned.  But this is irrelevant to the claimed "synchronization index," and this conclusory testimony contradicts the express disclosure of Toub stating that the disclosure is "not limited to just searching" as Dr. Hernandez argued.  (*Id.* at 669:17-670:20; DTX0057 at [0057].)  Second, Plaintiff elicited testimony that Toub does not

---

[3] Specifically, the claimed method for a multimedia seek sequence and synchronization index (*id.* at 664:1-19), providing information for displaying text from the synchronization index (*id.* at 664:21-665:21), mobile devices with viewing screens and touch-sensitive input interfaces (*id.* at 665:17-666:2), displaying the text other than as a webpage (*id.* at 666:3-13), receiving information indicating a gesture corresponding to a displayed word or range of words (*id.* at 666:14-667:9), performing a timecode lookup to associate a time t1 with corresponding multimedia (*id.* at 667:10-668:1), and delivering multimedia or seeking and accessing the multimedia (*id.* at 668:2-669:15).

disclose a "mobile computing device" and a "touch-sensitive input."  (Tr. Tx. at 670:21-671:7 (Schonfeld).)  But no reasonable jury could agree, as Toub expressly discloses "mobile telephones, pocket computers," and "touch-input devices."  (*Id.*; DTX0057 at [0028], [0033].)  Accordingly, Toub anticipates and renders obvious claims 1 and 9 of the '638 patent.[4]  (Tr. Tx. at 671:8-19 (Schonfeld) (testifying regarding obviousness using a mobile device with a touch screen).)

### 2.    LiveNote (DTX0336; DTX0268; DTX0142)

The asserted claims also are invalid under 35 U.S.C. §§ 102 and 103 in view of LiveNote. LiveNote was a suite of litigation transcript management software that allowed users to analyze and edit deposition transcripts and video.  (Tr. Tx. at 674:8-21, 675:8-677:16 (Schonfeld); DTX0336; DTX0268; DTX0142.)  LiveNote was publicly available before the earliest alleged priority date of the '638 patent; documents describing LiveNote are from 1991 to 2004.  (Tr. Tx. at 674:22-675:7 (Schonfeld).)  It was not contested at trial that LiveNote is prior art under 35 U.S.C. § 102(a).

LiveNote anticipates and renders obvious the asserted claims.  (Tr. Tx. at 677:17-684:11 (Schonfeld).)  LiveNote discloses every limitation of the asserted claims.[5]  (*Id.*)  Plaintiff asserted

---

[4] The record also lacks evidence of secondary considerations of non-obviousness sufficient to overcome the evidence of obviousness at trial.  *See Weyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (reversing denial of judgment as a matter of law where "the secondary considerations [presented by plaintiff were] inadequate to establish nonobviousness as a matter of law"); *W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("weak secondary considerations generally do not overcome a strong prima facie case of obviousness"). The evidence at trial showed the absence of any commercial success, industry praise, or long-felt but unresolved need, or any other factor that would suggest the asserted claims are non-obviousness.  (Tr. Tx. at 698:19-699:9 (Schonfeld).)  No reasonable jury could find for Plaintiff on the issue of obviousness.

[5] In particular, the claimed method for a multimedia seek sequence and synchronization index (*id.* at 677:17-678:7), providing information for displaying text from the synchronization index (*id.* at 678:8-15), mobile devices with viewing screens and touch-sensitive input interfaces (*id.* at 678:16-21), displaying the text other than as a webpage (*id.* at 678:22-679:16), receiving information indicating a gesture corresponding to a displayed word or range of words (*id.* at 679:17-24), performing a timecode lookup to associate a time t1 with corresponding multimedia (*id.* at 679:25-

that three limitations are absent from LiveNote, but no reasonable jury could agree based on the evidence.  First, Dr. Hernandez testified that a "mobile computing device" and a "gesture" are absent; but LiveNote expressly discloses use by a "tapping" gesture on a "tablet PC."  (Tr. Tx. at 681:23-682:15 (Schonfeld); DTX0336.)  Second, Dr. Hernandez argued that LiveNote does not disclose displaying text "other than as a webpage"; but LiveNote discloses displaying the text *in the LiveNote application*, and it was undisputed at trial that this application is *not* a webpage.  (Tr. Tx. at 682:16-683:1 (Schonfeld); DTX0336; DTX0142.)   Third, Dr. Hernandez argued that LiveNote lacks a "synchronization index"; but LiveNote discloses a "portable case format" that contains both text and time stamps to allow synchronization.  (Tr. Tx. at 683:2-25 (Schonfeld); DTX0268; DTX0336).  Accordingly, LiveNote anticipates and renders obvious claims 1 and 9 of the '638 patent.  (*Id.* at 683:20-25 (testifying regarding obviousness of using tapping instead of writing on a screen).)

### 3.      Master (DTX0056; DTX0071)

The asserted claims are also invalid under 35 U.S.C. §§ 102 and 103 in view of U.S. Patent No. 8,433,431 issued to Dr. Aaron Master and others ("Master").  Master, titled "Displaying text to end users in coordination with audio playback," is a continuation of a non-provisional application filed on December 2, 2011 and claims priority to U.S. Provisional Application No. 61/419,123, filed on December 2, 2010.  (DTX0056; DTX0071.)  The evidence at trial included testimony from Dr. Master regarding his work at SoundHound leading to the Master patent, as well as Dr. Schonfeld explaining Master anticipates and renders obvious the asserted claims.

---

680:8), and delivering multimedia or seeking and accessing the multimedia (*id.* at 680:9-681:22). (DTX0142; DTX0268; DTX0336.)

### a.      Master is prior art to the '638 patent.

Master is prior art to the '638 patent and no reasonable jury could conclude otherwise.  The asserted '638 patent claims priority to a nonprovisional application filed on March 27, 2013; a continuation-in-part application filed on January 3, 2012; and a provisional application filed on January 3, 2011.  (JTX001.)  Master claims priority to a provisional application filed earlier, on December 2, 2010.  (DTX0056.)  Master is entitled to at least the December 2, 2010 effective filing date, as a matter of law, and thus is prior art under 35 U.S.C. § 102(e), because the uncontroverted trial record showed that the Master provisional application (1) provides written description support for a claim of Master and (2) supports the subject matter in Master that renders invalid the asserted claims.  (Tr. Tx. at 687:20-693:17, 695:17-697:21 (Schonfeld)); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015).

Because the Master provisional application was filed earlier than the '638 patent or any priority application,[6] Plaintiff attempted to swear behind Master using six documents dating back to July 11, 2008: two handwritten sketches (PTX450, PTX452), two emails (PTX201.230, PTX201.8016), and two presentations (PTX282; PTX458).  No reasonable jury could find for Plaintiff on this issue, and thus Defendants are entitled to judgment as a matter of law that Master is prior art under 35 U.S.C. § 102(g).  The LiveLyrics feature of Master was conceived by mid-

---

[6] The application for the '638 patent was filed on December 6, 2013, and includes a continuation-in-part application and a provisional application in the priority chain.  (JTX001.)  There is no presumption that the asserted claims are entitled to the filing dates of earlier applications; Plaintiff bears the burden of establishing entitlement to the earlier filing dates.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) (affirming summary judgment of invalidity where the patentee failed to show that the original application discloses the later patents' claims); *see also Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 208 (E.D.N.Y. 2020) (plaintiff bears burden to establish entitlement to provisional filing date).  The Court ruled at the charge conference over Defendants' objection that this issue was not designated for trial.  Out of an excess of caution, Defendants nonetheless request judgment as a matter of law that the asserted claims of the '638 patent are not entitled to the provisional filing date or any priority date before the filing of the nonprovisional application.

2009, with five teams of SoundHound employees working on a reduction to practice at least by September 11, 2009.  (Tr. Tx. at 590:12-20, 591:22-592:20, 594:5-7, 594:23-598:7 (Master); DTX0021; DTX0022.)  Plaintiff, by contrast, cannot show any conception or reduction to practice before the filing of its applications.  The Court should grant judgment as a matter of law that Master is entitled to a priority date at least as early as September 11, 2009.

Plaintiff's attempts to establish an earlier priority date for the asserted '638 patent are insufficient for three reasons.[7]  First, Plaintiff failed to present evidence to support a conception of the complete invention at any point before the filing of the application for the '638 patent.  This was Plaintiff's burden.  *In re Steed*, 802 F.3d 1311, 1316 (Fed. Cir. 2015); *see also In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375-76 (Fed. Cir. 2016) ("a patentee bears the burden of establishing" an earlier priority date than the prior art).  There is no evidence that any of Plaintiff's alleged conception documents reflect "a definite and permanent idea of the complete and operative invention" as required; Dr. Hernandez never mapped the documents to any patent claims, nor did he offer any opinion that they disclose all claim limitations.  *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).  Nor did Mr. Evans.  (Tr. Tx. at 232:22-236:5 (Evans).)  In fact, Dr. Hernandez admitted that the July 2008 sketch (PTX450) does *not* include all claim limitations.  (*Id.* at 896:4-12 (Hernandez).)  And Dr. Schonfeld explained that these documents do not disclose all claim elements. (*Id.* at 658:4-660:17 (Schonfeld).)   The sketches (PTX450, PTX452) at most include generalized statements such as "tap to jump" without any technical detail; the presentations (PTX282, PTX458) include screenshots of the prior art (*e.g.*, Sanction) and incomplete images of the prior art running on an iPhone made with Adobe

---

[7] Defendants presented an oral motion for judgment as a matter of law as to the invention date of the '638 patent on September 18, 2023.  The Court reserved a ruling on this issue.

Illustrator; and the emails (PTX201.230, PTX201.8016) lack any technical disclosure.  Tr. Tx. at 658:4-660:17 (Schonfeld).)  No reasonable jury could conclude that Mr. Evans' testimony or the proffered documents establish a conception date.

Second, Plaintiff failed to corroborate conception.  This was Plaintiff's burden, too.  *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1296 (Fed. Cir. 2018).  Corroboration must be *independent of the inventor*—"an inventor's own unwitnessed documentation does not corroborate an inventor's testimony about inventive facts." *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir 2002).  Mr. Evans' testimony about the date of the sketches (PTX450, PTX452) and the "idea file" (PTX282) is not *independent* of Mr. Evans.[8]  And Mr. Maynard offered no corroboration either; he testified that he remembered the "emotions" of conversations with Mr. Evans, but not what was said. (Tr. Tx. at 336:18-337:6 (Maynard).)  And Mr. Maynard did not testify that any of Mr. Evans' documents were shared with him so he cannot corroborate the dates of these documents.

Third, Plaintiff failed to prove diligence.  *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362-63 (Fed. Cir. 2001).  Plaintiff was required to "demonstrate reasonable diligence toward reduction to practice from a date just prior to the other party's conception to its [own] reduction to practice." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996).  Here, that period is from just prior to SoundHound's conception in September 2009 (Tr. Tx. at 590:12-20, 594:4-7, 595:15-597:23 (Master)) to Plaintiff's constructive reduction to practice on January 3, 2011.[9]  Plaintiff did not offer evidence to show Mr. Evans was diligent during this entire period.  Mr. Evans only testified to sending some emails to patent counsel during this period; but

---

[8] Plaintiff has suggested that the "rule of reason" obviates this shortcoming in its evidence.  But "[t]he rule of reason . . . does not dispense with the requirement for some evidence of independent corroboration." *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985).
[9] Plaintiff has made clear it "is not relying on actual reduction to practice."  (D.I. 278-13 at 26.)

because those emails were withheld as privileged, Mr. Evans offered no testimony about when these communications occurred or what activities were happening during this period.  (*Id.* at 259:25-268:11 (Evans).)  No reasonable jury could find diligence based on this testimony.  Indeed, Mr. Evans provided no reason why he was unable to file a provisional patent application or reduce the invention to practice for years after his alleged conception, confirming that he did not have the "complete" invention until much later.  Thus, Defendants request judgment as a matter of law that Master is prior art under 35 U.S.C. §§ 102(e) and 102(g).

### b.    Master anticipates and renders obvious the asserted claims.

Master describes systems and methods for displaying text in coordination with audio playback.  (DTX0055.)  A user could click on a line of lyrics within scrolling text and the system would play the corresponding audio.  (Tr. Tx. at 686:5-10, 686:22-687:2 (Schonfeld); *id.* at 583:9-17, 585:7-17, 586:15-19 (Master); DTX0055 at 6:14-19.)  Master discloses accomplishing this functionality using lyric files called LRC files—the same kind of lyric files used in karaoke machines for decades—and that the content may be locally or remotely stored.  (Tr. Tx. at 686:11-21, 687:3-7 (Schonfeld); DTX0055 at 2:66-3:3, 4:57-67, 9:55-57, Fig. 1; DTX0071.)  And Master discloses carrying out this functionality on mobile devices with touchscreens.  (Tr. Tx. at 694:16-695:1 (Schonfeld); *id.* at 601:7-602:18 (Master); DTX0055 at 3:18-20, 5:35-38.)

Master anticipates and renders obvious the asserted claims.  (Tr. Tx. at 687:20-693:17, 697:22-698:10 (Schonfeld).)  Master discloses every limitation of the asserted claims.[10]  (*Id.*)

---

[10] Dr. Schonfeld and Dr. Master testified regarding the claimed method for a multimedia seek sequence and synchronization index (*id.* at 687:20-688:5), providing information for displaying text from the synchronization index (*id.* at 688:24-689:18), mobile devices with viewing screens and touch-sensitive input interfaces (*id.* at 689:25-690:17), displaying the text other than as a webpage (*id.* at 690:18-24), receiving information indicating a gesture corresponding to a displayed word or range of words (*id.* at 691:3-20), performing a timecode lookup to associate a time t1 with corresponding multimedia (*id.* at  691:21-692:9), and delivering multimedia or seeking and accessing the multimedia (*id.* at 692:10-693:17).

Plaintiff asserted that two limitations are absent from Master, but no reasonable jury could agree based on the express disclosures of Master itself.  First, Dr. Hernandez argued that Master does not disclose a "mobile computing device" or "touch-sensitive input."  But no reasonable jury could accept this conclusory testimony, as both Master and the provisional application expressly describe mobile devices and touch screens in their specification and figures, with tapping to jump to portions of songs.  (Tr. Tx. at 694:16-695:1 (Schonfeld); *id.* at 601:7-602:18 (Master); DTX0055 at 10:7-11.)  Second, Dr. Hernandez argued that Master lacks the claimed "synchronization index" because the LRC file of Master is located on a server and not sent to the client device.  But the claim includes no such requirement.  And, even if a locally stored synchronization index were required and not disclosed, this would have been an obvious modification to allow the features to run more quickly.  (Tr. Tx. at 695:6-16, 697:22-698:10 (Schonfeld).)  No reasonable jury could find that the asserted claims are valid in view of Master.

### C.    The asserted claims lack adequate written description under 35 U.S.C. § 112.

To satisfy the written description requirement, the specification must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharms, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Id.*  Written description "requires more than a mere wish or plan for obtaining the claimed [] invention."  *Id.* at 1356 (internal quotation marks omitted).

No reasonable jury could conclude that Mr. Evans had possession of the claimed invention as of the application filing dates.  *Ariad*, 598 F.3d at 1351.  The specification discloses no technology or software that provides the claimed functionality.  (Tr. Tx. at 655:5-15, 657:19-658:3 (Schonfeld).)  Mr. Evans admitted that he created the patent figures using Adobe Illustrator and

photographs taken from the prior art and an internet image search, and he was unable over many months and with hired software engineers to implement the claimed invention.  (*Id.* at 256:9-11, 298:18-303:20, 307:17-308:3, 309:2-16, 310:3-20 (Evans); *id.* at 655:16-25 (Schonfeld).)

The claims also lack written description because they require "text" being "displayed other than as a web page."  (*Id.* at 655:16-25 (Schonfeld).)  Mr. Evans added this requirement in prosecution to persuade the examiner to issue the patent.  (*Id.* at 656:1-13.)  But the specification describes no such embodiment.  (*Id.* at 656:14-658:7.)  The claims thus lack written description based on this new and unsupported claim limitation.  *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019) (written description requirement is "particularly important when, as here, claims are added later during prosecution in response to development by others." (citation omitted)); (Tr. Tx. at 656:14-658:7 (Schonfeld).)  The Court should grant judgment as a matter of law that both claims are invalid for lack of adequate written description support.

## II.   PLAINTIFF FAILED TO PROVE DIRECT INFRINGEMENT.

Plaintiff alleged that Amazon Music and Immersion Reading infringe claims 1 and 9 of the '638 patent.  It was Plaintiff's burden at trial to provide substantial evidence that the accused devices practice every limitation of the asserted claims.  Plaintiff failed to do so.

### A.   Plaintiff failed to provide sufficient evidence that <u>Immersion Reading or Amazon Music</u> meet the limitation "receiving, from the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture" (claim 1).

Claim 1 requires "receiving, from the mobile computing device, information indicating a user's selected mobile computing device touch-sensitive input interface gesture."  For Amazon Music, Dr. Hernandez testified that a "gesture" "was recognized by the touch sensitive interface." (Tr. Tx. at 165:1-9 (Hernandez).)  Dr. Hernandez presented the same theory for Immersion Reading.  (*Id.* at 170:8-17 (testifying that gesture was "recognized" by the mobile device).)

But there was no evidence supporting any "receiving" of an indication of the claimed gesture, or information indicating a gesture, "from the mobile computing device." Dr. Hernandez ignored this language in claim 1, testifying that the "receiving" limitations in claims 1 and 9 are "exactly the same." (*Id.* at 171:21-172:2; *id.* at 171:23-172:9.) But as he later acknowledged, claim 1 expressly requires receiving "from" a mobile device, and not "by" or "in" the mobile device. (*Id.* at 189:16-190:4.) No evidence at trial shows that this limitation is satisfied by either Immersion Reading or Amazon Music. (*Id.* at 191:12-17 (testifying that he is not aware of any technology "that works like that"); *id.* at 709:3-710:4 (Schonfeld).) Defendants are entitled to judgment as a matter of law that neither Immersion Reading nor Amazon Music infringes claim 1.

**B.      Plaintiff failed to provide sufficient evidence that <u>Immersion Reading or Amazon Music</u> meet the limitation "delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device" (claim 1).**

Claim 1 requires "delivering multimedia beginning at time t1, or providing instructions for the delivery of multimedia beginning at time t1, to a receiving device." Plaintiff failed to provide evidence that Immersion Reading or Amazon Music meets this limitation.

For both products, Dr. Hernandez did not identify any "time t1" at which multimedia is purportedly delivered. This claim limitation does not appear in his entire affirmative testimony. And conclusory expert testimony that a limitation is met, without any explanation of how, is insufficient. *Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1024 (Fed. Cir. 2016). This warrants judgment of non-infringement of claim 1 for both products.

Dr. Hernandez's testimony regarding the limitation "delivering" multimedia "to a receiving device" is likewise insufficient to support a finding of infringement. Dr. Hernandez lumped Immersion Reading and Amazon Music together, testifying only that the "delivering" occurs when a device plays multimedia after a selection. (Tr. Tx. at 175:18-176:3 (Hernandez).)

But this makes no sense because he did not identify any multimedia that is received by the mobile computing device after a user's gesture, much less multimedia beginning at "time t1." Dr. Hernandez's conclusory testimony also ignores that the accused products function differently. In Immersion Reading, the entire e-book is downloaded on the user's mobile computing device— with all text and multimedia data loaded for navigation. (*Id.* at 710:5-711:2 (Schonfeld); *id.* at 343:20-345:4 (Belakovskiy).) No multimedia is "delivered" as required. Amazon Music delivers text and multimedia information in 10-20 second blocks and caches them, meaning (1) no "delivering" is needed or (2) a new block may be sent but would not correspond to "time 1" as required by the claim. (*Id.* at 711:3-21 (Schonfeld); *id.* at 377:10-22 (Hall).) Dr. Hernandez failed to acknowledge the operation of the products, nor did he offer any non-conclusory testimony about how they satisfy this claim limitation. *Smith*, 658 F. App'x at 1024. Defendants are entitled to judgment as a matter of law that neither Immersion Reading nor Amazon Music infringes claim 1.

### C.  Plaintiff failed to provide sufficient evidence that <u>Immersion Reading</u> meets the limitations "said synchronization index comprises an electronic transcript that indicates text" and "text from a synchronization index." (claims 1 and 9)

Claim 1 requires that the "synchronization index" comprises "an electronic transcript that indicates text." Claim 9 requires displaying "text from a synchronization index." Plaintiff failed to present evidence that Immersion Reading satisfies either claim limitation.

Dr. Hernandez's full testimony on this claim limitation spans just four lines, in which he said "displaying" means the words are "being highlighted on the screen." (Tr. Tx. at 168:23, 168:25-163:3 (Hernandez).) But no evidence exists showing a "synchronization index" that comprises an "electronic transcript that indicates *text*" or that the mobile computing device displays "*text* from a synchronization index" as claimed. Dr. Hernandez referred to a "sync" file in Immersion Reading, but he acknowledged that the sync file is *binary—i.e.*, a file made of 0's

and 1's, not text—and thus cannot satisfy the claim limitation.  (*Id.* at 175:13-17.)  Dr. Hernandez

also referred to an eBook file as including the text of a book.  (*Id.* at 169:4-13.)  But the eBook file

cannot satisfy claim 1, as it plays no role in the "timecode lookup" as required by that claim.  (*Id.*

at 712:11-713:16 (Schonfeld); *id.* at 343:2-345:4; 353:2-9 (Belakovskiy).)  Nor can an eBook file

satisfy claim 9, as it plays no role in the "data lookup" recited in the claim.  (Tr. Tx. at 712:11-

713:16 (Schonfeld).)  Immersion Reading thus does not literally infringe either claim 1 or claim

9.  *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996) (literal infringement

requires claim "read[ing] on the accused device exactly").[11]  Defendants are entitled to judgment

as a matter of law that Immersion Reading does not infringe claims 1 and 9.

> **D.  Plaintiff failed to provide sufficient evidence that <u>Immersion Reading</u> meets the limitation of a "touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a displayed word, or a range of words" (claims 1 and 9).**

Both asserted claims require a "touch-sensitive input interface" so a user can perform a

"gesture . . . on a portion of said viewing screen corresponding to a displayed word, or a range of

words."  Plaintiff failed to present evidence that Immersion Reading satisfies this claim limitation.

Dr. Hernandez testified that the "multi page view" feature of Immersion Reading allows a

user to swipe through pages of text in the Kindle application.  (Tr. Tx. at 170:4-17, 180:6-9

(Hernandez).)  But no reasonable jury could find that this testimony satisfies the claim language

for two reasons.  First, Dr. Hernandez admitted that the claims require the touch gesture to

"correspond[] to the range of words" selected from the viewable text.  (*Id.* at 171:15-18; 209:13-

6.)  And because a user's gesture is unrelated to any words or range of words on the screen—and

---

[11] Defendants presented an oral motion for judgment as a matter of law of no infringement under the doctrine of equivalents on the record on September 18, 2023, as Plaintiff lacks particularized and non-conclusory testimony establishing infringement under the proper legal standard.  (Tr. Tx. at 176:11-21, 177:10-14 (Hernandez)).  The Court granted Defendants' motion on the record. Defendants thus do not repeat those arguments here.

can even include empty pages or blank spaces—no reasonable jury could find that the gesture is "performed on a portion of said viewing screen corresponding to a [displayed] word, or range of words" as required. (*Id.* at 714:14-715:24 (Schonfeld).)  Second, the claims require that multimedia be delivered or played based on the "word or range of words" selected by the gesture. There is no evidence that Immersion Reading does so.  In fact, turning a page will begin the audio at the beginning of the next page regardless of where a user touches, and thus the "gesture" does not select a "word or range of words" as required by the claim.  (*Id.* at 715:3-13.)  Defendants are entitled to judgment as a matter of law that Immersion Reading does not infringe claims 1 and 9.

E.      **Plaintiff failed to provide sufficient evidence that <u>Amazon Music</u> meets the limitations a "performing a timecode lookup, using the synchronization index" (claim 1) and "performing a data lookup using said synchronization index, wherein said synchronization index is referenced" (claim 9).**

Both asserted claims recite a specific "synchronization index" that is used to perform a "timecode lookup" to deliver multimedia."  Plaintiff introduced no evidence that Amazon Music performs a timecode lookup or data lookup using a "synchronization index."

For his infringement theory, Dr. Hernandez pointed to a "JSON" file as satisfying some aspects of the claims, such as including an "electronic transcript."  (Tr. Tx. at 148:24-149:2 (Hernandez) (testifying that the JSON file "qualifies as the part of the synchronization index").) He then acknowledged that there is another object in the code, called a "LyricsLine" object, used for other aspects of the claims such as displaying text on the viewing screen or allegedly being used to perform a timecode lookup.  (*Id.* at 145:7-17.)  No reasonable jury could find that Amazon Music satisfies this limitation based on Dr. Hernandez's testimony.

Dr. Hernandez admits that a JSON file and a LyricsLine object are not the same.  (*Id.* at 176:25-177:4, 203:2-204:1, 205:3-8; *see also id.* Tr. Tx. at 626:4-24 (Houh); *id.* at 716:10-18, 717:3-11 (Schonfeld).)  And although Dr. Hernandez suggested that the jury may treat them as one

"synchronization index," this is not literal infringement.  *Engel Indus.*, 96 F.3d at 1405.  Indeed, the JSON file is used only "initially" to create LyricsLines, at which point the JSON file plays no role in the functionality recited in the claims.  (Tr. Tx. at 205:3-8 (Hernandez); *id.* at 626:4-24 (Houh); *id.* at 716:10-18, 717:3-11 (Schonfeld).)  No reasonable jury could find that this limitation is met based on Plaintiff's expert testimony.  Defendants are entitled to judgment as a matter of law that Amazon Music does not infringe claims 1 and 9.

> **F.  Plaintiff failed to provide sufficient evidence that <u>Immersion Reading or Amazon Music</u> meet the limitation "seeking on said mobile computing device multimedia . . . and if found, accessing multimedia at t1" (claim 9).**

Claim 9 requires "*seeking* on said mobile computing device multimedia . . . and *if found*, accessing multimedia at t1."  Dr. Hernandez admitted that the claim limitation has two parts: first, seeking to determine if multimedia is found, and second, if it is found, accessing the multimedia at t1.  (Tr. Tx. at 215:22-216:1 (Hernandez).)  But Plaintiff did not present evidence that Immersion Reading or Amazon Music satisfies this limitation.

For Amazon Music, Dr. Hernandez testified that he found a function called "seek" in the Amazon Music source code that can find a position of a music track.  (*Id.* at 143:15-25.)  He did not map the claim to this code, and instead told the jury the matching of the word "seek" is evidence of infringement.  (*Id.*)  But Dr. Hernandez provided no evidence of seeking to determine "if found" as claimed, and in fact ignored this requirement in his testimony.[12]

For Immersion Reading, Dr. Hernandez pointed to a function, ReadAlongController, that starts with an audio position and finds the corresponding eBook text.  (*Id.* at 208:23-209:1.)  But

---

[12] The evidence at trial establishes that the identified "seek" functions in Amazon Music and Immersion Reading do not seek multimedia to determine whether it is "found."  (Tr. Tx. at 614:17-23, 627:22-628:24 (Houh); DTX-0119.)  The functions take an existing file "that's already opened and . . . jump to a position within that file that you already have," whereas the seeking of the claims refers to "looking for a file" and accessing it "if found."  (Tr. Tx. at 627:22-628:24 (Houh).)

he admitted that the claim language requires the opposite—*i.e.*, taking a gesture on words and finding a time in the audio.  (*Id.* at 210:18-22.)  Defendants are entitled to judgment as a matter of law that neither Immersion Reading nor Amazon Music infringes claim 9.

> **G.      Plaintiff failed to provide sufficient evidence that <u>Immersion Reading</u> meets the limitations "associat[ing] a time, t1, within multimedia to the selected word or range of words" (claim 1) and "provid[ing] data for a time location t1 that corresponds to said word or range of words selected" (claim 9).**

Claim 1 requires "associat[ing] a time, t1, within multimedia to the selected word or range of words."  Claim 9 requires "provid[ing] data for a time location t1 that corresponds to said word or range of words selected."  Both claims recite taking an action, such as associating a time or providing data, based on the words selected by a gesture.  (Tr. Tx. at 210:18-22 (Hernandez).)

Dr. Hernandez admitted that this does not happen in the code he reviewed for Immersion Reading.  (*Id.* at 208:23-209:1.)  Instead, he agreed that the code "starts with the position in the *audio* and then it finds the corresponding *E-book text* to highlight in the display."  (*Id.* (emphasis added); *see also id.* at 614:24-616:5, 616:19-617:16, 618:13-620:21 (Houh).)  There is no evidence that Immersion Reading satisfies this limitation, and Defendants are entitled to judgment as a matter of law that Immersion Reading does not infringe claims 1 or 9.

> **H.      Judgment as a matter of law is appropriate as to claims 2-8 and 10-20.**

Plaintiff identified infringement of claims 1-20 of the '638 patent as an issue for trial.  (D.I. 278, ¶ 1.)  Plaintiff adduced no evidence regarding infringement of claims 2-8 and 10-20 at trial.  Judgment as a matter of law of non-infringement is appropriate as to those claims.

## III.     PLAINTIFF FAILED TO PROVE WILLFUL INFRINGEMENT.[13]

Willful infringement depends on a defendant's *subjective* awareness that it is infringing a

---

[13] Defendants presented an oral motion for judgment as a matter of law of no willful infringement on September 18, 2023.  The Court reserved a ruling on this issue.

valid patent.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016).  Knowledge of the

patents is "necessary, but not sufficient."  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964,

988 (Fed. Cir. 2021).  It requires conduct that is "wanton, malicious, and bad-faith."  *Id.*

No reasonable jury could find willfulness.  Plaintiff presented no evidence that Defendants

had pre-suit knowledge of the patent.  Plaintiff's only purported evidence is its suggestion that, in

2021, Defendants introduced the accused "tap to jump" feature into a podcast service.  (Tr. Tx.

(Opening) at 91:8-15.)  But no evidence exists from which the jury could find Defendants intended

*to infringe* when introducing this feature.  *See Boston Scientific Corp. v. Nevro Corp.*, 560 F. Supp.

3d 837, 843 (D. Del. 2021).  Judgment as a matter of law is appropriate.

## IV.    THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT.

Plaintiff also failed to meet its burden to establish damages as to Immersion Reading or

Amazon Music.  *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996).

First, the "royalty base and royalty rate must reflect the value attributable to the infringing

features of the product, and no more."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226

(Fed. Cir. 2014).  Royalty rates that are unreliable cannot support an award.  *Uniloc USA, Inc. v.

Microsoft Corp.*, 632 F.3d 1292, 1315, 1318 (Fed. Cir. 2011).  Dr. Hernandez admitted that, for

Immersion Reading, the accused feature is "multi page view."  (Tr. Tx. at 180:6-9 (Hernandez).)

Mr. Peterson admitted that his proposed damages are not limited to the accused multi-page turn

functionality.  (*Id.* at 574:1-575:2 (Peterson).)  Thus, Mr. Peterson's opinions are unreliable.

Second, "licenses relied on . . . in proving damages [must be] *sufficiently comparable* to

the hypothetical license at issue in suit."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325

(Fed. Cir. 2009) (emphasis added).  Plaintiff's damages expert, Mr. Peterson, relied on admittedly

non-comparable licenses (PTX161, PTX162, PTX163) to assert that a running royalty is

appropriate in this case.  (Tr. Tx. at 529:18-530:25 (Peterson).)  Thus, they cannot support the form

of Plaintiff's proposed damages—a running royalty—and the Court should grant judgment as a matter of law that a reasonable royalty, if any, would take the form of a lump sum payment.

Mr. Peterson's analysis of damages for the "tap to jump" feature of Amazon Music also was unreliable and cannot support the requested damages.  First, Mr. Peterson assumed without any evidentiary support that the parties would anticipate a mobile usage rate of 80% based on a "business plan" around the time of the hypothetical negotiation.  (Tr. Tx. at 526:25-527:7 (Peterson).)  The evidence at trial shows that mobile devices accounted for about *half* of the usage Mr. Peterson estimated.  (DTX-0155.0016.)  Second, in calculating profit related to the tap to jump feature, Mr. Peterson applied a "Long Run Profit Margin" of 20% based on Audible's and Amazon Web Service's alleged profit margins.  (Tr. Tx. at 534:2-22 (Peterson).)  But no facts in evidence supported these margins.  The only record evidence shows that Amazon Music's streaming service was not, and was not expected to be, profitable as of the negotiation.  (DTX-0167.0006.)

Mr. Peterson made similar errors in his analysis for "multi-view page turn" on Immersion Reading.  First, Mr. Peterson assumed a profit margin of 19.82% (Tr. Tx. at 543:16-22 (Peterson)) but no evidence shows that this margin reflects the accused Immersion Reading feature.  The evidence at trial showed that Mr. Peterson's assumption is inflated and unreliable.  Second, Mr. Peterson attributed 75% of the value of Immersion Reading to the multi-view page turn feature, calculated incremental profits, and then gave *all* of that incremental profit to Mr. Evans.  (Tr. Tx. at 545:2-10, 575:3-576:1 (Peterson).)  But the evidence showed that Immersion Reading can function without the accused feature; no evidence supports that Mr. Evans would be entitled to all incremental profits.  (*Id.* at 467:13-22 (Story); *id*. at 575:14-576:1 (Peterson).)

No reasonable jury could find Mr. Peterson's opinions reliable, and the evidence thus cannot support Plaintiff's requested damages award.

Dated:  September 18, 2023

Respectfully submitted,

By:  /s/ Steven J. Balick
Steven J. Balick (#2114)
sbalick@ashbygeddes.com
Andrew C. Mayo (#5207)
amayo@ashbygeddes.com
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Of counsel:*

J. David Hadden, CSB No. 176148
Saina S. Shamilov, CSB No. 215636
Ravi R. Ranganath, CSB No. 272981
Johnathan L. Chai, CSB No. 339315
S.J. Hahn, CSB No. 335854
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500
Todd R. Gregorian, CSB No. 236096
Min Wu, CSB No. 307512
Christopher S. Lavin, CSB No. 301702
555 California Street, 12th Floor
San Francisco, CA  94014
(415) 875-2300

*Counsel for Defendants*
AMAZON.COM SERVICES LLC, and
AUDIBLE, INC.,

Melanie L. Mayer, WA Bar No. 36971
Jeffrey A. Ware, WA Bar No. 43779
Jonathan T. McMichael, WA Bar No. 49895
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
(206) 389-4510