## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRACKTIME, LLC,

               Plaintiff,

      v.

AMAZON.COM SERVICES LLC
and AUDIBLE, INC.,

               Defendants.

C.A. No. 1:18-cv-01518-MN

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(a)

*Of counsel:*

J. David Hadden, CSB No. 176148
Saina S. Shamilov, CSB No. 215636
Ravi R. Ranganath, CSB No. 272981
Johnathan L. Chai, CSB No. 339315
S.J. Hahn, CSB No. 335854
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500
Todd R. Gregorian, CSB No. 236096
Min Wu, CSB No. 307512
Christopher S. Lavin, CSB No. 301702
555 California Street, 12th Floor
San Francisco, CA  94014
(415) 875-2300

Melanie L. Mayer, WA Bar No. 36971
Jeffrey A. Ware, WA Bar No. 43779
Jonathan T. McMichael, WA Bar No. 49895
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
(206) 389-4510

Dated:  November 7, 2023

ASHBY & GEDDES, P.A.
Steven J. Balick (#2114)
sbalick@ashbygeddes.com
Andrew C. Mayo (#5207)
amayo@ashbygeddes.com
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Counsel for Defendants*
AMAZON.COM SERVICES LLC, and AU-
DIBLE, INC.,

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     TRACKTIME IS NOT ENTITLED TO JUDGMENT AS A MATTER OF
        LAW OF INFRINGEMENT OR VALIDITY ........................................................1

        A.      The trial record supports a finding that Amazon Music does not
                infringe claim 9 of the '638 patent on multiple grounds. ...........................1

        B.      The trial record supports a finding that claims 1 and 9 of the '638
                patent are invalid on multiple grounds ........................................................5

III.    TRACKTIME IS NOT ENTITLED TO A NEW TRIAL. ...................................12

        A.      The "weight of the evidence" does not warrant a new trial. .....................13

        B.      Plaintiff's "Additional New Trial Grounds" do not warrant a new
                trial. ...........................................................................................................13

        C.      The jury's anticipation and non-infringement findings are not
                inconsistent. ..............................................................................................14

        D.      The Court's evidentiary rulings were correct and do not warrant a
                new trial. ....................................................................................................15

        E.      Plaintiff identifies no "attorney misconduct" warranting a new
                trial. ...........................................................................................................18

IV.     CONCLUSION .................................................................................................20

## TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)................................................................................19

*Apator Miitors ApS v. Kamstrup A/S*,
    887 F.3d 1293 (Fed. Cir. 2018)....................................................................8, 16, 17

*Applera Corp. MDS., Inc. v. Micromass UK Ltd.*,
    204 F. Supp. 2d 724 (D. Del. 2002)......................................................................13, 14

*Bridge & Post v. Verizon Commc'ns, Inc.*,
    319 F. Supp. 3d 818 (E.D. Va. 2018) .....................................................................17

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)..................................................................................1

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019)..................................................................................6

*Coleman v. Dines*,
    754 F.2d 353 (Fed. Cir. 1985)....................................................................................9

*Collins v. Chandler*,
    C.A. No. 05-739, 2009 WL 3595129 (D. Del. Oct. 28, 2009) .........................19, 20

*Colyer v. Consol. Rail Corp.*,
    114 F. App'x. 473 (3d Cir. 2004) .............................................................................13

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998).................................................................................15

*CommScope Techs. LLC v. Dali Wireless Inc.*,
    10 F.4th 1289 (Fed. Cir. 2021) ..................................................................................5

*Cont'l Cirs. LLC v. Intel Corp.*,
    435 F. Supp. 3d 1014 (D. Ariz. 2020) .....................................................................20

*CR Bard Inc. v. AngioDynamics, Inc.*,
    C.A. No. 15-218-JFB-SRF, 2023 WL 3750649 (D. Del. June 1, 2023)....................5

*Curtis Pub. Co. v. Butts*,
    351 F.2d 702 (5th Cir. 1965) ....................................................................................19

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
    C.A. No. 05-00737, 2010 WL 3056617 (D. Del. July 30, 2010)...............................1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Drumgo v. Kuschel,*
    C.A. No. 14-1135, 2022 WL 3646349 (D. Del. Aug. 24, 2022) ................................13, 16, 17

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,*
    800 F.3d 1375 (Fed. Cir. 2015)................................................................................8

*E. Profit Corp. v. Strategic Vision US, LLC,*
    C.A. No. 18-2185, 2020 WL 7490107 (S.D.N.Y. Dec. 18, 2020)..........................20

*Engel Indus., Inc. v. Lockformer Co.,*
    96 F.3d 1398 (Fed. Cir. 1996)..............................................................................3

*Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC,*
    784 F.3d 177 (3d Cir. 2015)................................................................................14

*Function Media, LLC v. Google Inc.,*
    708 F.3d 1310 (Fed. Cir. 2013)......................................................................14, 15

*In re Giacomini,*
    612 F.3d 1380 (Fed. Cir. 2010)............................................................................8

*GN Netcom, Inc. v. Plantronics,*
    930 F.3d 76 (3d Cir. 2019)................................................................................15

*Haberman v. Gerber Prods. Co.,*
    236 F. App'x 592 (Fed. Cir. 2007) ......................................................................14

*Hybritech Inc. v. Monoclonal Antibodies, Inc.,*
    802 F.2d 1367 (Fed. Cir. 1986)......................................................................8, 16

*Int'l Land Acq., Inc. v. Fausto,*
    39 F. App'x 751 (3d Cir. 2002) ..........................................................................18

*Juicy Whip, Inc. v. Orange Bang, Inc.,*
    292 F.3d 728 (Fed. Cir. 2002)..............................................................................8

*Kenexa Brassring, Inc. v. Taleo Corp.,*
    751 F. Supp. 2d 735 (D. Del. 2010)....................................................................16

*Kolcraft Enters., Inc. v. Graco Childs. Prods., Inc.,*
    927 F.3d 1320 (Fed. Cir. 2019)..........................................................................16

*KOM Software Inc. v. NetApp, Inc.,*
    C.A. No. 18-160, 2023 WL 6460025 (D. Del. Oct. 4, 2023) ..................................6

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
    790 F.3d 1329 (Fed. Cir. 2015)............................................................................10

*Lucent Techs., Inc. v. Newbridge Nets. Corp.*,
    168 F. Supp. 2d 181 (D. Del. 2001)......................................................................18

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996).................................................................................9

*Monaco v. City of Camden*,
    366 F. App'x 330 (3d Cir. 2010) ..........................................................................14

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    121 F.3d 1461 (Fed. Cir. 1997).............................................................................18

*Orion Drilling Co. v. EQT Prod. Co.*,
    826 F. App'x 204 (3d Cir. 2020) ............................................................................1

*Packet Intel. LLC v. NetScout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020).............................................................................14

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)...............................................................................6

*Solvay, S.A. v. Honeywell Int'l Inc.*,
    886 F. Supp. 2d 396 (D. Del. 2012)......................................................................18

*In re TLI Commc'ns Pat. Lit.*,
    823 F.3d 607 (Fed. Cir. 2016).................................................................................6

*United States v. Fulton*,
    837 F.3d 281 (3d Cir. 2016)..........................................................................15, 16

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013)..................................................................... *passim*

*Wis. Alumni Rsch. Found. v. Apple Inc.*,
    905 F.3d 1341 (Fed. Cir. 2018).............................................................................14

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010).............................................................................13

## I.     INTRODUCTION

Plaintiff must run the gamut of the issues to undo the jury verdict.  So its motion (D.I. 323 ("Mot.")) suggests that Defendants argued a "double-standard" on infringement, gave a "confusion-inducing" presentation on invalidity, and employed a "passion-inflaming" strategy to trick the jury into finding for Defendants.  (Mot. at 1-2, 20.)  In this reimagining of the trial, no evidence supported any of the jury's findings for Defendants, and the Court oversaw a proceeding so fundamentally unfair that it warrants a complete do-over.

Plaintiff's presentation bears little resemblance to the trial that took place, one in which the jury evaluated the parties' competing evidence and the Court ruled on all the evidentiary objections presented to it.  Shorn of the inflammatory rhetoric, Plaintiff's arguments bypass inconvenient aspects of the record, and ask the Court to substitute its own credibility assessments for the jury's and to order a retrial based on evidentiary objections that Plaintiff never raised until after it lost.  None of Plaintiff's arguments identifies a real failure of proof or provides any grounds for the requested relief.  The Court should deny the motion.

## II.    TRACKTIME IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW OF INFRINGEMENT OR VALIDITY.

Judgment as a matter of law is appropriate only if the Court finds no "legally sufficient evidentiary basis" for the verdict.  *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, C.A. No. 05-00737, 2010 WL 3056617, at *1 (D. Del. July 30, 2010).  "Reversal, in instances where the party with the burden of proof files a renewed motion," "is reserved for . . . extreme circumstances[.]"  *Orion Drilling Co. v. EQT Prod. Co.*, 826 F. App'x 204, 210 (3d Cir. 2020).

### A.     The trial record supports a finding that Amazon Music does not infringe claim 9 of the '638 patent on multiple grounds.

It was Plaintiff's burden to show that Amazon Music practices every limitation of the asserted claims.  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed.

Cir. 2011).  Plaintiff made no attempt whatsoever in its motion to show that it met its burden of proof, let alone that the record warrants a directed verdict as to each limitation.  It has thus forfeited such arguments, and the Court should not entertain them for the first time in reply.  Because substantial evidence otherwise supports the jury's verdict, the Court should deny the motion.[1]

1. **Substantial evidence showed that Amazon Music does not meet the limitation "performing a data lookup using said synchronization index, wherein said synchronization index is referenced . . ."**

Claim 9 recites "performing a data lookup using [a] synchronization index, wherein said synchronization index is referenced to provide data for a time location t1 that corresponds to [a] word or range of words."  The synchronization index of the claim contains text and times that correspond to words in a multimedia file.  When a user selects text on their device, the device performs a "data lookup" that uses the synchronization index to determine the corresponding time.

Substantial evidence supports the jury's finding that the accused X-Ray Lyrics feature in Amazon Music does not meet this limitation.  Plaintiff pointed to a JSON file as the "synchronization index."  (Tr. Tx. at 148:23-149:1 (Hernandez); *id.* at 625:2-9 (Houh).)  But the only role of the JSON file is to populate separate objects, called LyricsLine objects, with a line of lyrics and the time for those lyrics.  (*Id.* at 623:24-625:19, 626:2-628:1 (Houh); DTX121; DDX008 at 10 (Houh) (at right).)  When a user selects text, Amazon Music references a LyricsLine object—not the JSON file—to determine the part of a song corresponding to that text.  (Tr. Tx. at 623:24-



---

[1] Plaintiff does not dispute non-infringement for Amazon Music (claim 1) or Immersion Reading.

625:19 (Houh).)  The JSON file is not "referenced" in any "data lookup . . . to provide data for a time location t1."  (*Id.* at 626:9-627:4; *id.* at 716:7-717:18 (Schonfeld).)  The jury was free to find non-infringement—both because the JSON file is not the synchronization index, and because there is no synchronization index used to perform the lookup. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (verdict affirmed despite competing testimony).

Plaintiff suggested at trial that the "synchronization index" of the claim could refer to disparate parts of the source code, namely, some combination of the JSON file plus a LyricsLine object.  But literal infringement requires a claim "read[ing] on the accused device exactly." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996).[2]  Plaintiff's argument that a LyricsLine object includes data that "*come[s] from* the original JSON file" is likewise irrelevant.  (Mot. at 4 (emphasis added).)  Claim 9 recites a data lookup "referenc[ing]" *the synchronization index*, not "using objects that are generated from" the synchronization index.  (Tr. Tx. at 643:19-23 (Houh).)  Defendants' experts explained, and Dr. Hernandez admitted, that the JSON file is distinct from a LyricsLine object and plays no role in the alleged "data lookup."  (Tr. Tx. at 145:6-16, 176:20-177:6, 202:1-202:14, 204:3-205:16 (Hernandez); *see also id.* at 616:18-25, 626:9-627:4 (Houh); *id.* at 716:17-25, 717:10-18 (Schonfeld).)  At a minimum, the jury was free to find on this record that there was no synchronization index referenced for a data lookup.

Plaintiff argues that Dr. Schonfeld *admitted* infringement while testifying about the Toub (DTX0057) prior art.  (Mot. at 3-4.)  This argument makes no sense.  Dr. Schonfeld testified that a particular file in Toub, called a "transcription index file," includes times in a video and text shown in the video and thus meets the limitation.  (Tr. Tx. at 662:8-22, 667:19-668:4 (Schonfeld).)  Plaintiff concedes that the jury had substantial evidence to find that Toub meets this limitation.

---

[2] Plaintiff cannot rely on the doctrine of equivalents, as the Court granted Defendants' oral motion for judgment as a matter of law on this issue.  (Tr. Tx. at 927:10-929:17.)

(Mot. at 12.)  Nothing in Dr. Schonfeld's testimony about Toub suggests that *Amazon Music*— which lacks any such file and instead uses LyricsLine objects—has the claimed synchronization index and uses it in a data lookup.  (Tr. Tx. at 716:7-718:2 (Schonfeld).)  Substantial evidence supports the jury's finding that Amazon Music does not meet the limitation.

**2.    Substantial evidence showed that Amazon Music does not meet the limitation "seeking on said mobile computing device multimedia . . . and if found, accessing multimedia at t1."**

Claim 9 requires "*seeking* on said mobile computing device multimedia . . . and *if found*, accessing multimedia at t1."  Substantial evidence supports the jury's finding that Amazon Music does not meet this limitation.  The accused X-Ray Lyrics feature in Amazon Music operates on a multimedia file that is already downloaded and identified on the device.  (Tr. Tx. at 621:2-23, 628:2-629:5 (Houh); *id.* at 718:19-719:8 (Schonfeld).)  There is thus no need in Amazon Music— and no process—to "seek" on the device to determine the presence of that file.  (*Id.*)

Dr. Hernandez testified about a function called "seek" in the source code that he opined can be used to find a position in a music track.  (*Id.* at 143:15-25 (Hernandez).)  But this "seek" function does not seek out multimedia on the device or determine whether it is "found."  (*Id.* at 614:21-615:2 (Houh); DTX-0119.)  Instead, it takes an existing file "*that's already opened* and . . . jump[s] to a position within that file that you already have."  (Tr. Tx. at 628:2-629:5 (Houh) (emphasis added); *id.* at 718:19-24 (Schonfeld).)  Indeed, during closing argument Plaintiff's counsel attempted to elide this failure by suggesting that the jury could find infringement simply because the function was *named* "seek" and that was the same *word* used in the claim,[3] before he

---

[3] (Tr. Tx. at 991:16-18 ("the word is seek, and both Amazon Music and Amazon Kindle source code show exactly that, a seek").)

then quoted the Bible[4] and devolved into nonsequiturs.[5]  The jury was free to accept Defendants'

evidence and find that Amazon Music does not meet the limitation.  *See Versata*, 717 F.3d at 1263.

Plaintiff again argues that Dr. Schonfeld's testimony about Toub conflicts with Defend-

ants' non-infringement arguments.  (Mot. at 3.)  This is attorney argument; Plaintiff did not even

ask Dr. Schonfeld about the purported inconsistency at trial.  (Tr. Tx. at 809:21-810:16, 814:13-

817:3 (Schonfeld).)  Dr. Schonfeld explained that Toub meets the limitation because it uses a tran-

scription index file to seek to a time in a file, and Plaintiff does not dispute this.  (*Id.* at 663:17-

664:22, 669:10-21.)  He explained that Amazon Music does *not* meet the limitation, as it has no

synchronization index and there is no "search" or "determination if [a multimedia file] is found or

not."  (*Id.* at 718:19-24.)  Plaintiff cannot argue that, in conditionally applying an interpretation

*advanced by Plaintiff* for infringement, Dr. Schonfeld admitted infringement or otherwise contra-

dicted himself.  *See CR Bard Inc. v. AngioDynamics, Inc.*, C.A. No. 15-218-JFB-SRF, 2023 WL

3750649, at *5 (D. Del. June 1, 2023) ("[A] patent owner's infringement and invalidity cases must

conform."); *see also CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1299 (Fed. Cir.

2021) (rejecting patentee's conflicting interpretations for infringement and avoiding anticipation).

The jury heard ample evidence to conclude that Amazon Music does not meet this limitation.

**B.    The trial record supports a finding that claims 1 and 9 of the '638 patent are invalid on multiple grounds.**

Plaintiff argues that the jury erred in finding the claims invalid.  (Mot. at 4-10.)  Plaintiff

can only overturn the verdict by showing that the jury's findings were not supported by substantial

---

[4] (Tr. Tx. at 991:25-992:2 ("In Matthew it says seek and you will find, seek and you will find. I find those words particularly profound, especially in this case.").)

[5] (Tr. Tx. at 992:7-11 ("that's called source code and it's human readable letters and numbers that mean something, it says what the device will do when the software runs, seek and you will find. Dr. Hernandez sought the software and he found it.  I found Amazon's seek routines."); *id.* at 993:5-7 ("Seek and you will find.  Amazon did not want something found.  What it[s] software seeks and if found it accesses, this is not disputed.").)

evidence.  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998).  Plaintiff cannot do so.

**1.      Substantial evidence showed that claims 1 and 9 of the '638 patent re-
cite only elements that are well-understood, routine, and conventional.**

Substantial evidence supports the jury verdict that claims 1 and 9 of the '638 patent recite

only an ordered combination of elements that was well-understood, routine, and conventional.[6]

Dr. Schonfeld explained that the ordering of steps is dictated by the abstract idea itself, and is "the

only logical order that [it] can be":  providing text, displaying the text, recognizing a gesture per-

formed on the displayed text, determining a time in the multimedia associated with the gesture,

and delivering multimedia.  (Tr. Tx. at 704:9-706:18 (Schonfeld).)  The jury was free to accept

this testimony because a person of ordinary skill in the art would have considered this logical order

of steps to be well-understood, routine, and conventional.  (*Id.* at 966:9-967:4) (jury instruction).[7]

Plaintiff contends that Audible's Chief Scientist, Guy Story, "gave away the point" because

he personally was unaware of "techniques of using gestures on words as an actuator to change play

back position."  (Mot. at 4.)[8]  But Mr. Story *did not understand* what counsel meant by "actuator,"

a word that appears nowhere in the patent.  (Tr. Tx. at 446:21-447:9, 456:17-457:2 (Story); *id.* at

883:19-21 (Hernandez).)[9]  Mr. Story also was not offered as an expert witness, so there was no

---

[6] The Court held before trial that the claims are directed to abstract idea at *Alice* step one:  "using
an index to synchronize text and multimedia."  (D.I. 28 at 6.)

[7] The use of conventional hardware and software to perform their expected functions in the order
dictated by the abstract idea cannot supply an inventive concept.  *In re TLI Commc'ns Pat. Lit.*,
823 F.3d 607, 615 (Fed. Cir. 2016); *see also Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935
F.3d 1341, 1348-49 (Fed. Cir. 2019) (no inventive concept where the steps "as an ordered combi-
nation add nothing to the [abstract idea] that is not already present when the steps are considered
separately"); *KOM Software Inc. v. NetApp, Inc.*, C.A. No. 18-160, 2023 WL 6460025, at *10 (D.
Del. Oct. 4, 2023) (patentee must provide "more than 'conclusory allegations of inventiveness'").

[8] Plaintiff characterizes Mr. Story as testifying that "nothing was 'on the market' that had such
features."  (Mot. at 5.)  In truth, Plaintiff asked Mr. Story about his own recollection and he stated
"I was not aware."  (Tr. Tx. at 446:21-447:1 (Story).)

[9] Plaintiff denigrates this testimony as Mr. Story claiming that he "did not know English" and cites
a series of inscrutable dictionary definitions of "actuator" as if to underscore the point. (Mot. at 5
& n.2.)  This just highlights that Plaintiff is asking the Court to reassess Mr. Story's credibility.

reason to expect him to testify about "candidate . . . technologies" as Plaintiff suggests.  (Mot. at 5.)  And Mr. Story's testimony did not preclude the jury from weighing *other* evidence of conventionality—including Mr. Evans' admissions—and finding for Defendants.[10]

Plaintiff argues that Dr. Schonfeld admitted the Sanction II prior art had "differences" from the claimed invention or used hindsight.  (Mot. at 5.)  The first assertion is irrelevant.  Dr. Schonfeld explained that Sanction II included the same ordered combination but used a "click" instead of a "tap or gesture," and that this was not enough to make the claims unconventional or inventive.  (Tr. Tx. at 705:25-706:18 (Schonfeld).)  This "difference" at most relates to novelty and does not establish anything inventive about the order of the elements in the claim.  (*Id.*)  The second assertion is incorrect.  Dr. Schonfeld did not use hindsight.  He explained that the order of steps in the claims is dictated by the abstract idea.  (*Id.* at 704:9-16; *see also id.* at 704:17-706:18.)  That is sufficient to establish conventionality of an ordered combination as a matter of law, but at the very least the jury was free to accept Dr. Schonfeld's testimony over Plaintiff's arguments.

## 2.  Substantial evidence showed that Master is prior art.

Substantial evidence supports that U.S. Patent No. 8,433,431, issued to Dr. Aaron Master ("Master"), is prior art.  Plaintiff's '638 patent was filed on December 6, 2013 and claims priority to a non-provisional application filed on January 3, 2012 (JTX001) and a provisional application filed on January 3, 2011 (PTX473).  Master was filed on February 13, 2012 and claims priority to a non-provisional application filed on July 28, 2011 (DTX0055) and a provisional application filed on December 2, 2010 (DTX0056).  Master is prior art using either the non-provisional or provisional dates.[11]  (Tr. Tx. at 602:22-603:9 (Master); *id.* at 688:10-24 (Schonfeld).)

---

[10] (Tr. Tx. at 292:8-296:16 (Evans) (did not invent synchronization indexes, touch screens, or gestures on text on devices); *id.* at 699:14-706:18 (Schonfeld) (testifying that gestures and other claim limitations were conventional).)

[11] As the Court instructed, Master is entitled to the filing date of its provisional application if the

Plaintiff argues that the Court should hold as a matter of law that Master is *not* prior art, based on Plaintiff's attempt to swear behind Master.  (Mot. at 6.)  Plaintiff's arguments are incorrect.  First, the jury had substantial evidence to find that Plaintiff did not conceive of the complete invention before Master's priority date.  *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).  Dr. Schonfeld explained that none of Plaintiff's evidence discloses all of the claim limitations.  (Tr. Tx. at 658:10-660:23 (Schonfeld).)  None of Plaintiff's witnesses testified otherwise or mapped the conception documents to either asserted claim.  (*Id.* at 895:7-897:8 (Hernandez); *id.* at 232:19-236:2 (Evans); *id.* at 336:18-337:11 (Maynard).)

Second, the jury could have found that Plaintiff failed to corroborate an earlier conception date.  Corroboration must be both contemporaneous and independent of the inventor.  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002); *see also Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1295-96 (Fed. Cir. 2018).  Plaintiff adduced no such evidence.  Plaintiff points to post-dated declarations (PTX202.0059, PTX202.0130-0154; Tr. Tx. at 275:7-276:14 (Evans)) and the Patent Office's acceptance of those declarations to "find" an earlier invention date.  (Mot. at 6.)  But the declarations were made years after the alleged conception and cannot corroborate it any more than Mr. Evans' trial testimony.  The Patent Office's acceptance of those declarations is likewise irrelevant, as the Patent Office applies different standards for swearing behind prior art (37 C.F.R. § 1.131) than the Federal Circuit's requirements of independent, contemporaneous corroboration.  Mr. Evans' testimony about the date of the sketches (PTX450, PTX452) and presentations (PTX282, PTX458) is not independent corroboration.[12]  Mr.

---

provisional application provides written description support for a claim of Master and the disclosures of Master that invalidate Plaintiff's claims.  *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015); *In re Giacomini*, 612 F.3d 1380, 1383 (Fed. Cir. 2010); (Tr. Tx. at 964:5-11.)  Dr. Schonfeld showed at trial that it does and Plaintiff does not dispute this.  (Tr. Tx. at 687:24-693:21, 695:21-697:25 (Schonfeld); Mot. at 6.)

[12] Plaintiff suggests that the "rule of reason" obviates this deficiency in its evidence.  (Mot. at 14.)

Maynard offered no corroboration either, as he remembered only "emotions" of his conversations and that the solution was "wouldn't it be great if you could just tap and bounce back and forth" between audiovisual and written content—which describes the alleged problem in the prior art and not conception of an invention to solve it.  (Tr. Tx. at 328:25-329:15, 336:23-337:11 (Maynard).)[13]

Third, the jury could have found that Plaintiff was not diligent.  Plaintiff was required to "demonstrate reasonable diligence toward reduction to practice from a date just prior to the other party's conception to its [own] reduction to practice."  *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996).  Plaintiff's motion mentions, but does not argue, diligence.  Mr. Evans did not explain why he waited years after the alleged conception to file a patent application.  He testified to emailing law firms, but because Plaintiff withheld those emails as privileged, the jury heard no evidence about those communications.  (Tr. Tx. at 260:2-268:13 (Evans); *id.* at 123:15-124:8; D.I. 166, 176.)  The jury was free to conclude that Plaintiff was *not* diligent.

### 3.    Substantial evidence showed that the prior art anticipates and renders obvious claims 1 and 9 of the '638 patent.

The jury found that Toub, LiveNote, and Master anticipate claims 1 and 9, and that Master renders those claims obvious.  Substantial evidence supports each of the jury's findings.

**Microsoft Toub.**  Toub, published in 2007, discloses a system for navigating multimedia with text and video, where a user can scroll through text and jump to new positions within the video.  (DTX0057; Tr. Tx. at 661:20-663:3, 663:7-664:6 (Schonfeld).)  Plaintiff did not contest

---

But "[t]he rule of reason . . . does not dispense with the requirement for some evidence of independent corroboration."  *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985).

[13] If Plaintiff's evidence was sufficient to support a pre-filing conception for the '638 patent (it is not), then substantial evidence would also support a finding that Master was entitled to a priority date of at least September 11, 2009 under 35 U.S.C. § 102(g), and Master would remain prior art.  Dr. Master explained that the LiveLyrics feature of Master was conceived by that date, with five teams of SoundHound employees working diligently on a reduction to practice.  (*Id.* at 590:14-22, 591:24-592:21, 594:7-598:10 (Master); DTX0022.)  Dr. Master also explained how emails (DTX0022) showed their work on the feature.  (Tr. Tx. at 594:7-592:2 (Master).)

that Toub is prior art.

Substantial evidence supports the jury verdict that Toub discloses every limitation of the claims.  (Tr. Tx. at 664:7-669:21, 671:14-24 (Schonfeld).)  Plaintiff challenges Toub's disclosure of two limitations.  First, Plaintiff argues that Toub does not disclose a "mobile computing device" and a "touch-sensitive input" performed on a screen of the device.  (Mot. at 7-9.)  But Toub expressly discloses "mobile telephones, pocket computers," and "touch-input devices."  (*Id.* at 671:2-13, 816:12-817:3 (Schonfeld); DTX0057 at [0028], [0033].)  Plaintiff suggests that the jury should have accepted Dr. Hernandez's testimony that these disclosures referred to an "old fashioned way of doing business."  (Mot. at 8.)  But the jury was free to weigh the evidence and accept Dr. Schonfeld's testimony.  *See Versata*, 717 F.3d at 1263.  Second, Plaintiff argues that Toub does not disclose "displaying . . . text from a synchronization index" because, according to Plaintiff, the prosecution history requires the synchronization index to comprise a "'substantial majority' of a transcript's text" and Toub only discloses "snippets."  (Mot. at 8.)  Dr. Hernandez admitted that the claim does not include this "substantial majority" requirement.  (Tr. Tx. at 890:16-892:15 (Hernandez).)  The Court also did not construe the limitation as Plaintiff argues—Plaintiff never requested such a construction before trial and has thus waived any argument that it should do so now.  (D.I. 89); *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1341 (Fed. Cir. 2015).  Moreover, even if Plaintiff was correct, Dr. Schonfeld explained that Toub discloses an embodiment where "all of the text"—not just a "snippet"—is displayed.  (Tr. Tx. at 669:23-671:1 (Schonfeld).)  Plaintiff fails to address this testimony and, at most, identifies competing testimony that does not warrant judgment as a matter of law.  *See Versata*, 717 F.3d at 1263.

**LiveNote**.  LiveNote was a suite of software that allowed users to navigate deposition transcripts synchronized with video.  (Tr. Tx. at 674:12-677:20 (Schonfeld); DTX0336; DTX0268; DTX0142.)  Like the Sanction II software used by Mr. Evans, LiveNote allowed users to "tap-to-

jump" from a location in the transcript to the corresponding location in the video.  (Tr. Tx. at 674:12-25, 675:12-21 (Schonfeld).)  Plaintiff does not contest LiveNote is prior art.  (*Id.* at 675:1-11.)  Dr. Schonfeld offered particularized testimony showing that LiveNote discloses every limitation of the claims.  (Tr. Tx. at 677:21-684:15 (Schonfeld).)  Plaintiff argues that LiveNote does not disclose two claim limitations:  a "mobile computing device" and a touch gesture being performed on the device screen.  (Mot. at 8-9.)  But as Dr. Schonfeld explained, LiveNote expressly discloses a "tapping" gesture on a "tablet PC" and thus satisfies these limitations.  (Tr. Tx. at 681:2-19 (Schonfeld); DTX0336.)  Plaintiff fails to address or acknowledge this evidence.  And although Plaintiff claims that LiveNote discloses only a stylus and not a "human" touch, nothing in the claim requires a "human" touch gesture or excludes a stylus.  (Mot. at 8-9.)  A jury was free to accept this evidence and find that LiveNote anticipates.  *See Versata*, 717 F.3d at 1263.

**Master**.  Master describes displaying text in coordination with audio playback, allowing a user to click on lyrics within scrolling text and jump to play the corresponding audio.  (DTX0055; DTX0056; Tr. Tx. at 686:9-687:6 (Schonfeld); *id.* at 583:11-19, 585:9-19, 586:17-21 (Master).)  As explained above, substantial evidence supports a finding that Master is prior art.

Substantial evidence also supports the jury's anticipation finding.  Dr. Schonfeld explained that Master and the Master provisional application disclose every limitation of the asserted claims.  (Tr. Tx. at 686:15-695:5, 698:1-14 (Schonfeld).)  Plaintiff's only argument is that the synchronization index described in the Master provisional application, called an "LRC" file, is located on a server and never sent to the client device.  (Mot. at 9-10.)  This is irrelevant because nothing in the claim requires the synchronization index to be on the mobile device.  It is also incorrect because the Master provisional discloses that the claimed data lookup using an LRC file can be performed either locally on the user's device *or* at the server.  (Tr. Tx. at 686:15-25, 688:10-20, 695:16-20, 808:25-809:3 (Schonfeld).)  Rather than address this testimony, Plaintiff points to Dr. Hernandez's

testimony that Master discloses a "mathematical complex system" and not a "lookup." (Mot. at 9-10.) But Dr. Schonfeld explained why Master shows the claimed lookup that uses the LRC file to determine a time in the audio. (Tr. Tx. at 691:25-692:24 (Schonfeld).) Plaintiff's competing evidence does not warrant judgment as a matter of law. *See Versata*, 717 F.3d at 1263.

Substantial evidence also supports the jury verdict that Master renders the asserted claims obvious. Dr. Schonfeld testified that, if Plaintiff were correct that a local synchronization index were required and not disclosed, it would have been obvious to include a locally stored synchronization index on the mobile device. (Tr. Tx. at 698:1-14 (Schonfeld).) Plaintiff suggests that this testimony reflects Dr. Schonfeld's hindsight understanding in 2023. (Mot. at 10.) But Dr. Schonfeld did not say it "is" obvious; he said it "would have been obvious," and he further explained *why*—this would allow the features to run more quickly. (Tr. Tx. at 698:1-14 (Schonfeld).) Plaintiff also argues that the jury should have accepted Dr. Hernandez's "strong and undisputed objective nonobviousness facts." (Mot. at 10.) No such facts existed at trial. Dr. Hernandez stated only that the Amazon Music app had a "wow" factor or that there was applause when a non-accused "panel" feature in the app was unveiled. (Tr. Tx. at 882:14-883:1 (Hernandez); *id.* at 373:23-374:20 (Shields).)[14] Indeed, the evidence at trial showed the complete absence of any secondary indicia of non-obviousness. (Tr. Tx. at 698:23-699:13 (Schonfeld)); *see Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (holding that "secondary considerations [were] inadequate to establish nonobviousness as a matter of law"). The jury was free to weigh the evidence and find the claims invalid as obvious. *See Versata*, 717 F.3d at 1263.

## III.    TRACKTIME IS NOT ENTITLED TO A NEW TRIAL.

New trials should only be granted "when the record shows that the jury's verdict resulted

---

[14] The accused X-Ray Lyrics feature also has no nexus to the patent because it does not infringe.

in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Applera Corp. MDS., Inc. v. Micromass UK Ltd.*, 204 F. Supp. 2d 724, 750 (D. Del. 2002). Alleged evidentiary errors do not support a new trial unless it is "highly probable" that the errors were prejudicial and affected the outcome. *Drumgo v. Kuschel*, C.A. No. 14-1135, 2022 WL 3646349, at *2 (D. Del. Aug. 24, 2022). The moving party bears the burden to show that a new trial is warranted. *Colyer v. Consol. Rail Corp.*, 114 F. App'x. 473, 480 (3d Cir. 2004).

### A.    The "weight of the evidence" does not warrant a new trial.

In a single paragraph devoid of any citations, Plaintiff argues that a new trial is needed "for the same reasons as above" and that Defendants' evidence was "less persuasive" than Plaintiff's. (Mot. at 11.) Plaintiff articulates no miscarriage of justice that would result if the verdict were to stand. *Applera*, 204 F. Supp. 2d at 750. The Court should deny the motion on this basis.

### B.    Plaintiff's "Additional New Trial Grounds" do not warrant a new trial.

Plaintiff argues that the non-infringement verdict as to X-Ray Lyrics in Amazon Music (claim 1) and Immersion Reading in the Kindle application (claims 1 and 9) was against the "great weight of the evidence." (Mot at 11-12.) None of Plaintiff's arguments supports a new trial.

For Amazon Music, Plaintiff argues that Defendants relied on an untimely claim construction that information must be received "from" a mobile device. (*Id.* at 12 (citing Tr. Tx. at 114-115).) Plaintiff made no objection at trial and thus waived the argument. *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1311-12 (Fed. Cir. 2020). Nor did Defendants engage in claim construction; claim 1 *expressly states* "receiving, *from the mobile computing device*, information indicating" a user's gesture." (JTX001 at claim 1.) Defendants relied on this plain meaning. (Tr. Tx. at 196:6-10, 950:2-20); *see Wis. Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1348 (Fed. Cir. 2018). Plaintiff's argument that its testimony "was compelling" does not warrant a new trial. *Haberman v. Gerber Prods. Co.*, 236 F. App'x 592, 600 (Fed. Cir. 2007).

Plaintiff's arguments about Immersion Reading also fail.  (Mot. at 12.)  The issue before the Court is not whether, in Plaintiff's view, Dr. Hernandez "ably showed the presence of the[] limitations" (*id.*), but whether the verdict "shocks [the] conscience." *Applera*, 204 F. Supp. 2d at 750.  It does not, as Dr. Schonfeld and Dr. Houh explained why Immersion Reading does not infringe.  (Tr. Tx. at 709:3-713:16, 714:14-715:24 (Schonfeld); *id.* at 614:24-620:21 (Houh).)

## C.    The jury's anticipation and non-infringement findings are not inconsistent.

Plaintiff argues that the jury's findings of anticipation and non-infringement are inconsistent.  (Mot. at 12.)  A new trial is appropriate "only if 'no rational jury could have brought back the verdicts that were returned.'"  *Monaco v. City of Camden*, 366 F. App'x 330, 331 (3d Cir. 2010).  Plaintiff's "inconsistency" argument is waived, as Plaintiff never objected before the jury's discharge.  *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 191 (3d Cir. 2015); Fed. R. Civ. P. 49(b)(4).  Plaintiff argues that it did not need to object because the verdict was a special verdict, and not a general verdict.  (Mot. at 14 n.4 (citing *Function Media, LLC v. Google Inc.*, 708 F.3d 1310 (Fed. Cir. 2013).)  But the Federal Circuit in *Function Media* confirmed that verdict forms asking about ultimate issues that require jury instructions on the law—such as anticipation—are *general* verdicts. 708 F.3d at 1329-30.[15]  Thus, "[i]t would be improper to allow [Plaintiff] to now argue inconsistencies require an entirely new trial when it failed to object at the only time when an inconsistency could have been cured."  *Id.* at 1330.

Plaintiff's arguments also are incorrect.  For the "performing a data lookup" limitation, Plaintiff complains that Defendants' non-infringement arguments relied on a distinction between JSON files and LyricsLine objects in Amazon Music, whereas the invalidity argument for Toub

---

[15] By contrast, a special verdict asks the jury to decide individual questions underlying the ultimate issue, such whether an individual claim element is present in the accused products.  *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1188 (Fed. Cir. 1998).

was "agnostic" about this issue.  (Mot. at 13.)  Of course, that is because Toub has no JSON file

or LyricsLine objects.  Dr. Schonfeld showed that Toub's transcription index file satisfies this

limitation because it "associates time codes" so a video skips to text selected by a user.  (Tr. Tx.

at 667:19-668:4 (Schonfeld).)  Amazon Music operates differently; the JSON file plays no role in

the "data lookup."  (*Id.* at 716:7-717:18.)  For the "seeking" limitation, Plaintiff argues the jury

could not have found non-infringement after finding anticipation by Toub.  But no evidence shows

that Toub includes the same LyricsLine object as Amazon Music and Dr. Schonfeld's conditional

application of Plaintiff's claim interpretation for his invalidity opinion is not "inconsistent."  (Tr.

Tx. at 663:17-664:22, 669:10-21, 718:19-24.)  The jury also could have found non-infringement

on other bases.  Plaintiff's arguments do not warrant a new trial.

### D.      The Court's evidentiary rulings were correct and do not warrant a new trial.

Plaintiff argues that three evidentiary rulings were so prejudicial that they affected the out-

come of the trial. (Mot. at 14-17.)[16]  Plaintiff is incorrect.

### 1.      The Court correctly excluded Plaintiff's draft application (PTX381).

Plaintiff attempted to introduce an unwitnessed draft patent application into evidence,

claiming that it dated back to November 23, 2010, before Master.  (Tr. Tx. at 13:11-19.)  Plaintiff

has not shown it is "highly probable" that the exclusion was prejudicial and affected the outcome

of trial.  (*Id.* at 795:18-796:5); *Drumgo*, 2022 WL 3646349, at *2.  The draft application could not

establish an earlier conception date because Plaintiff had no testimony that it corroborated every

limitation of the claims.  *Hybritech*, 802 F.2d at 1376.  Plaintiff thus was not prejudiced by its

---

[16] Plaintiff cites *United States v. Fulton*, 837 F.3d 281 (3d Cir. 2016) and *GN Netcom, Inc. v. Plantronics*, 930 F.3d 76 (3d Cir. 2019) for the unremarkable proposition that relevant evidence often should be admitted.  (Mot. at 14.)  But Plaintiff's draft patent application and Defendants' patents are legally irrelevant as discussed herein.  Moreover, the discussion in *Fulton* relates only to admissibility of opinion testimony, an issue not present here.  837 F.3d at 314.

exclusion and the outcome of the trial would be no different.  Indeed, Plaintiff was allowed to rely on other uncorroborated disclosures at trial but chose not to map those disclosures to the asserted claims.  (Tr. Tx. at 895:7-897:8 (Hernandez); *id.* at 232:19-236:2 (Evans).)  Plaintiff's challenge is also irrelevant if the jury verdict stands as to Toub or LiveNote or the September 2009 priority date for Master, as those prior art references predate the draft patent application.

Moreover, the Court's exclusion of this document was correct for multiple reasons.  Pre-filing conception requires corroborating evidence that is "independent of information received from the inventor."  *Apator*, 887 F.3d at 1295.  Mr. Evans' own document is not independent corroboration.  The metadata also cannot corroborate conception, as it is unwitnessed and not independent.  *Kolcraft Enters., Inc. v. Graco Childs. Prods., Inc.*, 927 F.3d 1320, 1324 (Fed. Cir. 2019); *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 760-761 (D. Del. 2010).  As the Court recognized, the metadata is unreliable; it shows the document was "Lasted Printed" one month *before* it was "Created." (Tr. Tx. at 121:22-122:15; PTX381.)[17]  The Court correctly excluded the document.  (*Id.* at 118:20-123:14, 788:12-795:7.)

| Properties ˅ | |
|---|---|
| Size | 230KB |
| Pages | |
| Words | 25345 |
| Total Editing Time | 49 Minutes |
| Title | Field of the invention |
| Tags | Add a tag |
| Comments | Add comments |
| **Related Dates** | |
| Last Modified | 11/23/2010 10:10 AM |
| Created | 11/22/2010 10:38 PM |
| Last Printed | 10/22/2010 2:56 PM |

None of Plaintiff's arguments is correct.  Plaintiff suggests that the Court should have allowed Dr. Hernandez to rely on his "experience" to opine about the metadata.  (Mot. at 15.)  Dr. Hernandez's report, however, disclosed no such opinions, despite Plaintiff bearing the burden to corroborate an earlier conception date.  (Tr. Tx. at 792:3-17, 795:9-20); *Apator*, 887 F.3d at 1295.  Plaintiff argues that the nonsensical metadata is a "common issue."  (Mot. at 15.)  Plaintiff's only support for this argument is internet-forum discussion by unidentified third parties that was not

---

[17] The same metadata attributes the "Total Editing Time" of the 25,345-word document as 49 minutes, which equates to Mr. Evans typing 517 words per minute or nearly 9 words per second.

evidence at trial.  (*Id.* at 15 n.6.)  Plaintiff also states that the Court "prevented" Mr. Evans from testifying about sending the document to a law firm.  (*Id.* at 15.)  But Plaintiff told the Court that Mr. Evans' testimony depended on admissibility of the draft application, and the Court excluded that document.  (Tr. Tx. at 789:2-15.)  Plaintiff then chose voluntarily not to call Mr. Evans.

### 2. The Court correctly excluded evidence about Defendants' patents.

Plaintiff argues that the Court's exclusion of Defendants' patents warrants a new trial. (Mot. at 16-17.)  As the theory goes, Plaintiff would have used Defendants' patents to somehow impeach Dr. Schonfeld's opinions about *Plaintiff's* patent.  Plaintiff fails to show that the exclusion was prejudicial, *Drumgo*, 2022 WL 3646349, at *2, and indeed the Court's exclusion was correct.

The existence of other patents with different disclosures and claims is irrelevant to the patentability of Plaintiff's asserted patent, *particularly* when those other patents have not been held patent-eligible by a court.  *Bridge & Post v. Verizon Commc'ns, Inc.*, 319 F. Supp. 3d 818, 827-28 (E.D. Va. 2018), *aff'd*, 778 F. App'x 882 (Fed. Cir. 2019); *see also* D.I. 28 at 8; D.I. 283 (Sep. 6, 2023 Hearing Tr.) at 36:6-42:11.  Allowing Plaintiff to present unrelated patents as it proposes would have resulted in a mini-trial on collateral issues, such as the claims and inventive aspects of those patents.  *Solvay, S.A. v. Honeywell Int'l Inc.*, 886 F. Supp. 2d 396, 410 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014) (no error in excluding unrelated patent that would cause confusion and waste of time on satellite issues).  The Court correctly excluded this evidence.[18]

### 3. The Court correctly allowed the SoundHound demonstrative (DDX 6) and Audible testimony.

Plaintiff argues that a demonstrative video presented by Dr. Master (DDX 6) and testimony

---

[18] Plaintiff asserts that the Court should have granted its motion to preclude Dr. Schonfeld from testifying that the ordered combination of elements in the claims was well-understood, routine, and conventional. (Mot. at 17.)  This issue is unrelated to the exclusion of Defendants' patents. Plaintiff also identifies no error in the Court's ruling and thus has failed to preserve this issue.

by Mr. Story about his work at Audible warrant a new trial.  (Mot. at 17.)  The Court already noted

that Dr. Master's use of DDX 6 was "reasonably innocuous" and that, in any event, "[Plaintiff]

didn't object."  (Tr. Tx. at 637:14-638:2.)  A "plain error" standard thus applies and Plaintiff makes

no argument under that standard.  *Int'l Land Acq., Inc. v. Fausto*, 39 F. App'x 751, 755 (3d Cir.

2002).  Moreover, a demonstrative warrants a new trial only if it was "so prejudicial as to render

the trial unfair." *Lucent Techs., Inc. v. Newbridge Nets. Corp.*, 168 F. Supp. 2d 181, 261 (D. Del.

2001).  It was not.  Dr. Master's testimony supported what the video showed.  (Tr. Tx. at 584:12-

596:21 (Master).)   He did not attribute any date to the video, he made clear that DDX 6 is not

prior art (*id.* at 584:15-17; *id.* at 805:8-14 (Schonfeld)), and Plaintiff had the opportunity to cross-

examine him.  *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1470 (Fed. Cir. 1997).

Plaintiff also argues that the Court should have precluded Mr. Story from testifying to the

development of Immersion Reading.  (*Id.* at 243:8-249:9.)  Plaintiff identifies no law supporting

its position or any prejudice.  To the extent Plaintiff complains that the development of Immersion

Reading predates the '638 patent, the verdict form and jury instructions identified Toub, LiveNote,

and Master—not Immersion Reading—as the prior art at issue.  (D.I. 306 at 15; D.I. 308.)

### E.    Plaintiff identifies no "attorney misconduct" warranting a new trial.

Plaintiff alleges "attorney misconduct" by Defendants' counsel.  (Mot. at 18-20.)  Plaintiff

waived these arguments by failing to object and, as courts have found, "it is inconceivable . . . that

[Plaintiff] would have delayed so long without raising the slightest hint of an objection" had the

arguments truly been objectionable.  *Curtis Pub. Co. v. Butts*, 351 F.2d 702, 714 (5th Cir. 1965).

### 1.    Defendants' statement that Mr. Evans had no solution was relevant.

Plaintiff asserts that Defendants' statements that Mr. Evans lacked a "solution" warrant a

new trial.  (Mot. at 18-19.)  Having failed to object, Plaintiff must show that Defendants' state-

ments were so improper that they "gravely impair[ed] the calm and dispassionate consideration of

the case by the jury." *Collins v. Chandler*, C.A. No. 05-739, 2009 WL 3595129, at *5 (D. Del. Oct. 28, 2009). Nothing in Defendants' statements comes close to meeting this high standard.

Plaintiff ignores the clear relevance of whether Mr. Evans possessed a solution to the problem he sought to address. Mr. Evans' lack of a solution is relevant to written description, as a patent is invalid if it shows no more than a wish or a plan to achieve the claimed invention. (Tr. Tx. at 965:13-17; *see also id.* at 655:11-658:14 (Schonfeld); *id.* at 329:10-15 (Maynard); *id.* at 1011:7-1012:8); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). Defendants also showed that the patent is ineligible, as Mr. Evans lacked any solution to implement the abstract idea. (Tr. Tx. at 705:25-706:18 (Schonfeld).) Indeed, Defendants' statements that Mr. Evans had no solution came in response to Plaintiff alleging that he did. (*Id.* at 85:20-86:1, 93:2-95:4 (Mr. Evans "wanted to build solutions . . . so that's what he did").) Defendants' presentation of routine written description and patent-ineligibility defenses is not "misconduct" and did not "gravely impair" the jury's consideration. *Collins*, 2009 WL 3595129, at *5.

Plaintiff now suggests—long after the trial in which it did not object *even once* (*see Curtis*, 351 F.2d at 714)—that Defendants' statement "fl[y] in the face" of promises made by counsel at the pretrial conference. (Mot. at 18-19.) Counsel agreed not to deliberately impugn Mr. Evans or disparage his failure but *would* present facts showing that Mr. Evans did not develop a working application. (D.I. 283 (Sep. 6, 2023 Hearing Tr.) at 9:4-10:6.) Defendants upheld this agreement.

## 2. Defendants' demonstratives do not warrant a new trial.

Plaintiff complains that Defendants "distorted" the prior art in demonstratives for Sound-Hound, LiveNote, and Toub. (Mot. at 19.) Defendants addressed the SoundHound demonstrative (DDX 6) above. As for LiveNote and Toub, Plaintiff did not object and thus waived its argument. The record also shows that there was no confusion. Plaintiff argues that Dr. Schonfeld's demonstratives added a computer (for LiveNote) or failed to show a mouse or CPU (for Toub). (Mot. at

19.)  Dr. Schonfeld explained this in his testimony.  (Tr. Tx. at 811:4-814:12 (Schonfeld).)

### 3.   Defendants' references to funding were relevant and accurate.

Plaintiff complains that references to litigation funding warrant a new trial.  (Mot. at 20.)
Plaintiff never objected and must show that the statements were so improper that they "gravely
impair[ed]" the jury's deliberation.  *Collins*, 2009 WL 3595129, at *5.  Plaintiff cannot do so.

Evidence of funding is relevant to refuting a "David vs. Goliath" trial theme where one
party may be portrayed as less-resourced or sympathetic.  *E.g.*, *Cont'l Cirs. LLC v. Intel Corp.*,
435 F. Supp. 3d 1014 (D. Ariz. 2020) (financial interests in the litigation "could be used to refute
any David vs. Goliath narrative at trial"); *E. Profit Corp. v. Strategic Vision US, LLC*, C.A. No.
18-2185, 2020 WL 7490107, at *8 (S.D.N.Y. Dec. 18, 2020) (denying motion *in limine* to exclude
reference to litigation funding).  Plaintiff attempted to draw a contrast between Mr. Evans, an
individual on a long journey for justice[19]; and Defendants, who purportedly viewed patents as for
"Microsoft, SoundHound, companies like Amazon, not people like Curt."  (Tr. Tx. at 976:1-7.)
Plaintiff also suggests it was "dishonest" or "inflammatory" to suggest Plaintiff was claiming tech-
nology that others should be free to use.  (Mot. at 19-20.)  This statement is the essence of the
patent bargain and caused no undue prejudice.  (Tr. Tx. at 1035:18-1036:14.)

## IV.   CONCLUSION

For these reasons, Defendants request that the Court deny Plaintiff's motion in full.

---

[19] (Tr. Tx. at 101:18-102:4 ("What is someone taking and using an invention, billions of times,
worth to the inventor on the one hand and the infringer on the other?"), 983:4-18 ("Amazon tries
to belittle Curt's efforts, but they were real…Guy Story told you just how hard it is to make a
successful app, even if you have the resources of an Amazon subsidiary…It is no wonder that Curt
ran into obstacles…"), 1038:23-1039:2 ("[Curt'] didn't have the resources of SoundHound or the
resources of an Amazon and so he was late to the game in getting his application put together"),
1043:10-1046:11 ("If you think anyone can fight Amazon without borrowing money, think again.
The numbers are big because there is a lot of use and there is a lot of use of Curt's invention.").)

*Of counsel:*

J. David Hadden, CSB No. 176148
Saina S. Shamilov, CSB No. 215636
Ravi R. Ranganath, CSB No. 272981
Johnathan L. Chai, CSB No. 339315
S.J. Hahn, CSB No. 335854
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500

Todd R. Gregorian, CSB No. 236096
Min Wu, CSB No. 307512
Christopher S. Lavin, CSB No. 301702
555 California Street, 12th Floor
San Francisco, CA  94014
(415) 875-2300

Melanie L. Mayer, WA Bar No. 36971
Jeffrey A. Ware, WA Bar No. 43779
Jonathan T. McMichael, WA Bar No. 49895
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
(206) 389-4510

Dated:  November 7, 2023

Respectfully submitted,

By:  */s/ Andrew C. Mayo*
ASHBY & GEDDES, P.A.
Steven J. Balick (#2114)
sbalick@ashbygeddes.com
Andrew C. Mayo (#5207)
amayo@ashbygeddes.com
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Counsel for Defendants*
AMAZON.COM SERVICES LLC, and AU-
DIBLE, INC.,