IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRACKTIME, LLC,                              )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )
                                             )   C.A. No.  18-1518 (MN)
                                             )
AMAZON.COM SERVICES LLC                      )
and AUDIBLE, INC.,                           )
                                             )
                    Defendants.              )

## **MEMORANDUM OPINION**

Tracy L. Pearson, DUNLAP BENNETT & LUDWIG, Wilmington, DE, Thomas M. Dunlap, DUNLAP BENNETT & LUDWIG, Vienna, VA, Robert Greenspoon, William Flachsbart, Mark Magas, DUNLAP BENNETT & LUDWIG, Chicago, IL – Attorneys for Plaintiff

Steven J. Balick, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; J. David Hadden, Saina S. Shamilov, Ravi R. Ranganath, S.J. Hahn, FENWICK & WEST LLP, Mountain View, CA; Todd R. Gregorian, Min Wu, Christopher S. Lavin, FENWICK & WEST LLP, San Francisco, CA, Melanie L. Mayer, Jeffrey A. Ware, Jonathan T. McMichael, FENWICK & WEST LLP, Seattle, WA – Attorneys for Defendants

September 26, 2024
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

The Court presided over a five-day jury trial in this patent case from September 13 to 19, 2023.  (*See* D.I. 317, 318, 319, 320 & 321 ("Tr.")).  At the end of the trial, the jury returned a verdict in favor of Defendants Amazon.com Services LLC ("Amazon") and Audible, Inc. ("Audible") (together, "Defendants") and against Plaintiff TrackTime, LLC ("Plaintiff" or "TrackTime").  The jury found that Defendants' accused products do not directly infringe the asserted claims, that all asserted claims are invalid as anticipated and obvious, and that the ordered combination of elements in the asserted claims were well-understood, routine, and conventional at the time of the invention.  The jury rejected Defendants' argument that the asserted claims are invalid for lack of written description.

Pending before the Court are Plaintiff's motion for judgment as a matter of law or for a new trial (D.I. 323) and Defendants' motion for judgment as a matter of law or for alternative relief as to certain claims dropped by Plaintiff prior to trial (D.I. 316).  For the reasons set forth below, the Court will DENY Plaintiff's motion and GRANT Defendants' request for alternative relief.

I.      **BACKGROUND**

This case concerns U.S. Patent No. 8,856,638 ("the '638 patent" or "the Patent-in-Suit"), invented by Curt Evans and owned by TrackTime.  The '638 patent relates to methods and systems for remote control multimedia seeking – in other words, technology that allows a user to navigate forward, backward, or within the playback timeline of a multimedia file.

Plaintiff filed this action on October 1, 2018, asserting that two of Defendants' applications, Amazon Music X-Ray Lyrics ("Amazon Music") and Kindle's Audible Immersion

Reading ("Immersion Reading") (together, "the Accused Products"), infringe claims 1 and 9 of the '638 patent (collectively, "the Asserted Claims").[1]  (*See* D.I. 1).

From September 13 to 19, 2023, the Court presided over a jury trial.  (*See* D.I. 293, 296, 297 & Tr.).  The jury found that Plaintiff failed to prove, by a preponderance of the evidence, that the Accused Products infringe the Asserted Claims.  (D.I. 309 at 1).  The jury also found that Defendants had proven, by clear and convincing evidence, that the Asserted Claims are invalid as anticipated and obvious, (*id.* at 3-4), based on three references of prior art:  U.S. Patent No. 8,433,431, invented by Dr. Aaron Master and owned by Soundhound, Inc. ("Master"); U.S. Patent Application No. 2007/0027844A1, invented by Stephen Toub and owned by Microsoft Corporation ("Toub"); and LiveNote Technologies Ltd.'s LiveNote Application Suite ("LiveNote").  (*See* DTX0055; DTX0057; DTX0142).  Furthermore, the jury found that the ordered combination of elements in the Asserted Claims were well-understood, routine, and conventional at the time of the invention.  (D.I. 309 at 5).[2]

On September 27, 2023, the Court entered judgment on the jury verdict under Rule 58(b) of the Federal Rules of Civil Procedure.  (D.I. 314).  On October 9, 2023, Defendants filed their motion for judgment as a matter of law as to the dropped claims (D.I. 316) and on October 25, 2023, Plaintiff filed its motion for judgment as a matter of law, with an alternative request for a new trial (D.I. 323).  Briefing on those motions was completed on October 30 and November 14, 2023, respectively.  (D.I. 322, 325, 327, & 328).

---

[1]    Plaintiff's dropping of other claims of the '638 patent prior to the start of trial is the subject of Defendants' JMOL and addressed *infra* at Section III.C.  (*See* Tr. at 77:14-78:22).  In addition, Plaintiff initially alleged infringement of another patent, U.S. Patent No. 8,862,978 ("the '978 Patent").  (D.I. 1, 35).  Prior to trial, the Court ruled that the asserted claims of the '978 Patent are invalid as indefinite under 35 U.S.C. § 112.  (D.I. 89 at 8-15).

[2]    The jury also found that the Asserted Claims are not invalid for lack of adequate written description.  (D.I. 309 at 2).  Neither party challenges that finding here.

## II.   LEGAL STANDARDS

### A.   Judgment as a Matter of Law

Judgment as a matter of law may be entered against a non-moving party if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." Fed. R. Civ. P. 50(a)(1).  A motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 373 (3d Cir. 2016) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).  Entry of judgment as a matter of law is a remedy to be invoked "sparingly." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004).

Following a jury trial, a renewed motion for judgment as a matter of law under Rule 50(b) may be granted only if the movant demonstrates "that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied by the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (citation and alteration omitted).  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the finding under review. *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018).

In determining whether substantial evidence supports the jury verdict, the Court may not make credibility determinations, weigh the evidence, or substitute its own conclusions for those of the jury where the record evidence supports multiple inferences. *See Avaya*, 838 F.3d at 373; *Lightning Lube*, 4 F.3d at 1166.  Moreover, in the Third Circuit, when the movant bears the burden of proof on an issue, judgment as a matter of law is appropriate only if "there is insufficient

3

evidence for permitting any different finding." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (citations omitted).

### B.   Motion for a New Trial

"[A]fter a jury trial," the Court may grant a new trial "to any party" on "all or some of the issues" for "any reason for which a new trial has heretofore been granted" in federal court actions at law.  Fed. R. Civ. P. 59(a)(1)(A).  Common grounds for a new trial are:  "(1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence exists that would likely alter the outcome of the trial; (3) where improper conduct by an attorney or the court unfairly influenced the verdict; or (4) where the jury's verdict was facially inconsistent."  *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015).

Whether to grant a new trial is a question committed to the Court's discretion.  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  Unlike the standard for judgment as a matter of law, on a motion for a new trial, "the Court need not view the evidence in the light most favorable to the verdict winner."  *Ateliers*, 85 F. Supp. 3d at 776.  "Nevertheless, new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience."  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

### C.   Voluntary Dismissal

Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  Dismissals under Rule 41(a)(2) are without prejudice unless the Court finds

otherwise, *id.*, and the Third Circuit has set a "liberal policy" in favor of voluntary dismissals. *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990). Nevertheless, that policy must be counterbalanced with any potential prejudice that the defendant might suffer. *Id.* "Factors a court should consider when determining whether dismissal will substantially prejudice a defendant include: (1) the potential duplicative expense of a second litigation; (2) the expenses already incurred by the defendant; (3) how far the current litigation has progressed; and (4) whether the plaintiff was diligent in seeking dismissal." *Ferring Pharms. Inc. v. Novel Labs., Inc.*, No. 17-894 (RGA), 2018 WL 5085516, at *1 (D. Del. Oct. 18, 2018). If an analysis of those factors shows that the defendant will "suffer legal prejudice as the result of the dismissal, a dismissal with prejudice may be warranted." *Bioverativ Inc. v. CSL Behring LLC*, No. 17-914 (RGA), 2021 WL 3471688, at *1 (D. Del. Aug. 6, 2021).

## III.   **DISCUSSION**

In its motion, Plaintiff asserts that the Court should set aside the jury's findings as to patent infringement, invalidity, and eligibility. Alternatively, in requesting a new trial, Plaintiff argues that the weight of the evidence does not support the jury's verdict, the jury's anticipation and non-infringement findings are inconsistent, the Court erred in certain evidentiary rulings, and that Defendants' counsel engaged in misconduct that confused the jury. Defendant has moved for judgment as a matter of law on the claims Plaintiff dropped before trial, and, in the alternative, argues that they should be dismissed with prejudice. The Court addresses the motions in turn.

**A.      Plaintiff's Motion for Judgment as a Matter of Law**

Plaintiff challenges certain of the jury's findings on patent infringement, eligibility, and invalidity.  Specifically, Plaintiff contends that (1) Amazon Music infringes claim 9,[3] (2) both Asserted Claims are patent eligible because the ordered combination was not routine, conventional or well-understood, and (3) neither of the Asserted Claims is anticipated or obvious.

**1.      Infringement**

"Infringement is a question of fact that [is] review[ed] for substantial evidence when tried to a jury." *Ironburg Inventions Ltd. v. Valve Corp*., 64 F.4th 1274, 1291 (Fed. Cir. 2023).  "A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial." *Amgen Inc. v. Hospira, Inc*., 944 F.3d 1327, 1335 (Fed. Cir. 2019).

Plaintiff argues that the only reasonable finding for the jury was that Amazon Music infringes claim 9 of the '638 patent. (D.I. 323 at 3).  Specifically, Plaintiff says that the jury should have accepted its arguments that Amazon Music infringed the "seeking" and "performing" limitations based on testimony from Defendants' own experts, Dr. Dan Schoenfeld and Dr. Henry Houh. (*Id.*).[4]  According to Plaintiff, during Amazon's invalidity case, Schonfeld and Houh each testified that the '638 patent's claims were anticipated by prior art called Toub, because Toub practices the "seeking" and "performing" functions of the claimed invention. (*Id.*).  Plaintiff goes on to reason by analogy that, because the jury accepted that the Patent-in-Suit was anticipated by

---

[3]      Plaintiff does not dispute the jury's other findings of non-infringement in Question 1 of the Verdict Form, which pertain to claim 1 for Amazon Music and claims 1 and 9 for Immersion Reading. (D.I. 309 at 1).

[4]      To the extent Plaintiff argues that Defendants' experts testified inconsistently as to invalidity and infringement, Plaintiff did not cross examine Dr. Schonfeld or Dr. Houh (or anyone else) about this purported inconsistency at trial, and Plaintiff never drew the distinction for the jury in its closing (or elsewhere). (*Cf.* Tr. at 809:21-817:3).

Toub (D.I. 309 at 3) and Toub practiced the "seeking" and "performing" limitations, then Amazon Music also practices the "seeking" and "performing" limitations, "[b]ecause the same definition must be used for infringement as validity" (D.I. 323 at 3).

Plaintiff's argument comes up short for several reasons.  First, Plaintiff fails to complete its syllogism – it is missing a necessary premise that Toub and Amazon Music were proven at trial to be the same (or even analogous) with respect to the "seeking" and "performing" limitations. Without that link, it does not follow that Amazon Music does *anything* simply because Toub does it, let alone "seeking" and "performing" as specified.  To that point, Defendants identify several portions of expert testimony that the jury could have used to find that Amazon Music does not practice either function.  (*See, e.g.*, Tr. at 716:16-719:24 ("[T]herefore, those [claim] limitations, 1E and 9D are not satisfied for the [X-ray Lyrics] Amazon Music application.")).

Another flaw in Plaintiff's argument is that, as Plaintiff acknowledges in its papers (D.I. 328 at 1), it bore the burden of proving infringement of each claim limitation at trial.  *See E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1073 (Fed. Cir. 2019).  Plaintiff does not explain why other evidence offered at trial, including testimony of Defendants' experts about infringement, cannot support the jury's finding of non-infringement.  *See Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 969 (Fed. Cir. 2022).  What is missing from Plaintiff's argument is any contention that what the jury did hear constituted "insufficient evidence for permitting *any different finding* other than that of infringement."  *Express Mobile, Inc. v. GoDaddy.com, LLC*, 680 F. Supp. 3d 517, 527 (D. Del. 2023) (quotation marks omitted) ("[I]n this case there *were* alternative bases upon which a reasonable jury could find noninfringement.").

Accordingly, the jury's finding of non-infringement is supported by substantial evidence and will not be overturned.

2.      **Eligibility**

Plaintiff next argues that, as a matter of law, no reasonable jury could find that "the ordered combination of elements in [claims 1 and 9] of the '638 patent was well understood, routine, and conventional as of the time of the invention." (D.I. 309 at 5).  In support of that position, Plaintiff contends that testimony from Audible's Chief Technology Officer, Mr. Story ("the CTO"), and Defendants' expert, Dr. Schonfeld, fatally undermined the conventionality finding. (D.I. 323 at 4-5).  Neither argument warrants displacing the jury's verdict.

First, Mr. Story acknowledged that he was "unaware of any conventional or well understood techniques of using gestures on words as an actuator" and "could not name any product on the market" between 2008 to 2010 with the ordered claim elements.  (Tr. at 446:20-447:6).  But those two statements, offered by one fact witness about his own personal awareness, were just two of the many pieces of evidence adduced on conventionality at trial.  Indeed, they were the only two substantive statements Plaintiff elicited during its two-minute examination of Mr. Story.  In addition to that testimony, the jury heard from Plaintiff's inventor, Mr. Evans, Plaintiff's expert, Dr. Hernandez, and Defendants' expert, Dr. Schonfeld.  Dr. Hernandez agreed that "tapping on a touch interface to select something, that was well-known and conventional since Apple introduced the iPhone in 2007." (Tr. at 885:5-12).  Dr. Schonfeld testified that the invention was "well-known, routine and conventional" because each of the component parts had already been invented and the abstract idea of the combination necessitated its ordering.  (*Id.* at 699:16-706:20).  Those opinions were corroborated by Mr. Evans on cross examination, when he conceded that he did not invent any of the component claim elements, and, instead, that the "invention is in the whole claim," comprising "all those pieces together." (Tr. at 294:12-18).  A reasonable jury could well consider all of that evidence and conclude that the combination of the claim elements was

conventional, notwithstanding Mr. Story's inability to name a product that practiced them all together.

Second, Plaintiff attacks Dr. Schonfeld's opinion about the ordered combination of elements as "hindsight" by parsing certain phrasing Dr. Schonfeld used.  (D.I. 323 at 5).  In response to the question, "is there anything unconventional or not well-known about the ordering of these steps?" Dr. Schoenfeld replied, "Not in my opinion,  . . . you need to have a combination of all these elements if you want to be able to display and tap and move the video or audio."  (Tr. at 704:11-18).  Plaintiff apparently contends that Dr. Schonfeld's colloquial use of the word "if" in that sentence transformed the opinion into "circular logic" that impermissibly "assumed into existence a key piece of the ordered combination."  (D.I. 323 at 5).

Such a reading is grammatically unfounded, and, in fact, directly foreclosed by the remainder of Dr. Schonfeld's testimony.  Dr. Schonfeld followed the challenged statement by sequentially walking through the claim elements, explaining how their order was fixed by the abstract idea.  (*Id.* at 704:19-706:20).  This led him to opine that the combination is conventional because there is only one functional way to sequence the relevant claim elements – "the order is the only logical order that can be."  (Tr. at 704:17-18).[5]  That opinion is not contradicted by the statement Plaintiff challenges, "you need to have a combination of all these elements *if* you want to be able to display and tap and move the video or audio," (*id.* at 704:15-17 (emphasis added)), because Dr. Schonfeld continued to address the "display," "tap," and moving "gesture" functions in his analysis, (*id.* at 705:2-706:1).  Altogether, this constituted evidence that a reasonable juror

---

[5]     *See also* Tr. at 705:11-12 ("[T]he ordered combination is predetermined, you cannot do it in any other logical order."); *id.* at 705:24-706:1 ("So there cannot be anything but one logical order, it is predetermined, you cannot order it in any other way.").

could have fairly considered in rendering the determination that the combination of claim elements was conventional.

### 3.   __Invalidity__

At trial, Defendants argued that the Asserted Claims of the '638 patent are invalid on anticipation and obviousness grounds, based on three prior art references:  (1) Soundhound's Master Patent; (2) Microsoft's Toub Patent Application; and (3) LiveNote.  The jury agreed that the Asserted Claims are anticipated by all three references and rendered obvious by Master.  (D.I. 309 at 3-4).  Plaintiff challenges those findings.  The Court finds that substantial evidence supports the jury's verdict on each theory of invalidity.

"A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses each and every limitation of the claimed invention."  *Purdue Pharma L.P. v. Epic Pharma, LLC*, 811 F.3d 1345, 1351 (Fed. Cir. 2016).  A claimed invention is anticipated when it "was known to or used by others in this country before the date of the patentee's invention" and was "accessible to the public."  *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1289 (Fed. Cir. 2019) (citations omitted).  "Dissemination and public accessibility are the keys to the legal determination whether a prior art reference was published."  *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364 (Fed. Cir. 2014) (quotation marks, alteration, and citation omitted).  "Anticipation is a factual question, and a jury verdict regarding anticipation is reviewed after trial for substantial evidence."  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1350 (Fed. Cir. 2019) (citation omitted).

"Obviousness is a question of law based on underlying findings of fact."  *Game & Tech. Co. v. Activision Blizzard Inc.*, 926 F.3d 1370, 1379 (Fed. Cir. 2019) (quotation marks and citation omitted).  Specifically, a jury's "verdict of obviousness must be supported by facts of (1) the scope

and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) any objective indicia such as commercial success or long-felt need." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1294 (Fed. Cir. 2009). "What a reference teaches and whether a person of ordinary skill in the art would have been motivated to combine the teachings of separate references are questions of fact." *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1353 (Fed. Cir. 2012). "Where, as here, the jury made no explicit factual findings regarding obviousness, [the Court] must determine whether the implicit findings necessary to support the verdict are supported by substantial evidence." *Fresenius*, 582 F.3d at 1294.

The jury found that each of the Master, Toub, and Live Note prior art references discloses all the limitations of the Asserted Claims. (D.I. 309 at 3). Plaintiff challenges that finding as unreasonable. (D.I. 323 at 6-10). Defendant also offered the same three prior art references as a basis for obviousness, and the jury found that Master rendered the Asserted Claims obvious. (D.I. 309 at 4). Plaintiff challenges that determination, too. The Court addresses both findings and holds that substantial evidence supports the jury's verdict.

### a.   **Master**

Prior Art. As a threshold issue, Plaintiff argues that no reasonable jury could have found that Master is prior art because the '638 patent predates it. (D.I. 323 at 6; D.I. 328 at 3-4). The Master provisional application was filed on December 2, 2010. (DTX0055). According to Plaintiff, it adduced evidence at trial that the '638 patent's claimed invention date went back before that by more than two years, as early as August of 2008. (D.I. 323 at 6). To support that claim, Plaintiff points to prosecution documents submitted to the U.S. Patent and Trademark Office ("the

USPTO"), trial testimony from its inventor and patent prosecution attorney, and email and sketch exhibits introduced at trial.  (*Id.*).

Defendants respond that the '638 patent's earliest priority date is January 3, 2011, when the provisional application was filed.  (*See* PTX473).  They argue this fact is bolstered by trial evidence, including, for example, expert testimony from Dr. Schonfeld that Plaintiff's inventor's early sketch work did not constitute legal conception because it was not "complete and operative" and did not disclose all of the required claim limitations.  (Tr. 658:12-660:25 ("You have to show that you not only have the general idea, but there is support for each and every one of the elements of the limitations that we went through in the claim, and that's clearly missing.")).  Moreover, Defendants argue, none of Plaintiff's witnesses refuted that testimony or otherwise mapped the conception documents onto the Asserted Claims.  (D.I. 327 at 8).

The Court agrees with Defendants that there was substantial evidence upon which the jury could find that Master constituted prior art.  The bulk of the evidence Plaintiff identifies in support of its priority argument comes from partisan witness declarations submitted by its inventor, Mr. Evans, and prosecution attorney, Mr. Maynard, to the USPTO in 2014 – six years after the claimed dated of invention.  Judging the weight of that evidence is a "credibility determination" that belongs uniquely to the jury.  *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015).  Here, the jury was free to ascribe little value to the uncorroborated, self-serving declarations and testimony from Mr. Evans and Mr. Maynard, particularly when counterbalanced by the expert testimony and documents supplied by Defendants.  *Id.*; *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1296-97 (Fed. Cir. 2018).  In other words, "the jury had substantial evidence on which to base a conclusion that the [challenged] work was prior art to the [plaintiff's] patent."  *Syngenta Seeds, Inc. v. Monsanto Co.*, 404 F. Supp. 2d 594, 603 (D. Del. 2005), *aff'd*,

231 F. App'x 954 (Fed. Cir. 2007); *Ingenico Inc. v. IOENGINE, LLC*, No. 18-826 (WCB), 2022 WL 20814960, at *3 (D. Del. Dec. 9, 2022).

Anticipation.  Plaintiff next asserts that, even if Master constitutes prior art, it still does not anticipate the '638 patent because Master does not disclose every limitation of the Asserted Claims.  (D.I. 323 at 9-10).  For one, says Plaintiff, the LRC file that serves as Master's synchronization index "stays at the server" and does not travel to a mobile device, thereby undermining the "performing a data lookup" claim limitation.  (*Id.*).  Defendants counter that Dr. Schonfeld testified otherwise, explaining, among other things, that "the LRC files, the synchronization time, and finally the fact that it could be done on a mobile device . . . are all disclosed in the [Master] provisional application."  (Tr. at 688:17-22).  For the same reason, Defendants assert, Dr. Schonfeld directly refuted Dr. Hernandez's expert testimony that Master discloses a "mathematical complex system" rather than a "lookup."  (D.I. 327 at 11-12).  "It was ultimately up to the jury, [here], to weigh the credibility of the parties' opposing theories and evidence."  *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003).  The Court finds that this "classic example of competing experts" constitutes "substantial evidence" before the jury. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003).

Obviousness.  Finally, Plaintiff contends that the jury could not have reasonably found that Master rendered the '638 patent obvious.  (D.I. 323 at 9-10).  The lone basis for this contention is that Dr. Schonfeld's testimony on the obviousness of the synchronization index was purportedly too cursory to carry Defendant's burden of proof.  (*Id.* at 10; Tr. at 698:6-16).  Plaintiff, however, takes that statement in isolation, ignoring the rest of Dr. Schonfeld's testimony about Master. Plaintiff also fails to address Dr. Schonfeld's testimony that Plaintiff did not put on any evidence of secondary indicia of non-obviousness, such as commercial success, industry praise, or long-felt

and unmet need.  (Tr. at 698:25-699:15).  For its own part, Plaintiff points to no such evidence that the jury overlooked.  *In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996) ("Once a *prima facie* case of obviousness has been established, the burden shifts to the applicant to come forward with evidence of nonobviousness to overcome the *prima facie* case.").  And Plaintiff also fails to address other relevant evidence that the jury could have considered in making its obviousness determination.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007) ("[The patentee] has shown no secondary factors to dislodge the determination that [the claim] is obvious.").  For example, Dr. Schonfeld also testified that the claimed invention constituted a combination of already-existing features and functions, rather than novel components invented by Mr. Evans. *See id.* at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."); (Tr. at 704:11-706:1 ("the elements, their combination and their order are already part of [prior art]")).

Accordingly, the Court finds that the jury's determination that Master anticipated and rendered obvious the '638 patent was based on substantial evidence.

### b. Toub

Next, Plaintiff argues that the Toub prior art could not have anticipated the '638 patent because (1) Toub's navigation function is based on mouse clicks, rather than the touch screen functionality required by TrackTime, and (2) Toub works only on desktop devices, while TrackTime is for mobile devices.  (D.I. 323 at 7-8).  Plaintiff says that its expert, Dr. Hernandez, testified to these discrepancies while Dr. Schonfeld's testimony, on the other hand, was not sufficient to establish these anticipating functions.  (*Id.*).

First, with respect to touch-screen navigation, Toub explicitly discloses that "[t]he computing system may also have . . . a touch-input device."  (DTX0057.0010).  Dr. Schonfeld

testified about this capability, noting that "you can do this tap-to-jump . . . with a touching of the device and screen displayed."  (Tr. at 663:11-18; *id.* at 666:2-6).  Second, Defendants produced testimony and documentary evidence on mobile capability, including Toub, which discloses that the "invention [is] operational with . . . mobile telephones, pocket computers, personal computers, . . . minicomputers, . . . and distributed computing environments that include any of the above systems or devices."  (DTX0057.0010; Tr. at 663:21-664:3 (discussing capability on a "mobile telephone or a tablet")).  Plaintiff put on competing testimony from Dr. Hernandez, who attempted to contextualize Toub's parameters as outmoded.  (Tr. at 874:5-7).  But the Court finds that Defendants supplied enough proof – substantial evidence – that the jury could reasonably find that Toub had mobile and touch-screen capabilities.  *Pannu*, 155 F.3d at 1348.  Accordingly, there is no basis to set aside the jury's findings pertaining to Toub.

### c.     LiveNote

As with Toub, Plaintiff argues that LiveNote could not have anticipated TrackTime, because, like Toub, LiveNote was not designed for touchscreen navigation on a mobile device.  (D.I. 323 at 8-9).  Rather, according to Plaintiff, LiveNote could only perform on a "full scale desktop" by "using a mouse," and was made only for "text annotations in a transcript using a pen-stylus."  (*Id.*).  Accordingly, Plaintiff argues that Defendants failed to meet their burden of proving that LiveNote disclosed claims 1 and 9 of the '638 patent.  (*Id.*).

Yet Defendants at trial furnished LiveNote documents and testimony from Dr. Schonfeld that directly contradict Plaintiff's position.  For instance, Dr. Schonfeld testified that "you can also use [LiveNote] with something called a tablet PC" – a mobile device – and went on to opine that the LiveNote patent "makes clear that you can tap on the tablet and . . . you could use your finger

if you wanted to."  (Tr. at 676:21-677:2; DTX0336).  This substantial evidence provides a basis for the jury to have reasonably concluded that LiveNote anticipated the claimed invention.

Based on the foregoing, the Court finds that each of these sources of prior art provides substantial evidence of anticipation supporting the jury's verdict.

## B. **Plaintiff's Motion in the Alternative for a New Trial**

In the alternative, Plaintiff moves for a new trial.  Of the four principal grounds for evaluating a new trial request, Plaintiff argues that three of them merit granting the motion here. Specifically, Plaintiff contends that the jury's verdict:  (1) constitutes a miscarriage of justice because it is against the clear weight of the evidence; (2) was facially and internally inconsistent; and (3) was unfairly influenced by improper conduct by counsel and erroneous evidentiary rulings by the Court.  *See Ateliers*, 85 F. Supp. 3d at 775.  The Court addresses each assertion in turn.

### 1. **Clear Weight of the Evidence**

Plaintiff first contends that the jury's verdict was against the great weight of the evidence for the same reasons set forth in its motion for judgment as a matter of law.  (D.I. 323 at 11). "Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law – in that the court need not view the evidence in the light most favorable to the verdict winner – a new trial should only be granted where 'a miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or the verdict 'shocks the conscience.'"  *Ateliers*, 85 F. Supp. 3d at 776 (quoting *Williamson*, 926 F.2d at 1353 (alteration omitted)).  The Court finds that the jury's verdict does no such thing, substantially for the same reasons that the Court declined to upset the jury's verdict in Plaintiff's motion for judgment as a matter of law.  *See Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301, 1311 (Fed. Cir. 2005).  Plaintiff's request for a new trial on these same grounds is therefore denied.

Plaintiff also challenges the jury's finding that the Accused Products did not infringe the Asserted Claims as against the weight of the evidence, on the basis that Defendants impermissibly engaged in new, "untimely claim construction" of certain limitations. (D.I. 323 at 11-12). Plaintiff argues that Defendants tainted the verdict by pressing the "untimely claim construction that remote server interactions are supposedly required but not practiced (via the 'receiving . . . information indicating a . . . gesture' step and the 'delivering' step)." (*Id.*).

Notably, the only citation Plaintiff provides for its assertion is a few sentences of Defendants' opening statement. (*Id.* (citing Tr. at 114-15)). There is no reference to any testimony or other evidence Defendants purportedly offered in connection with the new claim construction. Plaintiff did not object to that statement when it was made, and the jury was instructed that statements by counsel are not evidence. (Tr. at 64:6-9). Accordingly, Plaintiff cannot retry this case on that basis. *See, e.g.*, *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) ("Counsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks."); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 401 (3d Cir. 2016); Fed. R. Civ. P. 103(a).

Even if Plaintiff had timely objected, the plain language of claim 1 of the '638 patent forecloses Plaintiff's argument. Claim 1 discloses "receiving, from the mobile computing device, information indicating a user's . . . gesture." (JTX001.00082). "[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). Here, the interpretation Plaintiff says Defendants used is just such "ordinary meaning." *Id.* That is fatal to Plaintiff's argument.

On both of the prior points, Plaintiff asserts that testimony from its expert, Dr. Hernandez, was "compelling" and "ably showed" its case. (D.I. 323 at 12). If it was, it was for the jury to

decide.  *See, e.g.*, *MobileMedia*, 780 F.3d at 1168.  And given that the jury was presented with countervailing testimony from two of Defendants' experts, the Court does not see that the "clear weight of the evidence" requires the Court to interpose its judgment in that credibility call.  *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012) ("Because of this conflicting expert testimony, the jury was free to make credibility determinations and believe the witness it considers more trustworthy." (internal quotation marks omitted)); *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960).

## 2.  Facially Inconsistent Verdict

Plaintiff next asserts that the jury's finding that Amazon Music did not infringe the Asserted Claims is facially inconsistent with its finding that Toub anticipated the '638 patent.  This position largely reiterates Plaintiff's previous argument for judgment as a matter of law.  *See supra* at Section III.A.1 ("Infringement").  Plaintiff once again claims that "Dr. Schonfeld made clear admissions on the 'performing' and 'seeking' functions in the context of invalidity that are fundamentally inconsistent with Amazon's non-infringement contentions."  (D.I. 328 at 8).  Accordingly, argues Plaintiff, the jury could not reasonably find that Amazon Music did not infringe the "performing" and "seeking" elements of claims 1 and 9 while also finding that Toub anticipated the Patent-in-Suit because it disclosed both of those claim elements.  (*Id.*).

As already discussed, Plaintiff's argument is flawed insofar as it seeks to elide any distinctions between Amazon Music and Toub in terms of the evidence presented at trial.  *See supra* at Section III.A.1 ("Infringement").  Therefore, for those same reasons, the Court finds that the jury did not render an inconsistent verdict.[6]

---

[6]     Moreover, the jury found that the Asserted Claims of the '638 patent are also anticipated by two other references, LiveNote and Master, neither of which Plaintiff challenges as "facially inconsistent."  Accordingly, even if the Court were to accept Plaintiff's argument

3.      **The Court's Evidentiary Rulings**

"Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial."  Fed. R. Civ. P. 61.  A new trial is warranted only when an erroneous evidentiary ruling results in manifest injustice.  *See Lind*, 278 F.2d at 88-89.  Plaintiff asserts that the Court made three erroneous evidentiary rulings that unfairly impacted the outcome of the trial.  First, the Court improperly excluded Plaintiff's inventor's draft patent application, which would have had a material bearing on the prior art analysis.  (D.I. 323 at 14-15).  Second, the Court improperly excluded Defendants' patenting activities for the purpose of proving inventive concept.  (*Id.* at 16-17).  And third, the Court improperly admitted prejudicial prior art testimony from Defendants.  (*Id.* at 17).

a.      **Plaintiff's Draft Patent Application**

On the fourth day of trial, Plaintiff sought to introduce a Microsoft Word document, authored by Plaintiff's inventor, Mr. Evans, that purported to be a draft patent application for the claimed invention ("the Draft Application").  (PTX 381).  Although the Draft Application was undated, Plaintiff maintained that it was from November 23, 2010 – 10 days before the Master priority date.  (*See* Tr. at 791:10-17).  This assertion was based on the document's metadata.  (*Id.*).  But, upon inspection, the metadata was confusing and unreliable.  The Draft Application's "Last Printed" date of October 22, 2010 implausibly predated the "Created" date of November 22, 2010, Plaintiff had not produced the metadata during discovery, and Dr. Hernandez did not discuss these reliability issues in his expert report.  (*Id.* at 791:23-793:23).  In other words, Plaintiff sought to

---

about Toub, it would not change the ultimate verdict that the Asserted Claims are invalid as anticipated, because "the evidence with respect to at least one of the prior art references was sufficient to prove anticipation of the asserted claims."  *Northpoint Tech.*, 413 F.3d at 1312.

introduce the Draft Application as an uncorroborated, undated document with metadata that had not been produced in discovery and for which neither Plaintiff's expert nor its fact witness could offer a conclusively clarifying opinion.  (Tr. at 794:20-795:7).

The Court excluded the Draft Application on all of those grounds, reasoning that it would be confusing to the jury.  (*Id.*).  "It is well established, [now], that when a party seeks to prove conception through an inventor's testimony the party must proffer evidence, in addition to the inventor's own statements and documents, corroborating the inventor's testimony."  *Apator*, 887 F.3d at 1295 (quotations and alteration omitted).  Here, however, Plaintiff did not put on independent evidence sufficient to corroborate the testimony of Mr. Evans.  The Draft Application could not suffice, because "issues with the timestamp prevent[ed] it from satisfying the clear and convincing standard necessary to prove prior invention."  *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 761 (D. Del. 2010).  Even if the date were reliable, the Draft Application would not qualify as "independent" because it was created by Mr. Evans himself, and there were no third parties to swear to it.  *Apator*, 887 F.3d at 1296-97 ("The evidence proffered by [inventor] is stuck in a catch-22 of corroboration. . . . it would be strange indeed to say that an inventor, who filed the [document] that needs corroborating, can by his own testimony provide that corroboration." (some alterations and ellipses omitted)).

Moreover, the exclusion did not unduly prejudice Plaintiff, because it put on other evidence that Mr. Evans' conception of the invention predated the Master patent, including prosecution documents, declarations, and direct testimony from Mr. Evans and Mr. Maynard – the same evidence that Plaintiff contends is so substantial that no reasonable jury could have ignored it.  (*See supra*, Section III.A.3.a).  That evidence, like the Draft Application, "originated with the inventor[]" and was not independently corroborated.  *Kolcraft Enters., Inc. v. Graco Children's*

*Prod., Inc.*, 927 F.3d 1320, 1324 (Fed. Cir. 2019).  As a result, the jury apparently disregarded its credibility.  There is no reason to think that the jury would have treated the undated, conflicting Draft Application any differently, even if it had been admitted into evidence.  *Id.* (finding that "inventor deposition testimony [and] the Inventor Declaration" did not constitute "evidence in the record independently corroborating the inventors' alleged conception").  And, finally, Plaintiff could have called Mr. Evans to testify that he created the Draft Application on November 23, 2010, without introducing the document itself.  But Plaintiff declined to do so.  The Court's evidentiary ruling does not merit a new trial.[7]

### b.    Defendants' Patenting Activities

Plaintiff next contends that the Court should have admitted statements made by Defendants in the course of prosecuting one of their own patents not at issue in this case ("the Amazon Patent").  (D.I. 323 at 16).  According to Plaintiff, the claimed invention of the Amazon Patent shared similar features to the claimed invention of the '638 patent, so Defendants' prior statements that the Amazon Patent was not conventional foreclose Defendants from arguing that the '638 patent was conventional.  But, as evidenced by the parties' grappling on the motions *in limine*, that proposition was in direct dispute.  (D.I. 283 at 33:1-42:10).  This led the Court to rule that it "didn't think Amazon's patents were relevant," and that bringing in Amazon Patent prosecution evidence would "risk serious jury confusion" and undue prejudice.  (*Id.* at 42:2-10).

The Court routinely rejects the invitation to admit the prosecution history of patents "not related to any patent in th[e] case" for this very reason, even where a party contends such evidence is "directly contrary to [a party's] litigation positions."  *Solvay, S.A. v. Honeywell Int'l Inc.*, 886

---

[7]    In addition, as previously noted, even accepting Plaintiff's argument does not change the outcome of the verdict because the jury found the Asserted Claims invalid based on two other prior art references.  *See supra* n.6.

F. Supp. 2d 396, 410 (D. Del. 2012) (excluding prosecution history of patent not-in-suit), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014).  This is because "the marginal relevance of the evidence is far outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury and wasting the limited time of the parties explaining the satellite patent prosecutions."  *Id*.  Here, Plaintiff sought to litigate the complex matter of the Amazon Patent's relevance as a single point in support of its rebuttal case on the conventionality of the '638 patent – an element on which Defendants bore the burden of proof.  The minimal probative value of such impeachment material is plainly outweighed by the risk of prejudice, confusion, and wasting time.  Fed. R. Evid. 403.  Accordingly, Plaintiff's inability to introduce the Amazon Patent's prosecution history does not warrant a new trial.

### c.      The Master Demonstrative and Audible Prior Art Testimony

The third and final challenge Plaintiff makes to the Court's evidentiary rulings is that, over objections from Plaintiff, the Court (1) permitted Defendants to play a demonstrative video from the inventor of the Master prior art (DDX006) and (2) admitted testimony from Audible's CTO, Mr. Story, about the development of Immersion Reading (D.I. 323 at 17).  According to Plaintiff, this was improper evidence of prior art, which confused the jury and prejudiced Plaintiff.  (*Id.*).

With respect to the Master video, Plaintiff assented to the presentation under the condition that there be curative instructions explaining to the jury that video was only a demonstrative and did not itself constitute prior art.  (*See* Tr. at 500:6-501:20).  Those instructions were delivered as discussed.  Directly before playing the video, Defendants' counsel stated on the record to the inventor of Master, "we're going to show this video to the jury that is not prior art in this case." (Tr. at 584:16-17).  Later, on cross of Dr. Schonfeld, Plaintiff's counsel repeated that "the Sound Hound video placed up on this viewing screen . . . Amazon's counsel[] told the jury that is not

prior art." (Tr. at 805:8-14).  Dr Schonfeld immediately concurred on the record:  "That is not prior art, I agree." (*Id.*).  Given these clarifying explanations to the jury, made by both parties, including from Defendants' counsel and their expert, Plaintiff did not suffer prejudice from the demonstrative.[8]

Equally unavailing is Plaintiff's contention that Mr. Story's testimony about the development of Immersion Reading prejudicially impacted Plaintiff because it "elicit[ed] backdoor evidence of prior art." (D.I. 323 at 17).  During the portion of testimony that Plaintiff contends is problematic, Mr. Story discussed Apple iBooks, Kindle eBooks, and Soundhound LiveLyrics. (Tr. at 454:2-465:14).  But none of those references were offered as prior art or served as the subject of the jury's verdict.  Instead, the jury rendered its verdict of invalidity based on three different references:  Master, Toub, and LiveNote. (D.I. 309 at 3-4).  Mr. Story's testimony, then, offered nothing on the relevant prior art references in this case, and, therefore, did not prejudice Plaintiff.

### 4.    Alleged Attorney Misconduct

Plaintiff's last effort to obtain a new trial is an assertion that Defendants' counsel engaged in three types of conduct meant to mislead and confuse the jury.  Plaintiff says that Defendants improperly "pursued a narrative" theme that Plaintiff's inventor was a "failure," "made multiple distortions of prior art which confused the jury," and, lastly, "inflamed" the jury with "attacks" on and "disparag[ing]" remarks about Plaintiff's litigation funding and borrowing agreements. (D.I  323 at 18-20).  Plaintiff characterizes these assertions as "unfounded," "misleading," and "confusing." (*Id.* at 20).

---

[8]       Moreover, the jury was instructed that demonstratives are not evidence.  (Tr. at 64:10-13).

To win a new trial on this basis, "the party seeking a new trial must demonstrate that the attorney's conduct constitutes misconduct, and not merely aggressive advocacy, and that the misconduct is prejudicial in the sense of affecting a substantial right in the context of the entire trial record." *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 260 (D. Del. 2001). The conduct at issue "must be so grievous as to have rendered the trial unfair." *Genzyme Corp. v. Atrium Med. Corp.*, 315 F. Supp. 2d 552, 584 (D. Del. 2004) (quotation marks omitted).

The essence of Plaintiff's protests about Defendants' counsel's statements is that they were "irrelevant," "confusing," and "inflammatory." (D.I. 323 at 20). Those criticisms, however, are the stuff that evidentiary objections are made of, not attorney misconduct.[9] *See Bd. of Regents v. Bos. Sci. Corp.*, No. 18-392 (GBW), 2024 WL 2848471, at *15 (D. Del. June 5, 2024). With respect to the statements that Plaintiff contends "improperly appealed to bias and emotion[,] [t]he Court is not convinced that those statements were misconduct as opposed to aggressive advocacy." *Id.* By contrast, Plaintiff does not assert that Defendants' counsel defied a prior Court order, *cf. Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. 09-80 (LPS), 2015 WL 2379485, at *13 (D. Del. May 18, 2015) ("[T]he Court first concludes that there was 'attorney misconduct' in the sense that there were multiple violations of the Court's orders."), or "misrepresent[ed] the facts and law relevant to the jury's consideration of [the] issues." *Genzyme*, 315 F. Supp. 2d at 588. That type of "grievous" behavior is the hallmark of "attorney misconduct" in this context. *Id.* at 584.

Finally, Plaintiff fails to identify any "substantial right" that was offended or problem that would have tainted "the entire trial record." *Lucent*, 168 F. Supp. 2d at 260; *Bd. of Regents*, 2024

---

[9] That Plaintiff failed to preserve a trial objection for any of these bases is by itself grounds to deny Plaintiff's motion, because "a party who fails to object to errors at trial waives the right to complain about them following trial." *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998); *Stemtech*, 834 F.3d at 401 (denying new trial because "objections needed to be raised when the allegedly objectionable exhibits were offered at trial, and [movant] failed to lodge a contemporaneous objection"); *Murray*, 610 F.2d at 152; Fed. R. Evid. 103(a).

WL 2848471, at *15 ("[N]one of the statements were prejudicial in the sense of affecting a substantial right in the context of the entire record."); *Stambler v. RSA Sec., Inc.*, 123 F. App'x 982, 985 (Fed. Cir. 2005) (rejecting plaintiff's contention that "false theme" and "message" warranted new patent trial); Fed. R. Civ. P. 61.  Accordingly, the Court denies Plaintiff's request for a new trial.

### C.      Defendants' Motion for Judgment as a Matter of Law

In the proposed pretrial order, Plaintiff identified infringement of "claims 1-20 of the '638 patent" as issues for trial.  (D.I. 278 ¶ 1).  Plaintiff did not narrow its case at the pretrial conference or before the Court adopted and entered Plaintiff's proposal as part of the final pretrial order.  (*See* D.I. 283; D.I. 293 ¶ 1).  The morning of the trial, moments before the jury took their seats, the parties informed the Court that Plaintiff was withdrawing claims 2-8 and 10-20 of the Patent-in-Suit ("the withdrawn claims") and choosing to proceed with only the Asserted Claims (claims 1 and 9).  (*See* D.I. 295; Tr. at 77:14-78:23).  This decision was seemingly made in response to the Court's suggestion at the pretrial conference that the parties attempt to focus and narrow the issues for trial.[10]  (D.I. 283 at 37:15-25; *id.* at 45:16-46:21).

---

[10]    The Court imposed no limits.  This District maintains a heavy docket of patent cases, where both plaintiffs and defendants regularly and strategically carry numerous claims and defenses deep into litigation before winnowing them.  *See, e.g.*, *Bial-Portela & Ca. S.A. v. Alkem Labs. Ltd.*, No. 18-304 (CFC), 2022 WL 13944612, at *2 (D. Del. Oct. 24, 2022).  "In [such] cases, plaintiffs routinely assert at the outset significantly more patent claims than they ever could realistically assert at trial.  As trial approaches, plaintiffs reduce their asserted claims to a manageable number and defendants reduce their invalidity defenses." *Id.*; *Shure Inc. v. ClearOne, Inc.*, No. 19-1343 (RGA), 2022 WL 1718950, at *1 (D. Del. May 27, 2022) ("In the normal course of litigation, parties narrow claims and defenses as trial approaches.").  This is a simple matter of practicality:  there are limits to the volume of what a jury or court can feasibly hear in a single time-delimited trial.  *See Alkem Labs.*, 2022 WL 13944612, at *2 ("The finite resources of this Court and the parties make this narrowing process necessary.").  Here, Plaintiff asserted 20 claims through the eve of trial but ultimately elected to proceed with just two, acknowledging that it "voluntarily decided that these are the two [claims] we want to focus on."  (Tr. at 797:1-4).

Defendants now move for judgment as a matter of law as to the withdrawn claims, or, in the alternative, request that the Court deem those claims dismissed with prejudice. (D.I. 316 at 1). Plaintiff responds that Defendants' motion should be denied and the claims dismissed without prejudice, on the basis that the pretrial withdrawal of Plaintiff's claims effectively constituted a request for voluntary dismissal under Rule 41(a)(2).[11] (D.I. 322 at 3-4).

The circumstances of Plaintiff's withdrawal here warrant dismissal with prejudice. After nearly five years of litigation, Plaintiff dropped the withdrawn claims, quite literally, minutes before trial, *Bio-Rad*, No. 15-152 (RGA), at 1 ("[W]hen claims or counterclaims are dropped on the eve of trial, they are dropped with prejudice."), when the "claims were poised for a final disposition," *Shure*, 2022 WL 1718950, at *1, and without explanation, *Bioverativ*, 2021 WL 3471688, at *3 (dismissing with prejudice where plaintiff "offer[ed] no explanation as to why it decided to withdraw the [claims on the] Patent only once the case was ready for trial"). Defendants incurred great expense in getting to that point; they litigated three rounds of complaints, a motion to dismiss, the claim construction phase, summary judgment, and years of fact and expert

---

[11]     It is an open question in this District as to whether Rule 15 (withdrawal) or Rule 41 (dismissal) is the proper lens to view belated requests to drop a claim. *See, e.g.*, *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012) (noting, without deciding, that "withdrawal of the claims [is] akin to either a Federal Rule of Civil Procedure 15 amendment to the complaint, or a Rule 41(a) voluntary dismissal of claims without prejudice" (internal citations omitted)); *Shure*, 2022 WL 1718950, at *1 (calling Rules 15 and 41 "alternative[s]" in this context); *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, No. 15-152 (RGA), D.I. 561 at 2-3 (D. Del. July 9, 2019). Because the parties' briefing principally addresses Rule 41, the Court evaluates the dispute under that rubric, without deciding which Rule controls in this context. *See Bioverativ*, 2021 WL 3471688, at *3 ("Because [the Court] find[s] that a dismissal with prejudice is warranted under Rule 41, [it] will not address [plaintiff's] alternative arguments under Rule 15."). In any event, the Court retains "extensive discretion" under both Rules and so would reach the same conclusion under a Rule 15 analysis, because the prejudice calculus remains the same. *Shure*, 2022 WL 1718950, at *1; *Alkem Labs.*, 2022 WL 13944612, at *2; *Nilssen v. Motorola, Inc.*, 203 F.3d 782, 784 (Fed. Cir. 2000) ("In many instances the procedure for, and effect of, an amendment will be the same as a voluntary dismissal because of the similarities between the governing rules.") (citation omitted)).

26

discovery.  *See, e.g.*, *id.* (dismissing with prejudice under Rule 41 where "[t]he parties ha[d] litigated th[e] case for over three years, through discovery and dispositive motions, and the case [wa]s ready for trial"); *Ferring Pharms.*, 2018 WL 5085516, at *1 ("A plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial." (citation omitted)).

After all of that time and effort, Plaintiff failed to bring its case on the dropped claims before the jury at a five-day trial.  Dismissal without prejudice would allow Plaintiff a second bite at the apple, for up to 18 claims on the very same patent, perhaps even in a different forum.  This is the very picture of prejudice.  *See, e.g.*, *Shure*, 2022 WL 1718950, at *1 ("Allowing [plaintiff] to file a new lawsuit tomorrow asserting these very claims would lead to excessive, duplicative expenses."); *Alkem Labs.*, 2022 WL 13944612, at *2 ("If [the court] were to dismiss [plaintiff's] withdrawn claims as moot and without prejudice, then [plaintiff] (and any future plaintiff) would receive a green light to engage in 'essentially endless litigation.'" (citation omitted)).  "The interests of finality outweigh Plaintiff['s] interests in seeking to be able to assert the claims again." *Bio-Rad*, No. 15-152 (RGA), at 4.  Accordingly, the Court grants Defendants' motion and dismisses the withdrawn claims with prejudice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the alternative relief requested in Defendants' renewed motion for judgment as a matter of law (D.I. 316) is GRANTED, and Plaintiff's renewed motion for judgment as a matter of law or for a new trial (D.I. 323) is DENIED.

An appropriate Order will follow.